Michael S. Stein, Esq. (MS-3248)
J. John Kim, Esq. (JK-1979)
PASHMAN STEIN, P.C.
Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601
(201) 488-8200
*Attorneys for Defendants James D. Steedly,*
*Sophia C. Galleher, and Matthew Kim*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAXLITE, INC., a New Jersey Corporation, f/k/a SK AMERICA, INC., d/b/a MAXLITE, <br><br> Plaintiff, <br><br> v. <br><br> ATG ELECTRONICS, INC., JAMES D. STEEDLY, SOPHIA C. GALLEHER and MATTHEW KIM, <br><br> Defendants. | Civil Action No. 2:15-CV-01116-SDW-SCM |

## MEMORANDUM OF LAW IN SUPPORT OF THE EMPLOYEE DEFENDANTS' ORDER TO SHOW CAUSE SEEKING TEMPORARY RELIEF RESTRAINING ATG FROM DISCONTINUING THE FUNDING OF THE EMPLOYEE DEFENDANTS' LEGAL FEES AND COSTS PENDING A HEARING ON THE SUMMARY PROCEEDING AS REQUIRED BY THE NEW JERSEY SUPREME COURT IN RE GRAND JURY OPINION

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................2

STATEMENT OF FACTS .......................................................................................6

# LEGAL ARGUMENT

A.    LEAVE TO FILE A CROSSCLAIM IN SUPPORT OF THIS APPLICATION
      SHOULD BE GRANTED .............................................................................7

B.    THE SUPREME COURT'S PRONOUNCEMENT IN *IN RE STATE GRAND
      JURY INVESTIGATION* ..............................................................................8

C.    UNDER THE LEGAL OBLIGATIONS SET FORTH IN *IN RE STATE GRAND JURY
      INVESTIGATION*, ATG SHOULD NOT BE RELEASED FROM ITS OBLIGATION
      TO CONTINUE TO FUND THE EMPLOYEE DEFENDANTS' REASONABLE
      LITIGATION COSTS ...................................................................................10

D.    TEMPORARY RELIEF RESTRAINING ATG FROM DISCONTINUING FUNDING
      IS APPOPRIATE.........................................................................................12

E.    THE EMPLOYEE DEFENDANTS' CURRENT COUNSEL OF RECORD SHOULD
      NOT BE RELIEVED AT LEAST UNTIL THIS APPLICATION IS RESOLVED ........16

CONCLUSION AND RELIEF REQUESTED ...............................................................17

i

# TABLE OF AUTHORITIES

*Aleynikov v. Goldman Sachs Group, Inc.*,
    2012 WL 6603397  (D.N.J. 2012) ........................................................................13

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*,
    42 F.3d 1421 (3d Cir. 1994)..............................................................................15

*Ameriprise Fin. Servs., Inc. v. Koenig*,
    2012 U.S. Dist. LEXIS 13864 (D.N.J. Feb. 6, 2012) ........................................12

*Homestore, Inc. v. Tafeen*,
    886 A.2d 502 (Del. 2005) ..................................................................................14

*Great Am. Ins. Co. v. Gross*,
    2005 WL 1048752 (E.D. Va. May 3, 2005) ......................................................14

*In re State Grand Jury Investigation*,
    200 N.J. 481 (2009) ..................................................................................*passim*

*In re Worldcom, Inc. Secs. Litig.*,
    354 F. Supp. 2d 455 (S.D.N.Y. 2005).................................................................14

*Kos Pharm., Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004)..............................................................................12

*Mitzel v. Westinghouse Elec. Corp.*,
    72 F.3d 414 (3d Cir. 1995)..................................................................................3

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
    920 F.2d 187 (3d Cir. 1990)..............................................................................15

*Steel v. General Motors Corp.*,
    912 F. Supp. 724 (D.N.J.1995) ...........................................................................3

*Westchester Fire Ins. Co. v. Global Real Const., LLC*,
    2009 WL 137414 (D.N.J. Jan. 20, 2009)............................................................12

*XL Specialty Ins. Co. v. Level Global Invs., L.P.*,
    874 F. Supp. 2d 263 (S.D.N.Y. 2012).................................................................13

<u>RULES</u>
FRCP 13(g) .....................................................................................................................8
FRCP 15(a)(2)...........................................................................................................6, 7

Defendants James D. Steedly, Sophia C. Galleher, and Matthew Kim (collectively, the Employee Defendants) respectfully submit this Memorandum of Law in support of their Order to Show Cause seeking temporary relief restraining Defendant ATG Electronics, Inc. (ATG) from discontinuing the funding of the Employee Defendants' legal fees and costs pending a hearing on the summary proceeding as required by the New Jersey Supreme Court in *In re Grand Jury*, 200 N.J. 481, 498 (2009).[1]

## PRELIMINARY STATEMENT

This litigation just took a dramatic turn as a consequence of ATG's decision to unexpectedly terminate its employment relationships with Defendants Steedly, Kim and Galleher, effective June 30, 2015, and, at the same time, to breach its agreement -- made repeatedly both orally and in writing -- to fund their defense for the duration of the case. More particularly, ATG, mindful of the Employee Defendants' restrictive covenants, and after retaining independent counsel to review those covenants, induced them to leave Plaintiff MaxLite, Inc. (MaxLite) for ATG by promising them that ATG would fund any litigation in the event a dispute arose. Now, having tired of the litigation costs, ATG has cast them aside with the hope and belief that without financial backing, the Employee Defendants will be forced to settle this litigation on MaxLite's terms, which, in turn, will enable ATG to more easily resolve its own dispute with MaxLite. That unilateral decision by a third-party payer of attorneys' fees to terminate its commitment to pay fees mid-stream in litigation is a clear violation of New Jersey

---

[1] As set forth in the undersigned counsel's Notice of Limited Appearance, filed concurrently herewith, undersigned counsel and his firm Pashman Stein P.C. are appearing for the limited purpose of prosecuting the Employee Defendants' Order to Show Cause Seeking a Declaration, by Way of Summary Proceeding, that Defendant ATG is Obligated to Continue to Pay the Employee Defendants' Legal Fees and Costs (Order to Show Cause). Any further representation beyond this Order to Show Cause is dependent on whether this Court enforces ATG obligation to pay the Employee Defendants' legal fees and costs.

2

law: "Once an employer commits to paying the legal fees and expenses of its employees, it scrupulously must honor that commitment." *In re State Grand Jury Investigation,* 200 N.J. 481, 498 (2009) (for the convenience of the court, attached as Exhibit B to the Certification of J. John Kim (Kim Cert.)).[2]

When informing the Employee Defendants of their termination, ATG's President and majority owner, Mr. Yaxi Ni (Mr. Ni), stated that ATG would not continue to fund the litigation; but even then he promised that he, personally, would honor ATG's prior commitment to pay all unpaid attorney fees and costs incurred up through the date of termination. Further, he promised that going forward he, personally, would pay for attorneys' fees and costs in support of any effort by the Employee Defendants to reach a settlement with MaxLite. Since the termination, neither ATG nor Mr. Ni, personally, has fulfilled their obligations to pay attorneys' fees due and owing to the defense counsel that are now seeking to withdraw, and Mr. Ni has broken his promise to pay the attorneys' fees that were incurred by the undersigned counsel in representing the Employee Defendants in pursuing their settlement efforts.

---

[2] To be clear, by invoking New Jersey law in support of the relief sought in this Order to Show Cause, the Employee Defendants are in no way waiving their position that the substantive issues in this litigation are governed by California law. The issue before the Court on this Order to Show Cause is solely a question of New Jersey state procedural law and requires the application of the New Jersey Rules of Professional Conduct. Accordingly, New Jersey law applies to this specific question. *See Mitzel v. Westinghouse Elec. Corp.,* 72 F.3d 414, 418 (3d Cir. 1995) ("New Jersey law considers that matters relating to attorney's fees fall within the sphere of the state's 'paramount concern with its courts.' The New Jersey view is clear and express: It is a virtually axiomatic principle of conflicts of law that the procedural law of the forum applies even to causes of action governed by a different jurisdiction's substantive law. . . . Court rules regulating attorney fees are not only clearly procedural but have also expressly been so declared."); *Steel v. General Motors Corp.,* 912 F. Supp. 724, 732 (D.N.J.1995) (It is "clear that the ethical rules and constraints imposed on federal practitioners in New Jersey are the same as those imposed on New Jersey attorneys generally by the state Supreme Court under New Jersey Court Rule 1.14.").

3

The New Jersey Supreme Court clarified the obligations imposed upon third-party payers of legal fees in *In re State Grand Jury Investigation,* cited above. Recognizing that third-party payers may have interests that differ from those of the client -- including an interest in minimizing the cost of the litigation -- the *In re State Grand Jury Investigation* Court reaffirmed the prohibition against interfering with litigation strategy and mandated that third-party payers wishing to be relieved from funding a litigation must first demonstrate to the court a good faith basis to discontinue their payment obligation, meaning a basis independent and apart from its desire to force a settlement or pursue a course of action that might put an end to the litigation to the detriment of the party it is funding. *Id.* at 495-97. The Court further held that where a third-party payer fails to timely pay counsel's invoices, the remedy is a summary action *via* an order to show cause to compel payment in order to protect the client and to avoid disruption of the litigation. *Id.* at 497.

Here, ATG's conduct has run afoul of *In re State Grand Jury Investigation* in several respects. **First**, ATG failed to comply with its affirmative obligation to seek Court approval before unilaterally terminating its obligation to pay the Employee Defendants' defense costs. *See, id.* at 498 ("[I]f the employer wishes to discontinue paying the legal fees and expenses of one or more of its employees, it may only do so by leave of court granted."). **Second**, ATG has used the leverage it gained as payer of the Employee Defendants' defense costs to impose its litigation strategy on the Employee Defendants by requiring them to either accept whatever settlement MaxLite happens to offer, or alternatively proceed in the case *pro se* -- as these now unemployed Defendants cannot afford to pay for their counsel. *See, id.* at 498 ("[T]he third-party payer shall not, in any way, seek to 'direct or regulate the lawyer's professional judgment in rendering such legal services.'"). **Third**, beyond failing to fulfill their obligations to continue

4

funding, ATG and Mr. Ni have both failed to fulfill their explicitly expressed promise to pay fees and costs incurred thus far by withdrawing counsel and undersigned counsel, who have been retained by the Employee Defendants to pursue settlement negotiations. *See, id.* at 497 ("If a third-party payer fails to pay an employee's legal fees and expenses when due, the employee shall have the right, via a summary action, for an order to show cause why the third-party payer should not be ordered to pay those fees and expenses.").

The relief sought herein is critical to the Employee Defendants because the undersigned attorneys are prepared to enter a general appearance to fully represent them in this litigation, ***but only on the condition that ATG is ordered to pay all reasonable attorney fees and costs going forward, as promised, without imposing any strategic or tactical limitations on the representation.***[3] Absent a Court order granting the relief requested and restraining ATG, the Employee Defendants will be forced to either accept a settlement that they would not otherwise agree to or proceed without any representation in this extremely complex and contentiously litigated matter that will undoubtedly affect their livelihoods and right to work in their respective chosen fields.

The predicament the Employee Defendants find themselves in is precisely what the New Jersey Supreme Court intended to protect against in its *In Re Grand Jury* Opinion. The imposition of immediate temporary restraints prohibiting ATG from discontinuing its payment obligations (pending an expedited summary proceeding as contemplated in *In Re Grand Jury*), until and unless it obtains leave of Court, is the only way to vindicate that intent and purpose.

---

[3] As explained further below, undersigned counsel has pursued settlement negotiations with MaxLite for the Employees Defendants. At this point, it appears that the discussions on behalf of Defendants Steedly and Kim are at an impasse. However, progress has been made in reaching a resolution of the claims against Ms. Galleher.

## STATEMENT OF FACTS

The Employee Defendants have attached as Exhibit A to the Kim Cert. a detailed proposed Verified Crossclaim, with attachments that include multiple emails sent from and to Mr. Ni, that they seek to submit in support of their Order to Show Cause (Kim Cert. Exh. A or Verified Crossclaim).[4] We incorporate by reference the factual recitation contained in the Crossclaim and refer the court to that Crossclaim which contains all the facts and documentary evidence upon which this application rests. *See* Kim Cert. Exh. A, and attachments thereto.

In short, the sworn facts and appended documents in the Verified Crossclaim firmly establish that when ATG solicited each of the Employee Defendants to leave MaxLite and work for ATG, Mr. Ni was fully aware of the restrictive provisions in each of the MaxLite employment agreements, purposefully had them reviewed by New Jersey counsel and then assured each of the Employee Defendants that the restrictive covenants would not be a problem and that ATG would protect each of them by funding any litigation against them if MaxLite asserted any claims. Further, the Verified Crossclaim proves, with documentary support, that when MaxLite later did initiate litigation and pursue claims, Mr. Ni repeatedly promised the Employee Defendants that the litigation was not a problem, that ATG would handle the attorney

---

[4] As explained *infra*, the Employee Defendants seek to leave of the Court to file this proposed Verified Crossclaim pursuant to FRCP 15(a)(2). The proposed Verified Crossclaim includes as an exhibit a "Representation Conflict Waiver" letter dated February 12, 2015, from Mr. Mulcahy to Mr. Ni that each of the Employee Defendants originally identified as a privileged communication. Verified Crossclaim Exh. 13. This letter is now at issue in this case because the assertion of a conflict as the basis for the Mulcahey firm's presently filed withdrawal motion is expressly contradicted by the waiver of conflicts at page 2. *Id.* ("By executing this agreement, each of You [including ATG] is indicating Your desire that the Firm represent You in connection with the matter(s) discussed above, notwithstanding any actual or potential conflicts of interest that You may have with other parties to this agreement, and You hereby agree (1) to waive any such conflicts, and (2) to joint representation by the Firm.). *See also id.* at page 4 (waiving the right of any party to seek disqualification of counsel "on the basis of counsel's access to Privileged Information pursuant to this agreement.").

fees and costs and that the Employee Defendants should not worry about the lawsuit and that they should instead remain focused on their work for ATG, which they did to the great economic advantage of ATG. The Verified Crossclaim and its exhibits conclusively show that ATG initially did fund the litigation, paying the initial retainer as well as several legal bills to fund the Employee Defendants' legal fees. The Verified Crossclaim further establishes that the termination came as a complete surprise to the Employee Defendants and that ATG's decision to renege on its promise to pay is an improper effort by ATG to use its leverage as payer/obligor of attorneys' fees and litigation costs to force the Employee Defendants to pursue settlement negotiations on drastically unfavorable terms and accept MaxLite's onerous demands, or otherwise proceed in this litigation without representation.

## LEGAL ARGUMENT

A.   LEAVE TO FILE A CROSSCLAIM IN SUPPORT OF THIS APPLICATION SHOULD BE GRANTED.

The Employee Defendants seek leave of the Court to file their proposed Verified Crossclaim (attached as Exhibit A to the Kim Cert.) pursuant to FRCP 15(a)(2), which states "[t]he court should freely give leave when justice so requires." Because consideration of the Verified Crossclaim is vital to the Employee Defendants instant application for temporary relief, the Employee Defendants respectfully request that the Court address the application to file a crossclaim at the same time the Court hears the application for temporary relief.

There can be no doubt that justice requires that the Employee Defendants be given the opportunity to make their application through their crossclaim here. As described in greater detail below, the Employee Defendants were induced to leave jobs with MaxLite for a new employer, ATG, who promised -- after paying New Jersey legal counsel to review their restrictive covenants with MaxLite -- to pay their legal expenses should MaxLite file suit against

them.  During the middle of the ensuing litigation, ATG suddenly made a decision to subordinate the Employee Defendants interests to its own interest, and proclaimed that it would no longer honor its obligation to pay legal fees, and fired the Employee Defendants, leaving them with no incomes and unable to afford counsel.  Through no fault of their own, the Employee Defendants have been cast aside, and left defenseless and jobless.  It would be a great injustice to not allow the Employee Defendants to seek the enforcement of the promises that ATG made to them.  Accordingly, the Employee Defendants respectfully request that the Court grant leave to file their Verified Crossclaim, and consider it as support for their Order to Show Cause application seeking temporary relief.[5]

## B.   THE SUPREME COURT'S PRONOUNCEMENT IN *IN RE STATE GRAND JURY INVESTIGATION*.

Several years ago, in 2009, the New Jersey Supreme Court handed down a decision that provided the guidelines under which clients' legal fees and expenses may be paid by third-parties.  In *In the Matter of the State Grand Jury Investigation*, the Supreme Court upheld a trial court's denial of a motion to disqualify attorneys that a company had retained and paid to represent its employees who were potential witnesses against that company in a grand jury investigation.  200 N.J. 481.  The case stemmed from a grand jury investigation into whether a corporate contractor had submitted fraudulent invoices for services it allegedly rendered to the company.  *Id.* at 1100.  The targets of the investigation were the company itself as well as three

---

[5] Under FRCP 13(g), one party may bring a crossclaim against a co-party if the claim "arises out of the transaction or occurrence that is the subject matter of the original action."  There is no question that is the case here, where ATG's promises to protect the Employee Defendants and pay to defend them in any litigation against MaxLite was an essential part of their solicitation to leave MaxLite for ATG.  The original lawsuit filed by MaxLite centers around ATG's inducement of the Employee Defendants, which conduct MaxLite alleges caused breaches of their employment agreements.  ATG's affirmative obligation to fund the Employee Defendants' legal fees and costs directly arose from the transactions and occurrences that underlie the original action.

of its employees. *Id.* The state moved to disqualify the four attorneys, arguing that Rules of Professional Conduct prohibited such retention because it created a conflict of interest.

The Supreme Court addressed the Rules of Professional Conduct (RPC), finding that a third-party's payment of attorneys' fees is permissible upon meeting the requisite factors set forth in RPC 1.8(f). *Id.* at 493. The Court interpreted these factors and related judicial precedent to impose six conditions required when a third-party payer has undertaken the obligation to pay another client's fees:

> (1) The informed consent of the client is secured;
>
> (2) The third party payer is prohibited from, in any way, directing, regulating or interfering with the lawyer's professional judgment in representing his client;
>
> (3) There cannot be any current attorney-client relationship between the lawyer and third party payer;
>
> (4) The lawyer is prohibited from communication with the third-party payer concerning the substance of the representation;
>
> (5) The third party payer shall process and pay all invoices within the regular course of its business, consistent with the manner, speed and frequency it pays its own counsel; and
>
> (6) Once a third party payer commits to pay for the representation of another, the third-party payer shall not be relieved of its continuing obligation to pay without leave of court.

*Id.* at 495-96.

The Court held that if a third party payer fails to pay the legal fees when due, the appropriate remedy is a summary action for an order to show cause why the third-party should not be compelled to remit payment. *Id.* The Court stressed that a third-party payer's obligation to pay fees continues until it can persuade the court why that obligation should cease. Significantly, "[i]n such an application, the third-party payer shall bear the burden of proving

that its obligation to continue to pay for the representation should cease [and] the fact that the lawyer and the client have elected to pursue a course of conduct deemed in the client's best interests but disadvantageous to the third-party payer shall not be sufficient reason to discontinue the third-party payer's continuing obligation of payment." *Id.* (emphasis added).

The Court made clear that the pursuit of a course of action with which a third-party payer disagrees is not sufficient good cause to relieve that third party of its obligation of payment. This bolsters another portion of the Court's opinion that "[t]he third-party payer is prohibited from, in any way, directing, regulating, or interfering with the lawyer's professional judgment in representing his client." *Id.* In so holding, the Court recognized that the attorney's decision-making process should be free from third-party interference and should not in any way be influenced by monetary incentives. Releasing a third-party payer from its obligation on the basis that it wants to pressure the client to settle, in essence, coerces the client and his or her attorneys into pursuing a course of action that may not be in the best interests of the client.

C.   UNDER THE LEGAL OBLIGATIONS SET FORTH IN *IN RE STATE GRAND JURY INVESTIGATION*, ATG SHOULD NOT BE RELEASED FROM ITS OBLIGATION TO CONTINUE TO FUND THE EMPLOYEE DEFENDANTS' REASONABLE LITIGATION COSTS.

The facts presented in support of this application squarely align with the requirements set forth in by the New Jersey Supreme Court in *In the Matter of the State Grand Jury Investigation*, and the underlying public policy considerations. As with *In the Matter of the State Grand Jury Investigation*, this present case arises in the context of an employer having made the commitment to pay the legal fees and costs of its employees. As quoted above: ***"Once an employer commits to paying the legal fees and expenses of its employees, it scrupulously must honor that commitment."*** 200 N.J. at 498.

Enforcing ATG's payment obligations so that the Employee Defendant can be independently represented by counsel going forward in this litigation will satisfy each of the six factors set forth in *In the Matter of the State Grand Jury Investigation,* discussed *supra* at 19.

**First,** Mr. Mulcahy initially secured the informed consent of the Employee Defendants to the arrangement whereby his other client, ATG, would be responsible for the fees and costs that he incurred on behalf of all of them, collectively, in this litigation. Verified Crossclaim Exhs. 12 and 13.

**Second,** if this Court grants the relief requested, the Employee Defendants will be represented by independent counsel with undivided loyalties to the Employee Defendants and without any risk that ATG will seek to direct, regulate or interfere with counsel's professional judgment in representing his clients.

**Third,** going forward, there will be no attorney-client relationship between counsel for the Employee Defendants and ATG, and, as ATG has now retained its own independent defense counsel, the parties can deal with each other on an even footing -- through their respective counsel.[6]

**Fourth,** ATG and the Employee Defendants will be separately represented and there will be no direct communications between counsel for the Employee Defendants and ATG on the substance of the representation, and any further communications will be through counsel.

**Fifth,** if the Court grants the relief sought herein, ATG will be required to fulfill its outstanding obligations to the Mulcahy firm, reimburse the fees and costs that the Employee

---

[6] Once the ATG and the Employee Defendants are separately represented by fully funded independent counsel, the Employee Defendants will be able to negotiate with MaxLite on more fair and equal footing. This will significantly raise the possibility of a global settlement as to all the parties in this dispute, as opposed to leaving the Employee Defendants in a position where they must proceed with no counsel and unable to accept onerous and one sided settlement demands that they cannot properly negotiate.

11

Defendants have paid to date to Pashman Stein P.C. -- without seeking to extract an unfair advantage by requiring the Employee Defendants to enter into one-sided severance agreements that falsely characterize the employment separation as "resignations" -- and going forward, ATG will be required to pay Pashman Stein P.C.'s invoices within the regular course of its business, consistent with the manner, speed and frequency it pays its own counsel.

**Sixth,** because the facts submitted in support of this application clearly establish that ATG repeatedly assured the Employee Defendants and promised them that it would pay their legal fees and costs in this litigation through to the end, making such promises even before the Employee Defendants were hired by ATG and repeating them at the beginning of this litigation and then throughout this litigation, the Court should enforce that promise so that this litigation can proceed in compliance with the dictates of *In the Matter of the State Grand Jury Investigation.*

Accordingly, ATG should temporarily be enjoined and restrained from discontinuing their funding obligation midstream during this litigation, until and unless they can establish "good cause" under *In re Grand Jury* at an expedited summary hearing.

D.   TEMPORARY RELIEF RESTRAINING ATG FROM DISCONTINUING FUNDING IS APPROPRIATE

"The standard for issuance of a TRO [temporary restraining order] or injunctive relief is the same." *Ameriprise Fin. Servs., Inc. v. Koenig*, 2012 U.S. Dist. LEXIS 13864, at *10 (D.N.J. Feb. 6, 2012). The court will issue temporary restraints if a party shows: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Westchester Fire Ins. Co. v. Global Real Const., LLC*, 2009 WL 137414, at *1 (D.N.J. Jan. 20, 2009); *citing Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d

12

700, 708 (3d Cir. 2004). Here, all four factors favor granting the temporary relief sought by the Employee Defendants.

First, the Employee Defendants are likely to succeed on the merits. This is not a situation where there is an ambiguous question of whether ATG acted properly or not. The law is black and white -- ATG is not permitted under *In re Grand Jury* to unilaterally stop funding the Employee Defendants' legal fees and costs; it must first obtain court approval in a summary hearing. There can be no dispute that ATG has violated New Jersey law under *In re Grand Jury* by acting without first obtaining the Court's consent. Ultimately, ATG will have to prove that it has "good cause" under the requirements of *In re Grand Jury* in order to be released from its obligation. As explained *supra*, the pursuit of a course of action with which a third-party payer disagrees is not sufficient "good cause" to relieve that third party of its obligation of payment. The sworn statements of fact in the proposed Verified Crossclaim and supporting documentary evidence show that ATG's unilateral attempt to discontinue funding is nothing more than a litigation tactic aimed at serving its own self interest at the expense of the Employee Defendants'. Accordingly, the Employee Defendants have a high degree of probability of success on the merits.

Second, the Employee Defendants will certainly experience irreparable harm if their application is denied. Without the Court's granting of temporary restraints, the Employee Defendants will be left with no counsel, and unable to proceed forward competently in this litigation. *See Aleynikov v. Goldman Sachs Group, Inc.*, 2012 WL 6603397 at *14 (D.N.J. 2012) (finding imminent loss of counsel constitutes irreparable harm). Indeed, it is commonly recognized by courts that the failure to receive defense costs resulting in the deprivation of counsel constitutes irreparable harm. *See XL Specialty Ins. Co. v. Level Global Invs., L.P.*, 874

F. Supp. 2d 263, 272 (S.D.N.Y. 2012) ("[t]he failure to receive defense costs . . . at the time they are incurred constitutes an immediate and direct injury sufficient to satisfy the irreparable harm requirement"); *In re Worldcom, Inc. Secs. Litig.*, 354 F. Supp. 2d 455, 468 (S.D.N.Y. 2005) (individual who was not advanced costs of defense pursuant to a contract suffers immediate and irreparable harm); *Great Am. Ins. Co. v. Gross*, 2005 WL 1048752, at *4 (E.D. Va. May 3, 2005) (refusal to advance defense costs constitutes irreparable harm since it would leave employees with no ability to defend their interests in underlying litigation).

In many ways, the refusal of a company to honor obligations under its By-Laws to advance legal fees to its officers who are sued is analogous to this situation. The Delaware Chancery Court, where many advancement cases are litigated, is particularly mindful of the irreparable harm that deprivation of promised legal counsel causes and as a consequence all advancement claims are heard on an expedited basis, by way of a summary proceeding. 8 Del. Code sec. 145(k) ("The Court of Chancery may summarily determine a corporation's obligation to advance expenses, including attorney's fees.")   For those who litigate advancement claims in Delaware Chancery Court, the common refrain is advancement delayed is advancement denied. And the Delaware Supreme Court has unambiguously agreed that a delay in promised litigation funding causes irreparable harm because it has the effect of depriving litigants of their ability to adequately defend themselves. *See Homestore, Inc. v. Tafeen*, 886 A.2d 502, 505 (Del. 2005) (affirming the Chancery Court's denial of an application to stay an advancement award, the Supreme Court held "that [employee] would suffer severe and irreparable harm" if his company were permitted to delay paying for his attorneys' fees "because it would prevent [employee] from adequately defending himself in the numerous ongoing litigations").

14

Absent the temporary relief sought, the Employee Defendants will be left defenseless and unable to properly contest the allegations made against them, respond to discovery, seek their own discovery, and advance their own legal theories.  At best, they would be forced litigate, alone and without legal counsel, against two well-funded companies who are represented by competent and knowledgeable lawyers. That unquestionably would be an unjust result, one that cannot be quantified in monetary damages, and would result in permanent harm to the Employee Defendants.

**Third**, granting the temporary relief that the Employee Defendants seek will not cause even greater harm to ATG.  In fact, all the Employee Defendants seek to do is maintain the status quo. "[O]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as 'the last, peaceable, noncontested status of the parties.'" *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990). As shown *supra*, ATG began funding this litigation on behalf of the Employee Defendants, paying initial retainers and then several legal bills, in fulfillment of their affirmative obligation. This application seeks to maintain that status quo and prevent ATG from unilaterally halting its payment obligations -- at least until it obtains permission from the Court as required -- which it had honored until it fired the Employee Defendants, which was the "last, peaceable, noncontested status of the parties."

**Fourth**, the public interest favors granting the temporary restraints sought by the Employee Defendants.  It should be emphasized that "[a]s a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994).  And so it is here. The Employee Defendants are individuals who were induced to leave their company for a new one, based on

15

promises that their new employer would assume the risk of the costs of litigation. They are caught in the middle of in a lawsuit between two large and well-funded companies. And now they have been cast aside, with no income or job, and no ability to afford counsel for this litigation. There is no question that it is in the public interest to prevent such an unjust result. Indeed, the public policy goal of preventing just such a result is what led the New Jersey Supreme Court to issue the requirements laid out in *In re Grand Jury*. ATG's conduct is identical to the very scenario that the New Jersey Supreme Court sought to prevent -- one where a well-heeled third party-payer decides that its own interest diverges from that of the client and so it influences a litigation through its control of the purse strings over the payment of the client's legal fees. It is foundationally in the public interest to prevent such a result.

E.     THE EMPLOYEE DEFENDANTS' CURRENT COUNSEL OF RECORD SHOULD NOT BE RELIEVED AT LEAST UNTIL THIS APPLICATION IS RESOLVED.

On July 6, 2015, six days after the Employee Defendants were terminated, ATG's new counsel, Mr. Alexander Friedman of Brody and Associates, filed a substitution into this case as defense counsel for ATG only. While ATG is now fully protected by its newly-retained defense counsel that it is presumably paying, the Employee Defendants are presently represented, at least as of the filing of this Order to Show Cause, by Mr. Mulcahy and his associated counsel -- Kevin Adams, Shari Amster, and Marc Durant -- who, pursuant to a pending motion, all seek to withdraw from the case. If the Employee Defendants' current counsel of record are relieved before the application for temporary restraints is resolved, the Employee Defendants will have no representation at a critical stage in this litigation. This, by any measure, would be grossly unfair and improper under New Jersey law.

The Motion to Withdraw cites as its primary basis the emergence of a conflict between ATG and the Employee Defendants caused by the termination and the fact that the attorneys

16

seeking to withdraw are not being paid for fees and costs that are due and owing. This purported conflict was not caused in any way by the Employee Defendants. Rather, it was ATG that self-servingly created this purported conflict by terminating the Employee Defendants as a misguided tactical maneuver in the litigation.  As demonstrated *supra* at page 5, n. 4, any conflicts between the Defendants were expressly waived when the Defendants entered into their Representation Conflict Waiver agreement. *See* Verified Crossclaim Exh. 13.

Further, as set forth above, that these attorneys have unpaid legal fees and costs is not the fault of the Employee Defendants -- who cannot afford to pay them -- but rather lies at the feet of ATG who breached its affirmative obligation to pay these litigation costs.

Based on the dire circumstances that the Employee Defendants will face if they are left unrepresented in this litigation, they must request that the Court refrain from relieving the current counsel of record, at least until the Court rules on their application for temporary restraints. Additionally, the Employee Defendants join in the request in the Motion to Withdraw seeking a stay of discovery and other case deadlines while the Motion to Withdraw and this application is pending and for a few weeks thereafter to allow successor counsel -- assuming this application is granted -- an opportunity to prepare for the resumption of the litigation.

## CONCLUSION AND RELIEF REQUESTED

ATG and Mr. Ni have forced the Employee Defendants into an untenable position that is precisely what the New Jersey Supreme Court sought to guard against by imposing certain legal obligations on third party payers of attorneys' fees as detailed in *In re State Grand Jury Investigation*. ATG and Mr. Ni hired each of the Employee Defendants while having full knowledge of the contractual restrictions that MaxLite seeks to enforce in this litigation and after giving explicit assurances that these contractual provisions were not enforceable in California

17

and that they would not be a problem for the Employee Defendants. When the MaxLite Cease and Desist letters were received by ATG, Mr. Ni directly assured each Employee Defendant that ATG would cover the expense of the litigation against them. ATG paid the initial retainer and then several invoices for defense costs, while Mr. Ni continued for three and a half months to make multiple representations assuring that ATG would fund the defense. In mid-June, ATG suddenly and unexpectedly reversed course, terminating the employment of all three Employee Defendants and reneging on its obligation to pay defense costs going forward, except that Mr. Ni stated that he would personally fund the costs of hiring New Jersey counsel to pursue settlement negotiations. Even that promise of limited funding, which alone still fails to fulfill ATG's obligation, has been broken.  It has become clear that without an order from this Court enforcing the requirements of *In re State Grand Jury Investigation*, the Employee Defendants will be left completely unprotected in this litigation, which is being waged by MaxLite in a fashion that has the potential to destroy their careers and force them into bankruptcy.

For the foregoing reasons, the Employee Defendants respectfully request that this Court:

(a)   Grant leave for the Employee Defendants to file their Crossclaim in support of their Order to Show Cause; and

(b)   Issue a temporary order enjoining and restraining Defendant ATG from unilaterally terminating its obligation to pay the Employee Defendants' reasonable legal fees and costs, including those fees and costs incurred by withdrawing counsel as well as those fees and costs incurred by new counsel, Pashman Stein, P.C., until and unless it obtains the Court's permission to be relieved of its obligation by demonstrating sufficient "good cause" as required by New Jersey law.

18

**PASHMAN STEIN, P.C.**
Attorneys for Defendants,
    **James D. Steedly, Sophia**
    **C. Galleher, and Matthew Kim**

Date: September 16, 2015    By:    _____

                          MICHAEL S. STEIN

19