1   HOWARD B. GOLDS, Bar No. 112626
    howard.golds@bbklaw.com
2   THOMAS M. O'CONNELL, Bar No. 298457
    thomas.oconnell@bbklaw.com
3   BEST BEST & KRIEGER LLP
    3390 University Avenue, 5th Floor
4   P.O. Box 1028
    Riverside, CA  92502
5   Telephone:  (951) 686-1450
    Facsimile:  (951) 686-3083
6
    ALEXANDER FRIEDMAN (AF2750)
7   afriedman@brodyandassociates.com
    BRODY AND ASSOCIATES, LLC
8   179 Post Road West
    Westport, CT  06880
9   Telephone:  (203) 965-0560

10  Attorneys for Defendant
    ATG ELECTRONICS, INC.
11
                    UNITED STATES DISTRICT COURT
12
                  FOR THE DISTRICT OF NEW JERSEY
13

14
    MAXLITE, INC., a New Jersey          Case No.     2:15-CV-01116-SDW-SCM
15  Corporation, f/k/a SK AMERICA,       Judge:       Hon. Susan D. Wigenton
    INC., d/b/a MAXLITE,
16                                        DEFENDANT ATG ELECTRONICS,
                 Plaintiff,              INC.'S OPPOSITION TO
17                                        DEFENDANTS JAMES D. STEEDLY,
          v.                              SOPHIA C. GALLEHER, AND
18                                        MATTHEW KIM'S APPLICATION FOR
    ATG ELECTRONICS, INC.,                AN ORDER TO SHOW CAUSE
19  JAMES D. STEEDLY, SOPHIA C.
    GALLEHER, and MATTHEW KIM,
20                                        Motion Day:   November 23, 2015
                 Defendants.                            (Tentative)
21

22

23

24

25

26

27

28

OPPOSITION TO APPLICATION FOR ORDER
                                                      TO SHOW CAUSE

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   FACTS ...................................................................................................... 3

    A.    Relevant Factual Background Of ATG ............................................ 3

    B.    Relevant Factual Background On Steedly ........................................ 3

    C.    Relevant Factual Background On Kim .............................................. 4

    D.    Relevant Factual Background On Galleher ....................................... 5

    E.    The MaxLite Litigation ..................................................................... 5

III.   ARGUMENT ........................................................................................... 8

    A.    The Individual Defendants' Request That The Court Exercise
          Control Over ATG Is Improper Because The Court Lacks
          Personal Jurisdiction Over ATG ...................................................... 8

    B.    Even If The Court Could Exercise Personal Jurisdiction Over
          ATG, In re State Grand Jury Investigation Is Inapplicable To
          This Dispute .................................................................................... 13

          1.    The Individual Defendants Base Their Entire Application
                On Dictum From In re State Grand Jury Investigation
                That Relates To Specific Attorney Conduct That Is Not
                Relevant Here ...................................................................... 13

          2.    The Relevant Passage From Grand Jury Creates A
                Substantive Right That Is Inapplicable Here .......................... 15

    C.    Even If The Court Could Exercise Personal Jurisdiction Over
          ATG And New Jersey Substantive Law Was Applicable To This
          Dispute, The Individual Defendants' Summary Action Would
          Fail Under Grand Jury .................................................................... 19

IV.   CONCLUSION ...................................................................................... 22

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Federal Cases**

4

*Abbot Laboratories v. Biovalve Technologies, Incorporated*
5
    543 F. Supp. 2d 913 (N.D. Ill. 2008)............................................................. 11, 12

6

*Allegheny Energy v. DQE, Inc.*
7
    171 F.3d 153 (3d Cir. 1999) ............................................................................... 19

8

*AstraZeneca Pharm. LP v. Mylan Pharm., Inc.*
    No. MDL-08-1949-JJF, 2010 U.S. Dist. LEXIS 14935 (D. Del.
9
    Feb. 19, 2010)...................................................................................................... 9

10

*Burger King Corp. v. Rudzewicz*
11
    471 U.S. 462 (1985) ............................................................................................ 8

12

*Celgene Corp. v. KV Pharm. Co.*
13
    No. 07-4819-SDW, 2008 U.S. Dist. LEXIS 58735 (D.N.J. July 29,
    2008)................................................................................................................... 14
14

15

*Chin v. Chrysler LLC*
    538 F.3d 272 (3d Cir. 2008) ............................................................................... 16
16

17

*City of New York v. Mickalis Pawn Shop, LLC*
    645 F.3d 114 (2d Cir. 2011) ............................................................................ 9, 11

18

*Coast to Coast Entm't, LLC v. Coastal Amusements, Inc.*
19
    No. 05-CV-3977, 2005 U.S. Dist. LEXIS 26849 (D.N.J. Nov. 4,
    2005)................................................................................................................... 19
20

21

*Elder v. Metro. Freight Carriers, Inc.*
22
    543 F.2d 513 (3d Cir. 1976) ............................................................................... 16

23

*Farmers Alliance Mut. Ins. Co. v. Jones*
    570 F.2d 1384 (10th Cir. 1978) .......................................................................... 17
24

25

*Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*
    847 F.2d 100 (3d Cir. 1988) ............................................................................... 19
26

27

*IMO Indus., Inc. v. Kiekert AG*
    155 F.3d 254 (3d Cir. 1998) ................................................................................ 8

28

                TABLE OF AUTHORITIES

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Kennell v. Avis Budget Grp., Inc.*
No. WMN-09-833, 2009 U.S. Dist. LEXIS 68898 (D. Md. Aug. 6, 2009) ........................................................................................... 1

*Leroy v. Great W. United Corp.*
443 U.S. 173 (1979) ............................................................................. 8

*Mitzel v. Westinghouse Elec. Corp.*
72 F.3d 414 (3d Cir. 1995) ....................................................... 15, 16

*O'Connor v. Sandy Lane Hotel Co.*
496 F.3d 312 (3d Cir. 2007) ............................................................... 8

*Regional Employers' Assurance Leagues Voluntary Employees v. O'Brien*
No. 12-2207, 2013 U.S. Dist. LEXIS 162768 (E.D. Pa. Nov. 14, 2013) ................................................................................... 11, 12

*Rozenblat v. Sandia Corp.*
No. 05-1556, 2006 U.S. App. LEXIS 6804 (Fed. Cir. Mar. 17, 2006) ...................................................................................... 8

*United States v. Spectro Foods Corp.*
544 F.2d 1175 (3d Cir. 1976) ......................................................... 20

*United Van Lines, LLC v. Lohr Printing, Inc.*
No. 11-04761, 2013 U.S. Dist. LEXIS 11612 (D.N.J. Jan. 29, 2013) ................. 1

*Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*
75 F.3d 147 (3d Cir. 1996) ............................................................. 11

*Villot v. Varner*
373 F.3d 327 (3d Cir. 2004) ........................................................... 16

*Washington v. Donley*
802 F. Supp. 2d 539 (D. Del. 2011) ............................................... 17

**State Cases**

*Du-Wel Products, Inc. v. U.S. Fire Ins. Co.*
236 N.J. Super. 349 (App. Div. 1989) ........................................... 16

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Gilbert Spruance Co. v. Pa. Manufacturers' Assoc. Ins. Co.*
134 N.J. 96 (1993) ................................................. 17

*Jara v. Supreme Meats*
121 Cal. App. 4th 1238 (2004) ............................... 18

*Levine, Staller, Sklar, Chan, Brown & Donnelly, PA v. Atlantic City*
No. A-0725-12T4, 2015 N.J. Super. ..................... 20

*Medtronic, Inc. v. NuVasive, Inc.*
No. W2002-01642-COA-R3-CV, 2003 Tenn. App. LEXIS 590
(2003) ...................................................................... 18

*N. Bergen Rex Transp. v. Trailer Leasing Co.*
158 N.J. 561 (1999) ................................................ 16

*Nicholas Labs., LLC v. Chen*
199 Cal. App. 4th 1240 (2011) ............................... 18

*Pashman Stein, PC v. Nostrum Labs., Inc.*
No. A-1759-13T1, 2014 N.J. Super. Unpub. LEXIS 2496, at *10-
19 (App. Div. Oct. 20, 2014) .................................. 21

*In re State Grand Jury Investigation*
200 N.J. 481 (2009) ...........................1, 2, 13, 14, 15, 16, 18, 19, 20, 21

*State v. Otis Elevator Co.*
12 N.J. 1 (1953) ...................................................... 16

*Stockton Mortgage, Inc. v. Tope*
233 Cal. App. 4th 437 (2014) ................................. 17

*Winberry v. Salisbury*
5 N.J. 240 (1950) .................................................... 16

*Winer Motors, Inc. v. Jaguar Rover Triumph, Inc.*
208 N.J. Super. 666 (App. Div. 1986) ................... 17

**Federal Statutes**

28 U.S.C. § 2210 ("Federal Declaratory Judgment Act") ....................... 17

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**State Statutes**

California Labor Code § 2802 ................................................................... 18

**Rules**

Federal Rule of Civil Procedure 7(a) ......................................................... 1

Federal Rule of Civil Procedure 15 ........................................................... 1

TABLE OF AUTHORITIES

## I.      **INTRODUCTION**

In their Application for "An Order to Show Cause Seeking Temporary Relief Restraining ATG From Discontinuing The Funding Of The Employee Defendants' Legal Fees and Costs Pending A Hearing On The Summary Proceeding As Required By The New Jersey Supreme Court In Re Grand Jury Opinion" ("Application"),[1] individual defendants James D. Steedly ("Steedly"), Sophia C. Galleher ("Galleher"), and Matthew Kim ("Kim") (collectively, "Individual Defendants") rely entirely on a single New Jersey Supreme Court opinion, *In re State Grand Jury Investigation*, 200 N.J. 481 (2009) ("*Grand Jury*"). While the Individual Defendants state, rephrase, and repeat five sentences from Grand Jury throughout their Application, the Individual Defendants fail to do anything more than passively acknowledge and then ignore their Application's fatal flaws.

First, the Court cannot grant the Individual Defendants' request to enjoin ATG because it does not have personal jurisdiction over ATG. Indeed, for months the Individual Defendants have argued that this Court should not exercise personal

---

[1] The Individual Defendants seek to initiate a New Jersey summary action through a proposed filing attached to their application captioned as a "Verified Crossclaim." A free-standing crossclaim is not a recognized pleading under the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 7(a) ("Only these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."); *Kennell v. Avis Budget Grp., Inc.*, No. WMN-09-833, 2009 U.S. Dist. LEXIS 68898, at *12 (D. Md. Aug. 6, 2009) ("Defendants . . . correctly observe that a cross-claim is not one of the permissible pleadings listed in Rule 7. Thus, all of the cross-claims in this action could be stricken on that ground." (internal citations omitted)).

Given that the Individual Defendants passingly mention Federal Rule of Civil Procedure 15 in their memorandum of law, ATG assumes that the Individual Defendants are seeking to amend their Answers (D.E. 69-71) to include crossclaims in spite of the fact that they do not specify that they are seeking to amend any pleadings. If that is the case, the Individual Defendants did not follow the procedure for seeking unconsented amendment of pleadings as set forth in the Court's June 15 Scheduling Order. *See* D.E. 83 at 4, ¶ 12. Regardless, all of the arguments herein demonstrate that the proposed amendments would be futile, which is an appropriate basis for denying leave to amend under Rule 15. *United Van Lines, LLC v. Lohr Printing, Inc.*, No. 11-04761, 2013 U.S. Dist. LEXIS 11612, at *13-19 (D.N.J. Jan. 29, 2013).

1   jurisdiction over ATG or the Individual Defendants.   Based in part on the
2   Individual Defendants' own declarations, this Court tentatively decided that ATG
3   lacks sufficient minimum contacts with the State of New Jersey.   Nevertheless, the
4   Individual Defendants now argue in conclusory fashion that ATG's appearance in
5   this forum—an appearance that has been strictly limited to arguing it should not
6   have to appear in this forum—is enough for the Court exercise personal
7   jurisdiction.  Simply stated, this argument has no legal support.

8        Second, the Court cannot grant the Individual Defendants' request to enjoin
9   ATG because *Grand Jury* is inapplicable to this dispute.   Reading the five
10  sentences that the Individual Defendants regurgitate throughout their Application in
11  context with the rest of the *Grand Jury* opinion, that case was about specific
12  conditions an attorney must satisfy to accept payment from a third party payer
13  under the New Jersey Rules of Professional Conduct.   Moreover, *Grand Jury*
14  establishes the elements for a special cause of action for breach of contract that a
15  third party beneficiary may bring as part of underlying litigation.   This is a
16  substantive right, not a procedural right.   As the Individual Defendants plainly
17  argue, "substantive issues in this litigation are governed by California law."   As
18  such, the substantive rights the Court defines in *Grand Jury* are inapplicable to this
19  dispute.

20        Third, even ignoring these procedural problems, the facts alleged in and the
21  evidence attached to the Individual Defendants' filings demonstrate that they would
22  not prevail in a summary action under *Grand Jury*.   To obtain a mandatory
23  preliminary injunction, an injunction that seeks to alter the status quo by
24  commanding an affirmative act, the requester must meet a high bar in showing a
25  probability of success on the merits.  Further, to obtain leave to amend a pleading,
26  the amendment must not be futile.   The undisputed facts show that ATG's
27  gratuitous payment of legal fees was connected with the Individual Defendants'
28  employment at ATG.  Because the Individual Defendants no longer work at ATG,

1    the condition of payment is no longer satisfied.  This is grounds to deny their

2    request for a preliminary mandatory injunction and deny leave to amend altogether.

3         In conclusion, there are at least three independent legal bases for why the

4    Individual Defendants' Application cannot succeed.  As a result, ATG respectfully

5    requests that this Court deny the Individual Defendants' Application.

6    **II.    FACTS**

7         The alleged facts on which the Individual Defendants have previously pled

8    and/or now base their Application are as follows.

9         **A.    Relevant Factual Background Of ATG**

10        ATG is, and always has been, a California corporation with its principal

11   place of business and primary distribution center (*i.e.*, "ATG's Headquarters") in

12   Rancho Cucamonga, California.  *See* D.E. 17-1 at 8.  ATG does not have, and never

13   has had, any (1) office or other place of business in New Jersey, (2) employees

14   located in New Jersey, (3) contractual or other business relationships with

15   companies located in New Jersey, (4) licenses to do business in New Jersey, (5)

16   advertising or marketing efforts directed at New Jersey, or (6) ownership or

17   affiliation with any facilities located in New Jersey.  *Id.* at 9.  The only remote

18   connection that ATG has to New Jersey is that some of ATG's third party

19   distributors do business in New Jersey but those distributors are not controlled by

20   ATG and their sales account for well under one percent (1%) of ATG's total

21   product sales.  *Id.* at 9.  Yaxi Ni ("Ni") is the Chairman and President of ATG.

22        **B.    Relevant Factual Background On Steedly**

23        Steedly currently resides in Menifee, California.  *See* D.E. 17-1 at 10.  On

24   September 25, 2009, and while living in California, MaxLite hired Steedly to serve

25   as its Director of Engineering.  *Id.*  In or around this date, Steedly entered into a

26   Proprietary Information Agreement with MaxLite (the "Steedly PIA").  *See* D.E. 1-

27   3 at 50.  Steedly began his employment with MaxLite in New Jersey but moved

28   back to California. *See* D.E. 17-1 at 10.  Steedly worked out of his garage in

Menifee, California and out of MaxLite's West Coast office for the last three years of his employment.  *Id.*

In or around March 2013, ATG solicited Steedly and another MaxLite employee, David Wyatt ("Wyatt") to work for ATG.  *See* D.E. 109-4 at 8, ¶ 14. During ATG's solicitation of Steedly and Wyatt, they expressed concerns with their respective Proprietary Information Agreements' non-compete provisions.  *Id.* at 9, ¶ 15.  ATG paid for an attorney to review Wyatt's Proprietary Information Agreement ("Wyatt PIA").  *Id.*  Thereafter, ATG allegedly informed Steedly that the Steedly PIA would be difficult to enforce.  *Id.*  A year later, ATG reinitiated its efforts to solicit Steedly.  *Id.* at 9, ¶ 16.  During one of his meetings with ATG, Steedly alleges that ATG orally assured him that ATG would fully protect him in any dispute with MaxLite.  *Id.* at 10, ¶ 18.  On or about October 10, 2014, Steedly accepted ATG's written employment offer.  *Id.* at 10, ¶ 19.  The employment offer does not include an obligation by ATG to defend or hold Steedly harmless in litigation with MaxLite.  *Id.* at Exh. 6.

## C.   Relevant Factual Background On Kim

Kim is, and at all relevant times has been, a resident of Atlanta, Georgia.  *Id.* On July 5, 2013, while living in Atlanta, MaxLite hired Kim to serve as its National Project Sales Manager.  *Id.*  In or around this date, Kim entered into a Proprietary Information Agreement with MaxLite (the "Kim PIA").  *See* D.E. 1-3 at 68. During Kim's employment with MaxLite, Kim never worked out of MaxLite's New Jersey Office.  *See* D.E. 17-1 at 9.  Rather, Kim spent the majority of his time either traveling across the county meeting with clients or working remotely from his home in Atlanta, Georgia.  *Id.*

In or around November 2014, ATG solicited Kim to work for ATG.  *See* D.E. 109-4 at 11-12, ¶ 25.  During one of his meetings with ATG, Kim alleges he expressed concerns with the Kim PIA's non-compete provisions.  *Id.* at 12, ¶ 25. Ni allegedly informed Kim that the Kim PIA was "not a concern" but that in the

event there was any litigation with MaxLite, ATG would protect him and cover all defense costs. *Id.* On or about January 5, 2014, Kim accepted ATG's written employment offer. *Id.* at 12 ¶ 27. The employment offer does not include an obligation by ATG to defend or hold Kim harmless in litigation with MaxLite. *Id.* at Exh. 8.

### D.   Relevant Factual Background On Galleher

Galleher currently resides in Long Beach, California. *See* D.E. 17-1 at 11. On May 22, 2012, MaxLite hired Galleher to serve as its Business Development Analyst. In or around this date, Galleher entered into a Proprietary Information Agreement with MaxLite (the "Galleher PIA"). *See* D.E. 1-3 at 11. Galleher began her employment with MaxLite in New Jersey. *See* D.E. 17-1 at 11. In or around July 2014, MaxLite promoted Galleher to the position of Management Associate and transferred her to its West Coast office in Rancho Cucamonga, California. *Id.* Galleher has not returned to New Jersey since leaving in July 2014. *Id.*

In or around October 2014, ATG solicited Galleher to work for ATG. *See* D.E. 109-4 at 11, ¶ 22. During one of her meetings with ATG, Galleher alleges she expressed concerns with the Galleher PIA's non-compete provisions. *Id.* at 11, ¶ 23. Ni allegedly informed Galleher that the Galleher PIA was unenforceable but that ATG would cover and defend her in the event of a legal dispute with MaxLite. *Id.* On or about October 30, 2014, Galleher accepted ATG's written employment offer. *Id.* at 11, ¶ 22. The employment offer does not include an obligation by ATG to defend or hold Galleher harmless in litigation with MaxLite. *Id.* at Exh. 7.

### E.   The MaxLite Litigation

On or about February 9, 2015, the Individual Defendants received "Cease and Desist" letters from MaxLite requesting that they terminate their positions with ATG by February 12, 2015. *See* D.E. 109-4 at 13, ¶ 29. Galleher contacted an attorney she knew, Jim Mulcahy ("Mulcahy"), to review the letters and obtain a recommendation for how to respond. *Id.* at 13, ¶ 30. The Individual Defendants,

and not Ni, consulted with Mulcahy.  *Id.* at 13, ¶ 31.  Mulcahy recommended that they file a lawsuit in California.  *Id.* at 13, ¶ 31.

Not long thereafter, Galleher spoke by telephone with Ni about Mulcahy's recommendation and Ni allegedly stated that ATG would gratuitously pay for the lawsuit.  *Id.* at 14, ¶ 32.  On or about February 12, 2015, Ni and the Individual Defendants allegedly received an engagement agreement and conflict waiver from Mulcahy.  *Id.* at 14, ¶ 33.  Relevant here, the engagement agreement states that the scope of services was "the filing of a lawsuit against MaxLite, Inc.", it does not state or even infer that ATG would be solely responsible for the payment of Mulcahy's attorneys' fees, it states that the laws of the State of California govern the engagement agreement, and it selects a venue in California for disputes.  *Id.* at 74-79, Exh. 12.

On February 13, 2015, Mulcahy filed a Complaint for Declaratory and Injunctive Relief in the Superior Court of the State of California for the County of Orange, naming as the plaintiffs ATG and the Individual Defendants.  *Id.* at 15, ¶ 34.  However, ATG and the Individual Defendants learned on February 17, 2015, that MaxLite had filed the Complaint initiating this matter on February 12, 2015.  *Id.* at 15, ¶ 35.  When this occurred, Ni allegedly orally informed the Individual Defendants that he would still pay for their attorneys' fees and that they should focus on their work.  *Id.* at 15-16, ¶¶ 36-38.  On February 19, 2015, Ni emailed the Individual Defendants again asking them "not to worry about this lawsuit thing", that "Mulcahy will have this handled for us", and that "we should not be distracted from what we do."  *Id.* at 16, ¶ 39.

From February 2015 through June 2015, ATG and the Individual Defendants argued jointly that this Court should not exercise personal jurisdiction over MaxLite's lawsuit.  Indeed on March 12, 2015, ATG and the Individual Defendants filed a joint Motion to Dismiss MaxLite's Complaint for lack of personal jurisdiction accompanied by declarations of all of the Individual Defendants.  D.E.

OPPOSITION TO APPLICATION FOR ORDER
TO SHOW CAUSE

17-1.   Thereafter, Ni allegedly kept reiterating to the Individual Defendants that they should focus on their work and not the legal fees.  *Id.* at 17-21.  However, the legal fees were quickly escalating beyond ATG's or the Individual Defendants' expectations.  Indeed, on April 21, 2015, Ni asked Galleher why Mulcahy's bill was over $70,000.  *Id.* at 18, ¶ 48.  On May 10, 2015, Ni did state to Galleher that "as long as you guys are productive, the lawsuit is nothing, we will fight it," but Ni again reiterated his concern that Mulcahy's "bill is bigger than we expected and it is becoming [sic] a substantial investment on ATG's part, we need to evaluate [sic] our options before we go on."  *Id.* at 19, ¶ 52.

After substantial arguments and costs, the Court entered an order on April 29, 2015, that found that it could exercise personal jurisdiction over the Individual Defendants but that MaxLite "has not presented sufficient evidence to meet its burden of showing that Defendant ATG has contacts with the State of New Jersey sufficient for this Court to exercise *in personam* jurisdiction over ATG."  D.E. 63. On June 15, 2015, the Court entered two different scheduling orders: (1) an Initial Scheduling Order allowing for MaxLite's case against the Individual Defendants to proceed (D.E. 83), and (2) a Scheduling Order for Jurisdictional Discovery allowing for MaxLite and ATG to conduct limited discovery solely limited to the question of whether the Court had personal jurisdiction over ATG (D.E. 84).  As such, what was once a costly but unified argument on behalf of ATG and the Individual Defendants had become essentially two different cases that ATG must defend.

On June 18 and 19, 2015, Ni terminated the Individual Defendants.  D.E. 109-4 at 21, ¶ 58.  The Individual Defendants allege that Ni stated that the litigation "had become too expensive and had prevented ATG from receiving approval for a credit increase, and the litigation had become a concern for ATG's investors and that, therefore, ATG was terminating them all, effective June 19, 2015."  D.E. 109-4 at 21, ¶ 58.  Ni allegedly orally informed the Individual Defendants that while

ATG would not pay any more attorneys' fees, he would personally pay the outstanding fees and costs to Mulcahy and would "support the Employee Defendants and find a way to work together again after the litigation had been resolved."  *Id.* at 22, ¶ 59.   Thereafter, the Individual Defendants were each presented with a Severance Agreement that included financial considerations.  *Id.* at 24, ¶ 65.  The Individual Defendants have all declined the Severance Agreement. Not long thereafter, Brody and Associates and Best Best & Krieger LLP sought to substitute in as counsel for ATG.  D.E. 89, 100, 101.   Mulcahy and his local counsel, Shari Amster, have since unsuccessfully sought to withdraw as counsel three times.  *See* D.E. 97-99, 102-06.

## III.   ARGUMENT

### A.   The Individual Defendants' Request That The Court Exercise Control Over ATG Is Improper Because The Court Lacks Personal Jurisdiction Over ATG

A court must have personal jurisdiction over a party for it to have the power to exercise control over that party.  *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979).  A finding of personal jurisdiction is proper only where the party "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (internal citations omitted); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations and quotation marks omitted).   However, a party's appearance in a forum state to defend itself in litigation does not qualify as purposefully availing itself of the privilege of conducting activities in the forum state.  *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 322 (3d Cir. 2007) (stating that a party subjects itself to personal jurisdiction in a forum in "exchange" for "the benefits and protection received from the forum"); *Rozenblat v. Sandia Corp.*, No. 05-1556, 2006 U.S. App. LEXIS 6804, at *9 (Fed. Cir. Mar. 17, 2006) ("Mr. Rozenblat argued before

the district court that personal jurisdiction was established because the parties appeared in that court in another action . . . ; however, the district court correctly observed that prior appearance did not necessarily waive the personal jurisdiction requirement in future actions, nor constitute related business conduct within the jurisdiction."); *AstraZeneca Pharm. LP v. Mylan Pharm., Inc.*, No. MDL-08-1949-JJF, 2010 U.S. Dist. LEXIS 14935, at *10 (D. Del. Feb. 19, 2010) ("Further, the Court is not persuaded that Apotex's participation, primarily as a defendant, in litigation in this District is sufficient to support the exercise of general jurisdiction."). This is especially true where that party's appearance is limited to its argument that the court should dismiss the party for lack of personal jurisdiction. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 139 (2d Cir. 2011) (stating that "when a defendant appears and challenges jurisdiction," a court interprets the appearance only as the party's "agree[ment] to be bound by the court's determination on the jurisdictional issue").

Up until the Individual Defendants' Application, ATG's appearance in this Court has been limited to its argument that the Court should dismiss the claims against ATG for lack of personal jurisdiction. Indeed, both ATG and the Individual Defendants jointly argued that this Court does not have personal jurisdiction over them. D.E. 17. To effectuate this argument, the Individual Defendants submitted declarations that demonstrate ATG did not contract with, meet with, or even communicate with the Individual Defendants while they were in New Jersey because the Individual Defendants did not live in or work out of New Jersey. *Id.* Based on ATG's and the Individual Defendants' arguments, this Court tentatively found that it lacks personal jurisdiction over ATG. D.E. 56.

Now, contradicting their prior arguments, the Individual Defendants request that the Court exercise personal jurisdiction over ATG, restrain its actions, and force it to pay for the Individual Defendants' attorneys' fees. The Individual

1   Defendants' entire argument that this Court has personal jurisdiction over ATG is

2   as follows:

> This Court has held in abeyance a ruling on whether it has
> personal jurisdiction over Defendant ATG pending
> jurisdictional discovery for purposes of adjudicating the
> underlying claims brought by Plaintiff MaxLite.
> However, for purposes of this application by way of
> Order to Show Cause, the basis for personal jurisdiction
> over ATG is clear.  The Court has specific personal
> jurisdiction over ATG because ATG knowingly agreed to
> fund a litigation in the New Jersey District Court, actually
> did fund several months of that litigation in New Jersey,
> and now has violated New Jersey ethical rules by
> reneging on its promise without obtaining the Court's
> permission.  ATG's conduct in unilaterally halting the
> payment of attorneys' fees on behalf of the Employee
> Defendants directly interferes with a New Jersey litigation
> and threatens to cause counsel to violate its New Jersey
> ethical obligations.  The harm caused is felt by the
> Employee Defendants, who ATG knows are litigants in a
> New Jersey District Court.  D.E. 109-4 at 3, ¶ 9

13  Said another way, the Individual Defendants reiterate that the Court may not have

14  personal jurisdiction over ATG for the underlying lawsuit but, because ATG

15  specially appeared in this Court and knowingly paid for ATG's and the Individual

16  Defendants' joint arguments that the Court lacks personal jurisdiction, ATG's

17  alleged breach of an agreement that was entered into in forums outside of New

18  Jersey merits this Court's exercise of personal jurisdiction.   Contrary to the

19  Individual Defendants' argument, these facts refute, not support, their plea that the

20  Court exercise personal jurisdiction.

21       First, it is illogical for the Court to exercise personal jurisdiction over the

22  Individual Defendants' Application if the Court cannot exercise personal

23  jurisdiction for the underlying lawsuit.  The only additional activity that ATG has

24  conducted in the State of New Jersey since this lawsuit's inception has been

25  litigating the jurisdictional issue in this Court.  This activity does not qualify as a

26  "contact" with the State of New Jersey because appearing in court as a defendant

27  does not confer any benefit upon ATG.

28

Second, ATG's gratuitous payment of the Individual Defendants attorneys' fees was limited to ATG's and the Individual Defendants' joint arguments that this Court lacked personal jurisdiction over them.  ATG made the bulk of its payments to Mulcahy, $40,000, in the month following the Court's ruling on ATG and the Individual Defendants' motion to dismiss for Mulcahy's work in connection with that motion.  *See* D.E. 109-4, Exh. 27.  Once the case moved beyond the Individual Defendants' jurisdictional arguments, ATG only paid Mulcahy $17,500 total before ceasing payments.  *Id.*

Third, the Individual Defendants acknowledge that the alleged agreement to pay for their legal fees was entered into in forums outside of New Jersey for the purpose of pursuing a lawsuit in the State of California.  *See* D.E. 109-4, Exh. A at 11, ¶ 33.  Under these circumstances, courts do not exercise personal jurisdiction. For instance, in *Regional Employers' Assurance Leagues Voluntary Employees v. O'Brien*, No. 12-2207, 2013 U.S. Dist. LEXIS 162768 (E.D. Pa. Nov. 14, 2013), the court declined to exercise personal jurisdiction over a defendant in a contract dispute when the defendant entered into a contract outside of the forum state.  *Id.* at *17-29.  The court found determinative that the defendant did not deliberately reach out to the forum state to form the contract and nothing in the contract indicated a connection to the forum state.  *Id.* at *21-24.  As such, the court compared the defendant to a "passive buyer," over which the Third Circuit has found no personal jurisdiction.  *Id.* at *21-24 (citing *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147 (3d Cir. 1996)).

As another example, in *Abbot Laboratories v. Biovalve Technologies, Incorporated*, 543 F. Supp. 2d 913 (N.D. Ill. 2008), the court declined to exercise personal jurisdiction over a defendant in a contract dispute when the defendant had no reason to believe that part of the contract involved the other side's performance in the forum state.  The court noted that the defendant was not subject to personal jurisdiction in the forum state merely because part of the contract performance

OPPOSITION TO APPLICATION FOR ORDER
TO SHOW CAUSE

occurred in the forum state.  *Id.* at 920.  Even though the defendant later became aware that part of the performance occurred in the forum state, the court only deemed relevant whether the defendant knew at the time of the agreement that part of the performance would involve work in the forum state.  *Id.*

The Individual Defendants' allegations mirror the circumstances presented in the cases above.  Like *Regional Employers'*, the Individual Defendants allege that ATG entered into the alleged agreement outside of the State of New Jersey.  *See* D.E. 109-4, Exh. A at 11, ¶ 33.  Like *Regional Employers'*, the intention of the alleged agreement was not to reach out to the State of New Jersey but for the parties to jointly file a complaint in the State of California.  *Id.*  Moreover, like *Regional Employers'*, the California law firm's engagement agreement and conflict waiver that the Individual Defendants rely upon not only fail to indicate any connection with the State of New Jersey, but they specifically select the State of California's venue, laws, and Rules of Professional Conduct for the parties' relationship.  *See* D.E. 109-4, Exhs. 12 & 13.  Last, and like *Abbot*, the alleged agreement has only inadvertently and partially involved "performance" in the State of New Jersey.

In sum, the Individual Defendants have not, and cannot, demonstrate that this Court can exercise personal jurisdiction over ATG and, if anything, their accusations support ATG's argument that it has never purposefully availed itself of the privilege of conducting this lawsuit or any other activities in the State of New Jersey.  Consequently, the Court cannot exercise the personal jurisdiction over ATG and, as a result, the Court cannot grant the Individual Defendants request to enjoin ATG's actions.

**B.** **Even If The Court Could Exercise Personal Jurisdiction Over ATG, *In re State Grand Jury Investigation* Is Inapplicable To This Dispute**

**1.** **The Individual Defendants Base Their Entire Application On Dictum From *In re State Grand Jury Investigation* That Relates To Specific Attorney Conduct That Is Not Relevant Here**

The Individual Defendants base their entire Application on a single New Jersey Supreme Court case, *In re State Grand Jury Investigation*, 200 N.J. 481 (2009) ("*Grand Jury*"). Indeed, the Individual Defendants base their Application on five, non-determinative sentences within *Grand Jury*. While the Individual Defendants state and rephrase these sentences repeatedly in their Application, this dictum is inapplicable here because, in context, these sentences only relate to specific, irrelevant attorney conduct.

*Grand Jury* concerned a state grand jury investigation into alleged criminal activity of a company and three of its employees. *Id.* at 486. That company hired three separate attorneys to represent the target employees and one additional attorney to represent all non-target employees during the investigation. *Id.* The State, not the Company, moved to disqualify the employees' attorneys based on a conflict of interest. *Id.* at 488. The trial court denied the State's motion and allowed the Company to continue paying for the employees defense of this criminal investigation. *Id.* at 488. On appeal, the New Jersey Supreme Court affirmed the trial court's denial of the State's motion to disqualify. *Id.* at 499. As part of its opinion, the New Jersey Supreme Court set forth six conditions that an attorney must satisfy before the attorney may accept payment from a third-party payer under the New Jersey Rules of Professional Conduct ("NJRPC"). *Id.* at 495-97. The sixth condition the New Jersey Supreme Court set forth was that an attorney cannot accept payment from a third-party payer unless the third party agrees to discontinue

funding only after obtaining leave of court. *Id.* at 499. Then, with even less of a relationship to the facts at issue, the New Jersey Supreme Court stated that "[i]f a third-party payer fails to pay an employee's legal fees and expenses when due, the employee shall have the right, via a summary action, for an order to show cause why the third-party payer should not be ordered to pay those fees and expenses." *Id.* at 497.

The above referenced passage is readily distinguishable from the present matter. The New Jersey Supreme Court based this passage on the NJRPC. *Id.* at 491-97. Regardless of their jurisdiction, Rules of Professional Conduct govern attorneys' behavior—not a payer's or even a party receiving representation's behavior. Similarly, while this Court has adopted the NJRPC, its adoption is limited to the Court's "authority to supervise the professional conduct of an attorney appearing before it." *See Celgene Corp. v. KV Pharm. Co.*, No. 07-4819-SDW, 2008 U.S. Dist. LEXIS 58735, at *6 (D.N.J. July 29, 2008) (emphasis added). Thus, it logically follows that this Court may only utilize the relevant passage of *Grand Jury* to regulate an attorney's conduct by disqualifying that attorney or preventing him/her from accepting payment from a third-party payer if he/she does not satisfy each of those six conditions. Although of questionable value, this passage also provides that if an attorney secures an agreement from a third party payer to discontinue funding only after obtaining leave of court and the third party payer breaches that agreement with the attorney, then the beneficiary of the third party payer may have the right to pursue a summary action.

Here, ATG and the Individual Defendants explicitly agreed that their previous attorney's conduct was governed by the California Rules of Professional Conduct and did not anticipate an action in New Jersey. As such, ATG's and the Individual Defendants' previous attorney did not satisfy the six conditions *Grand Jury* requires an attorney to satisfy before an attorney can accept payment from a third-party payer under the NJRPC. Relevant here, ATG's and the Individual

1   Defendants' previous attorney did not ask ATG to agree to discontinue funding

2   only after obtaining leave of court. Because ATG did not agree to discontinue

3   funding only after obtaining leave of court, the Individual Defendants do not have a

4   right to a summary action to force ATG to resume paying for their attorneys' fees

5   under *Grand Jury* and/or the NJRPC.  Consequently, the Individual Defendants'

6   reliance on *Grand Jury* in this dispute is misplaced and the Court should deny their

7   Application.[2]

8              **2.     The Relevant Passage From *Grand Jury* Creates A**

9                **Substantive Right That Is Inapplicable Here**

10   As stated more fully above, the Individual Defendants have argued from the

11   inception of this case that the Court lacks personal jurisdiction over the underlying

12   lawsuit.  *See* D.E. 17.  Moreover, the Individual Defendants explicitly state in their

13   Application that "[t]o be clear, by invoking New Jersey law in support of the relief

14   sought in this Order to Show Cause, the Employee Defendants are in no way

15   waiving their position that the substantive issues in this litigation are governed by

16   California law."  *See* D.E. 109-3 at 3 n.2.  Nevertheless, the Individual Defendants

17   attempt to characterize their claim that ATG breached an alleged oral agreement to

18   pay for their attorneys' fees as a procedural question that requires the application of

19   the NJRPC.  *Id.*  This attempt to transmute a substantive question of law into a

20   procedural question is without merit.

21   The rights created by *Grand Jury* that the Individual Defendants request this

22   Court to enforce are substantive.[3]  Substantive law is the law "which defines our

23

24   [2] Factually, there are several reasons why the relevant passages from *Grand Jury*
      are distinguishable from this matter including, but not limited to: (i) *Grand Jury*
25   involved a criminal, not a civil, action, (ii) *Grand Jury* involved an opposing
      counsel, not the third party payer, who sought to disqualify counsel based on a
26   conflict of interest, (iii) *Grand Jury* involved an employer who insisted upon, not
      refused to, pay for its former employees legal fees, and (iv) *Grand Jury* involved
27   actions taken by the employees within the scope of their employment.
      [3] The cases that the Individual Defendants cite in support of the proposition that this
28   dispute is a procedural question are inapplicable.  Specifically, *Mitzel v.
      Westinghouse Elec. Corp.*, 72 F.3d 414 (3d Cir. 1995),  and every other case

rights and duties," while procedural law relates to "pleading and practice, through which such rights and duties are enforced in the courts." *Winberry v. Salisbury*, 5 N.J. 240, 247-48 (1950).   Moreover, where a court defines the elements that establish a right to relief, that right is substantive not procedural.   *See Villot v. Varner*, 373 F.3d 327, 332-34 (3d Cir. 2004) (holding that a state statute was substantive rather than procedural because it "amended the definition of a . . . petitioner's right to . . . relief by adding a new element").

The relevant passage from *Grand Jury* essentially defines the elements of a special cause of action and the specific procedure for its enforcement.   As stated above, *Grand Jury* provides six conditions that an attorney must satisfy before the attorney may accept payment from a third party payer under the NJRPC.   *Grand Jury*, 200 N.J. at 495-97.   The condition at issue here is that an attorney must obtain an agreement from a third party payer to discontinue funding only after obtaining leave of court.   If the third party payer violates this agreement with the attorney, then the beneficiary of the third party payer may have the right to pursue a summary action as part of the underlying litigation to force the third party payer to continue paying for its attorneys' fees.   In sum, *Grand Jury* defines the elements and procedure of a special cause of action for breach of contract that can be brought by a third party beneficiary as part of the underlying litigation.

discussing New Jersey choice of law regarding attorneys' fees focuses on whether New Jersey courts apply their own law to issues concerning attorneys' fees after a party successfully resolves a substantive claim.   *See Mitzel*, 72 F.3d at 416-18 (holding that "an application of New Jersey choice of law principles would mandate application of New Jersey law to" the amount of a contingency fee that a lawyer could recover after successfully settling substantive claims); *see also Chin v. Chrysler LLC*, 538 F.3d 272, 278-80 (3d Cir. 2008); *Elder v. Metro. Freight Carriers, Inc.*, 543 F.2d 513, 518-19 (3d Cir. 1976); *N. Bergen Rex Transp. v. Trailer Leasing Co.*, 158 N.J. 561, 568-70 (1999); *State v. Otis Elevator Co.*, 12 N.J. 1, 5-12 (1953); *Du-Wel Products, Inc. v. U.S. Fire Ins. Co.*, 236 N.J. Super. 349, 362-63 (App. Div. 1989).   In contrast, the dispute here is not about attorneys' fees *qua* attorneys' fees; it is about an alleged breach of an agreement to pay for a party's attorneys' fees.

The totality of the Individual Defendants' Application only further demonstrates that they are seeking relief for an alleged breach of contract. The Individual Defendants ask the Court for leave to file a crossclaim where they assert a single cause of action for declaratory judgment against ATG. *See* D.E. 109-4, Exh. A at 26. The federal Declaratory Judgment Act, 28 U.S.C. § 2210, "does not create substantive rights for parties; it merely provides another procedure whereby parties may obtain judicial relief." *Washington v. Donley*, 802 F. Supp. 2d 539, 554 (D. Del. 2011) (quoting *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978)). A claim for declaratory judgment therefore requires some underlying substantive right that the claimant seeks to vindicate. *See id.* Here, the Individual Defendants base their declaratory judgment action on an oral agreement[4], an alleged breach of that agreement[5], and damages that are a result of that alleged breach[6]—a cause of action akin to breach of oral contract. *See Stockton Mortgage, Inc. v. Tope*, 233 Cal. App. 4th 437, 453 (2014) ("The elements of a breach of oral contract claim are the same as those for a breach of written contract: a contract; its performance or excuse for nonperformance; breach; and damages.").

Under New Jersey choice-of-law principles, actions for a breach of contract are substantive questions of law that are typically governed by the law of (i) the state that the parties specifically select for the resolution of their dispute or (ii) the state in which the parties entered into their agreement. *See Gilbert Spruance Co. v. Pa. Manufacturers' Assoc. Ins. Co.*, 134 N.J. 96, 102-03 (1993); *Winer Motors, Inc. v. Jaguar Rover Triumph, Inc.*, 208 N.J. Super. 666, 671 (App. Div. 1986). Here,

---

[4] *See* D.E. 109-4, Exh. A at 7, ¶ 18 ("Mr. Ni assured [Steedly] that . . . in any dispute with MaxLite, ATG would fully protect him "through to the end."); *id.* at 8, ¶ 23; *id.* at 8-9, ¶ 25.

[5] *Id.* at 22, ¶ 70 (". . . Mr. Ni informed [Steedly and Galleher] that he would not send any money unless the Employee Defendants signed the Severance Agreements . . .").

[6] *Id.* at 26, ¶ 84 ("Absent the promised litigation funding from ATG, the Employee Defendants will be utterly defenseless against a multinational company with the resources and will to destroy their careers and[] force each one of them into bankruptcy.").

ATG's and the Individual Defendants' previous attorneys' engagement agreement and conflict waiver specifically select California as the law and venue for a dispute regarding those documents[7], the Individual Defendants admit that the alleged oral agreement for ATG to pay for their attorneys' fees was entered into in California (or at the very least outside of New Jersey)[8], and the Individual Defendants insist that California substantive law governs this case[9]. Thus, under New Jersey choice-of-law principles, California law governs the Individual Defendants' request for relief.

California law does not support the relief that the Individual Defendants request of this Court. One, California law does not have a substantive right like the one discussed in *Grand Jury*. Rather, a California employee is entitled to legal protection from his employer only if he was acting in the scope of his employment; even then, the California Labor Code imposes a duty to *indemnify* on the employer, not a duty to *defend*. *Nicholas Labs., LLC v. Chen*, 199 Cal. App. 4th 1240, 1247 (2011); Cal. Lab. Code § 2802. Here, MaxLite's litigation is based on the Individual Defendants' alleged breach of a non-competition agreement with MaxLite—an alleged breach that was outside the scope of the Individual Defendants' employment with ATG. *See Medtronic, Inc. v. NuVasive, Inc.*, No. W2002-01642-COA-R3-CV, 2003 Tenn. App. LEXIS 590, at *24-25 (2003) (interpreting Section 2802 and stating that "NuVasive has presented no evidence that its employees had any work-related duty to file the lawsuit against [a prior employer] in California" to defeat a non-compete agreement). Two, purely gratuitous promises are unenforceable under California law. *Jara v. Supreme Meats*, 121 Cal. App. 4th 1238, 1249 (2004). Thus, even under the Individual Defendants' inaccurate facts, ATG's alleged promise to pay for the Individual

---

[7] D.E. 109-4, Exh. 12 at ¶¶ 9-10.
[8] D.E. 109-4, Exh. A at ¶¶ 17-18, 23, 25.
[9] D.E. 109-3 at 3 n.2.

Defendants' attorneys' fees lacked any consideration from the Individual Defendants and was therefore purely gratuitous.

In sum, the relevant passages from *Grand Jury* create a substantive right to relief are inapplicable here. New Jersey substantive law does not apply to this dispute. Rather, California substantive law applies to this dispute. California substantive law does not provide the relief that the Individual Defendants request from this Court. Therefore, this Court must deny the Individual Defendants' Application.

**C.** **Even If The Court Could Exercise Personal Jurisdiction Over ATG And New Jersey Substantive Law Was Applicable To This Dispute, The Individual Defendants' Summary Action Would Fail Under *Grand Jury***

At its heart, the Individual Defendants' Application requests that this Court grant temporary and permanent injunctive relief that would force ATG to pay an unspecified amount of attorneys' fees at an unspecified rate for the indeterminate duration of this lawsuit. *See* D.E. 109-4, Exh. A at 27. Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). In deciding whether to grant preliminary injunctive relief, a court must consider (1) whether the requesting party has demonstrated a probability of success on the merits; (2) whether the requesting party will suffer irreparable injury by the denial of the relief; (3) whether granting the requested relief will result in greater harm to the non-requesting party; and (4) whether granting relief will be in the public interest. *Allegheny Energy v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999). When a party seeks a mandatory injunction, an injunction that "alter[s] the status quo by commanding some positive act," the "burden of showing entitlement to the preliminary injunction is greater, as mandatory injunctions are generally disfavored." *Coast to Coast Entm't, LLC v. Coastal Amusements, Inc.*, No. 05-CV-

1  3977, 2005 U.S. Dist. LEXIS 26849, at *26 (D.N.J. Nov. 4, 2005) (citing *United*
2  *States v. Spectro Foods Corp.*, 544 F.2d 1175, 1181 (3d Cir. 1976)).   Even
3  assuming *arguendo* that the Court could look past the various determinative issues
4  mentioned above—which it should not—the facts set forth in the Individual
5  Defendants' filings demonstrate that they cannot meet their burden for mandatory
6  temporary injunctive relief and, therefore, ATG should prevail in a summary action
7  under *Grand Jury*.

8      Here, the Individual Defendants cannot demonstrate a probability of success
9  on the merits in a *Grand Jury* summary action sufficient to meet the high bar
10 required for a mandatory injunction.  Individual Defendants have not, and cannot,
11 produce any written agreement by ATG to pay for the Individual Defendants'
12 attorneys' fees.   Indeed, ATG argues that no such unconditional agreement—
13 written or oral—ever occurred.   Further, when a third party payer imposes
14 conditions on the payment of another's legal representation, those conditions must
15 actually be satisfied before *Grand Jury* imposes a continuing obligation to pay.  *See*
16 *Levine, Staller, Sklar, Chan, Brown & Donnelly, PA v. Atlantic City*, No. A-0725-
17 12T4, 2015 N.J. Super. Unpub. LEXIS 901, at *48-50 (App. Div. Apr. 21, 2015)
18 (holding that a third party payer had no obligation under *Grand Jury* because the
19 payer "never incurred the unconditional responsibility for the payment of the Firm's
20 fees undertaken by the corporation in [*Grand Jury*]" and the conditions imposed
21 were not satisfied).  The exhibits produced by the Individual Defendants make clear
22 that ATG's gratuitous payment was always connected with the Individual
23 Defendants' continued employment with ATG.  *See* D.E. 109-4, Exh. 16 ("Mulcahy
24 will have this handled for us, no big deal, we should not be distracted from what we
25 do."); *id.* Exh. 22 ("[A]s long as you guys are productive, the lawsuit is nothing, we
26 will fight it.").  The Individual Defendants no longer work for ATG, and therefore
27 the condition of payment is no longer satisfied.

28

Additionally, ATG's gratuitous arrangement involved paying *Mulcahy* for the Individual Defendants' representation, not an unknown firm with which ATG has never dealt. ATG and the Individual Defendants met with Mulcahy and discussed the specific terms of the retainer agreement and representation. Mulcahy now seeks to withdraw from representing the Individual Defendants in this case for unrelated reasons,[10] and the Individual Defendants ask the Court to compel continued payment to a new firm when ATG has absolutely no idea about the specifics of payment. ATG does not know the billing rate that will be applied, and ATG does not have an estimate of how many hours the new firm will spend in resolving this matter. ATG's gratuitous arrangement was conditioned upon Mulcahy's continued representation of the Individual Defendants under the terms they had negotiated; because Mulcahy cannot continue to represent the Individual Defendants, ATG should not be compelled to pay a firm with which it has never dealt.

For these reasons, Individual Defendants cannot demonstrate the high burden necessary for the Court to grant mandatory temporary injunctive relief, and Individual Defendants' Application must be denied. For these same reasons, their proposed crossclaim would be futile, and the Court should deny leave to amend altogether.[11]

---

[10] *See* D.E. 105.

[11] Even if *Grand Jury* could impose an obligation on ATG to pay for the Individual Defendants' attorneys' fees, it is undisputed that ATG was concerned that the legal fees were exceeding their expectations. *See* D.E. 109-4, Exh. A at 18 (heading titled "ATG Fires the Employee Defendants Because of the High Cost of Litigation and Refuses to Meet Its Obligation to Pay Past and Future Legal Fees"). Indeed, Individual Defendants include in their Application an email from Nick Ni of ATG to Galleher which states, "I understand [Mulcahy's] bill is bigger than we expected and it is be[c]oming a substantial investment on ATG's part, we need to evaluate our options before we go on." D.E. 109-4, Exh. 22. Pursuant to the trial court's ruling in *Pashman Stein, PC v. Nostrum Labs., Inc.*, No. A-1759-13T1, 2014 N.J. Super. Unpub. LEXIS 2496, at *10-19 (App. Div. Oct. 20, 2014), legal fees that exceed the third party payer's expectations is sufficient cause for the Court to relieve the payer of its obligation.

## IV.   <u>CONCLUSION</u>

For the reasons discussed herein and upon good cause shown, ATG respectfully request that the Court deny the Individual Defendants' requests that (i) the Court enjoin and restrain ATG from terminating its obligation to pay Individual Defendants' attorneys' fees and (ii) granting leave for Individual Defendants to file a verified crossclaim.

Dated:    October 19, 2015                BRODY AND ASSOCIATES, LLC


                                          By:   /s/ Alexander Friedman
                                          ALEXANDER FRIEDMAN
                                          Attorneys for Defendant
                                          ATG ELECTRONICS, INC.

OPPOSITION TO APPLICATION FOR ORDER
TO SHOW CAUSE