Michael S. Stein, Esq. (MS-3248)
J. John Kim, Esq. (JK-1979)
**PASHMAN STEIN, P.C.**
Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601
(201) 488-8200
*Attorneys for Defendants James D. Steedly,
Sophia C. Galleher, and Matthew Kim*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAXLITE, INC., a New Jersey Corporation, f/k/a SK AMERICA, INC., d/b/a MAXLITE,<br><br>        Plaintiff,<br><br>v.<br><br>ATG ELECTRONICS, INC., JAMES D. STEEDLY, SOPHIA C. GALLEHER and MATTHEW KIM,<br><br>        Defendants. | Civil Action No. 2:15-CV-01116-SDW-SCM |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE EMPLOYEE DEFENDANTS' ORDER TO SHOW CAUSE SEEKING TEMPORARY RELIEF RESTRAINING ATG FROM DISCONTINUING THE FUNDING OF THE EMPLOYEE DEFENDANTS' LEGAL FEES AND COSTS PENDING A HEARING ON THE SUMMARY PROCEEDING AS REQUIRED BY THE NEW JERSEY SUPREME COURT IN RE GRAND JURY OPINION**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .........................................................................................................................3

    I.    THE COURT HAS PERSONAL JURISDICTION OVER ATG AS TO THIS CLAIM ..................................................................................................................3

    II.    THIS COURT HAS INHERENT POWER TO GRANT THE REQUESTED RELIEF ..............................................................................................................5

    III.    UNDER *GRAND JURY*, ATG MUST CONTINUE FUNDING THIS LITIGATION .......................................................................................................6

        A.  Irrespective of a "Substantive" or "Procedural" Label, *Grand Jury* applies ...................................................................................6

        B.  ATG Misconstrues In re *Grand Jury* ..........................................................8

    IV.    THE EMPLOYEE DEFENDANTS ARE ENTITLED TO AN INJUNCTION ...........9

CONCLUSION .....................................................................................................................11

## TABLE OF AUTHORITIES

*Capital Source Fin., LLC v. Delco Oil, Inc.*,
520 F. Supp. 2d 684 (D. MD. 2007) ..................................................................5, 6

*Chin v. Chrysler LLC*,
538 F.3d 272 (3d Cir. 2008) ..................................................................................6

*Great Am. Ins. Co. v. Stephens*,
2005 WL 452349, at *4 (E.D. Pa. Feb. 25, 2005) .................................................3

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487, 496 (1941) .......................................................................................6

*Levine v. Atlantic City*,
2015 N.J. Super. Unpub. LEXIS 901 (App. Div. Apr. 21, 2015 ........................10

*Lundahl v. Halabi*,
600 F. App'x 596 (10th Cir. 2014) .......................................................................5

*Mitzel v. Westinghouse Elec. Corp.*,
72 F.3d 414 (3d Cir.1995) .....................................................................................7

*N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*,
158 N.J. 561 (1999) ............................................................................................6, 7

*Nye v. Ingersoll Rand Co.*,
783 F. Supp. 2d 751 (D. N.J. 2011) ......................................................................7

*Pashman Stein v. Nostrum Labs., Inc.*,
2014 WL 5312535 (Oct. 20, 2014) ...............................................................8, 9, 10

*Remick v. Manfredy*,
238 F.3d 248 (3d Cir. 2001) ..................................................................................4

*Ridder v. CityFed Fin. Corp.*,
47 F.3d 85 (3d Cir. 1995) ....................................................................................10

*Schley v. Microsoft Corp.*,
2008 WL 5075266 (D.N.J. Nov. 24, 2008) .......................................................7, 8

*Steel v. General Motors Corp.*,
912 F. Supp. 724 (D.N.J.1995) .............................................................................7

*U.S. v. Local 560 (I.B.T.)*,
694 F. Supp. 1158 (D.N.J. 1988) ..........................................................................3

*Western Franklin Mills Corp. v. FMG, Inc.,*
    1991 WL 126747 (E.D. Pa. July 10, 1991)..................................................................................3

## PRELIMINARY STATEMENT

ATG triggered this litigation by convincing the Employee Defendants to leave MaxLite to come work for ATG while promising that ATG would protect them and fund their defense should MaxLite sue. ATG's motive for promising to fund any potential litigation was not selfless; it was made to induce the Employee Defendants to work for ATG to facilitate reaching its goal of "mak[ing] the company to the $50 million range and tak[ing] it to NASDAQ." (Verified Counterclaim (VC) Ex. 2.) Knowing full well that each Defendant had signed a non-compete agreement with MaxLite, a New Jersey company, ATG examined each agreement, persuaded each Defendant to terminate their employment, and assured them that ATG would fight and defeat any claims against them should litigation ensue -- a litigation that MaxLite foreseeably would have, and did file, in New Jersey. But after deriving substantial economic benefits from the work performed by the Employee Defendants, ATG decided that it no longer wished to fund their the litigation -- over the very non-compete agreements that ATG convinced the Defendants to disregard. ATG then unilaterally ceased paying legal fees, and fired the Employee Defendants, leaving them unemployed and without the financial means to fight a lawsuit against sophisticated and well-funded adversaries.

Now, after promising the Employee Defendants that it would fund <u>this</u> very litigation, and then breaching that promise causing direct injury to Employee Defendants before <u>this</u> very Court, ATG has the gumption to assert that this Court is without specific jurisdiction to enforce ATG's promise. That argument should be rejected, both as a matter of equity and law. The law is clear that ATG is subject to specific personal jurisdiction for <u>this</u> claim by virtue of its agreement to fund a litigation that was commenced in this State, irrespective of whether or not jurisdiction over ATG exists in the underlying lawsuit against MaxLite. Moreover, at least until that jurisdictional determination is made, this Court has the inherent power to enforce applicable procedural and ethical rules and issue orders to preserve the *status quo*, i.e., to order ATG to continue funding.

To date, ATG has not made an affirmative application to cease paying legal fees nor has it demonstrated good cause why its obligation should terminate, as required by the New Jersey

Supreme Court in *In re Grand Jury*. Until such time that ATG seeks leave of Court to cease funding, and until a plenary hearing is held under *Grand Jury* to determine whether good cause exists, ATG is bound, as a matter of law, to continue paying the Employee Defendants' legal fees.

In Opposition, ATG attempts to articulate reasons why *Grand Jury* is inapplicable here, none of which have merit. First, ATG argues that *Grand Jury* creates a substantive cause of action akin to breach of contract, which it claims is governed by California law. But apart from ATG contradicting its own position that the funding agreement was "gratuitous and, therefore, not a valid contract, the law in New Jersey is clear -- issues concerning attorneys' fees unfailingly are deemed procedural matters to which New Jersey law, and therefore, the *Grand Jury* decision, applies.

Second, ATG attempts to limit *Grand Jury's* holding to the Court's ability to "regulate an attorney's conduct." That position illustrates a complete misreading of the case. In *Grand Jury*, recognizing that payers of legal fees may have interests that conflict with those of the client, the New Jersey Supreme Court reaffirmed the prohibition against a payer interfering with the attorney-client relationship or using its purse strings to dictate litigation strategy. Significantly, to protect against a devastating disruption of litigation when a payer financially abandons the client, the Court expressly mandated that a payer wishing to be relieved from its obligation first demonstrate a good faith basis to discontinue. In situations where a payer terminates funding without leave of court, *Grand Jury* expressly provides the litigant -- not the attorney -- with a remedy in the form of a summary action to compel immediate payment. The Employee Defendants' action to compel ATG to continue funding was explicitly contemplated by, and appropriately brought under, *Grand Jury*.

Finally, ATG's Opposition does nothing to refute Employee Defendants' entitlement to an injunction prohibiting ATG from discontinuing funding. ATG's assertion that the Employee Defendants cannot demonstrate a probability of success on the merits is meritless and ultimately immaterial. All factual issues raised by ATG concerning its agreement to pay, while contradicted by the record, and vigorously disputed by the Employee Defendants, cannot be resolved without an evidentiary hearing under *Grand Jury*. But more significantly, for likelihood of success purposes at

2

this juncture, unless and until ATG affirmatively moves for leave of Court to discontinue funding this litigation, and such hearing is held to determine whether ATG can demonstrate good cause, its obligation to pay the Employee Defendants' legal fees must continue. That is the law.

## ARGUMENT

### I. THE COURT HAS PERSONAL JURISDICTION OVER ATG AS TO THIS CLAIM[1]

The law is clear that "[p]arties who reach out beyond [their] state and create continuing relationships and obligations with citizens of another state are subject to the regulations of their activity in that undertaking. Courts are not reluctant to find personal jurisdiction in such instances." *Great Am. Ins. Co. v. Stephens*, 2005 WL 452349, at *4 (E.D. Pa. Feb. 25, 2005). The Court's exercise of specific jurisdiction is appropriate where a party undertakes a commitment that creates a financial obligation in the forum state. *See id.* (finding personal jurisdiction existed where defendant signed indemnity agreement relating to construction within the state); *Western Franklin Mills Corp. v. FMG, Inc.*, 1991 WL 126747 (E.D. Pa. July 10, 1991) (holding that non-resident defendant's undertaking of guaranty for lease of property in the state warrants exercise of specific jurisdiction).

Here, after reviewing the non-compete provisions in agreements governed by New Jersey law, ATG assured the Employee Defendants that they could successfully defeat MaxLite and promised to fund any potential litigation. That promise was not limited to a particular location. When, as could be predicted, a lawsuit against the Employee Defendants was commenced in New

---

[1] ATG implies that Employee Defendants' application for leave to file a cross-claim is procedurally deficient because the Employee Defendants did not expressly state that they were "seeking to amend any pleadings." (Opp'n, fn 1.) ATG is wrong because the Employee Defendants moved under FRCP 15(a)(2) (Moving Br. at 6 fn. 4, 7), which states that: "a party may *amend its pleading* only with . . . the court's leave." ATG's quibbling over semantics is desperate. Moreover, the very authority ATG cites undermines its position, as the *Kennell* court found, "[t]he result of striking the cross-claims . . . would be that the cross-claimants would simply seek leave to re-file their cross-claims as amendments to their answers" and permitted the cross-claims. *Id.* at *4. As FRCP 15(a)(2) states, "*The court should freely give leave (to amend pleadings) when justice so requires,*" and ATG has not demonstrated any reason why this Court should not grant Defendants' motion. Alternatively, the Employee Defendants request that the Court consider their application as a motion to supplement their pleadings under FRCP 15(d), for which leave is granted if "it will promote the just disposition of the case, will not cause undue prejudice or delay or trial inconvenience and will not prejudice the rights of any parties." *U.S. v. Local 560 (I.B.T.)*, 694 F. Supp. 1158, 1187 (D.N.J. 1988).

3

Jersey, ATG reaffirmed in emails that they would fund the lawsuit, and then made payments on behalf of the Employee Defendants to lawyers, including New Jersey counsel, who engaged in court appearances, calls, and communications -- all in New Jersey.  ATG then unilaterally and wrongfully stopped funding the New Jersey litigation, causing injury to the Employee Defendants in this Court.  The notion that ATG is not subject to this Court's specific jurisdiction to enforce its promise to fund this litigation is, quite frankly, absurd.  ATG's creation, performance, and violation of its obligation clearly subject it to specific personal jurisdiction.  *See Stephens, supra; FMG, Inc., supra.*

ATG argues that it is not subject to personal jurisdiction here if the Court cannot exercise personal jurisdiction in the underlying suit.[2]  However, whether personal jurisdiction exists over ATG for the underlying claims by MaxLite is irrelevant because specific personal jurisdiction over a litigant is determined on a claim-by-claim basis.  *See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (holding personal jurisdiction is "claim specific"; finding jurisdiction for contract claim but not for defamation claim).  ATG subjected itself to this Court's jurisdiction on this claim by virtue of its promise to fund this lawsuit, followed by its actual funding of this litigation and then, its subsequent breach of that promise.  ATG can be held accountable for its actions by this Court.

Notably, in its Opposition, ATG claims that its payment of legal fees was "limited to . . . arguments that this Court lacked personal jurisdiction over [Defendants]" in the underlying lawsuit.  Opp'n, at 11.  That admission alone is enough for this Court to order that ATG continue funding at least until the jurisdictional issues are resolved.  And at this time, jurisdictional discovery is ongoing.  In addition, the record demonstrates conclusively that ATG in no way limited funding of the

---

[2] ATG also emphasizes that its initial appearance before this Court was solely for the purpose of contesting personal jurisdiction in the underlying case.  That misses the point.  If, for example, while appearing in New Jersey for the sole purpose of opposing personal jurisdiction, ATG assaulted a third party (thereby committing an independent wrongful act), ATG would not be immune from personal jurisdiction in New Jersey for that conduct simply because its initial appearance was only to contest jurisdiction.  But that is, by analogy, what happened here.  While appearing before this Court to contest personal jurisdiction for MaxLite's claims, ATG committed the independent wrongful act of unilaterally terminating its funding of the Employee Defendants' legal fees without leave of Court as required by *In re Grand Jury*.  That independent wrong, which occurred in New Jersey while before this Court, gave rise to the instant motion.

4

litigation. Not a single piece of correspondence from ATG to the Employee Defendants restricts ATG's obligation only to pay attorney's fees for jurisdictional arguments. To the contrary, the Employee Defendants were told that ATG will "get this handled" (VC Ex. 14); not to "worry about this lawsuit thing" (Ex. 15); and that ATG "will work [] on the legal bills as they come" (Ex. 23). Nor did ATG ever advise Mulcahy LLP that its agreement to fund was limited to jurisdictional arguments. Mulcahy's understanding was that he was to be paid by ATG for the entire litigation. (Mulcahy Cert. ¶¶ 4, 6.) ATG even admits that it paid Mulcahy "$17,500 total" when the "case moved beyond . . . jurisdictional arguments."[3] Opp'n, at 11. In fact, ATG's retainer with Mulcahy contemplates a broad scope of engagement, not limited to any state or for any one purpose. (VC Ex. 12) As such, ATG's arguments with respect to jurisdiction fail both as a matter of fact and law.

## II. THIS COURT HAS INHERENT POWER TO GRANT THE REQUESTED RELIEF

"It is well settled that while a court is deciding whether it has jurisdiction, it has the authority to issue orders to preserve the *status quo*, and such orders must be obeyed by the parties until it reversed by orderly and proper proceedings." *Lundahl v. Halabi*, 600 F. App'x 596, 604-07 (10th Cir. 2014). Here, although it has not yet been determined whether ATG is subject to personal jurisdiction for purposes of MaxLite's claims, this Court has the inherent authority to issue orders and regulate the parties' conduct until it determines the jurisdictional issues. See Id. at 605-06 (even where a court has no jurisdiction "over the substantive merits, it retains the inherent authority to issue orders on matters collateral to the merits . . . including awarding costs or attorney fees").

Indeed, the Court has held conferences and issued orders, including for the taking of jurisdictional discovery, with which ATG has complied. Regardless of whether ATG believes it is subject to personal jurisdiction, it cannot dispute that it is bound by this Court's orders until a jurisdictional determination is made. *See id.*; *Capital Source Fin., LLC v. Delco Oil, Inc.*, 520 F.

---

[3] The Court should take judicial notice that Mulcahy LLP's representation went beyond jurisdictional issues during the time that ATG was still funding, including the defense of MaxLite's preliminary injunction on the merits, the motion for expedited discovery, motion to seal documents, and motion to strike portions of the complaint. ATG's characterizing of its funding as limited to jurisdictional issues is utterly baseless.

5

Supp. 2d 684, 691-92 (D. MD. 2007) (holding that a knowing violation of otherwise valid court order subjects one to contempt order even if the court did not have personal jurisdiction over the person at the time it issued the order). Until that time, the Court has the authority to "preserve the status quo," which means that ATG must continue to pay the Employee Defendants' attorneys' fees, until and unless it demonstrates good cause to stop doing so.

### III. UNDER *GRAND JURY*, ATG MUST CONTINUE FUNDING THIS LITIGATION

#### A. Irrespective of a "Substantive" or "Procedural" Label, *Grand Jury* applies

"When a district court's jurisdiction is predicated on diversity. . . the court must determine whether, under *Erie Railroad Co. v. Tompkins*, a matter is substantive or procedural." *Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008). "If the matter is determined to be substantive, and a choice-of-law question is presented [e.g., the competing states' laws differ], the court must then perform a choice-of-law analysis to determine which state's substantive law applies." *Id.* Notably, "[a] district court may find a particular state law to be substantive for Erie purposes but procedural for purposes of a choice-of-law analysis." *Id.* The rule on attorneys' fees falls into this category. For purposes of Erie, the right to obtain attorneys' fees is a matter of substantive state law, which requires a choice of law analysis if the two states' laws differ. *Id.* at 274. Because New Jersey and California laws concerning third party payers differ,[4] a choice of law analysis is necessary.

Under New Jersey's choice-of-law rules,[5] a "court sitting in New Jersey is required to apply New Jersey rules to procedural matters" even when a different state's substantive law must govern. *Id* And in New Jersey, ***an award of attorneys' fees is considered a procedural matter to which New Jersey law applies***. *Id.* at 279 (District Court erred in granting motion for attorneys' fees under California's fee-shifting provisions because under New Jersey's choice of law rules, New Jersey law applies to issues concerning attorneys' fees); *N. Bergen Rex Transp., Inc. v. Trailer*

---

[4] California does not have a third-party payer rule similar to the rule pronounced in *Grand Jury*.
[5] Where a choice-of-law question exists, the court must apply the choice-of-law rules of the forum state to determine which state's law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

6

*Leasing Co.*, 158 N.J. 561, 569 (1999) ("attorneys' fees are a matter of practice and procedure"; applying New Jersey law). Given that this case concerns the payment of attorneys' fees -- a purely "procedural matter"-- this Court must apply New Jersey law to the Employee Defendants' claim. Thus, the rule pronounced by the Supreme Court in *Grand Jury* governs this application.[6] *See Mitzel v. Westinghouse Elec. Corp.*, 72 F.3d 414, 417-18 (3d Cir.1995) ("even assuming arguendo that the issue were a matter of state law. . . New Jersey choice of law principles would mandate application of New Jersey law to the contingency fee agreement and thus lead to the same result").

ATG attempts to transmogrify what New Jersey courts explicitly consider a "procedural matter" into a substantive issue (which, it contends is governed by California law) by claiming that *Grand Jury* creates a "special cause of action for breach of contract that can be brought by a third party beneficiary." Opp'n, at 16. That is a complete misreading of the Supreme Court's opinion. Nothing in *Grand Jury* creates a substantive right similar to a breach of contract.[7]

Assuming that *Grand Jury* did create a substantive cause of action -- and it does not -- the claim would be more akin to promissory estoppel rather than breach of contract.[8] Unlike breach of contract, "promissory estoppel permits the enforcement of gratuitous promises where 'substantial hardship or injustice would result if such a promise were not enforced.'" *Nye v. Ingersoll Rand Co.*, 783 F. Supp. 2d 751 (D.N.J. 2011). And because "[a] claim for promissory estoppel is distinct from a contract claim and is more analogous to a tort," the law applied to a promissory estoppel claim in

---

[6] *Grand Jury* also governs the Employee Defendants' claim for the additional independent reason that it originates from New Jersey's PRC 1.8, because New Jersey's ethics rules have been adopted by and acknowledged as applicable in New Jersey federal courts. *Steel v. General Motors Corp.*, 912 F. Supp. 724, 732 (D.N.J.1995) ("ethical rules and constraints imposed on federal practitioners in New Jersey are the same as those imposed on New Jersey attorneys generally by the state Supreme Court"); *see also* Local Rules of the United States District Court for the District of New Jersey, R. 103.1. ATG, through its counsel, is appearing before a New Jersey federal court. Since *Grand Jury* is based on New Jersey's RPC 1.8, it applies irrespective of whether it is considered procedural or substantive.

[7] ATG contradicts itself when it claims that its promise allegedly was "gratuitous" and "lacked any consideration" (Opp'n, at 19), an essential element without which a breach of contract claim cannot not exist.

[8] A cause of action for promissory estoppel exists where a plaintiff can establish that (1) there is a clear and definite promise; (2) the promise was made with the expectation that the promisee will rely on it; (3) the promisee did, in fact, rely on the promise; and (4) the promise incurred a detriment as a result of reliance. *See Schley v. Microsoft Corp.*, 2008 WL 5075266, at *3 (D.N.J. Nov. 24, 2008) *amended*, 2009 WL 197568 (D.N.J. Jan. 23, 2009) (citing Restatement (Second) of Contracts, § 90)).

7

a choice of law analysis is the law of the state with the "greatest interest in governing the particular issue." *See Schley*, 2008 WL 5075266, at *6 (applying New Jersey law to plaintiff's claim that he was induced by out of state Defendant to leave his job by promise of employment which was later rescinded). New Jersey has a greater interest in enforcing promises to fund a litigation in its Federal District than does California, which does not provide for such relief. *Grand Jury* illustrates the policy of this state that a third party who undertakes an obligation to pay legal fees cannot leave the payee defenseless without first seeking leave of court and showing good cause. Under any characterization of the issue, *Grand Jury* applies to the instant claim.

### B. ATG Misconstrues *In re Grand Jury*

ATG's exceedingly narrow interpretation of *Grand Jury* is legally unsupported and defies logic. Contrary to ATG's contention, *Grand Jury* does more than merely permit a court to "regulate an attorney's conduct by disqualifying that attorney or preventing him/her from accepting payment from a third-party payer." Opp'n, at 14. *Grand Jury* clarified obligations imposed upon third party payers, including an affirmation that payers cannot interfere with the attorney-client relationship or use their purse strings to direct litigation strategy. 200 N.J. at 495-96. But more significantly, the Court expressly established that "[o]nce an employer commits to paying the legal fees and expenses of its employees, it scrupulously must honor that commitment" and "if the employer wishes to discontinue paying the legal fees and expenses of . . . it may only do so by leave of court." 200 N.J. at 498-99. The Court also expressly provided clients with a remedy in situations where payers fail to timely pay counsel's invoices in the form of a summary action to compel compliance with the payer's obligation. 200 N.J. at 497; *see Pashman Stein v. Nostrum Labs., Inc.*, 2014 WL 5312535, at *1 (N.J. App. Div. Oct. 20, 2014)[9] (applying *Grand Jury* outside the context of disqualifying an attorney; remanding for an evidentiary hearing to determine "whether defendant presented sufficient

---

[9] In *Nostrum Labs.*, a pharmaceutical company agreed to pay the legal fees of the firm's client, a scientist that had developed a valuable generic drug, and was sued by his former employer for intellectual property rights to the drug and breach of his non-compete agreement. Much like this case, after the payer failed to pay invoices and threatened to terminate the retainer, plaintiff filed an **Order to Show Cause** to compel defendant to pay the outstanding legal fees and to continue to fund the client's litigation.

8

reasons for terminating the retainer agreement under *Grand Jury*"). *Grand Jury* is not simply about the Court's ability to regulate an attorney's conduct; it is about affording protection to clients who have detrimentally relied on third-parties' promise of funding by requiring leave of court, upon a showing of good cause, to terminate the payment obligation.

Moreover, contrary to ATG's argument, *Grand Jury*'s applicability is not contingent on there being an agreement between the attorney and a third-party payer specifying that the payer could discontinue funding only after obtaining leave of court. *See* Opp'n 14-15. If it were, *Grand Jury's* restrictions would apply only to the rare instances where the payer already agreed to do exactly that which *Grand Jury* requires. Such an interpretation is nonsensical. The very decision in *Grand Jury* would not have been necessary if payers independently agreed to its directive. Nowhere did the Supreme Court impose the condition that ATG suggests. In fact, the retainer letter in *Grand Jury* itself did not state that the payer can discontinue funding only after obtaining leave of court. *See* Exhibit A to J. Kim Cert (*Grand Jury* retainer letter); *see Nostrum Labs*, supra, at *3 (retainer stated that the representation could terminate at any time). Moreover, ATG's attempt to distinguish *Grand Jury* on its facts is futile because the Supreme Court made clear that its ruling was not limited to criminal matters where employees testify against employers. The Court's holding applies "regardless of the setting - whether administrative, criminal or civil, either as part of an investigation, during grand jury proceedings, or before, during and after trial." 200 N.J. at 486.

## IV. THE EMPLOYEE DEFENDANTS ARE ENTITLED TO AN INJUNCTION

It is a matter of irrefutable law that unless and until ATG affirmatively moves for leave of Court to discontinue funding the litigation, its obligation to pay the Employee Defendants' legal fees continues. *Grand Jury*, 200 N.J. at 498-99 ("if the employer wishes to discontinue paying the legal fees . . . it may only do so by leave of court"). To date, ATG has not made an application to be relieved of its payment obligation, nor has it shown good cause why its obligation should terminate. ATG's passing reference to allegedly high legal fees as sufficient cause to terminate its obligation (Opp'n at 21) strains credulity and should not be countenanced by this Court. A single

9

email referencing high legal bills, without any evidence showing what ATG reasonably anticipated the legal fees to be,[10] is not sufficient to establish good cause. *Nostrum Labs, supra*, at *7-8. The Employee Defendants' likelihood of success is premised on unequivocal New Jersey Supreme Court jurisprudence -- until ATG makes an application to be relieved of its payment obligation under *Grand Jury*, and until a hearing is held to determine whether ATG can demonstrate good cause, ATG must pay all outstanding fees up through the date of the hearing.

ATG's Opposition does not refute that the Employee Defendants have satisfied three of the four prerequisites for entitlement to injunctive relief, namely: irreparable harm, balance of equities, and public interest.[11] Instead, ATG sets forth several reasons why it believes Defendants cannot demonstrate a probability of success on the merits, all of which are factually and legally baseless.

First, contrary to ATG's assertion, there is no explicit requirement that there be a "written agreement" for a third party to pay legal fees. Not a single one of the six conditions in *Grand Jury* states that an agreement to fund must be in writing. In any event, the Employee Defendants have put forth evidence that ATG, both orally and in writing, agreed to pay for the litigation and did, in fact, pay legal fees. (*See* VC ¶¶ 18-19, 23, 25, 32-33, 35-45, 49-55, 59, 63, 65, 67, 72-73.)

Second, ATG cannot support its absurd position that because the payment of legal fees was conditioned on Defendants' employment, ATG's unjustified termination of Defendants' employment extinguished its obligation. No such condition was imposed and nothing in the record indicates otherwise.[12] Additionally, permitting a third party payer to get out of an obligation to fund by firing the employee is contrary to public policy and violates *Grand Jury*'s prohibition against a

---

[10]  ATG did not request a litigation budget nor otherwise provide any indication that the cost of litigation was a concern. Indeed, at the inception of the litigation and throughout its first few months, ATG paid the Employee Defendants' legal bills without questioning the reasonableness of the fees.

[11]  Notably, ATG does not dispute that absent an injunction, plaintiffs would be left without counsel in a contentious litigation, which constitutes the requisite level of irreparable harm for this Court to grant an injunction. *See, e.g., Ridder v. CityFed Fin. Corp.*, 47 F.3d 85, 87 (3d Cir. 1995) (reversing denial of injunction compelling payment of counsel fees, holding that "Appellants made a strong showing that, unless defense costs were advanced to them, their ability to defend the RTC action would be irreparably harmed").

[12]  *Levine v. Atlantic City*, 2015 N.J. Super. Unpub. LEXIS 901 (App. Div. Apr. 21, 2015) is inapposite. In that matter, there was no unconditional promise to pay legal fees, which is demonstrably not the case here.

payer's unilateral cessation of funding.

Third, the fact that ATG purportedly agreed to pay Mulcahy LLP rather than Defendants' current counsel is immaterial.[13] Grand Jury makes clear that a payer cannot direct, regulate, or interfere with the attorney client relationship. 200 N.J. at 495-96. The clients are entitled to select counsel of their choice to represent them. Moreover, it was ATG's actions in terminating the Employee Defendants, hiring new counsel for itself, and failing to pay Defendants' legal fees as promised that forced Mulcahy to be in a conflicted position and seek to withdraw. Mulcahy Mtn. to Withdraw Brief, at 2-5. ATG cannot create a situation where counsel is forced to withdraw and new counsel must be engaged, and then complain that it did not approve of the new attorneys.

Ultimately, all of ATG's arguments above are factual disputes that, while contradicted by the evidence in the record, can be resolved only by way of an evidentiary hearing under Grand Jury, if and when ATG makes an application before this Court to discontinue funding this litigation.

## CONCLUSION

For the foregoing reasons, the Employee Defendants respectfully request that this Court grant their Application, in full.

                                        PASHMAN STEIN, P.C.
                                        Attorneys for Defendants,
                                        **James D. Steedly, Sophia C. Galleher, and Matthew Kim**

Date: October 30, 2015        By: _____
                                                           MICHAEL S. STEIN

---

[13] The record does not support ATG's assertion that its agreement to fund was contingent upon retention of Mulcahy LLP only or that ATG in any way limited the Employee Defendants' choice of counsel.