1  HOWARD B. GOLDS, Bar No. 112626
   howard.golds@bbklaw.com
2  THOMAS M. O'CONNELL, Bar No. 298457
   thomas.oconnell@bbklaw.com
3  BEST BEST & KRIEGER LLP
   3390 University Avenue, 5th Floor
4  P.O. Box 1028
   Riverside, CA  92502
5  Telephone:  (951) 686-1450
   Facsimile:  (951) 686-3083
6
   ALEXANDER FRIEDMAN (AF2750)
7  afriedman@brodyandassociates.com
   BRODY AND ASSOCIATES, LLC
8  120 Post Road West
   Westport, CT  06880
9  Telephone:  (203) 454-0560
   Facsimile:  (203) 454-0569
10
   Attorneys for Defendant
11 ATG ELECTRONICS, INC.

12                  UNITED STATES DISTRICT COURT

13               FOR THE DISTRICT OF NEW JERSEY

14

15

16 | MAXLITE, INC., a New Jersey | Case No.   2:15-CV-01116-JMV-JBC
   | Corporation, f/k/a SK AMERICA, | U.S.D.J.:   Hon. John Michael Vazquez
17 | INC., d/b/a MAXLITE, |
   |                       | DEFENDANT ATG ELECTRONICS,
18 |       Plaintiff, | INC.'S BRIEF IN SUPPORT OF
   |                       | MOTION TO DISMISS THE AMENDED
   |       v. | COMPLAINT FOR LACK OF
19 |                       | PERSONAL JURISDICTION OR, IN
   | ATG ELECTRONICS, INC., | THE ALTERNATIVE, MOTION TO
20 | JAMES D. STEEDLY, SOPHIA C. | TRANSFER
   | GALLEHER, and MATTHEW KIM, |
21 |                       | MOTION DAY: TBD
   |       Defendants. |
22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

**Page**

3

4

I.     INTRODUCTION .................................................................................. 1

5

II.    RELEVANT FACTUAL BACKGROUND ......................................... 4

6

    A.    Jurisdictional Background Of ATG ........................................... 4

    B.    Jurisdictional Background Of The Individual Defendants ................. 6

7

    C.    Jurisdictional Background of MaxLite ................................. 8

8

III.    PROCEDURAL BACKGROUND ...................................................... 9

9

IV.    LEGAL ARGUMENT .......................................................................10

10

    A.    The Court Should Not Exercise Personal Jurisdiction Over ATG ..... 10

11

        1.    General Jurisdiction Over ATG Is Not Proper Because ATG Is Not "At Home" In New Jersey .................................. 11

12

        2.    Specific Jurisdiction Over ATG Is Not Proper Because ATG Lacks The Requisite Minimum Contacts With New Jersey ....................................................................... 12

13

14

            a.    MaxLite Cannot Show That ATG's Activities Have Been Purposefully Directed At New Jersey ................ 13

15

            b.    MaxLite Cannot Show That Its Claims Arise Out Of ATG's Incidental Contacts With New Jersey .......... 18

16

17

            c.    It Would Be Unreasonable To Exercise Specific Jurisdiction Over ATG In New Jersey ........................... 22

18

    B.    Alternatively, The Court Should Transfer This Case To The Central District Of California ............................................... 24

19

        1.    This Lawsuit Could Have Been Brought In The Central District Of California ...................................................... 25

20

        2.    Private Interest Factors Warrant Transfer To The Central District Of California ...................................................... 26

21

        3.    Public Interests Factors Warrant Transfer To The Central District Of California ...................................................... 28

22

23

V.    CONCLUSION .................................................................................30

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc*.
  No. 10-cv-5321, 2014 U.S. Dist. LEXIS 65338 (D.N.J. May 13,
  2014) ................................................................................................ 15, 19, 20, 21

*Burger King Corp. v. Rudzewicz*
  471 U.S. 462 (1985) ................................................................................. 13, 23

*Calder v. Jones*
  465 U.S. 783 (1984) ............................................................................. 15, 16, 17

*Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A.
  D'Assurances*
  723 F.2d 357 (3d Cir. 1983) ......................................................................... 13

*Daimler AG v. Bauman*
  134 S. Ct. 746 (2014) .................................................................................. 12

*Dayhoff Inc. v. H.J. Heinz Co.*
  86 F.3d 1287 (3d Cir. 1996) ............................................................. 15, 20, 21, 22

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin
  Intermediates, S.A.S.*
  269 F.3d 187 (3d Cir. 2001) ......................................................................... 20

*First Options of Chicago, Inc. v. Kaplan*
  115 S.Ct. 1920 (1995) ................................................................................. 20

*Giangola v. Walt Disney World Co*.
  753 F. Supp. 148 (D.N.J. 1990) .................................................................... 12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
  131 S.Ct. 2846 (2011) ................................................................................. 11

*Hanson v. Denckla*
  357 U.S. 235 (1958) .................................................................................... 13

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
  466 U.S. 408 (1984) ............................................................................. 10, 11, 18

*Hudson United Bank v. Chase Manhattan Bank, NA*
   832 F. Supp. 881 (D.N.J. 1993)...................................................................29

*IMO Indus., Inc. v. Kiekert AG*
   155 F.3d 254 (3d Cir. 1989) ...............................................................17

*Int'l Shoe Co. v. Washington*
   326 U.S. 310 (1945) ...............................................................10, 23

*Kaplan v. First Options of Chicago, Inc.*
   19 F.3d 1503 (3d Cir. 1994) ...............................................................20

*Lony v. E. I. Du Pont de Nemours & Co.*
   886 F.2d 628 (3d Cir. 1989) ...............................................................28

*Newcomb v. Daniels, Saltz, Mongeluzzi, & Barrett*
   847 F. Supp. 1244 (D.N.J. 1994)...................................................26

*O'Connor v. Sandy Lane Hotel Co.*
   496 F.3d 312 (3d Cir. 2007) ...............................................10, 12, 13, 18, 19

*Osteotech, Inc. v. GenSci Regeneration Sciences*
   6 F.Supp.2d 349 (D.N.J. 1998)...................................................12

*Peterson v. HVM LLC*
   No. 14-1137, 2016 U.S. Dist. LEXIS 27964 (D.N.J. Mar. 3, 2016)..................10

*Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n.*
   819 F.2d 434 (3d Cir. 1987) ...............................................................10

*Radian Guaranty Inc. v. Bolen*
   18 F.Supp.3d 635 (E.D.Pa. 2014)...................................................15, 16, 17, 22

*Rappoport v. Steven Spielberg, Inc.*
   16 F. Supp. 2d 481 (D.N.J. 1998)...................................................25, 26, 27, 28

*Ricoh Co. v. Honeywell, Inc.*
   817 F. Supp. 473 (D.N.J. 1993)...................................................25, 26

*Van Dusen v. Barrack*
   376 U.S. 612 (1964) ...............................................................24

*Walden v. Fiore*
   134 S.Ct. 1115 (2014) ...............................................................10, 12, 14, 15, 16

TABLE OF AUTHORITIES

**Federal Statutes**

28 U.S.C. § 1404(a) ................................................................................................ 24, 26

28 U.S.C. § 1406(a) .................................................................................................... 24

**State Statutes**

California Business and Professions Code § 16600 ............................................ 26, 29

**Rules**

Fed. R. Civ. P. 4(k) .................................................................................................... 10

**Constitutional Provisions**

Fourteenth Amendment ............................................................................................. 10

**Other Authorities**

LEDINSIDE,
    http://www.ledinside.com/news/2015/12/maxlite_files_lawsuit_aga
    inst_atg_electronics_and_others (last visited April 6, 2016) ................................ 1

TABLE OF AUTHORITIES

1

## **MEMORANDUM OF LAW**

2

## I.     **INTRODUCTION**

3
4       This action arises out of a California corporation, ATG Electronics, Inc.'s

5 ("ATG"), decision to hire two California residents and one Georgia resident who
6
7 were employees of MaxLite, Inc. ("MaxLite"), a corporation with a significant

8 presence in California.  Indeed, the undisputed facts demonstrate that most of the

9 evidence and witnesses related to MaxLite's allegations against ATG are located at
10
11 either MaxLite's West Coast office located in Anaheim, California, or ATG's

12 principal place of business located in Rancho Cucamonga, California.  Rather than

13 consolidate this action with the stayed action in the Central District of California
14
15 and allow the parties to begin addressing the merits of this dispute, MaxLite has

16 spent the last year vigorously[1] pursuing any evidence that might dissuade this Court

17 from finalizing its April 2015 ruling that ATG lacks the minimum contacts
18
19 necessary for the Court to retain personal jurisdiction.   ATG is a small but

20 emerging competitor with *de minimis* contacts with New Jersey.  By forcing ATG

21 to unnecessarily defend this action 2,400 miles away from its "home," MaxLite is
22
23 smothering its competitor with costs.  This is a fundamental abuse of process.

_____

24 [1] On December 2, 2015—ten months after MaxLite filed its lawsuit against ATG—
25 MaxLite chose to submit a press release announcing its lawsuit against ATG stating
that it was "committed to the vigorous protection of its intellectual property and
26 enforcement of its proprietary rights" and that "[w]hether it involves ATG, or any
other company or individual, we will not tolerate violates of our Proprietary
27 Information   Agreements,   IP   rights   or   trade   secrets."   LEDINSIDE,
http://www.ledinside.com/news/2015/12/maxlite_files_lawsuit_against_atg_electro
28 nics_and_others (last visited April 6, 2016).

Nevertheless, ATG has endured, and now MaxLite's efforts have only confirmed that ATG's incidental contacts with New Jersey do not merit the Court's exercise of general or specific jurisdiction.

First, this Court should not exercise general jurisdiction over ATG. A court's finding of general jurisdiction is only merited where a defendant's contacts are continuous and systematic. ATG is incorporated in the State of California and its principal place of business is in Rancho Cucamonga, California. Moreover, ATG has never maintained an office or other place of business in New Jersey, registered to do business in New Jersey, paid taxes in New Jersey, maintained bank accounts in New Jersey, or had any employees in New Jersey. These indisputable facts demonstrate that ATG does not have the continuous and systematic contacts with New Jersey necessary for the Court to find that general jurisdiction is proper.

Second, this Court should not exercise limited or specific jurisdiction over ATG. For specific jurisdiction to be proper, the court must find that the nonresident defendant has the "minimum contacts" with the forum. In considering whether minimum contacts exist, the plaintiff must show that the nonresident defendant has (i) "purposefully availed" itself of the benefits of the forum state *and* (ii) that its claims against the nonresident defendant arise out of or relate to the nonresident defendant's contacts with the forum.

Here, after a year of jurisdictional discovery, the only connections MaxLite has been able to establish between ATG and New Jersey are: (i) advertising in

nationally circulated email promotions and magazines which reach New Jersey; (ii) participating in one trade show in Atlantic City in 2014; (iii) making sales to customers in New Jersey over a four year period that amount to less than half of one percent of ATG's total revenue from customers in the United States; and (iv) hiring three employees who did not work or reside in New Jersey but whose non-compete agreement mentioned New Jersey.  These contacts were either the byproduct of a larger national and international marketing and sales development strategy that incidentally touch New Jersey or the result of a forum selection clause in an agreement to which ATG was not a party.  Thus, these *de minimis* contacts with New Jersey do not demonstrate that ATG has purposefully availed itself of the State's benefits.

In addition, these incidental contacts with New Jersey do not relate to MaxLite's claims.  MaxLite alleges that ATG tortiously interfered with certain of its contracts and converted proprietary information.  Even if these allegations were true (which they are not), MaxLite has never asserted that these actions took place in New Jersey.  Rather, the undisputed facts demonstrate that even if all of MaxLite's allegations were true, these actions must have occurred in either California, ATG's base of operations, or Georgia, the only state other than California where an Individual Defendant resided during their time at ATG.  Therefore, even after a year of jurisdictional discovery, MaxLite cannot demonstrate that it would be appropriate for the Court to exercise specific or limited

jurisdiction because ATG did not purposefully avail itself of the benefits of New Jersey *and* MaxLite's claims against ATG do not arise out of or relate to ATG's contacts with New Jersey.

Third, if the Court does not grant ATG's Motion to Dismiss for lack of personal jurisdiction, in the alternative, this action should be transferred to the Central District of California and consolidated with the related action that is already pending in that court.  Such a result is appropriate because: (i) the parties all have substantial connections to that forum; (ii) the defense of this action in New Jersey places an inordinate burden on ATG, especially as compared to the burden on MaxLite, a bi-coastal corporation with a West Coast office in the Central District; (iii) the convenience of the witnesses, the majority of whom are located in California; (iv) the availability of evidence, which is also overwhelmingly located in the Central District; and (v) the interest of justice in resolving this dispute economically and efficiently for all involved.

For all of the reasons set forth herein, ATG respectfully requests that the Court end MaxLite's attempt to force ATG to defend this action in New Jersey and grant its Motion to Dismiss for lack of personal jurisdiction, or in the alternative, transfer this matter to the Central District of California.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     Jurisdictional Background Of ATG

ATG is an LED lighting manufacturing corporation that is, and always has been, incorporated in California.  (Declaration of Eric Cai[2] ("Cai Decl."), ¶ 3) ATG's principal place of business and primary distribution center are both located in Rancho Cucamonga, California, within the jurisdiction of the Central District of California.  (*Id*.)  All of ATG's principals are California residents.  (*Id*. at ¶¶ 5-6.) All corporate records, minute books, financial documents, employee records, and operating materials are kept and maintained in ATG's Rancho Cucamonga office. (*Id*. at ¶¶ 5-6.)  All employees of ATG are located and live in California, and ATG's employment and recruitment efforts are directed at residents of California, specifically, the area encompassed by the Central District of California.  (*Id*. at ¶ 7.) In addition to ATG's California headquarters, ATG operates two manufacturing factories in China.  (*Id*. at ¶ 4; *see* Deposition of Nick Ni[3] ("Ni Depo."), 217:2-5.)

---

[2] ATG previously submitted the declaration of Eric Cai as part of ATG's Motion to Dismiss filed on March 12, 2015.  (*See* Doc. No. 17-3.)  For the Court's convenience, ATG has attached a true and correct copy of the aforementioned declaration as **Exhibit A**.

[3] As part of MaxLite's jurisdictional discovery, MaxLite choose to depose ATG's corporate representative.  ATG designated its president, Nick Ni, for that deposition.  Mr. Ni's deposition took place on October 2, 2015.  For the Court's convenience, ATG has attached a condensed, true and correct copy of the aforementioned deposition transcript as **Exhibit F**.  Exhibits from this deposition have been omitted.

All ATG products ship from California, China, or in some instances, from a third-party warehouse in North Carolina.  (Cai Decl., ¶ 4.)

ATG does not have, and has never had, an office or other place of business in New Jersey, employees located in New Jersey, bank accounts in New Jersey, licenses to do business in New Jersey, or ownership or affiliation with any facilities in New Jersey.  (Cai Decl., ¶¶ 7-9; Ni Depo., 216:24-217:5, 202:2-16.)   ATG advertises and markets its products through national and worldwide efforts, including participating in national and international tradeshows, advertising in nationally circulated magazines and publications, maintaining a promotional website, sending press releases, and utilizing worldwide email based promotions.  (Ni Depo., 49: 11-25, 81:10-15; Deposition of Sophia Galleher[4] ("Galleher Depo."), 11-12, 21.)   Relevant here, the only tradeshow that ATG attended in New Jersey was Globalcon in 2014 because it was held in Atlantic City that year.  (Ni Depo., 178:1-16.)   While marketing activities like this may incidentally occur in or reach New Jersey, none of ATG's marketing efforts specifically target New Jersey.  (Ni Depo., 49-52, 63, 76; Galleher Depo., 12:21-23.)

ATG's products are sold through the efforts of both internal sales representatives and a network of independent contractors, including external sales

---

[4]  As part of MaxLite's jurisdictional discovery, MaxLite chose to depose Ms. Sophia Galleher.  Ms. Galleher's deposition took place on March 29, 2016.  For the Court's convenience, ATG has attached a condensed, true and correct copy of the aforementioned deposition transcript as **Exhibit G**.  Exhibits from this deposition have been omitted.

representatives, distributors, resellers, and energy service contractors.  (*See* Ni Depo., 82:5-12; Galleher Depo., 92:23-93:4.)  The internal sales representatives are employees of ATG who work from the headquarters in Rancho Cucamonga and answer calls for orders and target sales all over the nation as well as in foreign countries.  (*See* Ni Depo., 82-87; Cai Decl., ¶ 7.)  While sales representatives may occasionally informally divvy up territories in sales meetings and may derive the majority of their sales from certain states that they choose to target, they are not officially assigned to any regions or states and often cross market.  (Ni Depo., 85:2-8, 131:4-9, & *see generally* pp. 83-98.)

        The independent sales representatives are not on ATG's payroll or controlled by ATG.   (Ni Depo., 81:225-82:2, 183:3-9.)   Rather, they select their own territories for sales, do not report to ATG, and are paid through submitting orders and receiving commissions.  (*Id*. at 82:19-83:2, 100:13-15, 132:4-7, 183:3-9.)  As a result, ATG has no way of tracking the markets that the sales from independent contractors or resellers and distributors ultimately end up in.  Their sales for ATG vary, with some making repeated sales over the span of years while others are less productive and do not produce many orders.  (*Id*. at 82:19-24, 99:20-25, & *see generally* pp. 98-116.)  Some sales representatives sell directly to customers who use the products, but many sales are made to purchasers who subsequently resell or distribute ATG's products through their own businesses and contacts.  (*See* Ni Depo., 82:5-12; Galleher Depo., 92:23-93:4.)

Over the last four years, ATG sold approximately $32 million of LED lights in the United States.  (ATG's Resps. to MaxLite's First Set of Jurisdictional Interrogatories, Resp. to Interrogatory No. 3[5].)  Of the U.S. sales, total sales to New Jersey were $146,041, or approximately 0.045% of ATG's total revenue. *Id.*  ATG had no sales to New Jersey prior to 2011.  *Id.*  ATG affirmatively stopped selling products to customers in New Jersey as a result of this lawsuit.  (Galleher Depo., 75:12-23.)

## B.    Jurisdictional Background Of The Individual Defendants

With respect to Sophia Galleher ("Galleher"), Matthew Kim ("Kim"), and James Steedly ("Steedly") (collectively, "Individual Defendants"), none of them either worked or resided in New Jersey during the relevant time period.  Galleher and Steedly both worked and resided in California, while Kim worked remotely and resided in Georgia.  (Declaration of Sophia Galleher[6] ("Galleher Decl."), ¶ 3; Declaration of Matthew Kim[7] ("Kim Decl."), ¶ 3; Declaration of James Steedly[8]

---

[5] As part of MaxLite's jurisdictional discovery, MaxLite submitted interrogatories to ATG on July 1, 2015.  ATG submitted its responses to MaxLite's interrogatories on August 19, 2015.  For the Court's convenience, ATG has attached a true and correct copy of the aforementioned discovery responses as **Exhibit E**.

[6] ATG previously submitted the declaration of Sophia Galleher as part of ATG's Motion to Dismiss filed on March 12, 2015.  (*See* Doc. No. 17-4.)  For the Court's convenience, ATG has attached a true and correct copy of the aforementioned declaration as **Exhibit B**.

[7] ATG previously submitted the declaration of Matthew Kim as part of ATG's Motion to Dismiss filed on March 12, 2015.  (*See* Doc. No. 17-5.)  For the Court's

DEFENDANT ATG ELECTRONICS, INC.'S
BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

("Steedly Decl."), ¶ 3.)   All communications between the Individual Defendants and ATG occurred outside of New Jersey, with most communications occurring in California.   Each Individual Defendant was hired to work for ATG, either in California or with work activities directed at California. (Galleher Decl., ¶ 12; Kim Decl., ¶ 16; Steedly Decl., ¶ 19.)  During the Individual Defendants' employment with ATG, no business contacts or relationships with New Jersey existed or were developed. (Galleher Decl., ¶ 14; Kim Decl., ¶ 16; Steedly Decl., ¶ 19.)

While Galleher worked at ATG, she served as the company's Director of Sales and Marketing.   (Galleher Decl., ¶ 12.)   Galleher was in charge of restructuring the ATG sales force and building a marketing department for the company. (*Id*.)  All of Gallaher's work was based out of California. (*Id*.)

While Steedly worked at ATG, he served as the company's Vice President of Special Projects. (Steedly Decl., ¶ 18.)  Steedly worked from California throughout the entire time of his employment and maintained no personal or business relationships with anyone in New Jersey. (*Id*. at ¶ 19.)

---

convenience, ATG has attached a true and correct copy of the aforementioned declaration as **Exhibit C**.

[8] ATG previously submitted the declaration of James Steedly as part of ATG's Motion to Dismiss filed on March 12, 2015. (*See* Doc. No. 17-6.) For the Court's convenience, ATG has attached a true and correct copy of the aforementioned declaration as **Exhibit D**.

DEFENDANT ATG ELECTRONICS, INC.'S
BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

1

2

3    While Kim worked at ATG, he served as the company's Vice President of

4    Business Development.  (Kim Decl., ¶ 15.)  All of Kim's work was directed at the

5    California region.  (*Id.* at ¶ 16.)  Although Kim maintained accounts throughout the

6    country, he did not have any in New Jersey.  (*Id.*)  He never did any business in

7    New Jersey or was otherwise physically present in New Jersey at any time while he

8    was employed by ATG.  (*Id.*)

9

10

11   ### C.    Jurisdictional Background of MaxLite

12   MaxLite has two primary offices—an East Coast office in New Jersey, and a

13   West Coast office in California.  (Galleher Decl., ¶ 23.)  The West Coast office has

14   been in California for almost ten years and is currently located in Anaheim.  (*Id.* at

15   ¶ 6.)   A substantial portion of MaxLite's sales, product development, product

16   testing and certification, and warehousing and distribution efforts are generated

17   from its West Coast office.  (Cai Decl., ¶ 15.)  MaxLite employs several employees

18   at its West Coast office, many of whom are knowledgeable about the facts of this

19   dispute and will likely be called as witnesses in this case.  (*Id.*)  Further, each of the

20   members of MaxLite's executive team travel to the West Coast office and have

21   spent significant time there in the recent past.  (Galleher Decl., ¶ 20.)  Several key

22   MaxLite executives, directors, and managers, including, but not limited to, Jay Lee

23   (General Manger for the Western Office), Pat Treadway (Direct of Product

24   Management), David Wyatt (Vice President of Sales, Western United States), and

25

26

27

28

MaxLite's Manager of Product Certifications, actually reside in the Central District of California and work full-time at MaxLite's West Coast office.  (*Id*. at ¶ 22.) Again, all of these individuals have knowledge of facts relevant to this dispute and are likely to be called as witnesses in this action.  (*Id*.)  MaxLite's connections to California are so substantial that the company's annual meeting for all of MaxLite's key stakeholders was held in California in 2015.  (*Id*. at ¶ 21.)

## III.   PROCEDURAL BACKGROUND

MaxLite filed its Complaint in this matter with the District of New Jersey on February 12, 2015.  (Doc. No. 1.)  Without notice of, or service in, MaxLite's action, ATG and the Individual Defendants filed their own Complaint challenging the non-compete agreements just one day later, on February 13, 2015, in the Superior Court of California, County of Orange.  (*ATG Electronics, Inc., et al. v. MaxLite, Inc., et al*., Case No. 30-2015-00771894-CU-OE-CJC.)  That action was subsequently removed to the Central District of California by MaxLite.  (Case No. 8:15-cv-00365-JVS-RNB.)  The California proceeding was stayed on March 19, 2015, pending resolution of the jurisdictional issue in this matter.  (Central Dist. Doc. No. 12.)

ATG and the Individual Defendants jointly filed their initial Motion to Dismiss for lack of jurisdiction with this Court on March 12, 2015.  (Doc. No. 17.)

1

2

3

MaxLite filed its Opposition to the Motion on March 23, 2015.  (Doc. No. 20.)  The Defendants filed their Reply Brief on April 13, 2015.  (Doc. No. 37.)

4

5

6

7

8

9

10

11

12

13

The Motion to Dismiss came before this Court on April 21, 2015, and was heard by the Honorable Susan D. Wigenton.  The Court issued its Order on the Motion to Dismiss on April 29, 2015.  Therein, Judge Wigenton denied the Motion to Dismiss with respect to the Individual Defendants; however, with respect to ATG, the Court found that "Plaintiff has not presented sufficient evidence to meet its burden of showing that Defendant ATG has contacts with the State of New Jersey sufficient for this Court to exercise *in personam* jurisdiction over ATG." (Doc. No. 62.)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Giving MaxLite one last chance to demonstrate to the Court that ATG has sufficient contacts with New Jersey, the Court held its ruling as to ATG in abeyance and allowed limited jurisdictional discovery.  Specifically, the Court granted the parties each the right to propound seven written interrogatories, 10 requests for production of documents, and 10 requests for admissions.  (Doc. No. 84.)  The Court also allowed each party to take two depositions.  (*Id*.)  Since the previous Motion to Dismiss, MaxLite and ATG have propounded written discovery and MaxLite has taken the deposition of ATG, through its President Nick Ni, and Individual Defendant Sophia Galleher.  While this discovery has been ongoing, the Central District of California action has been stayed.  (Central Dist. Doc. No. 12.)

28

1

2

3

## IV.   LEGAL ARGUMENT

### A.   The Court Should Not Exercise Personal Jurisdiction Over ATG

The Due Process Clause of the Fourteenth Amendment restricts a federal district court from asserting personal jurisdiction over a nonresident defendant who does not have certain "minimum contacts" with the forum state such that the exercise of personal jurisdiction comports with the "traditional notions of fair play and substantial justice." *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n.*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Moreover, a federal district court may only exercise personal jurisdiction over a nonresident defendant to the extent authorized by the law of that state. Fed. R. Civ. P. 4(k); *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014).

To comport with the standards of due process, it is well-settled that a Federal District Court sitting in New Jersey may only exercise personal jurisdiction over a nonresident defendant through one of two means: (1) general jurisdiction (i.e., when the defendant's activities in New Jersey are such that an exercise of personal jurisdiction over the defendant in this forum is proper as to all matters); or (2) specific jurisdiction (i.e., when the claim at issue directly arises out of the defendant's contacts or conduct within New Jersey). *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007); *Peterson v. HVM LLC*, No. 14-1137, 2016 U.S. Dist. LEXIS 27964, *9-10 (D.N.J. Mar. 3, 2016). Consequently, if a

nonresident defendant raises a challenge to jurisdiction based on insufficient contacts with the forum, the burden of proof shifts to the plaintiff to show with "reasonable particularity" that either (1) the defendant has "continuous and systematic" contacts with the forum state (i.e., general jurisdiction); or (2) the particular cause of action sued upon arises from the defendant's activities within the forum state (i.e., specific jurisdiction). *Helicopteros*, 466 U.S. at 416.

Shortly after MaxLite filed its Complaint against ATG, ATG challenged MaxLite's efforts to force ATG to defend itself in New Jersey.  In April of 2015, this Court found that "Plaintiff has not presented sufficient evidence to meet its burden of showing that Defendant ATG has contacts with the State of New Jersey sufficient for this Court to exercise *in personam* jurisdiction over ATG."  (Doc. No. 62.)  Rather than immediately dismiss ATG from this action, the Court graciously gave MaxLite the opportunity to conduct discovery and demonstrate that the Court's finding was in error.  Now, after nearly a year, MaxLite still cannot satisfy its burden of proving that the Court should exercise personal jurisdiction over ATG under either a general or specific jurisdiction analysis.  This is because, simply stated, all MaxLite's discovery has done is confirm that ATG's contacts with New Jersey are, at best, incidental.  Accordingly, ATG lacks the minimum contacts necessary for the Court to exercise personal jurisdiction.

1

2

3

### 1.　General Jurisdiction Over ATG Is Not Proper Because ATG Is Not "At Home" In New Jersey

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

A court may only assert general jurisdiction over a defendant if that defendant's contacts with the forum state are sufficiently "continuous and systematic" so as to render it essentially "at home" in the forum.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011).  Because general jurisdiction subjects a defendant to the court's authority for *any* claim, even if unrelated to the defendant's activities in the forum, this is a "rigorous burden [that] ensures the fairness of treating a non-resident identically to a resident in terms of amenability to suit in the jurisdiction."  *Giangola v. Walt Disney World Co.*, 753 F. Supp. 148, 154 (D.N.J. 1990).  A corporate defendant is regarded as "at home," and thus subject to general jurisdiction, in the state where the business is incorporated and where the corporation maintains its principal place of business.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014).

20

21

22

23

24

25

26

27

28

MaxLite's Amended Complaint fails to present even a colorable contention that ATG is subject to general jurisdiction in New Jersey.  The Amended Complaint acknowledges that ATG "is a California corporation with its principal place of business…[in] Rancho Cucamonga, California."  (Am. Compl., ¶ 6.)  The Amended Complaint proffers no evidence that would support the finding that ATG engages in a continuous and systematic course of business in New Jersey such that it would be proper to treat ATG identically to a resident for the purpose of

DEFENDANT ATG ELECTRONICS, INC.'S
BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

jurisdiction.  Indeed, this is because ATG has never maintained an office or other place of business in New Jersey, registered to do business in New Jersey, paid taxes in New Jersey, maintained bank accounts in New Jersey, or had any employees in New Jersey.  Consequently, the Court should not exercise general jurisdiction over ATG.

### 2.    Specific Jurisdiction Over ATG Is Not Proper Because ATG Lacks The Requisite Minimum Contacts With New Jersey

In the absence of a basis for general jurisdiction, the court may only subject a nonresident defendant to limited or specific jurisdiction in a given forum where the plaintiff's claims arise directly from the defendant's contacts or actions in the forum state.  *See Walden*, 134 S.Ct. at 1121; *Osteotech, Inc. v. GenSci Regeneration Sciences*, 6 F.Supp.2d 349, 354 (D.N.J. 1998).  To make this determination, the Third Circuit applies a three-part "minimum contacts" test.  *O'Connor*, 496 F.3d at 317.  The test requires courts to consider: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation arises out of or relates to those forum activities; and (3) if the prior two requirements are met, whether the exercise of jurisdiction otherwise comports with fair play and substantial justice.  *Id*.

The plaintiff bears the burden on the first two prongs of this test.  *See Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723

F.2d 357, 362 (3d Cir. 1983).  Only once a plaintiff proves that the defendant has the requisite minimum contacts with the forum does the burden shift to the defendant to present a "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *Hanson v. Denckla*, 357 U.S. 235, 251 (1958) ("Minimal contacts'… are a prerequisite to [the] exercise of power over [the defendant].").  As set forth below, MaxLite cannot show ATG has the minimum contacts with New Jersey necessary for the Court to exercise specific jurisdiction, but ATG can present numerous reasons why the Court's exercise of specific jurisdiction would be unreasonable.

> a.   MaxLite Cannot Show That ATG's Activities Have Been Purposefully Directed At New Jersey

A plaintiff requesting that the court assert specific jurisdiction over a nonresident defendant must first demonstrate that the defendant purposefully directed activities at the forum.  *Burger King*, 471 U.S. at 472.  This requirement ensures that jurisdiction is foreseeable in the forum and that a nonresident will not be haled into court solely as the result of "random, fortuitous, or attenuated" contacts.  *Id.* at 475.  ATG's contacts with New Jersey can be broken into two categories: (i) the byproduct of its national marketing and sales strategy and (ii) the individual defendants' non-compete agreements.  Neither of these contacts are

1    sufficient for this Court to exercise specific jurisdiction over ATG.

2        First, ATG's contacts with New Jersey through its national marketing and

3    sales strategy were *de minimis*.  As stated above, ATG advertises and markets its

4
5    products through international, national, and sometimes regional efforts.   These

6
7    efforts include advertising in nationally circulated magazines and publications,

8    maintaining a promotional website, sending press releases, and utilizing worldwide

9    email based promotions, none of which specifically target New Jersey.   These

10
11   efforts may also include attendance at international or national trade shows where,

12   incidentally, potential customers from New Jersey may attend.  On one occasion,

13   these efforts even included ATG's attendance at an international trade show the

14
15   year it was held in Atlantic City, New Jersey.  The combination of these efforts

16   naturally results in sales to customers in New Jersey.  However, over the last four

17   years, ATG's total sales to New Jersey were $146,041, or approximately 0.045% of

18
19   ATG's total revenue.  In sum, ATG's national marketing efforts and its *de minimis*

20   sales demonstrate that ATG's contacts with New Jersey have been nothing more

21
22   than random, fortuitous, and much too attenuated for the Court to find that ATG has

23   purposefully directed its activities in this forum.

24        Second, ATG's contacts with New Jersey through the individual defendants'

25   non-compete agreements is also too attenuated for the Court to find that ATG

26
27   purposefully directed its activities at the forum.  To demonstrate that a nonresident

28   defendant has the requisite minimum contacts, the plaintiff must demonstrate that

jurisdiction is based on contacts that the defendant <u>itself</u> establishes with the forum, and those contacts must in fact be <u>with the forum</u> and not just with the plaintiff or other persons who happen to reside in the forum. *Walden*, 134 S.Ct. at 1122 ("The plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). Relevant case law[9] demonstrates that MaxLite cannot make this showing.

For instance, the similarities between *Walden* and this matter show that ATG's decision to hire the Individual Defendants is not enough for the Court to exercise personal jurisdiction. *Walden* involved the tortious withholding of plaintiffs' money in Georgia while they were traveling home to Nevada. *Id.* at 1120. After considering the defendant's lack of contacts with the forum, the Supreme Court clarified its prior holding in *Calder v. Jones*, 465 U.S. 783 (1984)[10]

---

[9] United States Magistrate Judge Steve Mannion asked the parties to address four cases in this motion with respect to specific jurisdiction. Those cases are:

1. *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014);
2. *Radian Guaranty Inc. v. Bolen*, 18 F.Supp.3d 635 (E.D.Pa. 2014);
3. *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287 (3d Cir. 1996); and
4. *Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*, No. 10-cv-5321, 2014 U.S. Dist. LEXIS 65338 (D.N.J. May 13, 2014).

[10] *Calder* dealt with a libel claim against the National Inquirer magazine. *Walden*, 134 S.Ct. at 1123. There, the Supreme Court found that the defendant's use of California contacts to draft a story about a California resident that was then broadly published and circulated in California where it was read by thousands of other California residents showed that the conduct was tethered to the forum apart from

and found there was no basis for jurisdiction arising from the effects felt in the forum. *Walden*, 134 S.Ct. at 1124. Specifically, the *Walden* Court held that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 134 S.Ct. at 1123. The Supreme Court stated that to permit jurisdiction under such circumstances "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 134 S.Ct. at 1125. Moreover, the Supreme Court stated that it is not <u>plaintiff's</u> contacts with the forum that are decisive to a jurisdictional analysis—"[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. Therefore, the *Walden* Court found that the defendant lacked contacts with Nevada because his conduct was only directed <u>at the plaintiffs</u>, only caused happenstance effects in the forum, and that defendant's conduct was not tied to the forum in a meaningful way. *Id*. at 1125.

The findings of *Walden* are applicable to this matter. Here, ATG hired the three Individual Defendants. As stated above, ATG is located in California and has *de minimis* contacts with New Jersey. Moreover, none of the three Individual Defendants worked or resided in New Jersey at the time they were recruited, hired, or worked at ATG. Nevertheless, MaxLite will claim that ATG's choice to hire the

the connection to the plaintiff. *Walden*, 134 S.Ct. at 1123-1124. Thus, the Supreme Court determined jurisdiction was proper based on the effects felt in California, largely because of the nature of the tort of libel. *Id*. at 1123-1124.

Individual Defendants affected MaxLite in New Jersey.  The fact is, it did so solely because that is where MaxLite is incorporated.[11]  However, as shown in *Walden*, this would be improper.  This would impermissibly allow MaxLite to drive the jurisdictional analysis through its own contacts with New Jersey—not ATG's or the Individual Defendants.  *Walden*, 134 S.Ct. at 1125.  Moreover, hiring the Individual Defendants—even with their non-compete agreements—does not connect ATG to New Jersey in a meaningful way.     Therefore, ATG's decision to hire the Individual Defendants does not support a finding of special jurisdiction because that conduct was directed at the Individual Defendants in other forums, the effects of which were tangentially felt by MaxLite in New Jersey in an inconsequential way.

Under a similar analysis, the United States District Court for the Eastern District of Pennsylvania determined that an emerging competitor's decision to hire an employee with a forum selection clause in its non-compete agreement was insufficient to establish specific jurisdiction.     *Radian Guar., Inc. v. Bolen*, 18 F.Supp.3d 635, 644 (E.D.Pa. 2014).  There, the District Court applied the *Calder* effects test which states that specific jurisdiction is established where the plaintiff shows: (1) that defendant committed an intentional tort; (2) the plaintiff felt the "brunt of the harm" in the forum; and (3) the defendant's conduct was expressly

---

[11] The effects were entirely independent of the forum and would have been felt in any forum where MaxLite did business, including its West Coast office in California where two of the Individual Defendants worked.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

aimed at the forum.  *Id*. at p. 644; *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 256 (3d Cir. 1989).  It is this third requirement that "is critical to the effects test." *Radian*, 18 F.Supp.3d at 644.  It is not enough that a defendant targets behavior at a plaintiff that it knows is located in the forum; "[t]he defendant must manifest behavior intentionally targeted at and focused on the forum for *Calder* to be satisfied."  *Id*. (quoting *IMO Indus*., 155 F.3d at 265).  Applying this rationale, the *Radian* Court stated that mere knowledge that the employer was headquartered in a state and would thereby feel the effects of the conduct in that state was "insufficient to meet the 'expressly aimed' standard."  *Id*. at 645.  As a result, the *Radian* Court found the employment relationship was not tied to the forum at issue, and thus, jurisdiction was improper because the defendants had neither met with nor recruited the employee in the forum state and had hired her to work in another state and serve customers in another region.  *Id*.

Like the plaintiff in *Radian*, MaxLite cannot satisfy the *Calder* effects test. MaxLite cannot identify any of ATG's alleged tortious conduct that was expressly aimed at New Jersey.  Like *Radian*, ATG's mere knowledge that MaxLite was headquartered in New Jersey and may tangentially feel the effects of hiring the Individual Defendants does not satisfy the "expressly aimed" standard.  *Id.* at 645. Moreover, all of the facts surrounding ATG's employment relationship with the Individual Defendants show that the employment relationship was not focused on New Jersey.  Those facts include that ATG neither met with nor recruited the

Individual Defendants in New Jersey and that the Individual Defendants were not hired to work in New Jersey or to serve a New Jersey market. Thus, like *Radian*, ATG's decision to hire the Individual Defendants is not sufficiently aimed at New Jersey and, as such, MaxLite cannot satisfy the *Calder* effects test.

In sum, ATG's *de minimis* incidental contacts with New Jersey are not enough for MaxLite to prove that ATG purposefully directed activities at New Jersey. Consequently, MaxLite cannot satisfy the first prong of the minimum contacts analysis and the Court should not exercise special jurisdiction over ATG.

> b.  MaxLite Cannot Show That Its Claims Arise Out Of ATG's Incidental Contacts With New Jersey

The second prong of the minimum contacts analysis requires the plaintiff to show that its claims "arise out of or relate to" the activities of the nonresident defendant in the forum state. *Helicopteros,* 466 U.S. at 414. Because the Supreme Court has not clarified the degree of relatedness required, the Appellate Circuits have adopted their own tests. *O'Connor*, 496 F.3d at 318. Relevant here, the Third Circuit methodology begins with but-for causation, but then aims to avoid the risks of over-inclusive findings of jurisdiction by looking to the reciprocity of the specific contacts. *Id.* at 323. The relatedness prong is therefore intended to maintain balance and to ensure that jurisdictional exposure is "closely tailored" to ensure foreseeability. *Id.* Thus, the Third Circuit approach "requires a closer and

more direct causal connection" than that provided by but-for causation. *Id.* at 321, 323.

Here, MaxLite has asserted four causes of action against ATG in the Amended Complaint.[12]  In support of its claims, MaxLite alleges that ATG (i) induced the Individual Defendants to breach their employment agreements; (ii) interfered with unspecified contracts with MaxLite's unspecified vendors, suppliers, manufacturers, customers, sales representatives, and distributors in unspecified locations; and (iii) lured away MaxLite's unspecified customers that are also located in unspecified locations.  (Am. Compl., ¶¶ 111, 117, 122, 123, 127.)

Even taking MaxLite's allegations as true, all of ATG's alleged actions must have occurred outside of New Jersey.  ATG conducts its business in the United States entirely from its office in Rancho Cucamonga, California.  All contacts with the Individual Defendants regarding their employment with ATG were conducted while both the Individual Defendants and ATG were in California, with the exception of Kim who communicated with ATG at various times from Arizona and Georgia as well.  (ATG's Resps. to First Set of Jurisdictional Interrogatories, Resp. to Interrogatory No. 2.)  The Individual Defendants were hired by ATG to work in California or with their work activities directed at California.

---

[12] Specifically, those causes of action include: (i) tortious interference of contractual relationships, against all defendants; (ii) tortious interference of present and prospective business advantage, against all defendants; (iii) civil conspiracy, against all defendants; and (iv) for unjust enrichment, against ATG.  (Am. Compl., ¶¶ 102-129.)

Moreover, MaxLite has never connected any of its allegations with New Jersey. In order to meet the Third Circuit's requirement for relatedness sufficient for jurisdiction in this forum, MaxLite must show an even closer and more direct causal connection than but-for causation between ATG's contacts with this forum and the resulting harm alleged. *See O'Connor*, 496 F.3d at 321, 323. MaxLite can only point to ATG's nationwide marketing efforts, participation in a trade show that happened to be held in Atlantic City, and sales to New Jersey customers amounting to 0.045% of the total sales. While these facts evidence limited contacts with New Jersey, they are in no way the but-for cause of MaxLite's alleged harm, and they do not make it foreseeable that ATG could be haled into this forum for these unrelated claims.

MaxLite's only hope to establish that ATG's actions were the but-for cause of MaxLite's alleged harm in New Jersey is to rely on the Individual Defendants' non-compete agreements. A third party may be held to an arbitration or forum selection clause agreed to by other parties when the alleged conduct of the non-party is so "closely related to the contractual relationship" that being bound is foreseeable. *Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc*., No. 10-cv-5321, 2014 U.S. Dist. LEXIS 65338, *9-10 (D.N.J. May 13, 2014). However, "The Third Circuit is reluctant to enforce a contractual clause against a non-party, unless 'accepted principles of agency or contract' make it appropriate." *Id.* at *9 (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin*

*Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001); *see also Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1296-1297.

In *Dayhoff*, the Third Circuit considered the applicability of arbitration and forum selection clauses to non-parties accused of, among other things, tortious interference with various agreements between a United States distributor and an Italian candy business.  86 F.3d at 1293.  Relying on Third Circuit precedent affirmed by the Supreme Court, the Third Circuit reversed the District Court's finding that the non-parties' conduct was "closely related to the contractual relationship" sufficient for the forum selection clause to apply to all defendants.  *Id.* at 1295-1296 (citing *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503 (3d Cir. 1994) and *First Options of Chicago, Inc. v. Kaplan*, 115 S.Ct. 1920 (1995)).  The court held that the agreements could only "be enforced by the signatories to those agreements."  *Id.* at 1296.  While the court suggested that a different outcome might result if the non-party to be bound were a beneficiary, agent, or employee of a consenting principal, under the circumstances presented where there was no agreement between the distributor and the confectioner's successor in interest, enforcement of the arbitration and forum selection clauses was rejected by the court.  *Id.* at 1297.

This Judicial District recently reached a similar conclusion and found that a forum selection clause was not enforceable against a non-party to the agreement.  *Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*, No. 10-cv-5321,

2014 U.S. Dist. LEXIS 65338 (D.N.J. May 13, 2014.)   In *Schiffer*, a New York purchaser of a defective laser printer attempted to enforce a New Jersey forum selection clause in its warranty agreement with the United States distributor for the Italian-made printer.  *Id*. at *1-2, 9.  Relying on authority from the Third Circuit, this District held that the Italian company was not bound by the agreement.  *Id*. at *8-9.  In reaching its conclusion, the court noted that "[o]rdinarily, a party not a signatory to a contract cannot be bound by terms of that contract."  *Id*. at * 9.  However, the non-party may be bound only where it is a third party beneficiary or closely related to the contractual relationship.  *Id*. at *10.  Looking specifically at when a party is sufficiently "closely related to the contractual relationship" that it is foreseeable that the non-party will be bound by the contract as well, the court declared, "[t]he 'closely related' exception is a narrow one."  *Schiffer*,  2014 U.S. Dist. LEXIS 65338 at *13.

> Courts *in this district* typically find that non-signatories
> are "closely related" *only* in the context of an individual
> non-signatory who is employed by—or the principal of—
> a corporate entity which is a signatory.

*Id*. (emphasis added).   Under the circumstances, the court concluded that the relationship between the Italian manufacturer and the United States Distributor did

not fall within the exception, and thus, the defendant was not bound by the forum selection clause.  *Id.*

Here, the conditions for the extraordinary application of a contractual provision to a party who neither signed nor consented to the provision in this District are not met.  It is undisputed that ATG was not a signatory to the Individual Defendants' non-compete agreements.  It is also undisputed that ATG is not a third party beneficiary of these agreements.  Moreover, it is undisputed that ATG is not an agent or employee of MaxLite or any of the Individual Defendants.  Thus, pursuant to *Schiffer* and *Dayhoff*, ATG is not closely related to the contractual relationships between MaxLite and the Individual Defendants.  Therefore, the imposition of the Individual Defendants' non-compete agreements' forum selection clauses to ATG is impermissible.[13]  Therefore, because MaxLite has not and/or

---

[13] MaxLite is likely to argue that the Eastern District of Pennsylvania in one case required a much more lenient analysis than either this District or the Third Circuit requires to find a sufficiently close relationship for jurisdiction over a non-party based on a forum selection clause.  In *Radian* (also discussed above), the court found an alternative basis for jurisdiction over certain of the defendants because the court determined it was foreseeable that the defendants would be bound by the forum selection clause.  According to the court, enforcing the forum selection clause was foreseeable because the non-party who hired the employee from a competitor received written notice from the employee that she had signed a restrictive covenant, reviewed the employment agreement, and recognized the risks of hiring the employee prior to doing so.  *Id.* at 647.  This finding by the Eastern District of Pennsylvania is an outlier that is not binding on this court.  Indeed, this basis for determining foreseeability sufficient to merit binding a non-party to a contract it did not agree to is not supported by decisional law from the Supreme Court, the Third Circuit, or this District.  Case law from Third Circuit and the District of New Jersey demonstrates that a high bar is set in order to allow the

DEFENDANT ATG ELECTRONICS, INC.'S
BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

cannot show that its claims arise out of ATG's incidental contacts with New Jersey, MaxLite cannot satisfy the second prong of the minimum contacts analysis and the Court should not exercise special jurisdiction over ATG.

                c.      <u>It Would Be Unreasonable To Exercise Specific Jurisdiction Over ATG In New Jersey</u>

While MaxLite cannot meet its burden to demonstrate ATG has the requisite minimum contacts with New Jersey, the reasonableness inquiry further establishes that this Court should not exercise specific jurisdiction.  The weaker the plaintiff's showing as to the first two prongs of the minimum contacts test, the less a defendant need show as to unreasonableness to defeat jurisdiction.  *See Burger King*, 471 U.S. at 477.  Courts commonly state that a determination of whether it is reasonable to exercise personal jurisdiction depends on whether requiring the nonresident defendant to defend a suit in a forum state comports with "fair play and substantial justice."  *See World-Wide Volkswagen*, 444 U.S. at 292.  This requires courts to consider the following factors: (i) the burden on the defendant; (ii) the

---

enforcement of a contractual clause against a non-signatory party.  The Third Circuit has rejected more expansive decisions from other Circuits and has clarified the limited circumstances under which the drastic imposition on a party who has neither bargained for, nor consented to, a provision in a contract is proper.  *See Dayhoff*, 86 F.3d at 1296.  This court should similarly reject the adoption of an analysis that has never been adopted by either the District of New Jersey or the Third Circuit.

DEFENDANT ATG ELECTRONICS, INC.'S
BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

forum state's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining convenient and effective relief; (iv) the interstate judicial system's interest in efficient resolution of controversies; and (v) the shared interest of the several states in furthering fundamental substantive social policies.  *World-Wide Volkswagen*, 444 U.S. at 292.

Subjecting ATG to suit in New Jersey, a forum for which it has not actively reached out to, would not "comport with 'fair play and substantial justice.'"  *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Company v. Washington*, 326 U.S. 310, 320 (1945)).  Requiring ATG to defend this suit in New Jersey would place an inordinately high burden on ATG, especially when compared to the burden on MaxLite to defend in the Central District of California.  ATG operates entirely from the West Coast of the United States and lacks contacts with the State of New Jersey.  ATG and its employees do not regularly travel to New Jersey, and in fact, ATG has "almost no presence in the North East."  (Kim Decl., ¶ 15.)  It would be unduly burdensome to require ATG to defend a suit across the country, particularly when MaxLite maintains a bi-coastal presence, including a primary business office within the jurisdiction of the Central District of California.  (Cai Decl., ¶¶ 13, 14.)  Additionally, two of the three Individual Defendants lived in California, and the other Individual Defendant maintains significant contacts with California.

In addition, the witnesses and evidence expected to be called on in this matter are all located in California.  All of ATG's employees and business records are

located in California, and all of the MaxLite employees that might serve as witnesses in this case either reside in California, or make regular trips to California for business.   Further, as indicated by the Individual Defendants in their Declarations, the majority of MaxLite's records as related to this matter and the Individual  Defendants' employment with MaxLite are located in California as well.

The sum of all of these facts shows that this Court's exercise of jurisdiction over ATG in this forum would not comport with fair play and substantial justice. As demonstrated above, the only forum with the requisite minimum contacts for all of the parties to this suit is the Central District of California.  Accordingly, ATG respectfully requests that this Court not exercise specific jurisdiction and dismiss the Amended Complaint for lack of personal jurisdiction.

**B.** **Alternatively, The Court Should Transfer This Case To The Central District Of California**

Even if venue and jurisdiction were otherwise proper, 28 U.S.C. §§ 1404(a) and 1406(a) authorize this Court to transfer the case to the Central District of California if doing so serves justice.  Section 1404(a) states, in relevant part: "[for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Likewise, section 1406(a) provides that:

"[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "[T]he purpose of [section 1404(a)] is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (superseded by statute on other grounds) (internal citation omitted). Here, it is not a matter of preference, but rather one of justice, in that MaxLite should not be allowed to harass ATG by haling it into court across the country in New Jersey, a forum which bears no relation to the alleged claims.

In determining whether a transfer is appropriate, courts examine factors that relate to both the private interests of the parties and witnesses as well as the interests of the public. *See Rappoport v. Steven Spielberg, Inc*., 16 F. Supp. 2d 481, 499 (D.N.J. 1998) (explaining that "the contentions of the plaintiff and the relevant private and public interests must be considered and balanced" when evaluating a motion to transfer). Also, the moving party must show that the proposed alternate forum is not only adequate but also more convenient than the present forum. *Ricoh Co. v. Honeywell, Inc*., 817 F. Supp. 473, 480 (D.N.J. 1993). As set forth below, a transfer to the Central District of California would be appropriate.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.      This Lawsuit Could Have Been Brought In The Central District Of California**

To meet its burden, a defendant seeking transfer must establish that an adequate alternative forum exists for the dispute. *Rappoport*, 16 F. Supp. 2d at 499. "Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction," unless "the remedy offered by the other forum is clearly unsatisfactory." *Id*. (internal citation omitted).

Here, all of the parties are properly subject to personal jurisdiction of the Central District of California.  MaxLite's West Coast office is located within the Central District of California's jurisdiction.  ATG principal place of business is located in the Central District of California.  Steedly and Galleher were or are residents in the Central District of California.  Kim is also subject to the jurisdiction of the California courts as "all of his work" for ATG—and much of his work for MaxLite "has been directed to the California region." (Kim Decl., ¶ 16.)  Further, Galleher, Kim, and Steedly have all provided sworn declarations conceding that "California is the appropriate forum for this dispute."  (*Id*., ¶ 19; Galleher Decl., ¶ 15; Steedly Decl., ¶ 21.)  Accordingly, jurisdiction over all parties in this matter is proper in the Central District of California.

In addition, the California Action—concerning the same parties and subject matter as the New Jersey Action—is already pending in the Central District of California.  The California Action was initiated by the Defendants in California

33

State Court, seeking a judicial declaration of their rights under the non-competition provisions in the Employee Agreements in light of California Business and Professions Code section 16600 and California's strong public policy against the enforcement, on its citizens, of post-termination covenants not to compete. MaxLite later removed the California Action to the Central District of California based on diversity jurisdiction.

Because there is no question that the Central District of California has jurisdiction over the parties to this case, it serves as an adequate alternative forum for this dispute.

## 2.   Private Interest Factors Warrant Transfer To The Central District Of California

In determining the propriety of a section 1404(a) transfer, there is a presumption in favor of the plaintiff's choice of forum.  However, the plaintiff's choice of forum is not conclusive—it "is simply a preference; it is not a right." *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473 at 480 (D.N.J. 1993).  In situations where the choice of forum by a plaintiff has little connection with the operative facts of the lawsuit, the plaintiff's forum deference is "curbed."  *Rappoport*, 16 F. Supp. 2d at 500; *see Newcomb v. Daniels, Saltz, Mongeluzzi, & Barrett*, 847 F. Supp. 1244, 1246 (D.N.J. 1994) ("when the central facts of a lawsuit occur outside the forum state, a plaintiff's selection of that forum is entitled to less deference.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

        More critical to the private interest evaluation is the court's consideration of "the convenience of the available districts with regard to the sources of proof, namely the witnesses and documentary evidence."  *Rappoport*, 16 F. Supp. 2d at 499.  As mentioned above, here, the factor relating to the availability of witnesses weighs heavily in favor of transferring the case to the Central District of California. ATG and its principals are all located within California; Steedly and Galleher were California residents; and Kim has asserted that California is the appropriate forum to resolve this dispute.  (Kim Decl., ¶19.)  MaxLite's West Coast office is within the Central District of California, and the majority of non-party witnesses that will be expected to testify in this case consist of many of the employees that worked with Steedly and Galleher at that West Coast office.  (Galleher Decl., ¶¶ 19, 22; Steedly Decl., ¶ 25; Cai Decl., ¶ 14.)   Indeed, in support of its preliminary injunction filing in this case, MaxLite submitted the declarations of three MaxLite employees—Jay Rodriquez, Jay Lee, and Todd Kim—all of which work at MaxLite's West Coast office and live in California.[14]   (Doc. Nos. 5-3, 5-4, 5-5.) Further, transferring the lawsuit to the Central District of California would not be an undue burden for any potential witness of MaxLite's New Jersey employees as each of them regularly travels to MaxLite's West Coast office as part of the

26
27
28

---

[14] In addition to its submission of the three California witness declarations, MaxLite also submitted a declaration from a potential witness living in Massachusetts. (See Doc. No. 5-6.)  It is noteworthy that MaxLite did not identify or submit declarations of any potential witnesses located in New Jersey.

DEFENDANT ATG ELECTRONICS, INC.'S
BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

ordinary course and scope of their employment. (Galleher Decl., ¶¶ 19-20; Steedly Decl., ¶¶ 22-23.)

Similarly, the factors relating to the ease of access to sources of proof weigh heavily in favor transferring the case to the Central District of California. This case is expected to be document intensive and involves allegations of tortious interference with contracts as well as the theft of certain confidential and proprietary information, including "customer lists, price lists, recent research and technology development…." (*See, e.g*., Am. Compl., ¶¶ 80-88.)  Taking MaxLite's allegations at face value, the proprietary materials, including any reasonably related items and materials, are likely either in the possession of ATG in California or the Individual Defendants in California or Georgia.   In any event, the items and materials are in the jurisdictional reach of the Central District of California. Alternatively, because none of the Individual Defendants had worked at MaxLite's East Coast office for some time before their employment at MaxLite terminated, it is not reasonable to expect that a large volume of relevant materials are located at the East Coast office.   Also relevant are MaxLite's increasing connections to the State of California, including its holding of its 2015 annual meeting in California. (Galleher Decl., ¶ 21.)   All of these facts support a transfer of the case to the Central District of California.

Because the witnesses and materials are either in, or have substantial connection to California, the private interest factors weigh heavily in favor of transfer to the Central District of California.

**3.** **Public Interests Factors Warrant Transfer To The Central District Of California**

The public interest factors relevant to a determination of the propriety of transfer include:

> [T]he administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home;" the interest in having a trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems and conflicts of laws or the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Rappoport*, 16 F. Supp. 2d at 500 (quoting *Lony v. E. I. Du Pont de Nemours & Co.*, 886 F.2d 628, 640 (3d Cir. 1989)).

Here, the crux of MaxLite's Amended Complaint—and the only issue currently pending in the California Action—concerns MaxLite's attempt to enforce the non-compete provisions in each of the Employee Agreements by enjoining the Individual Defendants from working for ATG or any other competitor of MaxLite. As stated above, California has a strong interest in protecting its citizens from restrictive covenants of this nature.   California Business and Professions Code section 16600 provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."   The California legislature has found that this type of contractual restriction on California residents is of great importance to California, not equally matched by New Jersey.  An important public interest factor is the desire to have the case tried before judges familiar with the applicable law. *Hudson United Bank v. Chase Manhattan Bank, NA*, 832 F. Supp. 881, 888 (D.N.J. 1993).  Because California has a strong interest in protecting its citizens from these types of restrictive covenants, the public interest factor weighs in favor of transferring the case to the Central District of California.

Public interest also favors transfer to California because of the relative disparity between the parties that cannot be ignored.  The Individual Defendants are individuals that are currently forced to defend themselves from their former employer, a large, bi-coastal corporation, in the employer's state of incorporation.

DEFENDANT ATG ELECTRONICS, INC.'S
BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT

1
2
3

However, because MaxLite makes its home in both New Jersey and California, there is no inconvenience to MaxLite in having to litigate the case in California.

4
5
6
7
8

Both private interest and public interest factors weigh in favor of a California forum.   Accordingly, if the New Jersey Action is not dismissed, then the case should be transferred and consolidated with the action in the Central District of California.

9
10
11

V.   **CONCLUSION**

12
13
14
15

For the foregoing reasons, ATG respectfully requests that the Court dismiss the Verified Complaint or, in the alternative, transfer the action to the Central District of California.

16
17

Dated:  April 8, 2016                                    BRODY AND ASSOCIATES, LLC

18
19
20

By:     /s/
ALEXANDER FRIEDMAN
Attorney for Defendant
ATG ELECTRONICS, INC.

21
22
23
24
25
26
27
28

DEFENDANT ATG ELECTRONICS, INC.'S
BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT