**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MAXLITE, INC., a New Jersey Corporation, f/k/a SK AMERICA, INC., d/b/a MAXLITE, | Case No.: 2:15-CV-01116-JMV-JBC |
| *Plaintiff,* | Civil Action |
| v. | |
| ATG ELECTRONICS, INC., JAMES D. STEEDLY, SOPHIA C. GALLEHER, and MATTHEW KIM, | |
| *Defendants.* | |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT, ATG ELECTRONIC, INC.'S, MOTION TO DISMISS THE AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

---

**COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP**
Peter S. Pearlman, Esq.
Joseph B. Brown, Esq.
Kelly M. Purcaro, Esq.
Erika R. Piccirillo, Esq.
Park 80 West - Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Tel.: (201) 845-9600
*Attorneys for Plaintiff*

*On the Brief:*
   Erika R. Piccirillo, Esq.
   Kelly M. Purcaro, Esq.

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT..............................................1

STATEMENT OF FACTS.................................................4

PROCEDURAL HISTORY................................................21

LEGAL ARGUMENT....................................................21

    I.   POINT I...................................................... 21

        THIS COURT SHOULD DENY ATG'S MOTION TO DISMISS

        A. Standard of Review for Motion to Dismiss
           Pursuant to Fed. R. Civ. P. 12(b)(2)..........21

        B. The District of New Jersey Has Specific
          Personal Jurisdiction Over ATG.................22

           (1) ATG Has Purposefully Directed its
               Activities at New Jersey..................23

           (2) This Litigation Arises Out of and
               Relates to ATG's Contacts
               with New Jersey...........................27

               a. ATG's Conduct Satisfies
                  the Calder Effects Test. ..........27

               b. Specific Jurisdiction over
                  ATG by this Court was
                  eminently foreseeable
                  and comports with Fair
                  Play and Substantial Justice ......30

        C. The District of New Jersey Has General
           Jurisdiction Over ATG...........................36

   II.     POINT II.....................................................38

        ALTERNATIVELY, THIS COURT SHOULD AGAIN DENY ATG'S
        MOTION TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF
        CALIFORNIA

CONCLUSION.......................................................41

**TABLE OF AUTHORITIES**

**Cases**

<u>PRELIMINARY STATEMENT</u>

Plaintiff, MaxLite, Inc. ("MaxLite" or "Plaintiff"), submits this Memorandum of Law in opposition to Defendant ATG Electronics, Inc.'s ("ATG") renewed Motion to Dismiss the Amended Complaint for lack of personal jurisdiction or, in the alternative, Motion to Transfer ("Motion to Dismiss") (ECF Doc. No. 138).

This action arises out of ATG's solicitation and hiring of defendants, James Steedly ("Steedly"), Matthew Kim ("Kim"), and Sophia Galleher ("Galleher") (collectively, "Employee Defendants"), all former employees of MaxLite, despite knowing that each had entered into a written Proprietary Information Agreement ("Employee Agreement") with MaxLite, which contained a non-compete provision, a New Jersey choice of law provision and a forum selection provision. ATG not only knew about and reviewed the Employee Agreements prior to hiring the Employee Defendants, it paid a New Jersey attorney to review and analyze the Employee Agreement including, particularly, the non-compete, choice of law and forum selection clauses.

This Court has specific personal jurisdiction over ATG because, among other things: (1) ATG solicited the Employee Defendants while they were still employees of MaxLite, a New Jersey based company; (2) ATG's conspiracy to interfere with the Employee Agreements began when ATG initiated its solicitation of Steedly

while Steedly was living in and working in New Jersey for MaxLite; (3) ATG's conspiracy to interfere with the Employee Agreements continued when it contact Galleher in June or July of 2014, while Galleher was living in and working in New Jersey for MaxLite; (4) ATG hired the Employee Defendants away from MaxLite to further ATG's business in New Jersey in competition with MaxLite; (5) ATG used Galleher to develop an aggressive marketing strategy and campaign to exploit and target New Jersey's lighting industry in competition with MaxLite; (6) as part of its efforts to grow its market share in New Jersey, ATG used Galleher's knowledge about the lighting industry which she learned as an employee of MaxLite in New Jersey; (7) ATG hired sales representatives, with the assistance of Galleher, specifically to ensure the development of ATG's business and to grow its sales volume throughout the entire State of New Jersey in competition with MaxLite; and (8) the Employee Agreements which ATG successfully solicited the Employee Defendants to breach--Agreements which are at the heart of this litigation--contain both forum selection and choice of law provisions requiring that any litigation arising out of the breach of those Agreements be litigated in New Jersey under New Jersey law. Thus, it was not only foreseeable but certain that ATG's conduct would result in litigation in New Jersey.

It was so foreseeable in fact, that as part of its inducement of the Employee Defendants, ATG promised to, and did, fund any

resultant litigation between MaxLite and the Employee Defendants based upon the Employee Agreements (until it tired of doing so and fired the Employees Defendants).

This Court has general personal jurisdiction over ATG because of its continuous and substantial contacts with New Jersey. ATG has multiple customers, distributors, vendors, and sales representatives who are located and/or do substantial business in New Jersey. Despite ATG's recently discovered attempts to conceal its connections with New Jersey--among other things by redirecting shipments of its products to New York for further shipment to New Jersey (essentially "laundering" the shipments)--Plaintiff has uncovered substantial evidence to show that ATG's presence in this state is much, much more that "*de minimus*", as ATG argues. (ATG Br., p. 3).

Furthermore, this Court already denied ATG's motion to transfer venue to the Central District of California. This Court found that all of the factors previously argued--which ATG now reargues without providing any additional facts--weighed heavily in favor of New Jersey rather than California and, therefore, concluded that there was no basis upon which to transfer this matter. But even were this Court to reconsider ATG's transfer motion, it should come to the same conclusion reached by Judge Wigenton who already reviewed the facts and arguments submitted by Defendants and determined that this Court has jurisdiction over

both the Employee Defendants and the Employee Agreements. (*See* April 29, 2015 Order Denying Defendants Motion to Dismiss or Transfer at ECF Doc. No. 63; and see April 29, 2015 hearing transcript at Purcaro Dec. Ex. E, T.77:23-80:16). As the litigation by MaxLite against the Employee Defendants will proceed in this Court, it would be contrary to strong public policy (not to mention utterly irrational) to enter an order, the result of which would be to foster parallel litigation involving the same issues, witnesses and documents in the Central District of California. Therefore, this Court should again deny ATG's alternative motion to transfer venue to the Central District of California.

<u>**STATEMENT OF FACTS**</u>

Plaintiff relies upon the facts set forth in Plaintiff's Verified Complaint (ECF Doc. No. 1),[1] the previously filed declarations of Yon W. Sung (ECF Doc. No. 20-3, "Sung Dec."), Kevin R. McGroarty (ECF Doc. No. 20-2, "McGroarty Dec.") Caroline Nagy (ECF Doc. No. 38-4, "Nagy Dec."), John E. Dodge (ECF Doc. No. 38-3, "Dodge Dec."), Ludimer A. Budzyn, Esq. (ECF Doc. No. 38-2, "Budzyn Dec."), and the Declaration of Kelly M. Purcaro ("Purcaro Dec.") submitted herewith and the exhibits attached thereto. Plaintiff also relies upon the March 29, 2016 deposition transcript

---

[1] MaxLite's Amended Complaint (ECF Doc. No. 87) sets forth the same factual allegations as the Verified Complaint (ECF Doc. No. 1) with only the addition of the paragraphs of the Employee Agreements dealing with attorneys' fees and additional requests for relief in the form of attorneys' fees against each of the Employee Defendants.

of Sophia C. Galleher, previously filed at ECF Doc. No. 138-8 ("Galleher Tr.").

## MaxLite

MaxLite is a New Jersey company, incorporated and headquartered in New Jersey, and engaged in the business of creating, fabricating, and selling energy efficient lighting products for over two decades. (ECF Doc. No. 87, at ¶¶ 1, 10, and 12). The substantial portion of MaxLite's business is conducted in New Jersey. Id. at ¶ 23. While MaxLite has a facility located in California, all of its corporate decisions are made at its headquarters in West Caldwell, New Jersey. (Sung Dec. ¶ 4 and ¶ 9). 100% of MaxLite's marketing, IT work, accounting, and financing work is performed in New Jersey. Id. at ¶ 9. At least 90% of MaxLite's product management and product engineering work, customer service work, and warranty service work also is performed in New Jersey. Id. While a minority of employees--most of whom are uninvolved in this matter--work in MaxLite's California facility, an overwhelming majority (more than 70%), including its key leadership positions, are located in New Jersey. Id. at ¶ 9. By contrast, MaxLite's California facility is responsible for less than 10% of its product development, testing, and certification, and less than 16% of its total sales. Id. at ¶ 23.

The vast majority of MaxLite's employees work at its New Jersey headquarters, including its key management team. Yon Sung,

5

MaxLite's President and CEO, is a resident of New Jersey and works at MaxLite's headquarters in West Caldwell, New Jersey. Sung Dec. at ¶ 2, 4. Contrary to ATG's assertion, Todd Kim, MaxLite's General Manager, does not work in California; he is a resident of New Jersey and is stationed in MaxLite's New Jersey headquarters. Id. at ¶ 24.   MaxLite's Director of Human Resources, Caroline Nagy, is also a resident of New Jersey and works at MaxLite's headquarters in New Jersey.   Additionally, MaxLite's patent attorney is located in New Jersey and admitted to practice law in New Jersey. (Budzyn Dec.¶ 1-2). Finally, John E. Dodge, the IT forensic investigator that consulted on this case for MaxLite is also a resident of New Jersey and works in New Jersey at ACE IT. (Dodge Dec. ¶2-6).

### Employee Defendants

The Employee Defendants are subject to the jurisdiction of this Court in connection with the instant litigation.   On April 21, 2015, Judge Wigenton denied Defendants' motion to dismiss or to transfer this litigation to California, and rejected Defendants' argument that this Court should apply California law as to the claims against the Employee Defendants, reasoning that: "there does not appear to be any question, certainly not as the complaint is pled, that they were hired by MaxLite from New Jersey . . . [and] from a general jurisdictional standpoint, there is no question that at the time these agreements were signed and

executed, that they were in fact aware that New Jersey law would apply." (Purcaro Dec. Ex. E, at Tr. 78:10-13; 78:19-24.). Judge Wigenton held, "as it relates to the contracts, themselves, the employment contracts, and the choice of forum, it is, for the Court's purposes, certainly succinctly and clearly stated that New Jersey is the appropriate jurisdiction for the matter." (Id. at Tr. 79:03-06.)

Prior to, and as a condition of, their employment, each Employee Defendant entered into a written Employee Agreement with MaxLite, pursuant to which each agreed, among other things, to protect MaxLite's proprietary, confidential information related to MaxLite's business, customers, suppliers, and service providers. In signing the Employee Agreements, Employee Defendants acknowledged and consented to the fact that their respective Employee Agreements "shall be governed by and construed according to the laws of the State of New Jersey, excluding its conflict of laws rules to the extent such rules would apply the law of another jurisdiction, except such mandatory laws of the jurisdiction where the Employee is hired and stationed" and that "any controversy arising out of or relating to this Agreement" relating to monetary disputes would be resolved by "arbitration being held exclusively in Essex County or Bergen County, New Jersey." (See, e.g. ECF Doc.

No. 1, Ex. A, Section 7.1; and Sung Dec. ¶ 30.)[2]

On September 25, 2009, Steedly became MaxLite's Director of Engineering, conditioned upon his signing the Employee Agreement and his relocation to New Jersey to work for MaxLite in its New Jersey headquarters. (Sung Dec., ¶ 13). At a certain point, Steedly requested relocation to MaxLite's California facility, with assurance that he would maintain constant daily contact with MaxLite's New Jersey headquarters. Id. ¶ 14. After his requested relocation, Steedly returned to New Jersey on at least nine (9) separate occasions to work at MaxLite's New Jersey headquarters for lengthy periods of time. Id. ¶ 15. However, Steedly himself recently clarified in his Verified Crossclaim, that he was in fact still working and living in New Jersey when ATG first began to solicit him. (ECF Doc. No. 109-4, Ex. A at ¶ 10; see also Purcaro Dec. Exhibit K, November 23, 2015 Hearing, Tr. 23:03-25:13).

On May 22, 2012, Galleher became employed by MaxLite, conditioned upon her signing her Employee Agreement, as its Strategic Market and Business Development Analyst, at which time she lived and worked in New Jersey. She became MaxLite's lead recruiter, assisted in utility projects, and supplied marketing-

---

[2] As discussed, *supra*, Judge Wigenton ruled that, the very terms of the Employee Agreements "certainly succinctly and clearly stated that New Jersey is the appropriate jurisdiction for the matter [with respect to the litigation against the Employee Defendants]." (Purcaro Dec. Ex. E, at Tr. 79:03-06)

related work. (ECF Doc. No. 87 at ¶40-45, Sung Dec. at ¶17-19). Galleher also acted as a liaison on legal matters, including those related to product development, and was closely involved with MaxLite's patent attorney, Ludomir A. Budzyn, located in New Jersey. (Sung Dec. at ¶¶ 20, 27-28; and See Budzyn Dec. at ¶¶ 1, 5, 7-9, and 11-13). Nearly all of the confidential, proprietary information acquired by Galleher was acquired while she was working in New Jersey. (Sung Dec. at ¶ 19). The patent applications referred to in MaxLite's Complaint involve inventions and applications initiated while Galleher worked in MaxLite's New Jersey headquarters. (Id. at 27; and see gen. Budzyn Dec.). As part of Galleher's responsibilities at MaxLite, she was "the employee primarily responsible for coordinating and updating […] utility rebates, and additional purchase incentives for customers. (ECF Doc. No. 1, ¶ 42). Galleher lived and worked in New Jersey from at least May 22, 2012 until July 2014, when, at her request, Galleher was permitted to relocate to MaxLite's California office. (Sung Dec. at ¶17). ATG's first contact with Galleher was in June or July of 2014, at which time Galleher was still living in New Jersey and working for MaxLite in New Jersey. (ECF Doc. No. 138-7, Tr. 199:9-200:9; ECF Doc. No. 38-4 Ex. D). During this initial contact, ATG spoke with Galleher about the possibility of Galleher and Steedly working for ATG. (ECF Doc. No. 138-7, Tr. 199:22-200:1.). Within three months of Galleher's July 2014 relocation

9

from New Jersey to California, she resigned from her position with MaxLite and began working for MaxLite's competitor, ATG. (Id. at ¶ 18). Moreover, it now appears that Galleher has no connection with California as she currently resides in Colorado. (See, Galleher Tr. at Tr. 5:1-2).

On July 5, 2013, Kim became MaxLite's National Sales Project Manager, a position specifically created by MaxLite for Kim, conditioned upon his signing the Employee Agreement. (ECF Doc. No. 1 at ¶61). As National Sales Project Manager, Kim was responsible for developing new business and maintaining important contacts with national accounts and other service company projects, including within New Jersey. (EFC Doc. No. 1 at ¶63). As a result, Kim had a dedicated inside staff employed full-time at, and was in daily communication with, MaxLite's New Jersey headquarters. (Sung Dec., ¶¶ 10-11). During his eighteen (18) months of employment with MaxLite, Kim also travelled to New Jersey on at least six (6) separate occasions in both 2013 and 2014. (Id. at ¶¶ 11-12).

Effective June 19, 2015, ATG fired all of the Employee Defendants because it no longer wished to fund their participation in the instant litigation. (ECF Doc. No. 109-4, Ex. A ¶58). Steedly, Kim and Galleher are all currently represented by New Jersey counsel. (See, e.g., Id.). Galleher appeared for her jurisdictional deposition on March 29, 2016 at her attorney's office located in Hackensack, New Jersey. (See Galleher Tr.). The

Employee Defendants filed an Order to Show Cause and request to file a Verified Crossclaim against ATG in this Court. (ECF Doc. No. 109). And, of course, this Court already has determined that the litigation with respect to each of them will go forward in New Jersey.

### ATG

Prior to jurisdictional discovery, MaxLite argued that many of ATG's contacts with New Jersey related directly to this litigation, and that ATG was believed to have a general presence and contacts within this State.

Now, after being permitted an opportunity to conduct limited jurisdictional discovery,[3] much more information has come to light regarding the New Jersey-centric nature of the impact of, and the key issues in, this case and ATG's focus on New Jersey and its continuous and systematic contacts with this state. ATG carried on

---

[3] ATG's characterization of a "year of jurisdictional discovery" is disingenuous at best. As is apparent from the chronology set forth in the Purcaro Dec. (¶¶ 38-46, 48-49, 52-53, 57,and 65-68) MaxLite was blocked by the Defendants' (principally ATG's) conduct from receiving any discovery—jurisdictional or otherwise--from the Employee Defendants until February of this year. And even then, Plaintiff had to overcome a last ditch attempt by ATG to block that court ordered discovery when it threatened to sue the Employee Defendants if they complied with this Court's Order requiring they produce their documents. As soon as that discovery was received, MaxLite's counsel promptly reviewed it and deposed Galleher. The actual discovery period from the Employee Defendants (whose production was substantially more complete than ATG's and largely contradicted what ATG had represented) was more a month than a year.

extensive communications, both orally and by email, with each of the Employee Defendants before hiring them (ECF Doc. No. 109-4, Ex. A. ¶¶ 10, 14-19, 22-23, and 24-26; ECF Doc. No. 138-7 at Tr. 199:9-200:24) and it was fully aware of—and had copies of--the Employee Agreements prior to its aggressive solicitation and hiring of each of the Employee Defendants and paid for a New Jersey attorney to review and provide a legal opinion on the those Agreements in August 2013. (ECF Doc. No. 109-4, Ex. A ¶¶ 11, 15, 17, 23, and 26; ECF Doc. No. 109-4, Ex. A's exhibits # 3,4, and 8; ECF Doc. No. 138-7 at Tr. 196:25-199:8);  While denying, falsely, the extent of his awareness of their contents, ATG's President and CEO, Nick Ni ("Ni") confirmed during his deposition that he received a New Jersey attorney's legal opinion on the Employee Agreements, for which ATG paid. (ECF Doc. No. 138-7 at Tr. 198:1-24).  ATG later confirmed with each of the Employee Defendants that their Employee Agreements with MaxLite were the same as the one ATG's New Jersey attorney previously reviewed. (ECF Doc. No. 109-4, Ex. A ¶17, 23, 25-26).  ATG promised to fund litigation for the Employee Defendants if they came to work for ATG and MaxLite sued them under those Agreements, and did so until it decided to cut them loose, firing them and terminating legal representation for them.  (Id. gen. at ¶ 29-57).[4]

---

[4] This information stands in stark contrast to ATG's discovery responses in which Ni swore that ATG only had one conversation

Contrary to ATG's prior false assertions,[5] "ATG does business in New Jersey and has multiple New Jersey customers." (ECF Doc. No. 109-4, Ex. A ¶ 12). ATG's New Jersey customers and New Jersey business appears to include, at a minimum: Home Depot, Toys "R" Us, Wholesale Lighting, Green Light Energy, Northeast Electrical Distributors, Vanguard Energy Solutions, Dailight,[6] Image Lighting Distribution, Capitol Lighting, Clear Energy, Anthony Elia, Capital Worldwide, Wow Workout World, Clasie Events Group, Derek Weikel, EJE Travel, ElectroStat Electrical Contractors, Lucien Manor, Matthews Consulting, McCann Systems, LLC, MSI Enterprises, Mike Iapalucci, Mundo Illuminations, Sajawat, Turtle & Hughes, XClusive, Joy of Life Adult Day Care, Quality Inn & Suites, KOPA Group, Robert Lighting and Energy, Albright Eclectic, Coronet Lighting, EPL, Caribe American Trading, GreenTech, Energy Efficient Pros aka EEPros, and Ruitenberg Lind Design Group. (Purcaro Dec. ¶86 and Ex.MM; Purcaro Dec. Ex. J at p.7; Galleher Tr. 58:17-59:8, 62:17-64:17, 77:12-20, 79:12-22, 38:13-40:18, 89:16-95:23; Purcaro Dec. Exs. R, T, U, EE, FF, GG, LL; and ECF

---

about the Employee Agreements and that was only with Galleher. (ECF Doc. No. 138-6 at Response to Interrogatory No. 7; and Purcaro Dec. Ex. J at p. 9-10)

[5] See, e.g., Cai Dec. at ¶ 9: "ATG also does not have any sales representatives and it does not do business in New Jersey."

[6] Although ATG held off on this customer specifically to avoid New Jersey jurisdiction in this litigation. (Galleher Tr. 79:12-22; Purcaro Dec. Ex. Y).

Doc. No. 138-7 at Tr. 137-177:19.)[7]

ATG hired Galleher with the specific instruction to aggressively grow business in New Jersey. (Galleher Tr. 40:22-15; 74:13-19). To that end, Galleher grew ATG business in New Jersey, among other things, by facilitating ATG's hiring of Krysta Venturella, a New Jersey resident and former MaxLite employee, for ATG's marketing and press releases. (Galleher Tr. 22:5-23, 36:11-15; Purcaro Dec. ¶82-83, Ex.s II and JJ). Galleher also used her knowledge of New Jersey's utility rebates, learned as part of her job at MaxLite in New Jersey, to target more New Jersey customers for ATG, in violation of her Employee Agreement. (Galleher Tr. 37:1-38:9, 88:5-89:10; Purcaro Dec. Ex. BB).

Moreover, as part of the strategy to target New Jersey though the use of confidential information Galleher received as a MaxLite employee, ATG hired two independent sales representatives for the Northern and Southern New Jersey territories. (Tr. 43:2-45:23; Purcaro Dec. Ex. FF). This recently revealed information both corroborates the prior testimony of Kevin McGroarty, but also

---

[7] Due to lack of candor in ATG's responses to discovery, it is highly probable that more New Jersey customers and contacts exists. See Ni deposition at ECF Doc. No. 138-7 at Tr. 137-177:19 compared to Galleher Tr. 58:17-59:8, 62:17-64:17, 77:12-20, 79:12-22, 38:13-40:18, 89:16-95:23 Indeed, ATG asserts did not have anyone assigned to "territories" and certainly not New Jersey. (see, e.g., Id. at Tr. 82:2-89:10, ECF Doc. No. 138-2, Cai Dec. at ¶9). These statements have been proven false as discussed herein. (See also Purcaro Dec. Ex.s KK – LL).

demonstrates ATG's lack of candor.  (See McGroarty Dec. at ¶¶10-16, compare to ECF Doc. No. 138-7, Ni Tr.82:8-85:8; and ECF Doc. No. 138-2, Cai Dec. ¶9). Galleher participated personally, on behalf of ATG, in developing and solidifying the relationships for exclusive sales territories in Northern and Southern New Jersey with Ra Energy and Energee Bride Sales respectively. (ECF Doc. No. 138-8, Galleher Tr. 43:9-45:23; and McGroarty Dec. at ¶¶12-16).

Part of Galleher's responsibilities, as the Director of Sales and Marketing for ATG, was to reorganize and focus ATG sales to New Jersey.  (Galleher Tr. 47:4-48:25).  When Galleher began working for ATG, it had a number of inside sales people all working with customers in New Jersey, including Matt Hodge, Andrew Mirazoff, Reuben Rivera, Wendell Locklin, and Art Tapia.  (Id. at Tr. 46:2-47:3).  Galleher streamlined ATG's New Jersey sales so that Matt Hodge would be the single point person for all New Jersey sales, internally generated and generated by the two exclusive outside sales representatives for the New Jersey territory.  (Id. at 47:7-19).  As a result of Galleher's efforts, Matt Hodge became ATG's New Jersey sales point person, providing both inside sales oversight and overseeing all outside New Jersey sales for both Mr. McGroarty at Energee Bridge Sales for Southern New Jersey territory and Ra Energy Solutions in Northern New Jersey. (Id. at 47:4-48:25)

ATG also shipped products to New Jersey regularly while the

15

Employee Defendants worked at ATG. (Id. at 66:6-13).  Hoping to avoid detection and conceal its contacts with New Jersey during the pendency of the instant litigation, however, ATG directed its employees to put certain New Jersey customers temporarily on hold, and actually went so far as to launder large New Jersey shipments through a New York warehouse, before transfer to New Jersey (Id. at 74:20-83:15; Purcaro Dec. Ex.s U, W, X, Y, Z, and AA).

ATG had a sales and marketing strategy to grow business in New Jersey, and, as part of that strategy, attempted to exploit New Jersey's market by advertising in publications distributed in New Jersey (See ATG Br. at. P.2-3) and creating press releases and product advertisements.  (See, e.g., Purcaro Dec. Ex. S, McGroarty Dec., and Galleher Tr. 40:22-41:6). This facilitated ATG's hiring of New Jersey resident--and former MaxLite employee--Krysta Venturella, specifically for press releases as part of this strategy.  (Galleher Tr. 22:5-23, 36:11-15; Purcaro Dec. ¶82-83, Ex.s II and JJ).

The majority of ATG's marketing dollars were spent sending the Employee Defendants to, and participating in, LIGHTFAIR in New York City in May 2015.  (Galleher Tr. 56:8-15; 112:2-8).  Galleher organized, attended, coordinated, and oversaw ATG's participation in this event.  Galleher confirmed that ATG targeted and successfully contacted a large number of New Jersey attendees at LIGHTFAIR.  (Id. at 79:12-22)  Contrary to ATG's assertion that it

did not develop any New Jersey business while the Employee Defendants worked for ATG (ATG Br. at p.9), Galleher testified that ATG developed new business relationships with the New Jersey-based LIGHTFAIR attendees. (Galleher Tr. 29:6-31:14; 39:14-41:6; Purcaro Dec. Ex. R).   Additionally, Galleher assisted in cultivating relationships between ATG and New Jersey companies, like GreenTech Energy, Ra Energy, Image Lighting Distribution and Ruitenberg Lind Design Group.  (See, Id. at 31:5-32:6, Purcaro Dec. Ex.s R, AA, EE, and FF).

MaxLite has also confirmed, through the limited jurisdictional discovery accorded Plaintiff, that as part of his role for ATG, Steedly developed products for New Jersey customers, participated in developing new relations with New Jersey customers, and Kim brought in New Jersey based national accounts, such as Toys "R" Us, which is headquartered in Wayne, New Jersey. (See, e.g., Galleher Tr. 52:4-23; Purcaro Dec. Ex. R, T and Z).

Further, ATG hired Sparket Marketing, a Marketing Firm, based in Princeton Junction, New Jersey to expand its presence in this state. (Purcaro Dec.¶46 and Ex. H).

### Non-Party Witnesses in New Jersey

Contrary to ATG's assertions, MaxLite already has demonstrated that a majority of non-party witnesses to Defendants' tortious conduct, who would be expected to testify in this case, are not Located in or near California. (Sung Dec. ¶ 31). Rather,

17

the majority are located in or much closer to New Jersey. Id.  For example, MaxLite's patent attorney, Ludomir Budzyn, is located in New Jersey and may serve as a witness as a result of his interactions with both Steedly and Galleher, and his forensic investigation related to the Employee Defendants' activities on their MaxLite issued computers. Id. at ¶ 29; see Declaration of Todd Kim ("T. Kim Dec.") ¶ 13, attached to Sung Dec., and see gen. Budzyn Dec.) ATG has solicited sales representatives employed by Visual Impact, LLC and Premier Spectrum Sales Group. (T. Kim Dec. ¶¶ 9-10). The Visual Impact, LLC representative is located in Wisconsin and the Premier-Spectrum Sales Group representative is located in Michigan. Id. Kim has contacted Blair Companies, a major distributor for MaxLite, since joining ATG. (See Declaration of Jay Lee at ECF Doc. No. 15-4 ¶ 6-7). The Blair Companies representative is located in Pennsylvania. (T. Kim Dec. ¶ 8). Kim has also solicited Batteries Plus, a customer of MaxLite, whose representative is located in Wisconsin and has stores in New Jersey. Id. ¶ 7.  Steedly has solicited Richard Holmes, a highly successful independent sales representative for MaxLite, since joining ATG. (See Declaration of Richard B. Holmes at ECF 15-6 ¶¶ 2-3, 11-12). Holmes is located in Massachusetts. (T. Kim Dec. ¶ 11.) MaxLite also believes that Galleher contacted former MaxLite employees Sharon Katz, who lives in New Jersey, and David Shiller, who lives in Pennsylvania, with respect to MaxLite matters, both

18

of whom are apt to be witnesses in this case. Id. ¶ 12.  Indeed, in the Employee Defendants' initial disclosures, a document was produced which appeared to be between Galleher and Katz. (Purcaro Dec. Ex. DD).

Of course, Kevin McGroarty (herein "McGroarty"), President of ENERGeeBRIDGE Sales, LLC, will likely testify as to ATG's tortious conduct. (McGroarty Dec. ¶ 2). McGroarty is a very successful independent sales representative for MaxLite focused in the areas of Southern New Jersey, Delaware, and Pennsylvania. Id. ¶¶ 4-5. In January 2014, ATG solicited McGroarty's services in an effort to expand ATG's sales, in part, in Southern New Jersey. Id. ¶ 7.  At that time, Andrew Mirzaoff ("Mirzaoff"), then Corporate Sales Director for ATG, handled ATG's sales in Central and Northern New Jersey, as well as New York. Id. ¶¶ 7, 9. In March 2014, Mr. McGroarty began working as an independent sales representative for ATG in Southern New Jersey - in clear contradiction with ATG's assertion that it has never had business relationships in New Jersey. (Id. ¶ 8; and see Def. Br. at 4). On March 12, 2015 - a month after this lawsuit was filed - McGroarty received a phone call from Matthew Hodge ("Hodge"), ATG's Sales Director for the Mid-Atlantic region, including New Jersey. (McGroarty Dec. at ¶¶ 10-11). Hodge advised Mr. McGroarty that ATG is looking to "rapidly grow its market share" in the territory. Id. ¶ 12.Hodge also advised Mr. McGroarty that ATG had recently acquired some of

MaxLite's former employees, presumably Employee Defendants, who spoke highly of him and recommended him as a sales representative. Id. ¶ 13. In fact, Hodge referred to Galleher by name, indicating that she had encouraged Hodge to reach out to McGroarty, apparently with the hope that McGroarty would help ATG take some of MaxLite's market share in the New Jersey territory. Id. Hodge invited McGroarty to meet him at the LIGHTFAIR Trade Show and Conference at the Jacob Javits Center in New York City in May 2015 to discuss "aggressively growing ATG's sales in the Northeast Region," including parts of New Jersey, with Mr. McGroarty's help. (Id. ¶¶ 14-15). After McGroarty's phone call, Hodge continued to solicit McGroarty via e-mail and, in fact, copied Galleher on the email. (Id. ¶ 16). As discussed above, the facts as recounted by McGroarty were confirmed by Galleher, as she testified that she participated in arranging for McGroarty to handle the Southern New Jersey territory exclusively.

In addition to the five previous certifications of New Jersey witnesses submitted by MaxLite, (Song Dec, T. Kim Dec, Budzyn Dec., Nagy Dec., Dodge Dec.), jurisdictional discovery has revealed that there are many more New Jersey residents that may be material witnesses regarding the merits of this case, those witness include but are not limited to: Krysta Venturella, William Thomas of Ra Energy, Vanguard, Toys "R" Us, GreenTech, Ruitenberg Lind Design Group, Image Lighting Distribution, Green Light Energy, and

possibly more New Jersey based businesses. And, of course, MaxLite's senior executive employees all reside and work in New Jersey.

## PROCEDURAL HISTORY

The procedural history relevant to the instant motion is set forth in detail in the Purcaro Dec (¶¶ 4-79) and is incorporated herein by reference.

## LEGAL ARGUMENT

## POINT ONE

### THIS COURT SHOULD DENY ATG'S MOTION TO DISMISS

**A. Standard of Review for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2).**

This Court must accept as true all of the plaintiff's allegations and must construe all disputed facts in favor of the plaintiff in determining whether to dismiss a complaint for lack of personal jurisdiction. Polanco v. Omnicell, Inc., 988 F.Supp.2d 451, 459 (D.N.J. 2013) (citing Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142, n.1 (3d Cir. 1992)); Fed. R. Civ. P. 12(b)(2). "Under Federal Rule of Civil Procedure 4(k), a District Court typically exercises personal jurisdiction according to the law of the state where it sits." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007); see Fed. R. Civ. P. 4(k)(1)(A); see also Daimler AG v. Bauman, 134 S. Ct. 746, 753 (2014). New Jersey's long-arm jurisdiction rule is broad and liberally

construed, and is only bound by the due process constraints of the Fourteenth Amendment of the United States Constitution. <u>See Carteret</u>, <u>supra</u>, 954 <u>F.</u>2d at 147.

A nonresident's physical presence within the jurisdiction of this Court is not required as long as the nonresident has certain minimum contacts such that jurisdiction does not offend "traditional notions of fair play and substantial justice." <u>Walden v. Fiore</u>, 134 <u>S. Ct.</u> 1115, 1121 (2014) (quoting <u>International Shoe Co. v. Washington</u>, 326 <u>U.S.</u> 310, 316 (1945)). "The relationship among the defendant, the forum, and the litigation . . . [is] the central concern of the inquiry into personal jurisdiction." <u>Daimler</u>, 134 <u>S. Ct.</u> at 754 (quoting <u>Schaffer v. Heitner</u>, 433 <u>U.S.</u> 186, 204 (1977)). This Court has both personal specific and general jurisdiction over ATG.

## B. **The District of New Jersey Has Specific Personal Jurisdiction Over ATG.**

While the concept of general jurisdiction certainly remains entirely viable, the Supreme Court of the United States "has increasingly trained on the relationship among the defendant, the forum, and the litigation" such that courts have progressively looked to specific jurisdiction in jurisdictional analysis, rather than general jurisdiction. <u>Daimler</u>, 134 <u>S. Ct.</u> at 757-58 (internal citations omitted). To determine whether this Court may assert specific jurisdiction over ATG, this Court must focus on the

quality and nature of ATG's activity to determine if it is of a type that ATG "should reasonably anticipate being haled into court there." Wright v. Xerox Corp., 882 F. Supp. 399, 403-04 (D.N.J. 1995) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1986)); see also Walden v. Fiore, 134 S. Ct. at 1121.

Specific jurisdiction arises where: (1) a defendant has purposefully directed its activities at the forum state; (2) the litigation arises out of or relates to the defendant's activities in the forum state; and (3) jurisdiction comports with fair play and substantial justice. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (citing Burger King Corp., at 472-76 (1985); Helicopteros, 466 U.S. at 414)). All three prongs are met here.

**(3) ATG Has Purposefully Directed its Activities at New Jersey.**

ATG has sufficient minimum contacts within New Jersey such that it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum." O'Connor, ibid, at 317 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). ATG itself, including by and through its contacts with and hiring the Employee Defendants in New Jersey and in violation of their New Jersey-centric Employee Agreements, soliciting the breach of those agreements in violation of New Jersey law for the purposes of

23

increasing ATG's business in New Jersey (among other things), and using the services of the Employee Defendants in the State of New Jersey, has created, developed and maintained contacts with New Jersey. See Walden, 134 S. Ct. at 1122. "With each purposeful contact by an out-of-state [defendant], the forum state's laws will extend certain benefits and impose certain obligations." O'Connor, 496 F.3d at 323.

ATG knew literally from the day it first began to solicit the Employee Defendants to breach their New Jersey Employee Agreements with MaxLite--which forbid exactly what ATG was hiring Employee Defendants to do and which contained both forum selection clauses and choice of law provisions requiring that actions seeking redress for that conduct be litigated in New Jersey under new Jersey law—-that it was likely to be haled into court in this state. So certain was it of that fact that it sought and obtained an opinion of counsel with respect to precisely those issues, acknowledged as much to the Employee Defendants, and undertook, contractually to defend them in such an action (albeit an undertaking on which it subsequently reneged when it cut them loose).

ATG reached into New Jersey to solicit two of the three Employee Defendants, Galleher and Steedly, while they were both living and working in New Jersey.

And after spiriting the Employee Defendants away from MaxLite, ATG has continued to purposefully reach out into New

24

Jersey, creating and envisioning continuing and wide-reaching contacts in this forum. Id. Though ATG has attempted to downplay its contacts with New Jersey as "byproducts" of its business, it has specifically targeted New Jersey's desirable lighting market. A focus of ATG's sales strategy was and is to aggressively grow its business in New Jersey.

ATG generates significant business revenue from New Jersey. In the span of only a little over eight months after hiring the Employee Defendants, ATG did over $100,000 in sales with at least 12 New Jersey customers. (Galleher Tr. 74:8-12). This, of course, was part of ATG's plan in hiring these employees: to grow its New Jersey business. ATG regularly ships products to New Jersey. Recognizing its activities were subjecting it to jurisdiction here, ATG disingenuously attempted to fool this Court by dragging its feet on New Jersey sales until this Motion is decided and by redirecting large product shipments through New York and then into New Jersey. (See, e.g., Purcaro Dec. Ex.s V, W, X, Y, Z and AA).

ATG has been trying to grow its business in New Jersey's rebate market, which is "much more lucrative" than markets in other parts of the country. (Galleher Tr. 37: 8-38:2). In an effort to permeate New Jersey's lucrative market, ATG hired Galleher from MaxLite as its Sales and Marketing Director, instructing her, in part, to mount an aggressive marketing campaign toward New Jersey. As a result, Galleher, on behalf of ATG, advertised in multiple

industry publications, including Energy Watch News, Edison Report, lightsearch.com, TED Magazine and created press releases and product advertisements in its campaign to circulate magazines and advertisements to "deliberately exploit" the New Jersey market. Walden, 134 S. Ct. at 1122. Galleher even helped to grow ATG's business in New Jersey by successfully suggesting it hire New Jersey-based marketer, Krysta Venturella, another former MaxLite employee, whom Galleher knew from her prior employment with MaxLite, to draft and circulate press releases for ATG in New Jersey. Even as recently as September 2015, ATG hired Sparket, a New Jersey marketing firm, to purposefully direct more sales activities in this forum.

Galleher reorganized ATG's internal structure to better target New Jersey's market. She streamlined ATG's New Jersey sales so that Matt Hodge would be the single point person for all New Jersey sales, both those generated by internal sales and those generated by external New Jersey sales representatives, including those made by Energee Bridge Sales for the southern New Jersey territory and by Ra Energy Solutions in the northern New Jersey territory.

Moreover, ATG previously attended, and was an Exhibitor at, the 25th GLOBALCON 2014 Exhibit Production Showcase in Atlantic City, New Jersey and was also an Exhibitor at the LIGHTFAIR Trade Show and Conference held in May 2015 in New York City, where ATG targeted and successfully contacted a large number of New Jersey

26

attendees through the Employee Defendants, including GreenTech Energy, Green Light Energy, and Ruitenberg Lind Design Group.

ATG has targeted and is purposefully availing itself of New Jersey.

**(4)  This Litigation Arises Out of and Relates to ATG's Contacts with New Jersey.**

**a. ATG's Conduct Satisfies the <u>Calder</u> Effects Test.**

This Court has specific personal jurisdiction over ATG because its contacts and conduct meet the test established in <u>Calder v. Jones</u>, 465 <u>U.S.</u> 783 (1984). Under the <u>Calder</u> effects test, a court has specific personal jurisdiction where: "[1] the defendant committed an intentional tort; [2] the plaintiff felt the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort; and [3] the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." <u>Radian Guaranty, Inc. v. Bolen</u>, 18 <u>F.Supp.</u>3d 635, 644 (E.D. Pa. 2014)(citing <u>IMO Industries, Inc. v. Kiekert AG</u>, 155 <u>F.</u>3d 254, 265-66 (3d Cir. 1998)). All three prongs are met here.

ATG has tortiously interfered with MaxLite's contractual relations and present and prospective economic advantage, as well as conspired with the Employee Defendants to commit breaches of contract, breaches of the implied covenant of good faith and fair

dealing, tortious interference, unfair competition, and breaches of a fiduciary duties against MaxLite. ATG hired the Employee Defendants, inducing them to breach the terms of their respective Employee Agreements. ATG has also tortiously interfered with MaxLite's business through theft of MaxLite's confidential, proprietary information, which it obtained through its employment of the Employee Defendants. ATG--by itself and by and through the Employee Defendants--has improperly and unlawfully interfered with MaxLite's highly successful business with the purpose of unlawfully luring and attempting to lure away MaxLite's customers to unfairly compete against MaxLite in the New Jersey market and to deplete MaxLite's customer base.

MaxLite has felt the brunt of the harm in New Jersey. MaxLite has expended substantial time, money, effort, and resources into its business for more than 20 years, especially in the New Jersey market, where MaxLite is incorporated and headquartered and from which it directs its business operations. MaxLite has felt the repercussions of ATG's conduct in its business relationships, including its relationship with one of its best sales representatives in New Jersey, Kevin McGroarty.

ATG's conclusory allegations to the contrary notwithstanding, the evidence demonstrates that it expressly aimed its tortious conduct largely at New Jersey. It hired all three Employee Defendants in violation of their New Jersey based Employee

28

Agreements, agreements entered into in this state, actions for the breach of which are subject to exclusive jurisdiction in this state under New Jersey law. ATG has unfairly competed with, and has systematically targeted, MaxLite's business in New Jersey through the Employee Defendants who had familiarized themselves with and utilized MaxLite's confidential proprietary information which they acquired from its New Jersey office. ATG hired Galleher to aggressively market in New Jersey. Galleher learned how to target MaxLite's lucrative rebate-friendly market while at MaxLite, used that confidential knowledge to target the New Jersey market on behalf of ATG, and suggested ATG hire Krysta Venturella, whom she knew through MaxLite and who lives in New Jersey, to draft and distribute press releases to exploit the New Jersey market. ATG used Kim's confidential, proprietary sales knowledge gained through MaxLite to bring in national businesses, such as Toys "R" Us, headquartered in Wayne, New Jersey. Steedly used the knowledge he gained at MaxLite to develop products for ATG's customers.

The intentional torts committed by ATG and expressly aimed at New Jersey, caused MaxLite to feel the brunt of the harm in New Jersey such that New Jersey is the focal point of the harm felt by MaxLite. Therefore, this Court has specific personal jurisdiction over ATG under the Calder effects test.

**b. Specific Jurisdiction over ATG by this Court was eminently foreseeable and comports with Fair Play and Substantial Justice.**

Not only do ATG's contacts satisfy the <u>Calder</u> effects test for jurisdiction, it was eminently foreseeable that ATG would be haled into Court in New Jersey based upon its deliberate actions toward New Jersey, and interference with New Jersey contracts, in this matter.  In fact, as stated previously, ATG had paid a New Jersey attorney to review those Agreements prior to hiring the Employee Defendants and was so certain that litigation would occur, Ni stated "this kind of thing happens every day" (ECF Doc. No. 109-4, Ex. A at ¶39) and agreed to pay the legal fees attendant on that litigation as part of the deal in hiring them.

In a case the parties were instructed by Judge Mannion to address, another court in this Circuit recognized, "[i]n the Third Circuit, a non-signatory party may be bound by the forum selection clause in a contract if the party is a third-party beneficiary of the contract **or is closely related to the contractual relationship or dispute such that it is foreseeable that the party will be bound.**" <u>Radian</u>, <u>supra</u>, 18 <u>F.Supp.</u>3d at 645 (emphasis added) (quoting <u>D'Elia v. Grand Caribbean Co., Ltd.</u>, 2010 <u>WL</u> 1372027, at *3 (D.N.J. Mar. 30, 2010); <u>see</u> <u>also</u> <u>Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.</u>, 2014 <u>WL</u> 1908500, at *3 (D.N.J.

May 13, 2014).[8]

As in Radian, ATG here, although a non-signatory to an agreement containing a forum selection clause acquired a close relationship with the signatories and the dispute arising out of its conduct in soliciting a breach of those agreements through and by virtue of their employment with ATG. Radian, 18 F.Supp.3d at 646 (internal quotations omitted). ATG relies on the unpublished opinion in Schiffer to argue that a non-signatory can only be closely related where the non-signatory is an employee of a signatory. That is a distinction without a difference.  While, certainly, the principle may apply to the employee, there is no reason it should not apply to the employer as well—-and every reason why it should.[9]

---

[8] MaxLite discusses Radian, along with Dayhoff, Inc., Walden, and Schiffer, at the direction of Judge Mannion, U.S.M.J. (ECF Doc. No. 131).

[9] ATG's reliance is on Schiffer is further misplaced as the facts are distinguishable from those here. In Schiffer, the plaintiff purchased a machine from Colex. The machine was manufactured by Poli Elettronica ("Poli"), based in Italy, which sold the machine with a one-year express warranty, which extended only to Colex and contained a forum selection clause requiring that disputes be heard in Italy. The machine rarely worked after its purchase and Schiffer sued Poli, which sought to enforce the forum selection clause in its agreement with Colex, arguing That Schiffer had availed itself of the benefits under the warranty given to Colex. Id. at *4. The court found there was no close relationship between Poli and Schiffer and, therefore, declined to enforce the forum selection clause.

Similarly, Dayhoff Inc v. H.J. Heinz Co., 86 F.3d 1287 (1996), is distinguishable from the case at bar. In Dayhoff, a candy distributor, Dayhoff, had entered into three different agreements with defendant Heinz Dolciaria, each of which contained distinct

31

In Radian (as here) the individual defendant, Bolen, an ex-employee of Radian, had signed an employee agreement containing a non-compete provision and a forum selection clause. Bolen later resigned from Radian and began working for a competitor despite her agreement. Radian, 18 F.Supp.3d at 639. Radian initiated suit against Bolen and Bolden's new employer "Arch MI a Texas company, in Pennsylvania, pursuant to the agreement's forum selection

arbitration and/or forum selection clauses. At some point thereafter, Heinz Dolciaria's parent companies, H.J. Heinz and Heinz Italia, entered into negotiations to sell Heinz Dolciaria's business to Hershey. Id. at 1291. In completing the sale, Heinz Italia formed a new company, Sperlari s.r.l. to which substantially all of the assets and liabilities of Heinz Dolciaria were transferred. Id. at 1292. Hershey purchased Sperlari s.r.l. without Dayhoff's contracts with Heinz Dolciaria. Id. Heinz agreed to terminate the contracts and to indemnify Hershey from any liabilities arising therefrom. Id. Dayhoff brought suit against H.J. Heinz and its subsidiaries as well as Hershey for breach of contract and tortious interference. Dayhoff argued that the arbitration and forum selection clauses from its various agreements with Heinz Dolciaria should not be applied and were ineffective as to the non-signatories (i.e., all defendants other than Heinz Dolciaria). Agreeing, the Third Circuit held that the relationships between the defendants did not allow them to invoke the arbitration and forum selection clauses and, therefore, the agreements were only enforceable against the signatories to those agreements (Dayhoff and Heinz Dolciaria). Despite this decision, however, the Dayhoff Court did recognize that this Circuit has bound non-signatories to arbitration and/or forum selection clauses in other circumstances. Id. at 1296 (citing Barrowclough v. Kidder, Peabody & Co., Inc., 752 F.2d 923 (3d Cir. 1985) (overruled on other grounds by Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110 (3d Cir. 1993)); Pritzer v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110 (3d Cir. 1993)).

The facts of Schiffer and Dayhoff bear no resemblance to this litigation at all, whereas the facts in Radian are almost indistinguishable from this litigation.

clause, alleging, in part, that Arch MI knowingly induced Bolen to breach her contract with Radian. Arch MI filed a motion to dismiss for lack of jurisdiction.

In determining that it had jurisdiction over the non-signatory defendants, the Court found that Arch MI: (1) knew of Bolen's employee agreement with Radian prior to hiring her; (2) continued to pursue Bolen in spite of her agreement with Radian; (3) reviewed a copy of Bolen's agreement with Radian; and (4) recognized the risks of hiring a new employee with a non-compete agreement, especially having consulted an attorney. Id. at 647. Based upon its analysis of these facts, the Radian Court found that Arch MI was "sufficiently closely related to Bolen so as to foresee being bound by the forum selection clause in the [non-compete agreement]." Id.

Here, the facts are astonishingly similar. Each of the Employee Defendants entered into Employee Agreements with MaxLite as a condition of their employment, which contained non-compete provisions and a forum selection clause for New Jersey, forming the basis of this litigation. As in Radian, the Employee Agreements provide that the Employee Defendants cannot work for a competitor for 12 months.

Prior to their hire, ATG was aware that the Employee Defendants had entered into Employee Agreements with MaxLite. Despite reviewing the Employee Agreements, ATG continued to pursue

and hire, not just one, but all three Employee Defendants. Furthermore, ATG sought out and hired a New Jersey attorney to review the Employee Agreements.  ATG confirmed with each Employee Defendant that their respective Employee Agreements remained the same, and as part of its inducement to lure the Employee Defendants into working for it in violation of those agreements, ATG promised to fund any litigation that might arise as a result of their working for ATG in violation of their Employee Agreements.

Under the facts of this case, it was clearly foreseeable to ATG that it would be haled into Court in New Jersey based upon its close relationship to the contract--and the Employee Defendants' breach thereof--which is the subject of this litigation. As a result, it is eminently fair and reasonable to bind ATG to the Employee Agreement's forum selection clause.

Since ATG has minimum contacts with this forum, personal jurisdiction is "presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" O'Connor, 496 F.3d at 324 (quoting Burger King, 471 U.S. at 477). This Court should consider several factors when considering whether jurisdiction is reasonable, including: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenience and effective relief; (4) the interstate judicial system's interest in

34

obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980). "The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy." Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993). ATG has failed to meet this heavy burden.

ATG has failed even to address the majority of the aforementioned factors in its Motion.[10] Instead, ATG argues that requiring it to defend suit in New Jersey would be a burden because it operates out of California. ATG's argument simply suggests that it is inconvenient for it to litigate one action in this forum and that MaxLite instead should bear the inconvenience of litigating one in California and one in New Jersey where this Court already has found jurisdiction over the Employee Defendants and determined New Jersey law will apply to the issues relating to their Employee Agreements. ATG entirely ignores that the action against the Employee Defendants will continue in New Jersey and that it would

---

[10] Nor can ATG dos so now. Its reply brief is limited to responding to the arguments made in this brief, or to explaining a position in its initial brief which plaintiff has now refuted. See Bayer AG v. Schein Pharmaceutical, Inc., 129 F.Supp.2d 705, 716 (D.N.J. 2001) (quoting Elizabethtown Water Co. v. Hartford Casualty Ins. Co., 958 F.Supp. 447, 458 (D.N.J. 1988)). ATG cannot raise new arguments with respect to the factors it chose to ignore in its initial brief. Id.; see also L. Civ. R. 7.1(d).

be contrary not only to Plaintiff's interest in obtaining convenient and effective relief but also to the interstate judicial system's interest in obtaining the most efficient resolution of controversies, to have two suits pending simultaneously in different jurisdictions dealing with the same parties, issues, witnesses and documents

Furthermore, ATG incorrectly argues that all of the witnesses and evidence are located in California. Not only is this not true, as demonstrated, *supra*, but convenience of witnesses is not a factor considered by Courts when determining jurisdiction.

ATG's scant arguments fail to meet its heavy burden showing that this Court's presumptively constitutional jurisdiction would not comport with fair play and substantial justice. As a result, this Court has personal jurisdiction over ATG.

C. **The District of New Jersey Has General Jurisdiction Over ATG.**

This Court may exercise general jurisdiction over an out-of-state defendant where the defendant has "continuous and systematic contact" with the forum state such that it renders them essentially at home in the forum state. Daimler, 134 S. Ct. at 754; see also Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, n. 9 (1984). While this Court has specific jurisdiction over ATG, its continuous business activities within New Jersey are also so substantial as to also justify suit against ATG in New Jersey even without the tortious acts which gave rise to this suit.

Daimler, Ibid, at 754. ATG's contacts with New Jersey are not "random, fortuitous contacts." Baanyan Software Services, Inc. v. Kuncha, 81 A.3d 672, 679 (App. Div. 2013). While ATG may not have the "paradigmatic scenarios for 'at home' jurisdiction under Daimler," ATG's calculated corporate operations aimed at aggressively making itself at home in New Jersey's lighting industry are so substantial and of such a nature that it renders ATG subject to general jurisdiction. Otsuka Pharmaceutical Co., Ltd. v. Mylan, Inc., 106 F.Supp.3d 456, 465 (D.N.J. 2015); Daimler, supra, at 761, n. 19; see also AstraZeneca AB v. Mylan Pharmaceuticals, Inc., 72 F.Supp.3d 549, 554 (D. Del. 2014) (noting that the "[Daimler] Court was careful to emphasize that the 'place of incorporation' and the 'principal place of business' exemplars were not exhaustive."). Here, ATG has contacts in New Jersey that are tantamount to rendering ATG essentially at home in New Jersey. ATG hired Krysta Venturella, a New Jersey resident, to prepare and circulate its press releases. ATG also hired Sparket, a New Jersey based company, for ATG's marketing needs. As a result, this Court also has general personal jurisdiction over ATG.

## POINT TWO

### ALTERNATIVELY, THIS COURT SHOULD AGAIN DENY ATG'S MOTION TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA

ATG's motion to transfer this case should be denied because this Court already denied ATG's motion to transfer. Although the Order entered on April 29, 2015 (ECF Doc. No. 63) does not address the Defendants' prior motion to transfer, Judge Wigenton made her decision on the record at oral arguments on April 21, 2015 when she found "there [was] nothing [that ATG] put before the Court that would give this Court a clear or definitive basis upon which to transfer this matter to California," ATG has presented nothing new that would warrant a different outcome For the same reasons Judge Wigenton found that this Court should again deny the requested transfer.

Even if this Court were to revisit ATG's motion to transfer, 28 U.S.C. § 1404(a) provides: "[f]or the convenience of the parties and witnesses, in the interest of justice a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The burden is on ATG, as the moving party, to establish the need for the requested transfer. Arlandson v. Hartz Moutain Corp., F.Supp.2d 691, 699 (D.N.J. 2011); see also Ricoh Co., Ltd. v. Honeywell, Inc., 817 F.Supp. 473, 480 (D.N.J. 1993) ("The burden is not on the plaintiff to show that the

proposed alternative is inadequate."). ATG fails to demonstrate any need that would warrant a transfer of venue.

The Third Circuit has identified the following private interests as being significant to its § 1404(a) analysis:

> [P]laintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)

Peikin v. Kimmel & Silverman, P.C., 576 F.Supp.2d 654, 659-60 (D.N.J. 2008) (quoting Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)).

Similarly, the Court may also consider the following public interests in its § 1404(a) analysis:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Peikin v. Kimmel & Silverman, P.C., ibid (quoting Jumara, 55 F.3d at 879).

First, Plaintiff's choice of forum is entitled to great

deference and is of "paramount concern." Ricoh, 817 F.Supp. at 480. "Unless the balance is strongly tipped in favor of transfer, the plaintiff's choice of forum should not be disturbed." Id. (quoting Hardaway Constr., Inc. v. Conseco Indus, Ltd., 583 F. Supp. 617, 620 (D.N.J. 1983)). Judge Wigenton already determined that "the factors do not weigh heavily in favor of California but clearly weigh greater as it relates to New Jersey." MaxLite's choice of forum should not be disturbed.

ATG still erroneously argues that the parties, witnesses, and evidence all support a transfer to California, without presenting any new parties, witnesses, and evidence that would support such a transfer. It reality, the known non-party witnesses support venue in New Jersey.

Moreover, public interests do not weigh in favor of transfer. In fact, it would be contrary to judicial efficiency and the interest of justice to permit suits involving the same issues, facts, witnesses, and documents to proceed before two tribunals simultaneously. Clark v. Burger King Corp., 255 F.Supp.2d 334, 339 (D.N.J. 2003). Such an outcome "leads to wastefulness of time, energy and money that § 1404(a) was designed to prevent." Id.

<u>**CONCLUSION**</u>

For the foregoing reasons, it is respectfully submitted that this Court should both deny ATGs' Motion to Dismiss the Amended Complaint and its alternative motion to transfer venue.


DATED: April 18, 2016              Respectfully Submitted,


                                   s/ Peter S. Pearlman
                                   **COHN LIFLAND PEARLMAN**
                                   **HERRMANN & KNOPF LLP**
                                   Peter S. Pearlman, Esq.
                                   Park 80 West – Plaza One
                                   250 Pehle Avenue, Suite 401
                                   Saddle Brook, New Jersey 07663
                                   Tel.: (201) 845-9600
                                   Fax:  (201) 845-9423
                                   psp@njlawfirm.com