HOWARD B. GOLDS, Bar No. 112626
howard.golds@bbklaw.com
THOMAS M. O'CONNELL, Bar No. 298457
thomas.oconnell@bbklaw.com
BEST BEST & KRIEGER LLP
3390 University Avenue, 5th Floor
P.O. Box 1028
Riverside, CA 92502
Telephone: (951) 686-1450
Facsimile: (951) 686-3083

ALEXANDER FRIEDMAN (AF2750)
afriedman@brodyandassociates.com
BRODY AND ASSOCIATES, LLC
120 Post Road West, Suite 101
Westport, CT 06880
Telephone: (203) 454-0560
Facsimile: (203) 454-0569

Attorneys for Defendant
ATG ELECTRONICS, INC.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAXLITE, INC., a New Jersey Corporation, f/k/a SK AMERICA, INC., d/b/a MAXLITE,<br><br>Plaintiff,<br><br>v.<br><br>ATG ELECTRONICS, INC., JAMES D. STEEDLY, SOPHIA C. GALLEHER, and MATTHEW KIM,<br><br>Defendants. | Case No. 2:15-CV-01116-JMV-JBC<br>U.S.D.J.: Hon. John Michael Vazquez<br><br>DEFENDANT ATG ELECTRONICS, INC.'S REPLY TO MAXLITE, INC.'S OPPOSITION TO ATG ELECTRONICS, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, MOTION TO TRANSFER |

```
```

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT.........................................................................................................3

    A. The Court Should Not Exercise General Jurisdiction Over ATG Because MaxLite Cannot Demonstrate That ATG Is "At Home" In New Jersey.................................................................................3

    B. The Court Should Not Exercise Specific Jurisdiction Over ATG Because ATG Has Only De Minimus Contacts With New Jersey ....................................................................................................5

        1. ATG's Incidental Contacts With New Jersey Do Not Demonstrate That ATG Purposefully Directed Its Activities To New Jersey ......................................................................7

        2. The Tangential Relationship Between MaxLite's Alleged Harm And ATG's Incidental Contacts With New Jersey Do Not Demonstrate That MaxLite's Claims Arise Out Of New Jersey.......................................................................10

        3. It Would Be Unreasonable For The Court To Exercise Specific Jurisdiction Over ATG...............................................13

III. CONCLUSION ...................................................................................................16

# TABLE OF AUTHORITIES

 **Page**

**Federal Cases**

*The Bremen v. Zapata Off-Shore Co.*
   407 U.S. 1 (1972) ............................................................................................... 16

*Burger King Corp. v. Rudzewicz*
   471 U.S. 462 (1985) ............................................................................... 5, 7, 8, 15

*Calder v. Jones*
   465 U.S. 784 (1984) ..................................................................................... 11, 12

*Daimler AG v. Bauman*
   134 S.Ct. 746 (2014) .......................................................................................... 3, 5

*Dayhoff Inc. v. H.J. Heinz Co.*
   86 F.3d 1287 (3d Cir. 1986) .................................................................................10

*GE v. Deutz AG*
   270 F.3d 144 (3d Cir. 2001) ................................................................................ 6

*Hanson v. Denckla*
   357 U.S. 235 (1958) .............................................................................................11

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
   466 U.S. 408 (1984) ............................................................................................. 9

*Hertz Corp. v. Friend*
   559 U.S. 77 (2010) ............................................................................................... 5

*IMO Indus., Inc. v. Keikert AG*
   155 F.3d 254 (3d Cir. 1998) ...............................................................................12

*International Shoe Co. v. Washington*
   326 U.S. 310 (1945) ......................................................................................... 6, 8

*Marten v. Godwin*
   499 F.3d 290 (3rd Cir. 2007) ........................................................................ 1, 12

# TABLE OF AUTHORITIES
## (continued)

**Page**

*O'Connor v. Sandy Lane Hotel Co.*
   496 F.3d 312 (3d Cir. 2007) ................................................................................6, 11, 13

*Radian Guaranty Inc. v. Bolen*
   18 F.Supp.3d 635 (E.D.Pa. 2014) ......................................................................................10

*Walden v. Fiore*
   134 S.Ct. 1115 (2014) ............................................................................................6, 9, 10

*World-Wide Volkswagen Corp. v. Woodson*
   444 U.S. 286 (1980) ...................................................................................................6, 13

## I.   INTRODUCTION

It was Plaintiff MaxLite, Inc.'s ("MaxLite") burden to demonstrate in its Opposition to Defendant ATG Electronics, Inc.'s ("ATG") Motion to Dismiss for Lack of Personal Jurisdiction that the court should exercise either general or specific personal jurisdiction over ATG.  MaxLite failed to meet that burden.

First, MaxLite has not and cannot demonstrate that this court should exercise general jurisdiction over ATG.  The indisputable facts demonstrate that ATG is "at home" in California because that is where it is incorporated and where its principal place of business is located.  While MaxLite argues that the court should look past these paradigmatic facts and find that ATG is "at home" in New Jersey, MaxLite's factual support is both inaccurate[1] and legally insignificant.

Second, Maxlite has not and cannot demonstrate that this court should exercise specific jurisdiction over ATG.  Again, MaxLite relies on numerous inaccurate statements in an effort to demonstrate that ATG has substantial and meaningful enough contacts with New Jersey that the court may find that ATG

---

[1] MaxLite states in its Standard of Review that "[t]his Court must accept as true all of the plaintiff's allegations and must construe all disputed facts in favor of the plaintiff in determining whether to dismiss a complaint for lack of personal jurisdiction." (MaxLite's Opposition, p. 22.)  While this may be true where the motion to dismiss is filed at the outset of the case, where no jurisdictional discovery has taken place, and where the parties do not rely on affidavits and facts outside of the pleadings, that is not the case here.  As such, the court should consider this motion to dismiss as more akin to a motion for summary judgment on the ground that the court lacks personal jurisdiction which requires MaxLite to meet its burden to establish jurisdiction on more than "bare, unsubstantiated allegations" and instead must rely on specific facts showing the exercise of personal jurisdiction is proper. *Marten v. Godwin*, 499 F.3d 290, 294 (3rd Cir. 2007).

purposefully directed its activities to the forum.  In reality, ATG's only contacts with New Jersey were (i) its *de minimus* advertising and sales strategy that resulted in less than half of one percent of ATG's total U.S. revenue and (ii) its decision to hire three employees who did not work or reside in New Jersey but whose non-compete agreement—of which ATG was not a party—mentioned New Jersey.  These negligible contacts with New Jersey do not demonstrate that ATG has purposefully availed itself of the State's benefits.

Moreover, MaxLite cannot show that its claims arise out of or relate to ATG's incidental contacts with the forum.  MaxLite fails to make the fundamental showing that this suit arose from a privilege that ATG exercised in New Jersey.  Instead, MaxLite argues that ATG harmed MaxLite in New Jersey and concludes that ATG aimed its allegedly tortious conduct at New Jersey.  This argument conflates two separate showings and ignores the numerous facts demonstrating that ATG's allegedly tortious conduct—including its decision to hire the employee defendants—was not focused on New Jersey but was instead focused on its California operations and its new employees located in California and Georgia.

Last, MaxLite fails to adequately rebut ATG's argument that it would go against the notions of "fair play and substantial justice" for this court to exercise specific jurisdiction.  Indeed, ATG's argument that it would face an inordinately high burden to litigate this matter in New Jersey is virtually unrebutted and

MaxLite's arguments regarding the judicial inefficiency of litigating in both New Jersey and the Central District of California are easily remedied by transferring the entire action to the Central District of California where all of the parties have consented to the court's jurisdiction.

For all of the reasons set forth in its opening brief and herein, ATG respectfully requests that the court grant its Motion to Dismiss for Lack of Personal Jurisdiction, or in the alternative, transfer the entire matter to the Central District of California.

## II.   ARGUMENT

### A.   The Court Should Not Exercise General Jurisdiction Over ATG Because MaxLite Cannot Demonstrate That ATG Is "At Home" In New Jersey

The parties agree that a court may only assert general jurisdiction over a defendant if that defendant's contacts with the forum state are sufficiently "continuous and systematic" so as to render it essentially "at home" with the forum.  (ATG's Motion to Dismiss ("Mot."), p. 15; MaxLite's Opposition to Motion to Dismiss ("Opp."), p. 37.)  A corporate defendant is regarded as "at home" in the state where it is incorporated or where it maintains its principal place of business.  *Daimler AG v. Bauman*, 134 S.Ct. 746, 760 (2014).  MaxLite concedes that ATG is incorporated in California and that its principal place of business is in California. (Am. Compl., ¶ 6.)  Nevertheless, MaxLite asks the court

to exercise general jurisdiction over ATG based on tenuous connections between ATG and New Jersey.  Factually and legally, MaxLite's request is untenable.

First, MaxLite bases its argument that ATG is "at home" in New Jersey on three assertions.  All three of these assertions are inaccurate:

- MaxLite claims that ATG has "substantial" business activities in New Jersey. (Opp., p. 38.)  However, it is undisputed that ATG's total sales to New Jersey account for 0.045% of ATG's total U.S. revenue. (Mot., p. 8.)
- MaxLite claims that ATG hired someone located in New Jersey "to draft and distribute press releases to exploit the New Jersey market." (Opp., pp. 38, 16-17, and 30.) This is false because the deposition passage cited by MaxLite neither states nor implies that the independent contractor was hired to exploit the New Jersey market and, in fact, the deponent did not even know where the press releases were circulated.  (Mot., Ex. G, Deposition of Sophia Galleher ("Galleher Dep."), 23:24-24-5.)
- MaxLite claims that ATG engaged a marketing firm located in New Jersey to "expand its presence in this state." (Opp., pp. 38 and 18.) Again, the evidence cited by MaxLite related to the marketing firm does not state that it was hired to expand ATG's business in the state but, instead, states that it "will be partnering with ATG on social media, public relations, search engine optimization and search engine marketing."  (Declaration of Kelly Purcaro ("Purcaro Dec."), Ex. H.)

Left with no accurate foundational facts, MaxLite cannot demonstrate that the court should exercise general jurisdiction over ATG.

Second, even if all of aforementioned facts were true—which they are not—the court still should not exercise general jurisdiction.  The general jurisdiction inquiry is not a broad analysis of whether a foreign corporation's in-forum contacts are in some sense "continuous and systematic"; it is a narrow analysis of whether

the foreign corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 134 S.Ct. at 761 [citations omitted]. The goal of this narrow analysis is to "promote greater predictability." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).

If this court finds that ATG's *de minimus* New Jersey activities are enough to exercise general jurisdiction, the same global reach would presumably be available in every other location that ATG has ever sold a product, hired an independent contractor, or engaged a marketing firm. *Daimler*, 134 S.Ct. at 761. As aptly stated by the Supreme Court in *Daimler*, "Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Consequently, MaxLite's request that the court find ATG is "at home" in New Jersey based on the ATG's limited contacts with the forum would go against both logic and substantial precedent and should be rejected.

### B. The Court Should Not Exercise Specific Jurisdiction Over ATG Because ATG Has Only *De Minimus* Contacts With New Jersey

Due process requires that in order for a nonresident defendant to be subjected to judgment *in personam*, that defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 317 (1945) (citation omitted).  The concept of minimum contacts "protects the defendant against the burdens of litigating in a distant or inconvenient forum.  And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

In determining whether minimum contacts are present, the court "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (citation omitted).  As such, the three part "minimum contacts" test requires the court to consider: (i) whether the defendant purposefully directed its activities at the forum; (ii) whether the litigation arises out of or relates to those forum activities; and (iii) if the prior to requirements are met, whether the exercise of jurisdiction otherwise comports with fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (citations omitted).  The plaintiff bears the burden of showing that personal jurisdiction exists. *GE v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001).

In its opening brief, ATG plainly identifies its incidental contacts with New Jersey.  (Mot., pp. 5-8, 17-19, and 29-31.)   Unfortunately, like its general jurisdiction arguments, MaxLite attempts to meet its burden by relying on incorrect

assertions. As demonstrated more fully below, ATG's actual *de minimus* contacts with New Jersey are not enough for MaxLite to demonstrate that the court should exercise specific jurisdiction.

> 1. ATG's Incidental Contacts With New Jersey Do Not Demonstrate That ATG Purposefully Directed Its Activities To New Jersey

For the court to assert specific jurisdiction over ATG, MaxLite must demonstrate that ATG has "purposefully established 'minimum contacts'" in New Jersey. *Burger King*, 471 U.S. at 474 (citation omitted). This requires the court to analyze the "quality and nature" of ATG's activity and determine whether ATG has "deliberately" engaged in "significant activities" that create a "substantial connection" with New Jersey. *Id.* at 475.

Unfortunately, with this burden in mind, MaxLite made many misstatements in an effort to demonstrate that ATG has a "substantial connection" with New Jersey. These include not only the misstatements that MaxLite also made in its general jurisdiction argument[2], but many others as well including, but not limited to, the following:

- Without any factual support, MaxLite states that ATG solicited the breach of the Employee Agreements "for the purposes of increasing ATG's business in New Jersey." (Opp., p. 24.)

---

[2] MaxLite again incorrectly states that ATG has "significant" business revenue from New Jersey (Opp., pp. 25-26), that that Galleher hired the independent contractor to draft press releases to "grow ATG's business in New Jersey" (Opp., pp. 26-27), and that that ATG hired a marketing firm to "purposefully direct more sales activities in this forum." (Opp., p. 27.)

- MaxLite argues that "ATG hired Galleher with the specific instruction to aggressively grow business in New Jersey." (Opp., p. 14; *see, e.g.*, Opp. pp. 25 and 26.) While MaxLite makes this assertion during Galleher's deposition, this was not Galleher's testimony. (Galleher Dep., 40:22-41:15.) Rather, Galleher testified that ATG had a national marketing strategy and a marketing campaign in the Northeast region. (*Id.*)
- MaxLite states that "ATG has been trying to grow its business in New Jersey's rebate market, which is 'much more lucrative' than markets in other parts of the country." (Opp., p. 26.) Again, Galleher actually testified that ATG was generally trying to grow its business in the Northeast and Mid-Atlantic rebate markets. (Galleher Dep., 37:5-38:2.)
- MaxLite asserts that ATG advertised in multiple industry publications and product advertisements "in its campaign to circulate magazines and advertisements to 'deliberately exploit' the New Jersey market." (Opp., p. 26.) While MaxLite provides no citation for this assertion, Galleher testified that these were national industry publications, not New Jersey specific. (*See e.g.*, Galleher Dep., 17:2-20:5.)
- MaxLite claims that ATG attended two international trade shows and "targeted and successfully contacted a large number of New Jersey attendees." (Opp., p. 27 [emphasis added].) MaxLite provides no support for its assertion that ATG was "targeting" New Jersey attendees and it only identifies three New Jersey attendees. (*Id.*)

In reality, ATG does not have the requisite substantial connections with the forum for the court to exercise specific jurisdiction.

First, ATG had random, fortuitous, and attenuated contacts with New Jersey through its national marketing and sales strategy. *Burger King*, 471 U.S. at 475. It is well-settled that a corporation's "continuous activity of some sorts within a state is not enough to support the demand that a corporation be amenable to suits unrelated to that activity." *International Shoe*, 326 U.S. at 318. Indeed, "[M]ere purchases, even if occurring at regular intervals are not enough to warrant a State's

assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984).  Here, ATG's limited contacts with New Jersey resulted in 0.045% of its total U.S. revenue.  These incidental contacts and this negligible result support a finding that ATG did not purposefully direct its activities to New Jersey.

Second, ATG's decision to hire the Employee Defendants is also too attenuated for the court to exercise specific jurisdiction.  To demonstrate that a nonresident defendant has the requisite minimum contacts, the plaintiff must demonstrate that jurisdiction is based on contacts that the defendant <u>itself</u> establishes with the forum, and those contacts must in fact be <u>with the forum</u> and not just with the plaintiff or other persons who happen to reside in the forum.  *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014).  It is undisputed that when ATG hired all three employees that none of them were working or living in New Jersey.  (Mot., Ex. B, ¶ 3; Mot., Ex. C, ¶ 3; Mot., Ex. D, ¶ 3.)[3]  It is undisputed that their Employee Agreements with MaxLite had a forum selection clause selecting New Jersey for <u>their disputes with MaxLite</u>.  It is also undisputed that ATG was not a

---

[3] MaxLite's allegation that ATG "contractually agreed" to defend the Employee Defendants if they were sued by MaxLite is both factually incorrect and legally irrelevant.  While this matter is still pending before this court, the record demonstrates that none of the Employee Defendants had an employment agreement with ATG, let alone a contractual agreement to defend them if they were sued by MaxLite.

party to those agreements. Thus, ATG's only connection to New Jersey here is through a forum selection clause to which ATG has never agreed. As ATG argues at length in its opening brief, ATG is not so closely related to the contract that the forum selection clause should apply to ATG. (Mot., p. 25-29 (citing *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287 (3d Cir. 1986) among others[4]). Thus, the forum selection clause does not connect ATG to New Jersey in a meaningful way and, as such, does not support a finding of specific jurisdiction. *Walden*, 134 S.Ct. at 1125.

In sum, MaxLite cannot demonstrate that ATG's incidental contacts with New Jersey are of the quality or nature that ATG has deliberately engaged in significant activities that create a substantial connection with New Jersey. Consequently, MaxLite cannot meet its burden to satisfy the first prong of the minimum contacts analysis.

> 2. The Tangential Relationship Between MaxLite's Alleged Harm And ATG's Incidental Contacts With New Jersey Do Not Demonstrate That MaxLite's Claims Arise Out Of New Jersey

In addition to identifying the requisite purposeful contact with the forum, a plaintiff requesting a forum court to exercise specific jurisdiction over a nonresident defendant must also show that the plaintiff's claims "arise out of or

---

[4] ATG already addressed MaxLite's arguments regarding *Radian Guaranty Inc. v. Bolen*, 18 F.Supp.3d 635 (E.D.Pa. 2014), and, as stated therein, demonstrated that *Radian*'s finding that a prospective employer may be bound by a forum selection clause in a non-compete agreement that it was not a party is contrary to this District, Third Circuit, and Supreme Court precedent.

relate to at least one of those contacts." *O'Connor*, 496 F.3d at 318. This showing does not "embrace every event that hindsight can logically identify in the causative chain" but must ensure that the defendants' jurisdictional obligations "bear [a] meaningful relationship to the scope of the 'benefits and protection' received from the forum." *Id.* at 322. Thus, the Third Circuit seeks to "keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations" and "intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." *Id.* at 323.

At the outset, MaxLite's argument fails because MaxLite has not shown that ATG's claims arise out of or relate to its attenuated contact with New Jersey. *O'Connor*, 496 F.3d at 318. Indeed, this suit cannot be said to be one to enforce an obligation that arose from a privilege the ATG exercised in New Jersey. *Hanson v. Denckla*, 357 U.S. 235, 252 (1958). Thus, there was no quid pro quo proportional benefit or protection that ATG received from New Jersey that is relevant to this analysis and, as such, an exercise of personal jurisdiction would be an unforeseeable and over-inclusive finding. *O'Connor*, 496 F.3d at 322.

Still, MaxLite argues that this court should exercise specific jurisdiction over ATG because "its contacts and conduct meet the test established in *Calder v. Jones*, 465 U.S. 784 (1984)." (Opp., p. 28.) In support, MaxLite reiterates many of the same "facts" and argues that ATG should have foreseen that its actions may

harm MaxLite in New Jersey.  (Opp., pp. 28-35.)   The geographical locus of the harm is only part of the test.  *IMO Indus., Inc. v. Keikert AG*, 155 F.3d 254, 264 (3d Cir. 1998).  Indeed, under the *Calder* effects test, a plaintiff must show that "(1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum . . .; [and] (3) The defendant expressly aimed his tortious conduct at the forum."  *Id.* at 265-66.  Only if the plaintiff demonstrates that the defendant expressly aimed its tortious conduct at the forum does the court consider the other two elements.  *Marten v. Godwin*, 499 F.3d 290, 297 (3rd Cir. 2007).

MaxLite conflates its allegations that it was harmed in New Jersey with its allegations that ATG's alleged tortious conduct was expressly aimed at New Jersey.  A plaintiff must go beyond facts connecting the defendant to the forum state other than the plaintiff's location at the time of the tortious conduct.  *Id.* at 299.  As stated at length in the opening brief and above, all of the facts surrounding ATG's alleged tortious conduct—including its employment relationship with the Employee Defendants—were focused on its California operations and, at best, tangentially harmed MaxLite in New Jersey.  Because the focus of ATG's actions were on its California operations, it was not foreseeable that ATG would be haled into New Jersey.  *Marten*, 499 F.3d at 297.  Therefore, the tangential harm to MaxLite in New Jersey is simply not enough to satisfy the second prong of the

minimum contacts analysis and, as such, this court should not exercise specific jurisdiction over ATG.

### 3. It Would Be Unreasonable For The Court To Exercise Specific Jurisdiction Over ATG

A determination of whether it is reasonable to exercise personal jurisdiction depends on whether requiring a nonresident defendant to defend a suit in a forum state comports with "fair play and substantial justice." *World-Wide Volkswagen*, 444 U.S. at 292. The parties agree that this analysis requires courts to weigh several factors including the burden on the defendant and the plaintiff's interest in obtaining convenient and effective relief. (Mot., pp. 29-30; Opp., pp. 35-36.) Because the burden on the defendant is the court's "primary concern" in this analysis (*O'Connor*, 496 F.3d at 324), ATG primarily argues that it would place an inordinately high burden on ATG to defend itself in New Jersey. (Mot., p. 30.) MaxLite does nothing more than mock ATG's potential burden. (Opp., pp. 36-37.)

Rather than directly address ATG's burden, MaxLite focuses on ATG's argument that MaxLite faces a significantly lesser burden to litigate this matter in California. MaxLite makes three assertions in an effort to rebut ATG's argument: (i) "ATG entirely ignores that the action against the Employee Defendants will continue in New Jersey" (Opp., p. 37); (ii) the court has already "determined New Jersey law will apply to the issues relating to [the Employee Defendants'] Employee Agreements" (Opp., pp. 36-37); and (iii) "ATG incorrectly argues that

all of the witnesses and evidence are located in California" (Opp., p. 37).  These assertions are misplaced.

First, ATG did not ignore the fact that the court has already found that it may exercise personal jurisdiction over the Employee Defendants.  To the contrary, ATG argues at length that the court could still choose to transfer the entire action to the Central District of California.[5]  (Mot., pp. 31-39.)  This solution would fully address MaxLite's "interest in obtaining convenient and effective relief [and] also the interstate juridical system's interest in obtaining the most efficient resolution of controversies."  (Opp., p. 37.)

Second, MaxLite's assertion that this court has commanded the Central District of California to apply New Jersey law to that court's interpretation of the Employee Agreements is erroneous.  In reality, during the April 21, 2015 hearing at issue, the court found that New Jersey law should apply to the Employee Defendants and supported its finding with facts related to the Employee Defendants' connection to the forum.   (Purcaro Dec., Ex. E., 78:3-80:4).  Immediately thereafter, the court stated the following about ATG's connection to the contract:

> I do think, however, ATG stands in a bit of a different posture.  There is no contract between ATG and Maxlite.  There is very speculative sort of, the arguments that

---

[5] The Magistrate Judge raised this option during the conference call with the parties on March 29, 2016.

> relate to what ATG has done in the State of New Jersey. It's no question that they do not maintain an office here and do not do any substantial business here. But as to whether there would be specific jurisdiction over ATG, I do believe that some jurisdictional discovery would have to take place prior to the Court being able to make a conclusive decision as it relates to jurisdiction over ATG. But as I already indicated, I do not think that's the case as it relates to the individual defendants. (*Id.* at 80:5-16.)

Contrary to MaxLite's assertions, the court found that New Jersey law applies to the employment contracts at issue for the Employee Defendants but that finding did not extend to ATG since it was not a party to the employment contracts at issue and the court had yet to make a determination regarding jurisdiction and .

Third, while there appears to be a factual dispute between ATG and MaxLite regarding the quantity of witnesses and evidence located in California, MaxLite cannot dispute it is a "large, bi-coastal corporation" that "makes its home in both New Jersey and California." (Mot., pp. 38-39.) In fact, MaxLite concedes that it has a California facility that "is responsible for less than 10% of its product development, testing, and certifications, and less than 16% of its total sales." (Opp., pp. 5-6.) Conversely, ATG is only "at home" in California, has no facilities in New Jersey, and derives only 0.045% of its total sales from New Jersey. It is well settled that "[j]urisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Burger King*, 471 U.S. at

478 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)). Here, the stark contrast between the facts related to each party demonstrates that the only forum where neither party would suffer a "severe disadvantage" is the Central District of California.

In conclusion, MaxLite cannot demonstrate that it would be reasonable for the court to exercise specific jurisdiction over ATG. This is especially true because while there would be an inordinate burden on ATG to litigate this matter in New Jersey, the court could easily transfer this action to the Central District of California and essentially negate all of MaxLite's concerns. As such, ATG respectfully requests that the court dismiss ATG from this matter for lack of personal jurisdiction.

### III. CONCLUSION

For the foregoing reasons, ATG respectfully requests that the court dismiss MaxLite's Amended Complaint against ATG for lack of personal jurisdiction or, in the alternative, transfer the entire action to the Central District of California.

Dated: April 25, 2016

BRODY AND ASSOCIATES, LLC

By: /s/
ALEXANDER FRIEDMAN
Attorney for Defendant
ATG ELECTRONICS, INC.