

J. John Kim
Member of the Firm
jkim@pashmanstein.com
201.270.5470

April 13, 2017

**VIA ECF**
Honorable James B. Clark III, U.S.M.J.
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

      *Re:*    *MaxLite, Inc. v. ATG Electronics, Inc., et al.*
              Case No. 2:15-cv-01116-SDW-SCM
              Our File No. 4346-001

Dear Judge Clark:

    As Your Honor is aware, we represent Defendants James D. Steedly, Sophia C. Galleher, and Matthew Kim (collectively, the "Employee Defendants") in the above captioned matter. Please accept this letter brief in lieu of a more formal memorandum in reply to the Supplemental Opposition Brief submitted by ATG Electronics, Inc. ("ATG"), dated March 31, 2017 (Docket Entry # 174).

### Employee Defendants' Rely Brief in Further Support of Their Order to Show Cause

    Your Honor granted ATG permission to submit additional briefing because over a year has passed since the Employee Defendants' fee application was fully briefed and argued. However, ATG's supplemental brief fails to supply any new information or circumstances that have any bearing on this application. Instead, ATG pivots and takes yet another inconsistent position in their desperate, but ultimately baseless, attempt to avoid their funding obligation.

    The primary basis for ATG's original opposition was that this Court lacked personal jurisdiction over ATG, and so it could not force ATG to comply with the mandate as set forth by the New Jersey Supreme Court in In re Grand Jury Investigation, 200 N.J. 481 (2009), which was based on New Jersey ethics rules. Now that the Court has determined that it does have personal jurisdiction over it, ATG switches the focus of its argument and claims that In re Grand Jury does not apply to them because "the record is devoid of any evidence to suggest the existence of a contract" between ATG and the Employee Defendants' counsel. (ATG Suppl. Br. at 1.) This change in position continues ATG's pattern of shifting inconsistent theories, including: (a) describing their already made payment of the Employee Defendants' legal fees as "gratuitous" gifts, then (b) calling them obligations, but only so long as the Employee Defendants remained employed at ATG, and then (c) as obligations but only up through the determination of personal jurisdiction issues. These alternating theories are completely at odds

1

J. John Kim
Member of the Firm
jkim@pashmanstein.com
201.270.5470

with each other, and demonstrate that ATG does not care about the actual facts; it is just desperately trying to wriggle out of its funding obligation in any way possible, truth be damned.

### A. An In re Grand Jury Application is Not a Breach of Contract Claim and Does not Require the Existence of a Contract

ATG's latest theory based on contract law is fundamentally flawed because it utterly misunderstands In re Grand Jury. The remedy fashioned by the New Jersey Supreme Court in In re Grand Jury does not require the existence of a "contract." To be clear, In re Grand Jury *does not* provide a cause of action for breach of contract, which a law firm might have against a third party payer in appropriate circumstances, completely independent from an In re Grand Jury application. To be equally clear, Pashman Stein Walder Hayden, P.C. ("PSWH") is not suing ATG for fees based on a breach of contract. This application *is not* a breach of contract action, which would center on a meeting of the minds between the law firm and third party payer, along with the exchange of consideration. Instead, In re Grand Jury is a remedy explicitly belonging to a *litigant* who detrimentally relied on a third party's promise of funding. It is not a cause of action; it is mechanism by which a litigant requires a third party payer to seek leave of the Court, for good cause shown, before the payer can stop funding.

The purpose of this mechanism, via summary action, is to prevent a third party payer from unethically influencing a litigation through the use of its purse-strings while at the same time preventing the massive disruption to litigation that occurs when funding is halted midstream. The New Jersey Supreme Court found such tactics to be so overwhelmingly unfair and improper, that it put the onus on the third party payer who undertook the obligation of paying another party's legal fees to first seek permission of the Court before stopping such payments. "In such an application, the third-party payer shall bear the burden of proving that its obligation to continue to pay for the representation should cease[.]" Id. at 496. Nowhere does In re Grand Jury require the applicant to meet the elements necessary to bring a breach of contract action. Not a single one of the six conditions in In re Grand Jury states that an agreement to fund must be in writing. The Court's pronouncement is much simpler, and unequivocal: "[o]nce a third party payer commits to pay for the representation of another, the third-party payer shall not be relieved of its continuing obligation to pay without leave of court." Id.

Despite what ATG now argues, the obligation is not limited to breach of contract cases. It is expansive, and applies "regardless of setting -- whether administrative, criminal or civil, either as part of an investigation, during grand jury proceedings, or before, during and after trial." Id. at 486.

### B. ATG Cannot Contest That it Undertook the Obligation to Pay the Employee Defendants' Legal Fees

J. John Kim
Member of the Firm
jkim@pashmanstein.com
201.270.5470

There is a reason that ATG now misguidedly focuses on the elements of a hypothetical breach of contract action between ATG and PSWH; it is because ATG knows that there is overwhelming evidence in the record, which they have not and cannot refute with contrary evidence, that *ATG undertook an obligation in some form* to pay the Employee Defendants' legal fees in an anticipated litigation with MaxLite.

The Employee Defendants' proposed Verified Cross-Claim, attached as Exhibit A to the September 16, 2015 Certification of J. John Kim in support of this funding application (the "Cross-Claim"), details abundant proof that ATG undertook this obligation. The emails cited and attached therein establish that ATG lured the Employee Defendants away from MaxLite, promised to protect them should their former employer sue, began doing just that by hiring and paying lawyers to fight MaxLite, and then fired the Employee Defendants when that obligation became too expensive.

By way of example only, the evidence shows that ATG: (a) told the Employee Defendants "give me a call to discuss this we should have [attorney] Jim help us get this handled" (Cross-Claim Ex. 10); (b) directed "[p]lease go ahead work with [attorney] Jim Mclcahy [sic], I am sure he can get this handled properly for us, this kind of thing happens a lot" (id. Ex. 11.); (c) received and executed an engagement agreement (id. Ex. 12) and conflict waiver (id. Ex. 13) from the Mulcahy law firm to represent ATG and the Employee Defendants; (c) affirmed, "Please don't worry about this lawsuit thing, this kind of thing happens everyday, Maxlite just wants to make it difficult for you . . . Jim Mulcahy will have this handled for us, no big deal, we should not be distracted from what we do" (id. Ex. 15); (d) stated, "Jim's bill is over $70k now? Please tell him we will pay early next month" (id. Ex. 21); (e) reaffirmed, "I need to talk to Jim on our strategy moving forward. I understand Jim's bill is bigger than we expected and it is beoming [sic] a substantial investment on ATG's part, we need to evaluate [sic] our options before we go on. I have talked to James and Matt over the weekend, I assured *them as long as you guys are productive, the lawsuit is nothing, we will fight it*" (id. Ex. 22); and (f) promised "MaxLite has no case, we will prevail, *Jim and I will work together on the legal bills as they come*, but eventually we will make MaxLite pay, at least a good part of it" (id. Ex. 23).

It is undisputed that ATG paid the initial retainer amount and several legal bills, including payments for invoices in April 2015 for $8,688, May 2015 for $40,000, June 2015 for $15,000, July 2015 for $2,500, August 2015 for $2,500 and September for $2,500. (Id. Exs. 15, 18-19.) Mulcahy LLP sent their bills directly to ATG. And as James Mulcahy certified, *"my understanding has always been that ATG had agreed that it 'would be subsidizing the legal fees and costs of this litigation for itself and the Individual [Employee] Defendants.'"* (James Mulcahy Certification dated October 29, 2015 "Mulcahy Cert.".)

Additionally, ATG's obligation to pay was not limited in time, scope, or amount. It was broad and unconditional, as certified by Mulcahy based on his engagement letter executed by ATG: "my representation and ATG's payment obligation to me, was never limited

3

**J. John Kim**
**Member of the Firm**
jkim@pashmanstein.com
201.270.5470

geographically to California, nor was it limited to only jurisdictional arguments in this litigation. In fact, paragraph 1 of our Engagement Letter is broad and states, 'you have requested that we represent each of you and [ATG] in connection with the filing of a lawsuit against [MaxLite] seeking a declaratory judgment and injunctive relief in connection with non-compete provisions in your prior employment agreements and your former employer's allegation of theft of trade secrets. The scope of our engagement may change if you ask us to provide different services and we agree to provide them.'" (Mulcahy Cert. ¶ 6.)

ATG has not only failed to provide any contrary evidence to the above, but it has also stated in open court that its position for purposes of this motion is that all of the above facts are true and not contested.

> The Court: I haven't seen any certifications or declarations on behalf of your client disputing essentially the – the facts – the factual record that's been built by the movants here.
> Counsel for ATG: That's correct, Your Honor
> The Court: Okay.
> Counsel for ATG: That's purposeful. The reason, Your Honor, is because when we are going through this – this OSC, we're not taking this as if this is something that we can dispute the facts.
> (November 23, 2015 Oral Argument Tr. 19:16-25.)

Based on such overwhelming -- and undisputed -- factual evidence, there can be no doubt that ATG undertook an obligation to pay the Employee Defendants' legal fees in some form or another. And that is all that In re Grand Jury requires, not the formal elements of breach of contract action.[1] Accordingly, ATG's argument on this ground must fail.

---

[1] ATG mischaracterizes Levine, Staller, Sklar, Chan, Brown & Donnelly, PA v. City of Atlantic City, 2014 WL 8630664 (App. Div. April 21, 2015) as implying that In re Grand Jury requires a the formal elements of breach of contract action. It does no such thing. Levine, which was addressed in the Employee Defendants' Rely Brief dated October 30, 2015, at fn. 12, is an actual breach of contract case where a law firm sued the alleged third party payer. In such a circumstance, it would matter whether the elements of a breach of contract were met. When the law firm attempted to use In re Grand Jury in support of its argument, the Levine court found that unlike the case in In re Grand Jury, the third party payer had not made an unconditional promise to pay legal fees. But that is not this case. This application is not a breach of contract action, and here, as amply demonstrated and as factually conceded by ATG, it did undertake such an obligation to pay.

Budd Larner, P.C. v. Gabriel, 2014 WL 2106566 (App. Div. May 21, 2014), also cited by ATG, is similarly inapposite. That case had nothing to do with an In re Grand Jury application and In re Grand Jury was not even raised or considered. Instead, Budd Larner, P.C. was a breach of

J. John Kim
Member of the Firm
jkim@pashmanstein.com
201.270.5470

### C. It is Does Not Matter that ATG Never Specifically Approved of PSWH

ATG argues that the retainer agreement with Mulcahy LLP cannot subject it to the payment of PSWH's fees, because that agreement is with Mulcahy LLP only. Again, this might matter in a breach of contract action, but it is immaterial here. The fact that ATG purportedly agreed to pay Mulcahy LLP rather than current counsel does not matter. In re Grand Jury makes it clear that a payer cannot direct, regulate, or interfere with the attorney client relationship. 200 N.J. at 495-96. The clients are entitled to select counsel of their choice to represent them. And importantly, it was ATG's own actions in terminating the Employee Defendants and hiring new counsel for itself, and failing to pay legal fees that forced Mulcahy LLP to be conflicted and seek to withdraw its representation of the Employee Defendants. ATG cannot create a situation where counsel is forced to withdraw, forcing new counsel to be hired, and then complain that it did not approve the new attorneys.

In its supplemental briefing, ATG claims that it would be unfair to force it to pay PSWH's fees "in perpetuity." Again, that misunderstands this application. In re Grand Jury does not require ATG to pay fees "in perpetuity." It requires ATG to pay all legal fees up until it makes an application to the Court, for good cause shown, to stop paying legal fees. It is undisputed that ATG has not yet done this. And until and unless they do, ATG must continue to pay the Employee Defendants' legal fees, including those from PSWH, under the clear and express mandate of In re Grand Jury.

### Conclusion

ATG has it backwards when it claims that it would be unfair for the Court to force it to pay without there being a contract between ATG and PSHW. What In re Grand Jury holds is that ATG is not allowed to stop paying legal fees until it first seeks and receives the permission of the Court, because it is devastatingly unfair and unjust to halt funding mid-litigation. "***Once an employer commits to paying the legal fees and expenses of its employees, it scrupulously must honor that commitment***" and "***if the employer wishes to discontinue paying the legal fees and expenses . . . it may do so only by leave of court.***" Id. at 498-99. The facts show that ATG took on some form of obligation to pay the Employee Defendants' legal fees. It is undisputed that ATG had been paying the legal fees for the Employee Defendants for several months, and then unilaterally stopped. It is undisputed that ATG did this without first obtaining the Court's leave. ATG cannot stop funding midstream. They must make an application and show good cause first, and ATG has not done so. Accordingly, the Employee Defendants respectfully request that the Court grant their application under In re Grand Jury.

---

contract case where a law firm sued a supposed third party payer, but the court found that there was no promise to pay, and thus no breach of contract.

J. John Kim
Member of the Firm
jkim@pashmanstein.com
201.270.5470

Respectfully Submitted,

*[signature]*

J. John Kim
cc: All Counsel of Record (via ECF)