**J. John Kim**
**Member of the Firm**
jkim@pashmanstein.com
201.270.5470



April 12, 2018

**VIA ECF**
Honorable John Michael Vazquez, U.S.D.J.
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

      Re:    *MaxLite, Inc. v. ATG Electronics, Inc., et al.*
             Case No. 2:15-cv-01116-SDW-SCM
             Our File No. 4346-001

Dear Judge Vazquez:

      We write on behalf of Defendants James D. Steedly, Sophia C. Galleher, and Matthew Kim (collectively, the "Employee Defendants") in reply to the Objection to Magistrate Judge Clark's March 15, 2018 Report and Recommendation ("Report") submitted by Defendant ATG Electronics, Inc. ("ATG") on March 29, 2018 (the "Objection").

      We appreciate the thoughtful analysis detailed in Magistrate Judge Clark's Report. While we were disappointed to not be given injunctive relief and believe that granting such relief would be consistent with established New Jersey law, we understand the Report's rationale and are not objecting to its recommendations and findings.

      We further understand the Report's strongly articulated basis to have our application be heard as a motion on an expedited basis, which is extremely important to us and our clients, as our firm has not been paid for approximately two years and our clients continue to face the uncertainty of not knowing whether they will have funding for this lawsuit. Accordingly, pending Your Honor's approval of the Report, we will make our application immediately following the service of our Amended Answer and Cross-Claim and ATG's Answer to the same.

      As an initial matter, it is not entirely clear whether ATG's Objection to the Report should be reviewed under a *de novo* standard pursuant to F.R.C.P. 72(b), or under a "clearly erroneous or contrary to law" standard pursuant to F.R.C.P. 72(a). ATG agreed with the Report's recommendation that a preliminary injunction not be issued, and also did not appear to object to the Report's recommendation that the Employee Defendants be granted leave to amend their Answer and assert a Cross-Claim. (Objection at 1.) Instead, ATG appears to object to the "reasoning in the report." *Id*. It is not clear whether it is appropriate to object to "reasoning" only, and what standard applies to its evaluation. In any event, whether considered under a *de novo* standard or a "clearly erroneous or contrary to law" standard, ATG's rationale is flawed,

1

**J. John Kim**
Member of the Firm
jkim@pashmanstein.com
201.270.5470



and the Court should not reject the reasoning in the Report that the Employee Defendants have established a likelihood of success on the merits of their fee application.

## ARGUMENT

The arguments that ATG sets forth in its Objection are nothing new. They have been stated, argued in open court (twice), well considered, and then thoughtfully rejected by Magistrate Judge Clark.

### I.     *In re Grand Jury* is Not Limited to Regulating the Conduct of Attorneys

ATG's claim that *In re Grand Jury* applies "to attorney conduct only and does not extend to create any obligations for a third-party payer" is a repeat of what it argued in its original November 23, 2015 Opposition to the Employee Defendant's Order to Show Cause (albeit with different counsel). (ATG 11/23/15 Opp. Br. at 14.) But this attempt to narrow the scope is soundly and directly contradicted by the very words of the New Jersey Supreme Court in the *In re Grand Jury* decision itself, which makes the remedy available "**regardless of the setting -- whether administrative, criminal or civil, either as part of an investigation, during grand jury proceedings, or before, during and after trial**." *In re Grand Jury*, 200 N.J. 481, 486 (2009) (emphasis added). Magistrate Judge Clark considered ATG's argument and directly rejected it in his Report: "[a]lthough . . . grounded in principles of attorney conduct, the Court need look no further than the plain language of *Grand Jury* to conclude that its reach extends beyond attorneys to third-party payers. In fact, far from applying solely to attorneys, the sixth *Grand Jury* factor applies entirely to third-party payers." (Report at 23.)

A plain reading of *In re Grand Jury* demonstrates that it does more than permit a court to regulate attorney conduct, it clarifies obligations imposed on third party payers, including an affirmation that payers cannot interfere with the attorney-client relationship or use their purse strings to direct litigation strategy. *Id.* at 495-96. More significantly, the Court establishes that "**[o]nce an employer commits to paying the legal fees and expenses of its employees, it scrupulously must honor that commitment**" and "**if the employer wishes to discontinue paying the legal fees and expenses . . . it may only do so by leave of court**." *Id.* at 498-99 (emphasis added). The Court expressly provides a remedy to clients in situations where payers fail to timely pay their counsel's invoices, in the form of a summary action to compel compliance with the obligation: "**If a third-party payer fails to pay an employee's legal fees and expenses when due, the employee shall have the right, via a summary action, for an order to show cause why the third-party payer should not be ordered to pay those fees and expenses**." *Id.* at 497 (emphasis added). ATG has never had an answer for these express proclamations made by the Court that, without question, go beyond merely regulating when an attorney may accept being paid by a third party.

**J. John Kim**
**Member of the Firm**
**jkim@pashmanstein.com**
**201.270.5470**



Moreover, since *Grand Jury* was issued, the appellate division has applied it outside the narrow confines of regulating attorney conduct. *See Pashman Stein v. Nostrum Labs., Inc.*, 2014 WL 5312535, at *1 (App. Div. Oct. 20, 2014) (applying *Grand Jury* outside the context of attorney disqualification; ordering that an evidentiary hearing be held to determine "whether defendant presented sufficient reasons for terminating the retainer agreement under *Grand Jury*). *In re Grand Jury* is not merely about the Court's ability to regulate attorney conduct; it is about affording protection to clients who have detrimentally relied on a third-party's promise of funding by requiring leave of court before terminating the payment obligation.

### II.   In Re Grand Jury Is Not a Contract Cause of Action and Does Not Require the Existence of a Formal Agreement

Contrary to ATG's position, the remedy fashioned by the New Jersey Supreme Court does not require the existence of any formal contract or indemnification agreement. As recognized in Magistrate Clark's Report, "*Grand Jury* neither states that the existence of a formal written contract is a prerequisite to obtain the relief provided for therein nor makes any mention of requirements which must be met for the formation of an enforceable agreement between a litigant and a third-party payer in this context." (Report at 24.) There is nothing in *In re Grand Jury* that creates a cause of action for breach of contract, which a law firm might have against a third party payer in appropriate circumstances completely independent from an *In re Grand Jury* application. Perhaps if Pashman Stein Walder Hayden, P.C. ("PSWH"), or even the Employee Defendants, were suing ATG for breach of contract, the existence of a formal contract or indemnification agreement might matter. But to be clear, neither PSWH nor its clients are suing ATG for fees based on a breach of contract. Such an action, had it been brought, would focus on whether there had been a meeting of the minds along with the exchange of consideration. Instead, by explicit proclamation of the New Jersey Supreme Court, *In re Grand Jury* is a remedy exclusively belonging to a *litigant* who detrimentally relied on a third party's promise of funding. It is not a cause of action; it is a mechanism by which a litigant can require a third party payer to seek leave of the Court – for good cause shown – before the payer can stop funding.

The purpose of the *In re Grand Jury* mechanism is to prevent a third party payer from unethically influencing a litigation through the use of its purse-strings while at the same time preventing the massive disruption to litigation that occurs when funding is halted midstream. The Supreme Court of New Jersey found that such tactics were so overwhelmingly unfair and improper, that it affirmatively placed the onus on the third party payer who undertook the obligation of paying another's legal fees to first seek permission of the Court before stopping such payments. "**In such an application, the third-party payer shall bear the burden of proving that its obligation to continue to pay for the representation should cease. . . .**" *Id*. at 496 (emphasis added). Nothing in *In re Grand Jury* requires the applicant to meet the formal elements of a contract cause of action. None of the six conditions listed states that an agreement to fund must be formal or in writing. Instead, the Court's pronouncement is much simpler, and

3



**J. John Kim**
**Member of the Firm**
jkim@pashmanstein.com
201.270.5470

unequivocal: "[o]nce a third-party payer commits to pay for the representation of another, the third-party payer shall not be relieved of its continuing obligation to pay without the leave of court." *Id.*[1]

### III.   *In re Grand Jury* is Not Contingent on There Being an Express Promise to Pay Unconditionally

Despite ATG's arguments to the contrary, the applicability of *In re Grand Jury* is not limited to situations where there is an agreement between the attorney and third party payer specifying that the payer's promise to pay is "unconditional" or "absolute" i.e., an express agreement that the payer can only discontinue funding after obtaining leave of court.

This is an absurd argument. If ATG were right, *In re Grand Jury's* restrictions would only apply to the rare instances where the third party payer already agreed to do exactly that which *In re Grand Jury* requires. But this makes no sense; the Court's very decision in *In re Grand Jury* would not have been necessary if the third party payers had already independently agreed to its directive. Nowhere does the Supreme Court impose the additional condition that ATG suggests. In fact, the retainer letter in *In re Grand Jury* itself does *not* state that the obligation to pay is unconditional. And in *Nostrum Labs.*, *supra*, at \*3, the retainer stated that the representation could be terminated *at any time* – the exact opposite of an unconditional obligation to pay.

The retainer agreement in *In re Grand Jury* did not contain a promise to pay that was expressly unconditional. It simply stated that "it is our understanding that our fees will be paid directly by [the company] or its affiliates. (*See* J. John Kim Reply Cert., Exh. A, Docket No. 113-2.) That is no more specific or general than ATG's undertaking of its obligation to pay for the Employee Defendant's legal fees. Despite their protestations, there is no requirement that the promise to pay be expressed as "absolute" or "unconditional" and ATG has no legitimate basis for trying on its own to build one in now.[2]

---

[1] *Budd Larner, P.C. v. Gabriel*, 2014 WL 2106566 (App. Div. May 21, 2014), cited by ATG, is utterly inapposite and demonstrates how far they feel they must stretch. That case had nothing to do with an *In re Grand Jury* application and *In re Grand Jury* was not even raised or considered. Instead, *Budd Larner, P.C.* was a breach of contract case where a law firm sued a supposed third party payer, but the court found that there was no promise to pay, and thus no breach of contract. As expressed *supra*, this is no breach of contract case.

[2] ATG misguidedly relies on *Levine, Staller, Sklar, Chan, Brown & Donnelly, PA v. City of Atlantic City*, 2014 WL 8630664 (App. Div. April 21, 2015) to argue that *In re Grand Jury* requires the formal elements of breach of contract action and that a promise to pay be unconditional. But *Levine* does no such thing. *Levine* is an actual breach of contract and quantum meruit case where a law firm sued the alleged third party payer. In such a

4

**J. John Kim**
**Member of the Firm**
jkim@pashmanstein.com
201.270.5470



In any event, ATG's obligation to pay was not limited in time, scope, or amount. It was broad and not contingent on any prerequisites, as certified by Mulcahy based on his engagement letter executed by ATG: "my representation and ATG's payment obligation to me, was never limited geographically to California, nor was it limited to only jurisdictional arguments in this litigation. In fact, paragraph 1 of our Engagement Letter is broad and states, 'you have requested that we represent each of you and [ATG] in connection with the filing of a lawsuit against [MaxLite] seeking a declaratory judgment and injunctive relief in connection with non-compete provisions in your prior employment agreements and your former employer's allegation of theft of trade secrets. The scope of our engagement may change if you ask us to provide different services and we agree to provide them.'" (James Mulcahy Certification dated October 29, 2015 "Mulcahy Cert." ¶ 6.) Mulcahy LLP sent their bills directly to ATG. And as James Mulcahy certified, "*my understanding has always been that ATG had agreed that it 'would be subsidizing the legal fees and costs of this litigation for itself and the Individual [Employee] Defendants.*'" (Id.)

### IV.     ATG Cannot and Does Not Contest That it Undertook at Least *Some* Obligation to Pay the Employee Defendants' Legal Fees

As Magistrate Judge Clark astutely observed, "ATG acknowledges that it did indeed agree to bear at least some level of responsibility for the legal cost incurred by the Employee Defendants as a result of their departure from MaxLite and MaxLite's subsequent legal action . . . ." Report at 24.) In short, ATG has not -- and cannot -- dispute the following facts: (1) ATG

---

circumstance, it would matter whether the elements of a breach of contract and quantum meriut were met.

When the law firm – which, unlike here, was not even making an *In re Grand Jury* application – attempted to use *In re Grand Jury* in support of its argument, the *Levine* court found that unlike the case in *In re Grand Jury*, the third party payer's supposed obligation to pay legal fees was *contingent* on several conditions that had not been met. *Levin, supra* at *20. "[T]he payment agreement . . . [was] subject to the requirements of the LPCL, the pay-to-play laws, and the city Code. . . . unlike the private agreements that formed the basis of the Court's decision in *In re State Grand Jury* . . . the Firm's entitlement to payment was arguably conditioned upon compliance with multiple laws and procedures, *none of which were satisfied*." *Id* (emphasis added) (also finding the promise to pay was no more than letters directing that representations take place, first "assuming the employee had not acted with actual fraud or actual malice and . . . requir[ing] that the acts complained of occur within the employee's scope of employment"). This is a far cry from ATG's unconditioned and actual undertaking of its promise to pay by making several legal fee payments. ATG's promise to pay the Employee Defendant's legal fees was only conditioned on one thing – their leaving MaxLite and coming to ATG. This condition was obviously fulfilled.

5

**J. John Kim**
**Member of the Firm**
jkim@pashmanstein.com
201.270.5470



undertook *some kind of the obligation* to pay the Employee Defendants' legal fees in this litigation and made several payments towards that end; and (2) ATG stopped paying those legal fees without first obtaining the Court's permission to do so.  That alone is sufficient to afford the Employee Defendants with relief under *In re Grand Jury*.

The Report acknowledges abundant proof detailed by the Employee Defendants in their proposed Verified Cross-Claim that ATG undertook the obligation of funding.  (Report at 4-10.) The emails quoted therein establish that ATG lured the Employee Defendants away from MaxLite, promised to protect them should their former employer sue, began doing just that by hiring and paying lawyers to fight MaxLite, and then fired the Employee Defendants when that obligation became too expensive.

By way of example only, the evidence shows that ATG:

- told the Employee Defendants "give me a call to discuss this we should have [attorney] Jim help us get this handled" (Verified Cross-Claim Ex. 10);

- directed "[p]lease go ahead work with [attorney] Jim Mclcahy [sic], I am sure he can get this handled properly for us, this kind of thing happens a lot" (id. Ex. 11.);

- received and executed an engagement agreement (id. Ex. 12) and conflict waiver (id. Ex. 13) from the Mulcahy law firm to represent ATG and the Employee Defendants;

- affirmed, "Please don't worry about this lawsuit thing, this kind of thing happens everyday, Maxlite just wants to make it difficult for you . . . Jim Mulcahy will have this handled for us, no big deal, we should not be distracted from what we do" (id. Ex. 15);

- stated, "Jim's bill is over $70k now?  Please tell him we will pay early next month" (id. Ex. 21);

- reaffirmed, "I need to talk to Jim on our strategy moving forward.  I understand Jim's bill is bigger than we expected and it is beoming [sic] a substantial investment on ATG's part, we need to evaluate [sic] our options before we go on.  I have talked to James and Matt over the weekend, I assured *them as long as you guys are productive, the lawsuit is nothing, we will fight it*" (id. Ex. 22); and

- promised "MaxLite has no case, we will prevail, *Jim and I will work together on the legal bills as they come*, but eventually we will make MaxLite pay, at least a good part of it" (id. Ex. 23).

Magistrate Judge Clark recognized that these facts are uncontested.  "ATG does not dispute the facts set forth by the Employee Defendants in their Crossclaim."  (Report at 4, n. 4.)

**J. John Kim**
**Member of the Firm**
jkim@pashmanstein.com
201.270.5470



It is also undisputed that ATG paid the initial retainer amount and several legal bills, including payments for invoices in April 2015 for $8,688, May 2015 for $40,000, June 2015 for $15,000, July 2015 for $2,500, August 2015 for $2,500 and September for $2,500. (Verified Cross-Claim, Exs. 15, 18-19.) Having begun paying legal fees, ATG has never sought leave of court to stop. And that is exactly what *In re Grand Jury* requires.

ATG's complaints about fairness are misdirected. ATG argues, "[t]aken to its logical conclusion, the Employee Defendants' theory would obligate every employer who pays a portion of its employee's legal fees to pay off the employee's legal fees in perpetuity. . . ." (Objection at 3.) But that misunderstands the remedy; *In re Grand Jury* does not require ATG to pay fees "in perpetuity." It requires ATG to pay all legal fees up until it makes an application to this Court, for good cause shown, to stop paying legal fees. It is undisputed that ATG has not yet done this. And until and unless they do, ATG must continue to pay the Employee Defendants' legal fees, including those from PSWH, under the clear and express mandate of the New Jersey Supreme Court.

## CONCLUSION

For the foregoing reasons, the Employee Defendants respectfully request that the Court adopt the findings and recommendations in Magistrate Judge Clark's Report in whole, including the reasoning that their *In re Grand Jury* application is likely to succeed on the merits, and following the service of their Amended Answer and Verified Cross-Claim, and ATG's Answer to the same, permit the Employee Defendants to make a motion, to be resolved on an expedited basis, for the relief requested.

Respectfully Submitted,

/s/ J. John Kim_____

J. John Kim
cc: All Counsel of Record (via ECF)