Michael S. Stein, Esq. (MS-3248)
J. John Kim, Esq. (JK-1979)
**PASHMAN STEIN, P.C.**
Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601
(201) 488-8200
*Attorneys for Defendants James D. Steedly,*
*Sophia C. Galleher, and Matthew Kim*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAXLITE, INC., a New Jersey Corporation, f/k/a SK AMERICA, INC., d/b/a MAXLITE,<br><br>        Plaintiff,<br><br>v.<br><br>ATG ELECTRONICS, INC., JAMES D. STEEDLY, SOPHIA C. GALLEHER and MATTHEW KIM,<br><br>        Defendants. | Civil Action No.  2:15-CV-01116-JMV-JBC |

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE EMPLOYEE DEFENDANTS' EXPEDITED MOTION FOR SUMMARY JUDGMENT

---

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

LEGAL ARGUMENT ....................................................................................... 6

   A.   ATG'S NEW FACTUAL ALLEGATIONS SHOULD BE DISREGARDED. 6

     1.  The Factual Record In Connection With This Motion Is Closed And Undisputed ................................................................................................ 6

     2.  ATG's New Factual Allegations Are Baseless And Contradictory ............... 10

   B.   GRAND JURY DOES NOT REQUIRE THE EXISTENCE OF A FORMAL CONTRACT OR AN ORAL CONTRACT. ..................................................... 13

   C.   PASHMAN STEIN WALDER HAYDEN, P.C.'S LEGAL FEES ARE REASONABLE. ...................................................................................... 17

     1.  No One Is Seeking Prevailing Party Fee Shifting Relief ................................. 17

     2.  PSWH's Hourly Rates are Reasonable .......................................................... 21

     3.  The Hours Expended by PSWH are Reasonable ............................................ 23

     4.  ATG Fails to Make a Compelling Argument Against Enhancing PSWH's Legal Fee ..................................................................................................... 27

CONCLUSION AND RELIEF REQUESTED ........................................................ 29

# TABLE OF AUTHORITIES

**Cases**

*In re Grand Jury,*
   200 N.J. 481 (2009) ........................................................................ passim

*Krystal Cadillac-Oldsmobile GMC, Truck Inc. v. Ge. Motors Corp.,*
   337 F.3d 314 (3d Cir. 2003) ..................................................................... 11

*Levine, Staller, Sklar, Chan, Brown & Donnelly, P.A. v. City of Atl. City,*
   2014 WL 8630664 (App. Div. Apr. 21, 2015) ................................... 16, 17

*Macfarlan v. Ivy Hill SNF, LLC,*
   675 F.3d 266 (3d Cir. 2012) ..................................................................... 11

*Sipko v. Koger, Inc., et. al,*
   Docket No. BER-C-393-07 ........................................................................ 22

*Stein v. Nostrum Labs, Inc.,*
   2014 WL 5312535 .................................................................................... 19

*Walker v. Giuffre,*
   209 N.J. 124 (N.J. Sup. Ct. 2010) (quoting *Rendine,* 141 N.J. at 343) ............. 27, 28

Defendants James D. Steedly, Sophia C. Galleher, and Matthew Kim

("Employee Defendants") respectfully submit this Reply Memorandum of Law in

response to ATG Electronics, Inc.'s ("ATG") Opposition Brief ("ATG Opp. Br.")

and accompanying papers, and in further support of the Employee Defendants'

expedited motion for summary judgment pursuant to the New Jersey Supreme

Court's decision in *In re Grand Jury*, 200 N.J. 481, 498 (2009).

## PRELIMINARY STATEMENT

Over two years ago, when confronted with evidence of emails from its

principal Nick Ni stating: "please go work with Jim Mulcahy," "Jim's bill is over

$70k now? Please tell him we will pay early next month," "Jim's bill is bigger than

we expected and it is becoming a substantial investment on ATG's part . . . as long as

you guys are productive, the lawsuit is nothing, we will fight it," and "Jim and I will

work together on the legal bills as they come," -- ATG did in fact, contrary to its

present position, take a position with respect to its obligation to pay the Employee

Defendants' attorney's fees.  It took a very definitive position, stating in its own

words that "payment was always connected with the Individual Defendants'

continued employment with ATG . . . . [t]he Individual Defendants no longer work

for ATG, and therefore the condition of payment is no longer satisfied."

It is plain fact that ATG specifically claimed that its commitment to pay

attorney's fees was directly tied to the Employee Defendants' continued employment

at ATG.  And now that they no longer worked there – having been fired – ATG's obligation was over.   ATG made this representation to *this Court*, in *this litigation*, in formal legal briefs that *it filed*.

And now, for the first time, years later, ATG attempts to inject contrary facts into the record, and has the nerve to claim that ATG undertook no obligation whatsoever to pay fees, and that it never at any point even discussed legal fees with the Employee Defendants.  ATG does this with no evidential support, but for the conclusory and self-serving Declaration of its principal, Nick Ni.  And ATG does this without trying to reconcile its prior conflicting position or attempting to explain the contrary emails.  ATG's assertion of these inconsistent facts reeks of dishonesty.

Moreover, ATG's counter-facts come at a time when the fact record, with respect to this motion, is known and has been adjudicated to be undisputed and closed.  More than two years ago in November 2015, in open court during oral argument in connection with the Employee Defendants' initial *Grand Jury* application, the Court pointed out that ATG submitted no certifications or declarations disputing the factual record.  ATG's response was: "[t]hat's correct, Your Honor" and "[t]hat's purposeful" and "we're disputing this strictly on the law, Your Honor."  ATG noted that the proper time to raise any facts would not occur until they were in "a summary action [which] would be something that we would initiate to say that we would like to be relieved of our obligation to pay."

2

Later, in March 2017, when ATG's new counsel, Jasinski P.C., entered the case, it requested and obtained leave to file a supplemental brief opposing the *Grand Jury* application and also a second chance at oral argument. ATG did not raise a single contrary fact in that brief nor that oral argument, and did nothing to disavow the understanding of the parties and the Court that the fact record was undisputed.

A year later, in March 2018, Magistrate Judge Clark materially relied on the shared understanding that the factual record was undisputed in issuing his Report and Recommendation, extensively citing the Employee Defendants' fact record, and recognizing that "ATG does not dispute the facts set forth by the Employee Defendants in their Crossclaim." In fact, Judge Clark wrote that the basis for permitting the instant *Grand Jury* motion on an expedited basis was that "because the facts underlying the Employee Defendants' request for relief are undisputed, the Court will permit the filing of expedited dispositive motions."

ATG then filed an Objection to the Report and Recommendation, objecting to a multitude of things, including findings, conclusions, and even the rationale used by Judge Clark. However, what ATG conspicuously failed to object to, was the citation to and reliance on the undisputed factual record, as well as the finding that "ATG does not dispute the facts."

3

Judge Vazquez relied on the same premise that the fact record was undisputed, a conclusion that ATG did not object to, when he issued his decision adopting the Report and Recommendation "in its entirety" in May 2018.

Through all this time, consistently all of the parties, and the Court understood that the fact record underlying the *Grand Jury* application, was undisputed. But to erase all doubt, when the instant motion was being scheduled, during a conference call before Magistrate Judge Clark, ATG sought permission to conduct discovery and add new facts. The Employee Defendants objected, and the Court conclusively ruled that the facts were undisputed, and the record was closed. "You've had an opportunity to present this case. We had a full-blown hearing, and you basically agreed that facts were not in dispute."

ATG refuses to accept this ruling. What it now does is try to shoe-horn in its new contrary facts in an effort to turn this "expedited dispositive motion" into a jury trial. ATG's attempt is utterly baseless, dismissive of prior rulings, and should be disregarded by the Court.

The remainder of ATG's Opposition is familiar to the Court and has been made before – that *Grand Jury* does not apply because the elements of a formal contract, including intent, meeting of the minds, and the undertaking of an unconditional obligation, were not met. As Magistrate Judge Clark has already found, *Grand Jury* does not require the existence of a contract. And the Employee Defendants are not

4

bringing a breach of contract action. ATG has already admitted it undertook some obligation to pay legal fees (and that its commitment was tied to the continuing employment of the Employee Defendants). That is enough under *Grand Jury*.

Finally, ATG does not raise any serious contentions with respect to the reasonableness of Pashman Stein Walder Hayden P.C.'s ("PSWH") legal fees. It makes up imaginary adverse positions to fight by claiming that PSWH's application to recover fees incurred by making this *Grand Jury* application is, in actuality, the seeking of a prevailing party fee shift, which cannot be allowed under the "American Rule" without a relevant statute or contract. But that is not what is happening. There is no prevailing party fee shift being sought; *Grand Jury* is a mechanism that requires a third party payer like ATG to continue funding until it obtains the court's permission to stop, for good cause shown. *Grand Jury* does not limit the recovery of legal fees to certain categories.

ATG's attempt to argue that PSWH's hourly rate is unreasonable falls flat because ATG fails to address the multiple pieces of evidence set forth by PSWH demonstrating that its rates are comparable to similar firms doing similar work in the same geographical region.

And finally, ATG contention that the number of hour expended by PSWH was unreasonable rings hollow because it is based primarily on the misinformed notion that PSWH's retainer agreement states that the firm was hired to negotiate a

settlement (despite that retainer agreement stating that the scope of engagement would be revisited if settlement failed).  Of course, lawyers and their clients in this state are permitted to agree to change the scope of representation if they so choose, and there is no requirement or law that an agreed upon change in scope be memorialized in writing.  In case it was not obvious that this is what happened here, the attached Certifications of Defendant Sophie Galleher and Matthew Kim confirm that the signatories agreed to change the scope of engagement when settlement failed. And while ATG is factually wrong about its scope of engagement assertion anyway, it fails to explain how that has anything to do with whether the number of hours expended by PSWH was reasonable.

## LEGAL ARGUMENT

### A.   ATG'S NEW FACTUAL ALLEGATIONS SHOULD BE DISREGARDED.

#### 1.  The Factual Record In Connection With This Motion Is Closed And Undisputed

Magistrate Judge Clark materially relied on the premise that the factual record was undisputed in issuing his Report and Recommendation dated March 15, 2018 (Docket Entry # 185) (the "R&R"), recognizing that "ATG does not dispute the facts set forth by the Employee Defendants in their Crossclaim" (R&R at 4, fn. 4).  The R&R cites at length the key undisputed facts laid out in the Employee Defendants' Crossclaim, including that ATG promised it would "provide full legal protection" and

"cover all defense costs." (Id. at 4-12.)  In fact, the very basis for allowing the instant *In re Grand Jury* motion on an expedited basis was that the fact record was undisputed.  "[B]ecause the *facts underlying the Employee Defendants' request for relief are undisputed,* the Court will permit the filing of expedited dispositive motions . . . ." (Id. at 34 (emphasis added).)

Significantly, in its March 29, 2018 Objections to the R&R (Docket Entry #187), while ATG objected to a host of various things, including even the "rationale" employed by Magistrate Judge Clark, it conspicuously failed to object to the multiple findings that the "*facts underlying the Employee Defendants' request for relief are undisputed.*"

Judge Vazquez materially relied on the same premise and on the undisputed facts cited in the R&R (at 4-12) when he "adopt[ed] the Report and Recommendation in its entirety" in his decision dated May 14, 2018 (Docket Entry #189).

Going back further still, after ATG's current law firm, Jasinski, P.C. entered the case and was given the opportunity to make new additional arguments in its Supplemental Opposition Brief dated March 31, 2017 (Docket Entry #174), and granted a second chance at oral argument on May 3, 2017 (Docket Entry #179), ATG did not attempt to introduce contrary facts, and allowed all of the parties and the Court to proceed with the understanding previously articulated by ATG's own counsel in open court:

7

The Court: I haven't seen any certifications or declarations on behalf of your client disputing essentially the – the facts – the factual record that's been built by the movants here.

Counsel for ATG: That's correct, Your Honor

The Court: Okay.

Counsel for ATG:  That's purposeful.

(November 23, 2015 Oral Argument Tr. 19:16-25.)

The remainder of the Court's discussion with ATG's counsel on the record reveals that ATG's position was that it was purposefully not raising any facts, and that the appropriate time to do so, would be when and if ATG initiated an action seeking the Court's consent to be relieved of its obligation to pay.

Counsel for ATG:  That's purposeful.  The reason, Your Honor, is because when we are going through this – this OSC, we're not taking this as if this is something that we can dispute the facts.  We're -- *we're disputing this strictly on the law*, Your Honor.

The Court:  Okay.

Counsel for ATG:  And so while, if we did have to go through a summary action, we would feel that that is the time where we would raise any facts that would give us leave –

The Court:  We're in the summary action.

Counsel for ATG:  I believe we're not in the summary action, Your Honor.

The Court:  Okay.

Counsel for ATG:  Based on their requests, and I believe that Mr. Kim had mentioned this before, that *a summary action would be something that we would initiate to say that we would like to be relieved of our obligation to pay.*

8

(Id. at 19:22-20:14.)

This exchange makes clear that ATG chose to "*disput[e] this strictly on the law*" and that if they were going to raise any facts, it would be when ATG "initiate[d]" a proceeding "to be relieved of [its] obligation to pay," which is the procedure mandated by *In re Grand Jury* that a third party payor must avail itself of to receive the Court's permission to stop funding. 200 N.J. 481, 498 (2009) ("if the employer wishes to discontinue paying the legal fees and expenses . . . it may only do so by leave of court granted").

As recently as May 22, 2018, during a status conference, when ATG attempted to conduct discovery to add new facts, the Court conclusively ruled that the fact record was closed: "You've had an opportunity to present this case.  We had a full-blown hearing, and you basically agreed that facts were not in dispute." (Docket Entry #200 at 11:17-19.)

The new facts in ATG's Opposition constitutes a refusal to accept that ruling, and amounts to seeking reconsideration of the Court's determination without actually and properly doing so.  For these reasons, the Court should disregard, in its entirety, ATG's baseless attempt to unilaterally re-open the fact record which everyone (including ATG) has treated as undisputed.[1]  ATG may be able to make factual

---

[1]     The Court should disregard ATG's form-over-substance arguments that a summary judgment motion cannot be based on a preliminary injunction record.

contentions when and if they move to be relieved of their funding obligation, as mandated by *In re Grand Jury* and which is the procedure recognized by their own counsel, but they cannot do so now.

## 2. **ATG's New Factual Allegations Are Baseless And Contradictory**

ATG's new factual allegations that it never undertook any sort of obligation to pay the Employee Defendants' legal fees are entirely self-serving, supported by nothing other than the bare declaration of Yaxi ("Nick") Ni, and cannot be reconciled with the many emails already in the record.

That ATG now makes these factual claims -- that it "never had a conversation" about legal fees at any time, that it paid an initial retainer and additional invoices, but

---

(ATG Opp. Br. at 7.)  The parties are well aware that this expedited summary judgment motion was allowed because the Court found that "there is no equivalent federal procedure to that of a summary action in New Jersey state courts as set forth in *Grand Jury.*"  (R&R at 15-16.)  The instant motion is meant to reconcile the procedure set forth by the New Jersey Supreme Court in *Grand Jury* with the fact that no comparable procedure exists in Federal Court.

Similarly, ATG claims that the new facts it seeks to inject in its Opposition create questions of intent, state of mind, and credibility that can only be determined by a jury (ATG Opp. Br. at 9, 19-21).  Obviously, this was not the intent of the New Jersey Supreme Court when it fashioned the *Grand Jury* remedy.  One purpose of that decision was to place the burden on the third party payor who, once it began paying another's legal fees, would be forced to continue paying until that third party payor succeeded in obtaining the Court's leave to stop.  *In re Grand Jury*, 200 N.J. at 489-99 ("the third-party payer shall bear the burden of proving that its obligation to continue to pay for the representation should cease").  This purpose cannot be achieved by having a jury weigh credibility and state of mind during a full-blown trial, which is apparently what ATG is arguing for.  ATG's brand new procedure is a creation of its own wishful thinking, and has no basis in legal precedent.

10

"undertook no commitment" to pay legal fees  (ATG Counter-statement of Material

Facts ("CSMF") PP 19, 27, 29) — is particularly galling when it ***already admitted***

***that it had made some form of commitment to pay legal fees***, claiming in its own

words that the "payment was always connected with the Individual Defendants'

continued employment with ATG . . . . [t]he Individual Defendants no longer work

for ATG, and therefore the condition of payment is no longer satisfied."  (ATG's

Brief in Opposition to the Employee Defendants Application for an Order to Show

Cause, dated October 19, 2015, at 20 (Docket #112) citing Kim Cert. Exh. 22 ("as

long as you guys are productive, the lawsuit is nothing, we will fight it").)

    ATG shamelessly talks out of both sides of its mouth – on one hand in court

filings claiming that its obligation to pay fees was "always connected with . . .

continued employment" –  and now baldly swearing something else entirely.  If ATG

indeed *never even discussed payment of the Employee Defendants' fees at all*, as they

now claim, how could it be that, in ATG's own words, the "condition of payment" of

legal fees was "connected with . . . continued employment[?]" (Id.)

    ATG's conflicting factual positions are barred by the doctrine of judicial

estoppel, and should be discounted entirely.  *Krystal Cadillac-Oldsmobile GMC,*

*Truck Inc. v. Ge. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (judicial estoppel

applied where party changed its prior position in a litigation); *Macfarlan v. Ivy Hill*

*SNF, LLC*, 675 F.3d 266, 272 (3d Cir. 2012) (judicial estoppel is a "judge-made

doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that (he or she) has previously asserted in the same or in a previous proceeding").

The Court has specifically relied on ATG's prior position, finding that "[i]nstead of making an unconditional commitment to the Employee Defendants, ATG claims that its payment obligation was 'connected with the [Employee] Defendants' continued employment with ATG,'" but recognizing that "ATG's argument weighs in the Employee Defendants' favor and represents an acknowledgment by ATG that the commitment it made to the Employee Defendants was improperly conditioned upon a continued alignment of interests with those of the Employee Defendants." (R&R at 26.) It is too late for ATG to change this now.

Additionally, ATG's new position that it never even discussed legal fees nor made any kind of commitment cannot square with, by way of example only, the following emails from ATG principal Nick Ni where he:

- told the Employee Defendants "give me a call to discuss this we should have [attorney] Jim help us get this handled" (SOMF 23, Kim Cert. **Exh. 10**[2]);

- directed "[p]lease go ahead work with [attorney] Jim Mcicahy [sic], I am sure he can get this handled properly for us, this kind of thing happens a lot" (SOMF 23, Kim Cert. **Exh. 11**);

---

[2]     "SOMF" refers to the Statement of Material Facts Not in Dispute in Support of the Employee Defendants' Expedited Motion for Summary Judgment, dated June 12, 2018 (Docket Entry #202-1). "Kim Cert." refers to the Certification of J. John Kim, dated June 12, 2018 (Docket Entry #202-3).

- received and executed an engagement agreement and conflict waiver from the Mulcahy law firm to represent ATG and the Employee Defendants (SOMF 24, Kim Cert. **Exhs. 12-13**);

- affirmed, "Please don't worry about this lawsuit thing, this kind of thing happens everyday, Maxlite just wants to make it difficult for you . . . Jim Mulcahy will have this handled for us, no big deal, we should not be distracted from what we do" (SOMF 30, Kim Cert. **Exh. 15**);

- stated, "Jim's bill is over $70k now? Please tell him we will pay early next month" (SOMF 39, Kim Cert. **Exh. 21**);

- reaffirmed, "I need to talk to Jim on our strategy moving forward. I understand Jim's bill is bigger than we expected and it is beoming [sic] a substantial investment on ATG's part, we need to evaluate [sic] our options before we go on. I have talked to James and Matt over the weekend, I assured *them as long as you guys are productive, the lawsuit is nothing, we will fight it*" (SOMF 43, Kim Cert. **Exh. 22**); and

- promised "MaxLite has no case, we will prevail, *Jim and I will work together on the legal bills as they come*, but eventually we will make MaxLite pay, at least a good part of it" (SOMF 45, Kim Cert. **Exh. 23**).

ATG's improper attempt to unilaterally supplement the fact record that has been considered undisputed and closed for purposes of this motion should be wholly disregarded by the Court. But the degree to which ATG's assertions lack any consistency and directly conflicts with the record email evidence is worthy of note.

## B.   GRAND JURY DOES NOT REQUIRE THE EXISTENCE OF A FORMAL CONTRACT OR AN ORAL CONTRACT.

ATG continues to argue that "the absence of a written unconditional promise to pay is fatal to their claim for relief." (ATG Opp. Br. at 11.) This ignores that ATG executed a retainer agreement with Mulcahy LLP which obligated them to pay legal

13

fees, then began paying legal fees, and further ignores what Magistrate Judge Clark found in his R&R (and Judge Vasquez adopted), that "*Grand Jury* neither states that the existence of a formal written contract is a prerequisite to obtain the relief provided for therein nor makes any mention of requirements which must be met for the formation of an enforceable agreement between a litigant and a third-party payer in this context." (R&R at 24.)

The Mulcahy LLP engagement agreement, signed by ATG and each of the Employee Defendants, obligates ATG to pay legal fees and includes no limitations in scope, and in fact states that "[i]f our engagement changes, the terms set out in this letter will apply to the expanded engagement[.]" (October 29, 2015 Certification of James M. Mulcahy, Exh. 1, at 1 (Docket Entry #113-3).)[3]

Mulcahy swore (repeating what he had said before PSWH ever entered this case and before *Grand Jury* was raised), "[a]s I stated previously in my Declaration

---

[3]    ATG's argument that the Mulcahy engagement agreement is not a written obligation to pay because it would violate *Grand Jury* is specious. The remedy in *Grand Jury* is not only available when all six conditions are met. "The six conditions set forth in *Grand Jury* provide the criteria which must be met in order for a lawyer to properly represent a client (R&R at 22)," and are proscriptive requirements that the New Jersey Supreme Court set forth to regulate attorney conduct and impose obligations on third party payers. 200 N.J. at 495-96.

The mechanism whereby a litigant can force a third party payer to continue paying until it obtains leave of court to stop, is a remedy that can be employed where the six conditions *are not being met* – "*Grand Jury* clearly reaches beyond an attorney's professional conduct to govern the conduct of third-party payers and creates a remedy to be asserted against a third-party payer, such as ATG, for deviation from that prescribed conduct." (R&R at 24.)

14

in Support of my Motion for Leave to Withdraw as Counsel of Record for Defendants Steedly, Galleher, and Kim and to Stay Discovery, dated August 13, 2015, *my understanding has always been that ATG had agreed that it 'would be subsidizing the legal fees and costs of this litigation for itself and the Individual Defendants*." (Id. ¶ 4 (emphasis added).)

And not only did ATG sign the Mulcahy LLP engagement agreement, its conduct evidenced that it undertook an obligation to pay, paying both the retainer and several invoices incurred by the Employee Defendants, including payments for invoices in April 2015 for $8,688, May 2015 for $40,000, June 2015 for $15,000, July 2015 for $2,500, August 2015 for $2,500 and September for $2,500. (SOMF 63-64, Kim Cert. **Exh. 27-28**.) Mulcahy LLP sent its bills directly to ATG.

Nowhere does *In re Grand Jury* require any sort of formal agreement, written or otherwise. ATG continues to make arguments about why the Employee Defendants have not proven the elements of a breach of contract claim. Indeed, they cite case after case of breach of contract cases. (ATG Opp. Br. At 14.). But the inescapable reality is that the Employee Defendants have not brought a breach of contract claim. Rather, this is a *Grand Jury* application. A mechanism designed to shift the burden to a third party payer who under *some* kind of obligation to pay the legal fees of another, but requiring them to continue paying until they obtain leave of Court to stop. The intent of the parties, meeting of the minds -- all things that ATG

15

claims must be determined, are elements of a breach of contract claim, and are not necessary to an *Grand Jury* application.

And what ATG ultimately cannot do, is refute that it undertook *some* form of obligation.  As discussed *supra*, ATG has admitted in the past, "payment was always connected with the Individual Defendants' continued employment with ATG . . . . [t]he Individual Defendants no longer work for ATG, and therefore the condition of payment is no longer satisfied (Docket Entry#112)."[4]

---

[4]    ATG continues to espouse an inaccurate interpretation of *Levine, Staller, Sklar, Chan, Brown & Donnelly, P.A. v. City of Atl. City*, 2014 WL 8630664 (App. Div. Apr. 21, 2015), claiming that the applicability of *Grand Jury* requires the formal elements of breach of contract action and a promise to pay that is unconditional. They are wrong and *Levine* does no such thing.  In *Levine* (unlike here), the plaintiff actually made breach of contract and *quantum meruit* claims, where a law firm sued the alleged third party payer.  Naturally, it would matter whether the elements of a breach of contract and *quantum meriut* were met.

The plaintiff law firm – which, unlike here, was not even making an *In re Grand Jury* application – attempted to use *Grand Jury* in support of its argument. The *Levine* court found that unlike *Grand Jury*, the third party payer's supposed obligation to pay legal fees was *contingent* on several pre-conditions that had not been met.  *Levin, supra* at *20.  "[T]he payment agreement . . . [was] subject to the requirements of the LPCL, the pay-to-play laws, and the city Code. . . . unlike the private agreements that formed the basis of the Court's decision in *In re State Grand Jury* . . . the Firm's entitlement to payment was arguably conditioned upon compliance with multiple laws and procedures, *none of which were satisfied*." *Id* (emphasis added) (also finding the promise to pay was no more than letters directing that representations take place, first "assuming the employee had not acted with actual fraud or actual malice and . . . requir[ing] that the acts complained of occur within the employee's scope of employment").  Magistrate Judge Clark recognized this distinction as well in his Report and Recommendation.  (R&R at 25.)

16

The Court, based on ATG's position and the record email evidence, recognized this as well.  "ATG acknowledges that it did indeed agree to bear at least some level of responsibility for the legal costs incurred by the Employee Defendants as a result of their departure from MaxLite and MaxLite's subsequent legal action . . . ."  (R&R at 24.)

## C.   PASHMAN STEIN WALDER HAYDEN, P.C.'S LEGAL FEES ARE REASONABLE.

### 1.  No One Is Seeking Prevailing Party Fee Shifting Relief

In Don Quixote-esque fashion, ATG tries to fight windmills that it pretends are giants when it claims that the Employee Defendants seek a prevailing party fee shift, but should be denied because of the "American Rule" which requires parties to pay their own attorneys' fees.  To be clear, the Employee Defendants are not seeking a fee shift.  They have not claimed to be a prevailing party under any statute or contract.  And the "American Rule" has no relevance here.  This application is based on the procedure mandated in *Grand Jury*.  Ironically, ATG acknowledges this in its brief: "Employee Defendants do not file their Cross-Claim pursuant to a fee-shifting statute, but rather under the theory set forth in *Grand Jury*."  (ATG. Opp. Br. at 35.) The procedure in *Grand Jury* allows a *litigant* to force a *third party payer* who had

---

*Levine* is about pre-conditions before an obligation to pay fees begins.  That is not the situation here.  ATG already began making payments, and as it admitted, its obligation to pay was (improperly) conditioned on the Employee Defendants working at ATG.  There were no unfulfilled pre-conditions like in *Levine*.

been paying its legal fees to continue doing so until and unless that third party payer obtains Court permission to stop. It does not limit the legal fees incurred to "some fees," except those incurred in making the *Grand Jury* application.

Such a limitation would be senseless, because it is the third party payer who unilaterally stops funding midstream, significantly disrupting the litigation, who has forced the litigant to seek the expedited remedy. The Employee Defendants did not make this application without good reason. They were forced to avail themselves of it when ATG callously and selfishly went back on their promise and fired the Employee Defendants with the hope that its own litigation position would be improved. That decision by ATG was a repudiation of its promise to defend and protect the individual defendants, and but for PSWH's conviction to believe in the applicability of *Grand Jury*, that decision would have left the individual defendants utterly defenseless and right smack in the middle of a significant corporate dispute without counsel. As the Court recognized based on the undisputed record, "when the legal costs began to mount, becoming a concern for ATG's investors, ATG terminated the Employee Defendants based upon a belief that doing so would minimize ATG's exposure and lead to a more favorable outcome for ATG in the litigation." (R&R at 26.)

ATG obviously wishes that *Grand Jury* limited the payment of legal fees in a manner that would be advantageous to them. But that is not the reality. *Grand Jury*

does not say that a third party payer must pay some legal fees, but not for the legal fees or costs associated with enforcing the payment of those legal fees.  Again, *Grand Jury* is a burden shifting mechanism that orders a third party payer to continue paying legal fees until and unless consent is obtained to stop, for good cause shown.  200 N.J. at 496 ("the third-party payer shall bear the burden").  ATG cannot point to a single authority holding that when a third party payer is ordered to continue paying the legal fees of a litigant pursuant to a *Grand Jury* application, they are excepted from having to pay for making the *Grand Jury* application.  And that is for a good reason; no such authority exists.

In fact, in *Stein v. Nostrum Labs, Inc.*, 2014 WL 5312535, when the trial court found that the defendant had to pay legal fees (but was entitled to stop after seeking the court's consent for good cause shown), those legal fee invoices included the costs of bringing the *Grand Jury* fee application itself.  (Reply Certification of Michael S. Stein, dated July 20, 2018 ("Stein Reply Cert.") ¶ 2.)

ATG also oddly argues that PSWH "tugs at the Court's heartstrings" by claiming that the Employee Defendants are essentially insolvent and cannot afford counsel on their own, but seem to have additional attorneys working for them such as "Watson," the McElroy firm, and Steve Fuller.  (ATG Opp. Br. at 26.)

ATG is confused.  Watson Galleher is Defendant Sophie Galleher's father, happens to be an attorney, and provides personal legal counsel to her, but does so

*gratis.* (Reply Declaration of Sophia C. Galleher, dated July 20, 2018 ("Galleher Reply Decl.") ¶ 2.)  The McElroy firm has never had a role in this litigation.  The invoice entry dated September 25, 2015 that ATG refers to contained a typo, as that entry should state the Mulcahy firm -- which is the firm that ATG hired and initially paid to represent the Employee Defendants.  (Stein Reply Cert. ¶ 3.)  Finally, Steve Fuller is not formally counsel in this case nor has any kind of role in it, but is a friend of Defendant Matthew Kim.  (Reply Declaration of Matthew Kim, dated July 20, 2018 ("M. Kim Reply Decl.") ¶ 2.)  Mr. Fuller has not been paid a penny in connection with this case.  (Id.)

And while ATG is factually mistaken, it entirely misses the point being made. The Employee Defendants are *individuals* who were persuaded to move to ATG based on ATG's assurance that restrictive covenants were not enforceable in California, and that ATG would protect them should MaxLite sue.  Because of the rising cost of litigation, ATG changed its mind and fired the Employee Defendants, thinking that it would face no repercussions for doing so, and stopped paying legal fees.  ATG has made this mess.  The Employee Defendants have been unable to secure long term meaningful work in this field, one has now disappeared, and another has been forced to change her career field entirely, because of this case.  (Galleher Reply Decl. ¶ 3; Stein Reply Cert. ¶ 4.)  There have been no ploys to tug at any heartstrings; these are just the facts.  The Employee Defendants cannot afford the

legal counsel that ATG promised to pay for and had been paying, and should this application fail, they will be *pro se* against two well-funded companies. This is precisely the kind of situation that the New Jersey Supreme Court was trying to avoid when it issued *Grand Jury*.

### 2. PSWH's Hourly Rates are Reasonable

ATG argues that PSWH's hourly rates are "exorbitant" and "the most expensive attorneys in this State," but fails to set forth any basis for these proclamations. (ATG Opp. Br. at 28.) It claims that Michael Stein is not as accomplished as Justice Gary Stein (when the fee sought for Michael Stein is lower than that charged for Justice Stein anyway), and attaches a certification (Burns Decl., Ex. F) that cites to some lower rates charged from another firm, but also cites to some rates in the $500s. (ATG Opp. Br. at 28.)

None of this diminishes the evidence PSWH has set forth establishing that its fees are reasonable. Mr. Stein is the founder, Chairman and managing partner of PSWH, which is a 50 lawyer firm engaged in top end high stakes complex commercial litigation. (6/12/2018 Stein Cert. ¶ 11.[5]) His current billing rate is $700, but his rates in prior years actually sought here were $600 in 2015, and $625 in 2016 and 2017. (Id. ¶ 13.) Similarly, Mr. Kim's rates started out at $430 per hour in 2015 and his rate increased to $475 in 2016 when he was elevated to partner, and to $510

---

[5]    "6/12/2018 Stein Cert." refers to Certification of Michael S. Stein, dated June 12, 2018 (Docket Entry #202-4).

only as of 2018 (Id.)  These rates are comparable to those from similarly credentialed and experienced law firms in this geographical region.

Exhibit D to Mr. Stein's June 12, 2018 Certification attached billing information from Cole Schotz, P.C., another Hackensack, New Jersey firm of similar caliber, and their rates ranged from $160 to associates to $850 for members. (6/12/2018 Stein Cert. ¶ 16, Exh. D.)

Exhibit E to that Certification included billing rates for Lowenstein Sandler PC and Gibbons, two other firms engaged in complex litigation in New Jersey, showing 2014 rates ranging from $260 to associates to $755 for partners at Lowenstein, and $295 to $865 at Gibbons.  (6/12/2018 Stein Cert. ¶ 16, Exh. E.) These are comparable firms engaged in comparable work, and ATG has not and cannot refute that those hourly rates are comparable to what is being sought here.

Perhaps most compellingly, in a series of decisions in the matter of *Sipko v. Koger, Inc., et. al*, Docket No. BER-C-393-07, Judge Robert P. Contillo, P.J. Ch., found that PSWH's hourly rates were reasonable, including: a June 2017 decision and Order that awarded PSWH approximately $600,000 in fees (6/12/2018 Stein Cert. ¶ 16, Exh. G); a December 1, 2017 Order granting approximately $40,000 in fees (Stein Reply Cert., **Exh. A**); a January 19, 2018 Order granting approximately $50,000 in fees (Stein Reply Cert., **Exh. B**) and; a June 11, 2018 Order granting

approximately $20,000 in fees (Stein Reply Cert., **Exh. C**).  All of these Orders

considered and determined that PSHW's hourly rates were reasonable.

ATG has failed to address any of the above supporting materials, and their

silence is telling.  PSWH's hourly rates are reasonable in comparison to other mid to

large size Northern New Jersey law firms, and ATG has set forth no cogent argument

or compelling evidence to the contrary.

### 3.  <u>The Hours Expended by PSWH are Reasonable</u>

The primary contention advanced by ATG as to why the hours expended by

PSWH are not reasonable, is that "[t]he lion's share of this litigation was dedicated to

positions, claims, and theories not contained in the retainer agreement" because the

scope of PSWH's retainer agreement as written was "negotiating a settlement with

Maxlite."  (ATG Opp. Br. at 29.)  According to ATG, this means that "Pashman Stein

should not receive any of its fees."  (<u>Id</u>. at 32.)

ATG's position is weak and grasps at straws.  The PSWH retainer agreement

states, "<u>Scope of Engagement</u> You have agreed to initially retain our firm to try to

negotiate a settlement after which this retainer agreement will be revisited if those

efforts are unsuccessful."  (7/3/2018 Burns Decl. Exh. A (Docket Entry #214).)

As stated, PSWH was initially hired to attempt to negotiate a settlement --

obviously, the scope of representation grew, which possibility was specifically

contemplated in the retainer agreement, i.e., *this retainer agreement will be revisited*

23

*if those efforts are unsuccessful.* (Id.)  This case did not settle.  And the scope of representation expanded, at first solely to make a *Grand Jury* application, and then later to engage in discovery and participate in other aspects of this case, as requested by this Court.  (Stein Reply Cert. ¶¶ 5-8.)  As clearly expressed in the certifications of Defendant Matthew Kim and Defendant Sophie Galleher, when negotiations to settle did not work out, PSWH and their clients revisited the terms of their representation, and the scope of engagement expanded to include this *Grand Jury* application, as well as any other functions required by the Court.  (M. Kim Reply Decl. ¶¶ 3-5; Galleher Reply Decl. ¶¶ 4-6.)

Predictably ATG does not (and cannot) cite to any requirement or law that clients and their counsel cannot expand the scope of the attorney's representation, or that any such expansion must be in writing.[6]  That is because there is no such requirement, not in *Grand Jury* nor anywhere else.

Furthermore, even if there was such a requirement (which there is certainly not), fulfilling it or not has *nothing to do with whether the hours that PSWH expended are reasonable.*  Whether PSWH went beyond the scope of its initial retainer agreement has nothing to do with whether the hours its lawyers spent on each task is reasonable or excessive.  Accordingly, ATG's argument on this point should be disregarded.

---

[6]    Nor is ATG even a party that would have standing to complain, if such a rule existed.

Finally, the notion that there needs to be a plenary hearing to determine if the scope of PSWH's retainer agreement changed is preposterous. (ATG Opp. Br. at 33.) Such a hearing might serve some purpose if there was actually a *dispute* about whether there was an amendment to a contract. Here, there is no dispute; both PSWH and the Employee Defendants, who are the signatories of the retainer agreement, agree on what happened. (*See* Stein Reply Cert. ¶¶ 5-8; M. Kim Reply Decl. ¶¶ 3-5; Galleher Reply Decl. ¶¶ 4-6.) A plenary hearing, which is used to determine which side is more credible, would be pointless when there is complete agreement on what happened by the parties to that agreement.[7]

ATG's criticisms of categories of work done are similarly baseless. ATG claim that the "[h]ours spent seeking preliminary relief was not reasonably expended" because "the preliminary relief was denied," is incorrect. First, this is not a prevailing party fees motion, where one might argue that only successful endeavors should be awarded; *Grand Jury* mandates the payment of all reasonable legal fees incurred until permission is obtained to stop. Second, the Court granted the Employee Defendants' motion seeking leave to file its counter-claim, while instructing that the motion for preliminary relief be re-filed as the instant motion, and

---

[7]     ATG states that plenary hearing might also be necessary because PSWH spoke with Mulcahy LLP, and that perhaps creates some unspecified ethical issue. (ATG Opp. Br. at 34.) But no ethical rule or actual issue is identified. And ATG is free to pursue its own theories and make its own motions in this litigation. None of this has anything to do with whether PSWH's legal fees are reasonable.

finding that the motion was likely to succeed on the merits, so it is not even true that the initial motion was unsuccessful.

ATG claims that the hours expended on jurisdictional issues was unreasonable because that issue was "not significant" to the Employee Defendants. (ATG Opp. Br. at 32.) The Court asked PSWH to continue representing the Employee Defendants for some discovery and the determination of personal jurisdiction over ATG, which PSWH complied with -- there is nothing unreasonable about the amount of time spent doing this work, which included document review, production, privilege logs, and a deposition of Defendant Galleher. Furthermore, ATG's initial argument against the applicability of *Grand Jury* was that the Court lacked personal jurisdiction over it, so it is not fair or accurate to say that the issue was "not significant" to the Employee Defendants. (ATG's Brief in Opposition to the Employee Defendants Application for an Order to Show Cause, dated October 19, 2015, at 8 (Docket #112).)

ATG complains that work was done on a summary judgment motion, but not filed. (ATG Opp. Br. at 32.) But that does not mean the hours expended preparing that motion is unreasonable. The Employee Defendants will yet file that motion, but strategically determined that the issue was not entirely ripe. And just because PSWH has experience with a prior *Grand Jury* case does not mean there is not a significant amount of legal work involved in researching for and preparing multiple rounds of

briefing, two sets of oral arguments, a voluminous fact record as detailed in the Cross-Claim, and many letters to the Court.

### 4. ATG Fails to Make a Compelling Argument Against Enhancing PSWH's Legal Fee

Despite ATG's representations to the contrary, the law is not that fee enhancements are only available in cases where there is statutory fee-shifting. (ATG Opp. Br. at 35.) As made clear by the New Jersey Supreme Court in *Walker v. Giuffre*, .

> [a]fter the lodestar has been established, the trial court may increase the fee to reflect the risk of nonpayment in all cases in which the attorney's compensation entirely or substantially is *contingent on a successful outcome*. This Court's authorization of a contingency enhancement arose from our conclusion that a fee award cannot be "reasonable" unless the lodestar is adjusted to reflect the actual risk that the attorney would not receive payment if the suit did not succeed.  209 N.J. 124, 133 (N.J. Sup. Ct. 2012) (quoting *Rendine*, 141 N.J. at 343) (authored by Justice Gary S. Stein) (emphasis added)).

This application is not limited to statutory fee shifting cases.  The *Walker* court simply examined federal court cases involving statutory fee shifting to inform its analysis of applying fee enhancements:

> [w]e turn, then, to an analysis of the competing state and federal principles that undergird this Court's traditional approach to the award of contingency enhancements and that, therefore, inform the central issue before the Court. Well prior to the time when this Court issued the *Rendine* opinion, the federal courts had set forth their interpretation of the way in which fee awards arising from federal statutes should be calculated. The federal approach to the calculation of fee awards evolved over time, largely because the only benchmark for an award in the federal statutes was reasonableness.  Id.

ATG's "the sky will start falling" complaint that "whenever someone claims they cannot afford counsel, they should not be allowed to get whomever they want and have their adversary pay not only the attorneys' fees incurred but also an enhancement" cannot be taken seriously. The fee enhancement is not being sought because the Employee Defendants could not afford counsel. It is being sought because PSWH, with eyes wide open, entered into what was essentially a contingency fee arrangement. In other cases where clients cannot pay, PSWH might have moved to be relieved as counsel. But here, based on PSWH's sense of not wanting to abandon its clients, who were victims of being double-crossed and up against two well-funded companies, coupled with its conviction that *Grand Jury* was designed to protect litigants in this exact scenario -- PSWH voluntarily took a bet on doing the work with a chance that it might not be compensated. That, according to *Rendine* and *Walker* and a long chain of well settled New Jersey caselaw, means that PSWH is entitled to a fee enhancement if it is successful.

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, the Employee Defendants *In re Grand Jury* motion should be granted, and its charged legal fees deemed reasonable.

**PASHMAN STEIN, P.C.**
Attorneys for Defendants,
**James D. Steedly, Sophia C. Galleher, and Matthew Kim**

Date: July 20, 2018      By: _____/s/ J. John Kim_____
                              J. JOHN KIM