## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MAXLITE, INC.,** | **Civil Action No. 15-1116 (JMV)** |
| **Plaintiff,** | **OPINION AND ORDER** |
| **v.** | |
| **ATG ELECTRONICS, INC., et al.,** | |
| **Defendants.** | |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on two motions by Defendant ATG Electronics, Inc. ("ATG"): (1) a motion for partial reconsideration of the Court's February 25, 2021 Order [Dkt. No. 377], which is opposed by Plaintiff MaxLite, Inc. ("Plaintiff" or "MaxLite") [Dkt. No. 380]; and (2) a motion for leave to file an Amended Answer and Counterclaim [Dkt. No. 388], which is also opposed by Plaintiff [Dkt. No. 392]. For the reasons set forth below, ATG's motion for reconsideration [Dkt. No. 377] is **DENIED** and ATG's motion for leave to amend [Dkt. No. 388] is **DENIED**.

## I.     BACKGROUND

As the parties are intimately familiar with the facts of this case, the Court will only address those relevant to the present motion. This matter arises out of allegations that ATG improperly interfered with the contractual relationship between MaxLite and its employees Sophia C. Galleher, Matthew Kim, and James Steedly (collectively the "Individual Defendants"), when ATG hired the Individual Defendants and used them to compete with MaxLite.

Plaintiff initiated this action on February 12, 2015. *See* Dkt. No. 1. On June 23, 2015, Plaintiff filed its Amended Complaint, which is Plaintiff's operative pleading in this matter. *See* Dkt. No. 87. In the Amended Complaint, Plaintiff alleges that the Individual Defendants stole confidential information acquired during their employment with MaxLite, solicited business from MaxLite's customers, and worked for ATG, all in violation of a written Proprietary Information Agreement the Individual Defendants entered into as part of their employment with MaxLite (the "Employment Agreement").[1] *See* Am. Compl.

As to ATG, MaxLite alleges that ATG tortiously interfered with its business through the theft of confidential and proprietary information which was obtained when ATG hired the Individual Defendants. MaxLite further alleges that ATG conspired with the Individual Defendants to gain access to confidential information and used that information to gain unfair advantage over MaxLite. According to Plaintiff, ATG has systematically targeted MaxLite's top sales agents and employees in order to obtain inside knowledge of MaxLite's product research and development as well as access to MaxLite's customers, vendors, distributors and suppliers, and ATG has used this information to engage in unfair business practices to the detriment of MaxLite.

On May 14, 2018, after lengthy motion practice, the Individual Defendants filed an Amended Answer and Crossclaim. *See* Dkt. No. 190. In their Crossclaim, the Individual Defendants seek a declaratory judgment that ATG is responsible for all past and future legal costs incurred in connection with this litigation, a commitment that the Individual Defendants claim was made by ATG's president and majority shareholder, Yaxi Ni, when they left their employment with MaxLite. MaxLite and the Individual Defendants reached an agreement to settle MaxLite's

---

[1] The Employment Agreement contains a non-compete section, which states an applicable period of one year following employment with MaxLite, and a non-solicitation provision. *See* Am. Compl. Ex. A, Ex. B, Ex. C, Agreement at Articles 3.2 & 3.3.

claims against the Individual Defendants, and on April 14, 2020, the Court entered a Consent Judgment and Order of Dismissal as to Ms. Galleher and Mr. Kim based on the settlement of MaxLite's claims against them. *See* Dkt. No. 329.

Throughout the pendency of this matter, MaxLite and ATG have continuously displayed an inability to cooperate with one another. As a result, the discovery process has been lengthy and fraught with countless disputes requiring judicial intervention. The present motions arise from ATG's pursuit of certain discovery which the Court has previously found is not relevant to this matter or does not exist.

## II.    DISCUSSION

### A. Motion for Reconsideration

ATG's present motion seeks partial reconsideration of the Court's February 25, 2021 Order [Dkt. No. 372] which memorialized the Court's rulings on certain discovery disputes submitted by MaxLite and ATG in their February 22, 2021 joint letter [Dkt. No. 364]. In relevant part, the parties' February 22, 2021 joint letter set forth a dispute regarding ATG's request from MaxLite for "the Names of Individuals and their Non-Compete Agreements that were modified . . . ." Dkt. No. 364 at p. 7. MaxLite objected to ATG's request on the grounds that the documents requested by ATG (hereinafter the "NCA Discovery") "ha[s] no relevance to the claim or defenses of the parties." *Id.* at p. 4. The parties' joint letter did not include any discussion or explanation by ATG of the basis of its contention that the NCA Discovery is relevant to the claims at issue in this matter.

The Court held a telephone conference with the parties on February 25, 2021 and heard argument regarding ATG's request for the NCA Discovery. *See* Dkt. No. 370. During the telephone conference, ATG argued the NCA Discovery was necessary to show that MaxLite treated the Individual Defendants differently than other employees who left MaxLite for

competing companies with respect the enforcement and/or modification of their non-compete agreements thereby demonstrating bias towards ATG. In opposition to ATG's request for the NCA Discovery, MaxLite, in addition to its argument that such discovery bears no relevance the claims at issue in this matter, argued that because MaxLite and ATG had agreed in April 2020 that all written discovery between MaxLite and ATG had been completed, ATG's request for the NCA Discovery was untimely.

The Court denied ATG's request for the NCA Discovery on two grounds. First, the Court found that the issue of whether MaxLite chose to enforce its rights against the Individual Defendants and not against various other employees who may have violated their non-compete agreements was not sufficiently relevant or proportional to the claims at issue in this matter. Secondly, the Court, noting the parties' agreement to conclude written discovery in April 2020, found that ATG's request for the NCA Discovery was untimely.  Thereafter, ATG filed the present motion seeking reconsideration of the Court's denial of the NCA Discovery.

Local Civil Rule 7.1(i) governs motions for reconsideration. *Agostino v. Quest Diagnostics, Inc.,* Civ. No. 04-4362, 2010 WL 5392688, *5 (D.N.J. Dec. 22, 2010) (citing *Bryan v. Shah,* 351 F. Supp. 2d 295, 297 (D.N.J. 2005)). Local Civil Rule 7.1(i) permits a party to seek reconsideration by the Court of a matter which the party believes the Judge "overlooked" when it ruled on the motion. A motion for reconsideration under Rule 7.1(i) "shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge" and submitted with a "brief setting forth concisely the matter or controlling decisions which the party believes the Judge . . . has overlooked." L. Civ. R. 7.1(i).

The standard for reargument is high and reconsideration is to be granted only sparingly. *United States v. Jones,* 158 F.R.D. 309, 314 (D.N.J. 1994). A judgment may be altered or amended

under Rule 7.1(i) if the movant shows at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact to prevent manifest injustice." *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 667 (3d Cir. 1999) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995)). Under this standard, courts have noted that "reconsideration is an extraordinary remedy, that is granted 'very sparingly.'" *Brackett v. Ashcroft*, Civil Action No. 03-3988 (WJM), 2003 U.S. Dist. LEXIS 21312, *5 (D.N.J. Oct. 7, 2003) (citation omitted).

The Court will grant a motion for reconsideration only if its prior decision overlooked a factual or legal issue that may alter the disposition of the matter. *United States v. Compactions Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999). "Reconsideration motions . . . may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of the judgment." *NL Industries, Inc. v. Commercial Union Ins. Co.,* 935 F. Supp. 513, 516 (D.N.J. 1996). In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." *Tishcio v. Bontex, Inc.,* 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (citation omitted). Thus, a difference of opinion with the court's decision should be dealt with through the normal appellate process. *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1998).

In its motion for reconsideration, ATG claims that the Court overlooked the "great significance" of the issue of "bias" in determining the enforceability of restrictive covenants and failed to "analyze the factors pursuant to Rule 26" in finding that the NCA Discovery was not proportional. Dkt. No. 378-1 at p. 5, 9. Specifically, ATG, citing *ADP, LLC v. Rafferty*, 923 F.3d 113 (3d Cir. 2019), argues that the Court "overlooked the controlling case law on the relevancy

and importance of other Non-Compete Agreements." *Id.* at p. 4. According to ATG, in *Rafferty*, the United States Court of Appeals for the Third Circuit "articulated selectivity in enforcement . . . affect[s] the validity of restrictive covenants" and "concluded that 'selective enforcement or selective application of a non-compete was a fact considered in the analysis of the enforceability of a non-compete under the three factor *Solari* test.'"[2] *Id.* at p. 6 (citing *Rafferty*, 923 F. 3d at 113).

The Court does not agree with ATG's characterization of the Third Circuit's holding in *Rafferty* nor does the Court find in either *Rafferty* or in any of ATG's other arguments any reason to reconsider its prior ruling on this issue. First and foremost, the Court addresses ATG's attribution of quotations to *Rafferty* which do not appear anywhere, either exactly or approximately, in the Third Circuit's decision.[3] In response to MaxLite's observation that ATG had mischaracterized and misquoted *Rafferty*, ATG states that its actions resulted from a "typographical error" and claims that the quoted portions, which were attributed to *Rafferty*, reflected "ATG's analysis and recapture of the controlling case law," and were "not quoted in the case law." Dkt. No. 383-1 at n. 1. Although ATG dismisses its misstep as a "typographical error," the Court is troubled by ATG's conduct. While ATG attempts to excuse its error as an act of "inadvertent quoting," ATG's citations to *Rafferty* do not represent a credible interpretation or distillation of the Third Circuit's analysis or holdings. Dkt. No. 383-1 at n. 1. The Court cautions ATG to take care in the future not to present its own assertions as Third Circuit precedent.

The Court will now turn to ATG's argument that the Court overlooked the importance of the NCA Discovery. Relying primarily upon *Rafferty*, ATG contends that "evidence of 'selective

---

[2] Under New Jersey law, a non-compete agreement is enforceable if it is "reasonable in view of all the circumstances of the particular case." *Solari Indus., Inc. v. Malady*, 55 N.J. 571, 576, 264 A.2d 53, 56 (1970). A restrictive covenant is reasonable if it (1) protects the legitimate interests of the employer; (2) imposes no undue hardship on the employee; and (3) is not injurious to the public. *Id.*

[3] There are two separate quoted passages erroneously attributed to *Rafferty* in ATG's brief in support of its motion for reconsideration. *See* Dkt. No. 378-1 at p. 6. Not only do the quoted passages not appear in *Rafferty*, the Court is unable to locate them in any other source.

enforcement' of non-compete agreements is not only discoverable, but can be used in a defense at trial to invalidate the restrictive nature of non-compete agreements." Dkt. No. 378-1 at p. 1. *Rafferty*, as relevant to ATG's present arguments, addressed the enforceability of an employer's two-tiered system under which all employees entered into a non-compete agreement as a condition of their employment, and high performing employees who met certain requirements became eligible to participate in a stock-option award program only if they agreed to an additional and more onerous restrictive covenant. *Rafferty*, 923 F.3d at 117. The Third Circuit, noting New Jersey's strong preference for blue penciling, rather than invalidating, unreasonable restrictive covenants under *Solari*, declined to adopt "a bright line rule that restrictive covenants are unenforceable restraints on trade if imposed selectively and as a second layer" as set forth under *Laidlaw, Inc. v. Student Transp. of Am., Inc.*, 20 F. Supp. 2d 727 (D.N.J. 1998)." *Rafferty*, 923 F.3d at 124. Instead, finding that a two-tiered system could further the legitimate interests of an employer, the Third Circuit instructed that rather than invalidating a selective second layer restrictive covenant as unenforceable per se, courts must consider the agreement as a whole under *Solari* and decide "whether and to what extent it is necessary to curtail the restrictive covenants' scope . . . when confronted with overbroad restrictive covenants . . . ." *Id.* at 116.

Relying on its interpretation of *Rafferty* as "requir[ing] a factual analysis of the lack of consistency of the enforceability of the non-compete agreements," ATG argues that the NCA Discovery is necessary to establish that Plaintiff "'selectively enforced' Non-Compete Agreements only against the Employee Defendants who went to work for ATG," which is a "key element to [ATG's] defense." Dkt. No. 383-1 at p. 5; Dkt. No. 378-1 at p. 10. The Court does not agree.

Contrary to ATG's assertions, neither *Rafferty* nor any other authority cited by Plaintiff supports ATG's contention that an employer's decision not to enforce every restrictive covenant

"can be used as a defense at trial to invalidate the restrictive nature of non-compete agreements." Dkt. No. 378-1 at p. 1. The Third Circuit's holding in *Rafferty* applies only to an employer's decision to impose restrictive covenants on certain employees "selectively and as a second layer," and not, as ATG contends, to an employer's decision to pursue less than all alleged breaches of non-compete agreements. *Rafferty*, 923 F.3d at 124. *Rafferty* does not discuss an employer's inconsistent enforcement of restrictive covenants nor does it contain any support for ATG's argument that "biased" enforcement renders a restrictive covenant somehow unenforceable.

Furthermore, courts have made clear that "an employer's failure to enforce a restrictive covenant against similarly situated employees [does] not estop an employer from enforcing the covenant" at issue, and any suggestion an employer be required to enforce "every restrictive covenant, without regard to cost-effectiveness or individual circumstances . . . is impractical and unfair, not only to [employers], but to other former employees . . . ." *Laidlaw, Inc. v. Student Transp. of Am., Inc.*, 20 F. Supp. 2d 727, 751 (D.N.J. 1998), *abrogated on other grounds by ADP, LLC v. Rafferty*, 923 F.3d 113 (3d Cir. 2019). Instead, "the primary inquiry is whether enforcement of the covenant in *this* case is reasonable," and an employer's "actions (or lack thereof)" in seeking "to enforce other covenants" is inconsequential. *Laidlaw,* 20 F. Supp. 2d at 751.

Because an employer's failure to enforce restrictive covenants against all similarly situated employees is immaterial to the determination of whether a particular restrictive is enforceable, the Court finds ATG's argument that "evidence of 'selective enforcement' of non-compete agreements is not only discoverable, but can be used in a defense at trial to invalidate the restrictive nature of non-compete agreements" to be without merit. Dkt. No. 378-1 at p. 1. Accordingly, because ATG has failed to provide any support for its assertion that the denial of the NCA Discovery "would be prejudicial . . . and manifestly unjust," ATG's motion for reconsideration is **DENIED**.

**B. Motion to Amend**

ATG seeks leave to amend its Answer to assert a counterclaim for spoliation of evidence. *See* Dkt. No. 389-1, Declaration of David F. Jasinski, Esq. at Ex. A ("Proposed Counterclaim.") ATG's allegations of spoliation arise from its assertion that Plaintiff at some juncture possessed and has improperly failed to disclose a list of competitors (the "Competitor List"). According to ATG, the existence of the Competitor List was confirmed by two separate witnesses during their respective depositions. The first witness was MaxLite's designated Federal Rule of Civil Procedure 30(b)(6) witness, Barbara Ottinger, who was deposed on September 24, 2020. During Ms. Ottinger's deposition, counsel for ATG asked whether "there is a list that identifies competitors" of MaxLite, to which Ms. Ottinger responded "I'm sure there is a list. I don't have it." Jasinski Decl., Ex. B at 71:14-17. When asked if she had seen "the list," Ms. Ottinger testified:

> So the only time that a list has ever been provided to me is if we are negotiating an exit of an employee and we alter or we agree to a list of competitors for the individual at the time that they are exiting from . . . the company, but that list does change . . . [and] I can't say that it's the comprehensive list.

*Id.* at 71:20-72:3. Ms. Ottinger, when asked "[w]ho keeps [the] list," responded that it was her belief that "it's somewhere between sales and the CEO." *Id.* at 72:16-18. At the conclusion of Ms. Ottinger's testimony regarding the Competitor List, ATG requested "copies of those lists that exist that MaxLite considers to be competitors . . . ." *Id.* at 72:11-13. Thereafter, ATG served MaxLite with a written request for a list of competitors from 2014 to the present, to which MaxLite responded via letter dated October 6, 2020, and stated that such "information has already been provided throughout the course of discovery to the extent that such information exists . . . [and] MaxLite is under no obligation to create discovery which does not exist beyond what has been provided." Dkt. No. 391, Declaration of Kelly M. Purcaro, Ex. C at p. 4.

The second witness alleged by ATG to have confirmed the existence of the Competitor List is Caroline Kaminski. Ms. Kaminski was formerly employed as MaxLite's Human Resources Director and was deposed on January 6, 2021. During her deposition, Ms. Kaminski responded in the affirmative when asked whether "MaxLite ever prepare[d] a list of competitors that MaxLite felt it was competing against in the lighting business." Jasinski Decl., Ex. C at 38:14-16. Ms. Kaminski further testified that the list was prepared by MaxLite's CEO and general counsel and that she had utilized the list to determine whether potential salesperson candidates had previously been employed by one of MaxLite's competitors. *Id.* at 38:19-39:11. Additionally, Ms. Kaminski testified that the list "did change" and that she did not recall seeing ATG on the list of competitors. *Id.* at 39:12-23. Following Ms. Kaminski's deposition, ATG again requested a "list of competitors from January 1, 2014 through September 20, 2019," this time from MaxLite's "SM100" database. Jasinski Decl., Ex. D at p. 4. In response, MaxLite again confirmed, via letter dated January 21, 2021, that "[n]o such list exists . . . [and that] [a]s previously advised, MaxLite did not keep a formal list of competitors nor are there any such lists within the SM100 database." *Id.* Based upon MaxLite's statements that the Competitor List allegedly referred to by Ms. Ottinger and Ms. Kaminski does not exist, ATG now seeks leave to assert a counterclaim for spoliation of evidence.

"The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure." *Karlo v. Pittsburgh Glass Works, LLC,* 2011 WL 5170445, at *2 (W.D.Pa. Oct. 31, 2011). Rule 15 states, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order." *Karlo,* 2011 WL 5170445, at *2 (citing Fed. R. Civ. P.

16(b)(4)). In situations such as the present, where a party seeks to amend "after the deadline for doing so set by the Court, the movant must satisfy the [good cause standard] of Rule 16 before the Court will turn to Rule 15." *Id.* at \*2; *see also Dimensional Commc'n, Inc. v. OZ Optics, Ltd.,* 148 F. App'x 82, 85 (3d Cir. 2005) (instructing that the Third Circuit has adopted a good cause standard when determining the propriety of a motion to amend after the deadline has elapsed).

 The initial Pretrial Scheduling Order in this matter was entered on March 20, 2018. *See* Dkt. No. 186. Pursuant to the Pretrial Scheduling Order, any motions for leave to amend the pleadings were to be filed by July 13, 2018. *Id.* at ¶¶ 15-16. Despite submitting seemingly countless discovery disputes requiring judicial intervention and requests for discovery extensions, neither party requested an extension of the July 13, 2018 deadline for the amendment of pleadings. ATG's present motion to amend was filed on May 12, 2021, approximately three years after the expiration of the July 13, 2018 deadline. *See* Dkt. No. 388. Accordingly, ATG's motion is governed by Rule 16.

 Rule 16 of the Federal Rules of Civil Procedure authorizes courts to enter schedules of proceedings. The pretrial scheduling order allows a court to take "judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps." *Harrison Beverage Co. v. Dribeck Imps., Inc.,* 133 F.R.D. 463, 469 (D.N.J. Oct. 19, 1990) (quoting Fed. R. Civ. P. 16 advisory committee's note (1983 Amendment)); *see also Newton v. A.C. & S., Inc.,* 918 F.2d 1121, 1126 (3d Cir. 1990) (stating the purpose of Rule 16 is to provide for judicial control over cases, streamline proceedings, maximize efficiency of the court system, and actively manage the timetable of case preparation to expedite speedy and efficient disposition of cases).

 A scheduling order must, among other things, "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). The requirement

of a deadline for amending pleadings in the pretrial scheduling order "assures that at some point . . . the pleadings will be fixed." Fed. R. Civ. P. 16(b) advisory committee's note (1983 Amendment); *see also Harrison,* 133 F.R.D. at 469 ("The careful scheme of reasonable framing and enforcement of scheduling orders for case management would thus be nullified if a party could inject amended pleadings upon a showing of less than good cause after scheduling deadlines have expired."). The burden is on the moving party to show "good cause" for its failure to comply with the applicable scheduling order, and accordingly, for the Court to allow its proposed amended pleading. *Prince v. Aiellos,* No. 09–5429, 2012 WL 1883812, at *6 (D.N.J. May 22, 2012) (quoting *Graham,* 271 F.R.D. at 118); *see also Race Tires Am., Inc. v. Hoosier Racing Tire Corp.,* 614 F.3d 57, 84 (3d Cir. 2010) (affirming the trial court's holding that "Rule 16(b)(4) focuses on the moving party's burden to show due diligence").

Whether "good cause" exists under Rule 16 hinges to a large extent on the diligence, or lack thereof, of the moving party. *GlobespanVirata, Inc. v. Texas Instruments, Inc.,* 2005 WL 1638136, at *3 (D.N.J. July 12, 2005) (quoting *Rent–A–Ctr. v. Mamaroneck Ave. Corp.,* 215 F.R.D. 100, 104 (S.D.N.Y. Apr. 9, 2003)). Put succinctly, "[a]bsent diligence, there is no 'good cause.'" *Chancellor v. Pottsgrove Sch. Dist.,* 501 F.Supp.2d 695, 702 (E.D.Pa. Aug.8, 2007); *see also* Fed. R. Civ. P. 16(b), advisory committee's note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

When examining a party's diligence and whether "good cause" exists for granting an otherwise untimely motion to amend pleadings, courts typically ascertain whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired. *See Stallings ex rel. Estate of*

*Stallings v. IBM Corp.,* Civ. No. 08–3121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (denying plaintiffs' motion to amend because they "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline"); *Kennedy v. City of Newark,*, 2011 WL 2669601, at *2 (D.N.J. July 7, 2011) ("The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed."). If a movant had the knowledge necessary to file a motion to amend prior to the expiration of the Court's deadline set forth in the scheduling order, and if the movant can provide no satisfactory explanation for the delay, the Court may, in its discretion, deny the motion. *See Dimensional Commc'n.,* 148 F. App'x at 85 (upholding trial court's finding that the movant could not show "good cause" because it was in possession of the facts underlying its proposed counterclaim well before the deadline for amendment).

ATG claims that the existence of the Competitor List was confirmed during the depositions of Ms. Ottinger on September 24, 2020 and Ms. Kaminski on January 6, 2021, both of which took place after the expiration of the July 13, 2018 deadline for amending pleadings. Following both depositions, ATG requested that MaxLite produce a list of competitors from 2014 through 2019, and in response to both requests, via letters dated October 6, 2020 and January 21, 2021, MaxLite informed ATG that it did not maintain a formal list of competitors nor did it possess any other responsive information beyond what had already been produced during discovery. The Court addressed the parties' dispute regarding ATG's request for the Competitor List during the telephone conference held in this matter on February 25, 2021. During the telephone conference, the Court heard argument from both MaxLite and ATG on this issue and denied ATG's request to compel the production of the Competitor List finding that although Ms. Kaminski had testified to the existence of such a list, MaxLite had consistently maintained that no such list ever existed and

the Court could not "order [MaxLite] to produce something they say they don't have." Dkt. No.

370 at 15:23-25. At the conclusion of the conference, ATG stated that it

reserve[d] its rights [to] make a motion for spoliation of evidence under the list of competitors."

*Id.* at 34:10-12. At no point during February 25, 2021 conference or in any subsequent submission

to the Court prior to the filing of its present motion did ATG notify the Court of its intention to

move to amend.

Despite MaxLite's confirmations in October 2020 and January 2021 that it did not possess

any official list of competitors in response to ATG's requests for the Competitor List, ATG did

not file the present motion until May 12, 2021. Even where, as here, a party discovers new

information leading to additional claims after the deadline to amend has passed, the good cause

standard requires that the party seeking to amend exercise diligence and "request an extension of

the deadline to amend pleadings, or at the very least, promptly raise the issue with the Court."

*Lasermaster Int'l Inc. v. Netherlands Ins. Co.*, No. CV157614JXNJBC, 2021 WL 3616197, at *3

(D.N.J. Aug. 13, 2021). The good cause standard is not satisfied where a party "had several months

in which is could have raised concerns over the possibility of moving to amend but failed to do

so," and such a delay is "detrimental" to an amendment governed by Rule 16. *Id.*

This delay between MaxLite's confirmations that the Competitor List did not exist, at

least in the form allegedly described by Ms. Ottinger and Ms. Kamniski, in October 2020 and

January 2021, and the filing of ATG's present motion in May 2021, does not demonstrate diligence

on behalf of ATG. While ATG is correct in claiming that the "additional evidence" which forms

the basis of its spoliation allegation was discovered through deposition testimony obtained after

the deadline for amendments, ATG waited several months before filing its motion to amend and

at no point did ATG notify the Court of its intention to move to amend.[4] ATG's failure to notify the Court of its intention to move to amend is compounded by the ample time and opportunity it had to do so. ATG sought MaxLite's consent for the present amendment via letter dated April 26, 2021. Purcaro Decl., Ex. B. A mere twelve days prior, on April 14, 2021, the Court held a telephone conference on the record with the parties. *See* Dkt. No. 391. At no point during the April 14, 2021 telephone conference did ATG inform the Court of its intention to file the present motion. Instead of promptly alerting the Court of its intention to move to amend, ATG "sat on th[e] information for months" and this "delay is detrimental to its proposed amendment." *Lasermaster*, 2021 WL 3616197, at *3. Thus, because ATG failed to act with diligence, the Court does not find good cause to permit ATG's untimely amendment.

Even assuming, *arguendo*, that the Court did find good cause to permit ATG to amend pursuant to Rule 16, ATG's motion would fail under Rule 15. Pursuant to Federal Rule of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." The decision to grant leave to amend rests within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research Inc.,* 401 U.S. 321, 330 (1970). In determining a motion for leave to amend, Courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*,

---

[4] Although ATG asserted a reservation of its rights "to make a motion for spoliation of evidence" during the February 25, 2021 telephone conference, such a motion would typically be brought as a motion for sanctions under Federal Rule of Civil Procedure 37(e) and thus would not be governed by the deadline for amending pleadings set forth in the Pretrial Scheduling Order. ATG did not inform the Court of its intention to move to amend its pleading to assert a counterclaim for spoliation of evidence.

615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  In addition, "[t]he Third Circuit has consistently emphasized the liberal approach to pleading embodied by Rule 15."  *Endo Pharma v. Mylan Techs Inc.*, 2013 U.S. Dist. LEXIS 32931, at *4 (D. Del. Mar. 11, 2013).  The Court should only deny leave when these factors "suggest that amendment would be 'unjust'. . . ." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006).

MaxLite argues, and the Court agrees, that ATG's proposed counterclaim is futile. An amendment will be considered futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.,* 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted). In determining whether an amendment is insufficient on its face, the Court employs the same standard as in a Rule 12(b)(6) motion to dismiss. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted). Under a Rule 12(b)(6) analysis, "the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff." *loanDepot.com v. CrossCountry Mortg., Inc.*, 399 F. Supp. 3d 226, 234 (D.N.J. 2019) (citing *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014)). The question is not whether the movant will ultimately prevail, and detailed factual allegations are not necessary to survive such a motion. *Antoine v. KPMG Corp.,* 2010 WL 147928, at *6 (D.N.J. Jan. 6, 2010). If a proposed amendment is not clearly futile, then denial of leave to amend is improper. *Meadows v. Hudson County Bd. of Elections,* 2006 WL 2482956, at *3 (D.N.J. Aug. 24, 2006).

A party "is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." *Mosaid Technologies Inc. v. Samsung Electronics Co., Ltd.*, 348 F. Supp. 2d 332, 336 (D. N.J. 2004). "Under Rule 37 of the Federal Rules of Civil Procedure, a district court may sanction a party that destroys electronically stored

information 'with the intent to deprive another party of the information's use in the litigation.' Fed. R. Civ. P. 37(e)(2)." *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019).

Spoliation of evidence has occurred if: (1) the evidence was in the opposing party's control; (2) the evidence is relevant to the moving party's claims; (3) there has been actual, intentional suppression or withholding of evidence in bad faith; and (4) the duty to preserve the evidence was reasonably foreseeable to the opposing party. *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). "When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995).

The party seeking sanctions for spoliation bears the burden of proof by a preponderance of the evidence that spoliation occurred. *Universal Underwriters Inc. Co. v. Dedicated Logistics, Inc.,* No. 2:11-cv-1153, 2014 WL 7335668, at *4 (W.D. Pa. Dec. 19, 2014). If a party proves that spoliation occurred, the court may sanction the offending party. *Schid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78-79 (3d Cir. 1994). Courts consider the following factors when contemplating Rule 37 sanctions: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019) (quoting *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 79 (3d Cir. 1994)).

As an initial matter, although the Court "generally cannot 'consider matters extraneous to the pleadings'" under a Rule 12(b)(6) analysis, the Court is not convinced that the Competitor List sought by ATG ever existed. *Marks v. Struble*, 347 F. Supp. 2d 136, 143 (D.N.J. 2004) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997)). Instead, it appears likely that ATG's allegations of spoliation arise from a miscommunication between the parties and relevant witnesses rather than from any destruction of evidence undertaken by MaxLite. By ATG's own admission, MaxLite has produced "multiple documents reflecting [MaxLite's] informal competitor listings throughout the course of discovery." *See* Purcaro Decl., Ex. B. at p. 4. However, ATG contends none of the documents produced by MaxLite satisfy its requests.

According to ATG, the Competitor List it seeks must: (1) be "all inclusive"; (2) discuss negotiating exit interview of employees and/or consider the terms of non-compete agreements; (3) have been sent to MaxLite's general counsel and/or CEO; and (4) identify competitors in specific categories. Dkt. No. 397 at p. 2-3. Because none of the documents produced by MaxLite fulfill all the requirements set forth by ATG, ATG asserts that the "definitive list of competitors" described by Ms. Ottinger and Ms. Kaminski must have been destroyed or withheld by MaxLite. *Id.* The Court does not reach the same conclusion. Although ATG may be dissatisfied with the contents and format of the "competitor lists" it received in discovery, the lists produced by MaxLite appear to substantially align with the testimony of Ms. Ottinger and Ms. Kaminski and ATG has failed to provide the Court with any factual allegations which support its contention that the Competitor List at one time existed and has since been destroyed or withheld by MaxLite.

Setting aside the Court's doubts as to whether the Competitor List did indeed exist at some juncture, the Court will now address the futility of ATG's proposed amendment. The Court is perplexed by ATG's proposed claim. In its briefing in support of its present motion, ATG discusses

18

spoliation solely in the context of a request for sanctions under Rule 37 and argues that "the appropriate remedy [for the alleged spoliation] should be an adverse inference in ATG's favor regarding the existence and substance of the competitor list." Dkt. No. 387 at p. 4. The Proposed Counterclaim, however, rather than seeking relief within the framework of Rule 37, asserts a stand-alone cause of action for spoliation and seeks a remedy in the form of monetary damages. Because the Proposed Counterclaim asserts an independent cause of action for spoliation and seeks a remedy in the form of monetary damages rather than the imposition of sanctions as set forth under Rule 37, the only arguable path to viability for ATG's proposed cause of action is as a claim for fraudulent concealment under New Jersey law.

Although not mentioned by ATG either in its briefing or in the Proposed Counterclaim, under New Jersey law, a litigant may file "a separate tort action for fraudulent concealment against an adversary that hides or destroys evidence during or in anticipation of litigation." *Tafaro v. Six Flags Great Adventure, LLC*, No. CV175607FLWLHG, 2018 WL 1535289, at *6 (D.N.J. Mar. 29, 2018) (citations omitted). Under New Jersey law, when spoliation occurs, various civil remedies are available to the injured party depending upon the specific circumstances at issue. *Rosenblit v. Zimmerman*, 166 N.J. 391, 401 766 A.2d 749, 754 (2001). Those remedies include an adverse inference; discovery sanctions such as the barring of admissible evidence or the dismissal of the action; or, as arguably alleged here, a stand-alone cause of action for fraudulent concealment. *See id.* at 754-55. "Whether a stand-alone claim is the appropriate remedy depends upon the identity of the spoliator, the timing of the alleged spoliation, and utility of the alternative sanctions." *Laufenberg v. Ne. Carpenters Pension Fund*, No. CV 17-1200 (MAH), 2019 WL 6975090, at *18 (D.N.J. Dec. 19, 2019) (citing *Robertet Flavors, Inc. v. Tri-Form Constr., Inc.*, 1 A.3d 658, 670-71 (N.J. 2010)).

"Where the spoliator is the party defending against a claim, the opposing litigant is permitted to either amend their pleading to bring a fraudulent concealment claim or institute a separate action." *Id.* (citing *Rosenblit*, 766 A.2d at 757-58). "If, on the other hand, the spoliator is a plaintiff, the remedy of a separate cause of action for fraudulent concealment would not necessarily serve any purpose." *Robertet Flavors, Inc.*, 1 A.3d at 670 (citing *Hirsch v. Gen. Motors Corp.*, 628 A.2d 1108, 1119 (N.J. Sup. Ct. Law Div. 1993) (noting that the goal of "protect[ing] a litigant's interest [through] a prospective cause of action" does not apply when spoliation interferes with a party's ability to defend against a lawsuit)); *see also Fox v. Mercedes-Benz Credit Corp.*, 658 A.2d 732, 736 (N.J. Sup. Ct. App. Div. 1995) ("The concealment tort . . . is directed only at protecting prospective claims of plaintiffs. It is inapplicable to defendant's ability to defend a lawsuit. When plaintiffs have concealed evidence causing interference with discovery, the rules of court provide more than sufficient remedy." (internal citations omitted)). "In declining to recognize a cause of action for the party defending against a claim, the New Jersey Supreme Court reasoned that the preclusion of the spoliator's evidence is generally the appropriate sanction." *Laufenberg*, 2019 WL 6975090, at *18 (citing *Robertet Flavors, Inc.*, 1 A.3d at 671.)

Here, because MaxLite, the plaintiff, is the alleged spoliator, ATG cannot assert a viable claim for fraudulent concealment under New Jersey law against MaxLite based on the alleged destruction of evidence that ATG claims is material to its defense. Accordingly, because the Proposed Counterclaim is "not legally cognizable under New Jersey law," the Court finds that ATG's proposed amendment is futile. *Laufenberg*, 2019 WL 6975090, at *19.

In light of the foregoing, the Court finds that the Proposed Counterclaim fails both under Rule 16 and, in the alternative, under Rule 15. Accordingly, ATG's motion for leave to amend [Dkt. No. 388] is **DENIED**.

## III.    CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 4th day of October, 2021,

**ORDERED** that ATG's motion for reconsideration [Dkt. No. 377] is **DENIED;** and it is further

**ORDERED** that ATG's motion for leave to amend [Dkt. No. 388] is **DENIED.**



s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**