**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MAXLITE, INC. a New Jersey Corporation, f/k/a SK AMERICA, INC., d/b/a MAXLITE | Civil Action No.: 15-CV-01116-(JMV)(JBC) |
| Plaintiff, | |
| -v- | |
| ATG ELECTRONICS, INC., JAMES D. STEEDLY, SOPHIA C. GALLEHER and MATTHEW KIM, | |
| Defendants. | |

***DEFENDANT ATG'S POST-HEARING BRIEF FOR PLAINTIFFS' IN RE GRAND JURY APPLICATION***

JASINSKI, P.C.
2 Hance Avenue, 3rd Floor
Tinton Falls, New Jersey 07724
T: 973-824-9700
F: 732-842-1805
Attorneys for Defendant
ATG Electronics, Inc.

Of Counsel:
    David F. Jasinski, Esq.

On the brief:
    Robert P. Manetta, Esq.
    Jennifer C. Van Syckle, Esq.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT............................................. 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY....................... 2

  A.  Maxlite, ATG, James Steedly, Sophia Galleher, and Mathew
Kim. ............................................................ 2

  B.  MaxLite's Litigation Against ATG and Plaintiffs. ........ 5

  C.  Plaintiffs' *In Re Grand Jury* Application and California
Arbitration.................................................... 8

LEGAL ARGUMENT.................................................. 14

POINT I THE CALIFORNIA ARBITRATION HAS NO PRECLUSIVE EFFECT... 14

POINT II PASHMAN STEIN IS BOUND BY THE RPCS................... 16

POINT III PASHMAN STEIN DOES NOT SATISFY THE SIX FACTORS OF *IN
RE GRAND JURY*................................................. 19

  A.  There Is No Informed Consent Of The "Client" .......... 22

  B.  There Is No Third-Party Payer Arrangement or Statement
Regarding Interference ........................................ 22

  C.  There Is No Statement In The Retainer That Pashman Stein
Does Not Have A Professional Relationship With The Third-Party
Payer ......................................................... 23

  D.  There Is No Statement That A Lawyer Is Prohibited From
Communicating With The Third-Party Payer...................... 23

  E.  There Were No Invoices From Pashman Stein. ............. 24

  F.  There Was Not A Commitment To Pay The Legal Fees and
Expenses of Plaintiffs........................................ 24

POINT IV PASHMAN STEIN CANNOT USE A JOINT DEFENSE ARRANGEMENT TO
SATISFY *IN RE GRAND JURY*..................................... 27

POINT V ATG SHOULD BE FOUND UNDER NO OBLIGATION TO PAY FOR
PASHMAN STEIN'S SERVICES...................................... 31

CONCLUSION..................................................... 32

## TABLE OF AUTHORITIES

**Cases**

*ATG Electronics, Inc. v. Mulcahy Law Firm,*
  2020 WL 242210 (Cal. Ct. App. 2020) ........................ 15
*Clyde v. Hodge,*
  413 v. F.2d 48 (3d Cir. 1969) ............................... 14
*In re Garber,*
  95 *N.J.* 597 (1984) ........................................ 27
*In re Opinion 682 of the Advisory Comm. on Prof'l Ethics,*
  147 *N.J.* 360 (1997) ...................................... 29
*In re State Grand Jury Investigation,*
  983 A.2d 1097 (N.J. 2009) ............................. passim
*Levine, Staller, Sklar, Chan, Brown & Donnelly P.A. v. City of Atl. City,*
  2014 WL 8630664 (N.J. Super. Ct. App. Div. April 21, 2015) .. 26
*Lynne Carol Fashions, Inc. v. Cranston Print Works Co.,*
  453 F.2d 1177 (3d Cir. 1972) ............................... 14
*MaxLite, Inc. v. ATG Elecs., Inc.,* CV 15-1116,
  2019 WL 3283077 (D.N.J. July 22, 2019) ..................... 25
*Moyer v. Van-Dye-Way Corp.,*
  126 F.2d 339 (3d Cir. 1942) ................................ 14
*Stein v. Nostrum Laboratories, Inc.,* A-1759-13T1,
  2014 WL 5312535 (N.J. Super. App. Div. Oct. 20, 2014) ....... 21
*Vandenberg v. The Superior Court of Sacramento County,*
  21 Cal. 4th 815 (1999) ................................ 15

**Rules**

RPC 1.2(a) ................................................. 16
RPC 1.5(b) ................................................. 16
RPC 1.7 .................................................... 27
RPC 1.7(a) ................................................. 20
RPC 1.8(f) ...................................... 22, 23, 28, 30
RPC 5.4(c) .............................................. 20, 28

## PRELIMINARY STATEMENT

Plaintiffs wish to circumvent the ethical framework for attorneys set forth in the Rules of Professional Conduct and established by the New Jersey Supreme Court in *In Re Grand Jury*, by binding ATG, their former employer, to a pay arrangement with an attorney of which it had absolutely no knowledge and for which the company never provided informed consent to retain. Indeed, Plaintiffs wish for ATG to pay exorbitant legal fees to an attorney they never hired and never agreed to pay.

As set forth below, Plaintiffs seek to slam a proverbial "square peg in a round hole" by focusing on a single factor of the *In Re Grand Jury* analysis. Plaintiffs would like the Court to focus on one factor, and one factor only: "once a third party commits to pay." Nothwithstanding the fact that ATG NEVER committed to pay, the determination of whether an attorney may be compensated for his/her services by someone other than his/her client cannot rely solely on this single factor.

*In Re Grand Jury* requires each of six conditions to be met. Despite Plaintiffs' attempt at the hearing to muddy the waters, use inflammatory language, and rely solely on emotion, it cannot turn ATG into a third-party payer as contemplated by *In Re Grand Jury.* Despite a long and tortuous procedural history, this case should be simple:  Can Pashman Stein satisfy the six conditions of *In Re Grand Jury*?

1

As set forth below, it cannot rely on a prior Arbitration Agreement or a relationship ATG had with its prior counsel to do so. Plaintiffs' *In Re Grand Jury* application must be denied and/or ATG should be found under no obligation to pay for Pashman Stein's services.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

**A. Maxlite, ATG, James Steedly, Sophia Galleher, and Mathew Kim.**

Maxlite is a well-established large lighting company that sells a huge amount of traditional lights. *See, T432:16-18*[1]. In comparison, ATG is a small business in the lighting industry; in 2014 the annual revenue was under 10 million U.S. dollars. *T416:9-19.* At that time, ATG had approximately ten (10) employees on the payroll. *T416:22-25.* Based upon information and belief, Maxlite is approximately more than ten times the size of ATG. *T432:19-20.*

Maxlite has filed a complaint against ATG for the solicitaion of James Steedly, Sophia Galleher and Mathew Kim in the District of New Jersey[2] ("Maxlite Litigation"). Steedly had resigned from

---

[1] "T__:__" refers to the transcript of the In Re Grand Jury Hearing. Relevant portions of the transcript are attached as Exhibit A to the Declaration of David F. Jasinski, Esq. submitted herewith.

[2] Galleher, Steedly, and Kim collectively referred to as "Plaintiffs." The Court has categorized the Employee Defendants as Plaintiffs for purposes of this *In Re Grand Jury Hearing Application*. *T5:17-21.* It is also worth mentioning, Galleher and Kim are dismissed from the "MaxLite Litigation" as they settled with MaxLite, the terms of the settlement are confidential and unknown to ATG. Steedly has not settled the "MaxLite litigation"

MaxLite informing them that he would be resigning from his position and citing "unethical and in cases illegal actions" by MaxLite after they refused to pay him for work he performed. *See, Def. Ex. 11.*[3]

Prior to being hired by ATG, Galleher had worked approximately two years at MaxLite. *See, Def. Ex. 10 ¶4.* Galleher had become "very concerned" about MaxLite's business practices. *Def. Ex. 10 ¶9.* In October 2014, MaxLite eliminated Galleher's primary duties and responsbilities at MaxLite. *Def. Ex. 10 ¶8.* MaxLite had given Galleher one week to decide if she wanted to remain with MaxLite in a "secretarial position" or leave the company. *Def. Ex. 10 ¶¶8-9.* Although her titles via her offer letter from MaxLite were "marketing and business development analsyt, and then "mangement associate," she had been classified in MaxLite's system as an administrative assistant. *T40:8-12.*

Steedly had introduced Galleher to Nick Ni, ATG's Founder and President, in the fall of 2014. *T418:20-25; T415:5.* Galleher felt that there were better "options out there" instead of assuming a

---

with MaxLite and there is a default judgment entered against him. *See Dkt. Entry 276.* Steedly did not appear at the *In Re Grand Jury* hearing and he is no longer an active participant in the litigation and not represented by counsel. *T318:16-18; See also, Dkt. Entry 234.*

[3] "Def. Ex. ___" refers to Defendant ATG's Exhibit. Copies of the cited Defendant ATG's Exhibits are attached collectively as Exhibit B to the Declaration of David F. Jasinski, Esq. submitted herewith.

secretarial position with MaxLite. *T279:5-10.* Galleher left MaxLite on October 24, 2014. *T40:6; Def. Ex. 10 ¶9.* Gelleher's salary was $60,000 while at MaxLite and when she accepted a job with ATG her salary was $100,000. *T281:9-15.*

Prior to accepting a position with ATG, Galleher had her non-compete agreement reviewed by James (Jim) Mulcahy, a California attorney, regarding its enforceability under California law. *T166:10-25; T167:7-10.* Watson Galleher, Esq. (Sophia Galleher's father) and Jim Mulcahy were in the International Network of Boutique Lawyers group. *T166:1-9.* Mr. Galleher asked Mulcahy to review his daughter's non-compete. *T167:7-10.* Upon review, Mulcahy told Galleher that "given that she moved to California," "was an employee and resident of California, California law would apply," and that "there is a statutory provision in California that makes non-compete provisions unenforceable in most cases, she did not need to worry about the provision in the contract under California law." *T166:23-25; T167:1-21.*

After Galleher and Steedly joined ATG, they approached Ni and recommended Matt Kim as a salesman. *T422:4-9.* Kim had been working at MaxLite a little over a year as part of the national sales team. *T316:24-25; T317:18-19.* Ni did not know Kim prior to Galleher and Steedly introducing him to Ni. *T422:15-19.*

Ni was the individual who hired Steedly, Kim, and Galleher. *T511:14; See, Def. Ex.7, 9; Dkt. Entry 190 Ex. 6.* Steedly was hired

4

by ATG as Vice President of Project Development, Galleher as Director of Sales and Marketing, and Kim as Senior National Accounts Manager. *See, ED Ex. 6 [4]; Def. Ex. 10 ¶20; T326:18-25; 327:1-10.*

When Ni sent Steedly an employment offer, there was no mention of payment of attorney fees if MaxLite brought a lawsuit against ATG or Steedly. *See, ED Ex. 6; Def. Ex. 13 ¶19; Dkt. Entry 190 Ex. 6.* When Ni made an offer via email to Galleher for a position at ATG, there was no mention of payment of attorney fees if MaxLite brought a lawsuit against ATG or Galleher. *ED Ex. 7.* Likewise, when Kim and Ni negotiated the terms of Kim's employment with ATG via email correspondence, there was no mention of payment of attorney fees if MaxLite brought a lawsuit against ATG or Kim. *ED Ex. 9.*

**B.   MaxLite's Litigation Against ATG and Plaintiffs.**

MaxLite had sent Plaintiffs and ATG cease and desist letters. *T170:6-9.* In it, MaxLite demanded Plaintiffs "immediately terminate employment with ATG" by February 11, 2015. *See, ED Ex. 88.* In mid February 2015, the Plaintiffs and ATG jointly retained the Mulcahy Law Firm in connection with the filing of a lawsuit against MaxLite, Inc. seeking a declaratory judgment and

---

[4] "ED Ex. __" refers to Employee Defendant [Plaintiff] Exhibit. Copies of the cited Employee Defendant [Plaintiff] Exhibits are attached collectively as Exhibit C to the Declaration of David F. Jasinski, Esq. submitted herewith.

injunctive relief in connection with non-compete provisions in the Plaintiffs prior employment agreements and MaxLite's allegations, <u>inter</u> <u>alia</u>, of theft of trade secrets. *Def. Ex. 8.*

On February 12, 2015, Mulcahy signed an Engagement Letter with ATG, Steedly, Kim, and Galleher. *Def. Ex. 8.* The Engagement Letter states, in relevant part, "[y]ou have requested that we represent **each of you and ATG Electronics** in connection with the filing of a lawsuit against MaxLite, Inc." *Def. Ex. 8.* The Engagement Letter between Mulcahy, the Plaintiffs, and ATG has a section called Billing Procedures, which does not state that ATG has committed to pay for the Plaintiffs. *Def. Ex. 8.* The Engagement Letter further states, "[i]t is possible that we may perform some types of services for **you and ATG** on an hourly basis and other services upon a flat fee basis." *Id.* As per a condition of the Engagement Letter, ATG, Galleher, Kim, and Steedly were all required to sign individually and did so. *Id.*

ATG, Galleher, Kim, and Steedly also entered into a Representation of Conflict Waiver Agreement with the Mulcahy Law Firm. *Def. Ex. 9.* "You will be collectively referred to herein as 'you, your, or yourselves." *Id. pg. 1.* The Agreement stated that; '[y]ou agree that if in the future You desire separate representation in connection with the matter(s) for which the Firm has been retained, the Firm may thereafter continue to represent

6

the other parties in connection with all such matters, and any other matters." *Id. pgs. 2-3.*

The Agreement discussed: "**Other Issues Concerning Joint Representation;** Agreement to Maintain the Attorney-Client Privilege and Not to Seek Disqualification of Counsel or Experts." *Id. pg.3.* Specifically, Section 3 of the Engagement Agreement provides that all bills generated for the legal work in the case would be due and payable by **ATG and/or the Individual** Defendants upon receipt, and become past due after 30 days. *See, Def. Ex. 15 ¶17; T262:9-14.* Ni never committed to pay for the Plaintiffs' attorney fees indefinitely, he "just helped them." *T456:19-21.*

On February 12, 2015, before the Mulcahy Law Firm could file for declaratory judgment, MaxLite "beat" ATG and the Plaintiffs to the courthouse and filed a Complaint against them in the United States District Court for the District of New Jersey. *See, Dkt. Entry 1.* One day later, on February 13, 2015, and without notice of the New Jersey Action, the Defendants [Steedly, Galleher, Kim, and ATG] initiated a separate lawsuit in the Central District Court of California*. See, ATG Electronics, et al. v. MaxLite, Inc.,* Case No. 30-2015-0771894-CU-OE-CJC. On March 12, 2015, Mulcahy, on behalf of Plaintiffs and ATG, filed a Motion to Dismiss for lack of jurisdiction against MaxLite in the New Jersey action. *See, Dkt. Entry. 17.* On March 23, 2015, MaxLite opposed the Motion to Dismiss. *See, Dkt. Entry. 20.* ATG and Plaintiffs, under the joint

defense agreement with Mulcahy filed a Reply to MaxLite's opposition on April 13, 2015. *See, Dkt. Entry. 37.* On April 29, 2015, the Court denied Steedly's, Galleher's, and Kim's Motion to Dismiss and held in abeyance its ruling on ATG's Motion to permit limited jurisdictional discovery on the issue. *See, Dkt. Entry. 63.*

After various motions papers submitted by Mulcahy throughout February - June of 2015 on behalf of the Plaintiffs and ATG, ATG terminated the Plaintiffs' employment in June 2015 based on the demands of MaxLite. *T143:4-8; T344:14-18; T482:11-13.*

On July 22, 2015, James Mulcahy, Esq. then filed[5] a Motion to Withdraw as the attorney for Galleher, Kim, and Steedly. *See, Dkt. Entry 97.* The Court granted Mulcahy's Motion on November 4, 2015 and stayed discovery until November 30, 2015 to provide the Plaintiffs [Employee Defendants] time to retain new counsel. *See, Dkt. Entry 114.*

## C.   Plaintiffs' *In Re Grand Jury* Application and California Arbitration.

The Plaintiffs consulted with Pashman Stein on July 16, 2015 to seek settlement of this matter and were subsequently sent a Retainer Letter on August 18, 2015 by Pashman Stein. *Def. Exs. 1, 4.* At that time, the Plaintiffs were still represented by the Mulcahy law firm until November 4, 2015 when the court granted

_____

[5] Filed by Shari Amster, Esq.

Mulcahy's Motion to Withdraw. *See, Dkt. Entries 97, 114.* ATG is not identified in the Retainer Letter between Pashman Stein and the Plaintiffs. *Def. Ex. 1.* In fact, there is no third-party payer arrangment mentioned in the Retainer Letter. *Id.* Plaintiffs signed the Retainer Letter and were obligated and paid Pashman Stein an initial retainer of $10,000.00 split equally amongst the Plaintiffs. *Id.* The Scope of Representation was limited to "**try and negotiate a settlement** after which this retainer agreement will be revisted if those efforts are unsucessful." *Id.* The retainer agreement was the "only written retainer agreement" as evidenced by Plaintiffs counsel, John Kim, Esq.'s June 5, 2018 email correspondence to ATG's counsel, Jasinski, P.C. *Def. Ex. 2.* Plaintiffs paid Pashman Stein a subsequent payment of approximately $3,500 each. *T352:3-7.*

On September 16, 2015, Pashman Stein, P.C., Plaintiffs new counsel, filed an Order to Show Cause ("OTSC") seeking Temporary Relief Restraining ATG from discontinuing the funding of the Plaintiffs' legal fees and costs pending a hearing. *See, Dkt. Entry 109.* Pashman Stein relied solely that the payment of its legal fees was required by the New Jersey Supreme Court *In Re Grand Jury* Opinion. *Id.*

ATG filed a response to the OTSC on October 16, 2015*. See, Dkt. Entry 111.* On October 30, 2015, Plaintiffs filed their Reply Brief. *See, Dkt. Entry 113.* In the meantime, on June 24, 2016, the

Court denied ATG's Motion to Dismiss for lack of jurisdiction. *See, Dkt. Entry. 148.*

It was not until May 3, 2017, after prior motions were decided, did The Honorable James B. Clark, III, U.S.M.J. hold oral arguments for the OTSC for ATG to continue to pay the Plaintiffs' legal fees. *See, Dkt. Entry 179.* During the oral argument Plaintiffs counsel affirmed that procedurally, "[i]t's an order to show cause seeking to return to the status quo, which was at one point, ATG was paying the legal fees for [Plaintiffs]" Plaintiffs counsel argued that they were not making claims for breach of contract and it was not the relief sought. *Id. at 9:14-25, 22:15-21.* Plaintiffs counsel also argued that the *In Re Grand Jury* application is a remedy that belongs to a litigant who detrimentally relied on a third-party's promise of funding and "it's not a cause of action. It's a mechanism by which the Supreme Court sought to shift the burden onto the third party payer before they could be relived of funding obligations." *Id. at 22:11-13.*

On March 15, 2018, Judge Clark issued a Report and Recommendation ("R&R") granting Plaintiffs leave to file their Crossclaim in the Maxlite Litigation seeking declaratory judgment that ATG was responsible for all past and future legal costs incurred by the Employee Defendants [Plaintiffs] in connection with the Maxlite Litigation. *See, Dkt. Entry 185.* Judge Clark found that third party payment for summary actions would be handled via

10

summary action, but there was no parallel procedure for federal courts; accordingly Judge Clark first granted leave to file the Crossclaim.[6] *Id.*

Judge Clark stated "the Court must move beyond literal application of the six Grand Jury factors to assess the merits of the Employee Defendants' [Plaintiffs] claims against ATG" to support a contention that the factors **should be disregarded for purposes of deciding whether a preliminary junction should be issued.** *Id.* Nothing else. Judge Clark denied an entry of a preliminary injunction compelling ATG to continue to pay Plaintiffs' legal fees until they were relieved of their obligation by the Court. *Id.*

Neither party opposed the R&R recommendation to grant Plaintiffs leave to file a Crossclaim. Further, although ATG did not object to the denial of a preliminary injunction, it did object to R&R's findings and application of *In Re Grand Jury.*

---

[6] As stated by Judge Clark in his R&R, the Plaintiffs' Application presents a "procedural wrinkle." *See, R&R pg. 15.* Judge Clark went on to state that "there is no equivalent federal procedure to that of a summary action in New Jersey state courts as set forth in *In Re Grand Jury...*" *See, R&R pg. 16. As such,* since there is no procedural equivalent in federal courts, ATG's numerous objections throughout this litigation, including, but not limited to, its objection to Plaintiffs' OTSC, objection to the R&R, and opposition to Plaintiff's summary action, is to be considered ATG's request for relief and request to be relieved of any potential "continuing obligation to pay" if arguably deemed necessary.

On May 14, 2018, Judge Vazquez adopted the R&R.  *See, Dkt.*
*Entry 189.*  Footnote 2 of the Opinion and Order states:

> "ATG contends that 'Grand Jury is completely
> inapplicable to the facts at hand.  **While the Court**
> **need not address ATG's objection to Judge Clark's**
> **underlying reasoning** because ATG agrees with Judge
> Clark's recommendations, the Court notes it finds
> no issue with Judge Clark's analysis of Grand Jury
> and its application to the facts of this case.  With
> that said, the R&R merely finds a reasonable
> likelihood of success on the merits, **not actual**
> success on the merits.  **In other words, the issue**
> **has not yet been adjudicated to conclusion**."

*See, Dkt. Entry 189.*

The Mulcahy Law Firm filed a Demand for Arbitration before
JAMS, the Arbitration hearings were held on February 20-23, 2018,
for a dispute over legal fees between The Mulcahy Law Fim and its
former client, ATG Electronics, Inc. See, *ED Ex. 33 pg. 2.* On May
10, 2018, the Arbitrator issued an Amended Final Arbitration Award
awarding legal fees in the amount of $119,391.15.  *Id. at pg. 21.*
The Arbitration award was not submitted against the Plaintiffs,
but only against ATG. *Id.* Neither, the Plaintiffs nor Pashman Stein
attended or participated in the Arbitration, and there was no
ruling for attorney fees to be paid by ATG beyond the date of
Mulcahy's withdrawl from the New Jersey Lawsuit and the Arbitration
Award.  *Id. at 19-21; T443:16-20.  In Re Grand Jury* was not
referenced in the Arbitraiton hearing. *T444:2-4.*

On May 15, 2018, the Plaintiffs submitted an Amended Answer
and Crossclaim against ATG in the Maxlite Litigation. *See, Dkt.*

*Entry 190.* Thereafter on June 13, 2018, the Plaintiffs filed their Motion for Summary Judgment seeking an order (a) declaring ATG to be obligated to pay oustanding legal fees for Mulcahy and Pashman Stein, P.C., (b) Pashman Stein charged reasonable legal fees under New Jersey law; (c) finding that Pashman Stein is entitled to an upwards multiplier on their legal fees; and (d) ordering ATG to pay the balance of its outstanding legal fees withing ten (10) days. *See, Dkt. Entry 202. (emphasis added).*

On July 3, 2018, ATG filed its opposition to the Summary Judgment Motion seeking legal fees. *See, Dkt. Entry 214.* Plaintiffs filed their Reply Brief on July 20, 2018. *See, Dkt. Entry 224.* On July 22, 2019, Judge Vazquez denied the Employee Defendants [Plaintiffs] motion for summary action. *See, Dkt. Entry 280.*

In the July 22, 2019 opinion denying Plaintiff's motion for an order compelling ATG to pay Employee Defendants' legal fees associated with the case, the Court specifically referred to the six conditions which must be met before an attorney could accept payment from a third party. The Court then stated: "[t]he Court does not rule on these issues but notes them for a full understanding of the facts and circumstances." *See, Footnote 5.*

In accordance with the Court Order, hearings were held on August 8, 2022, August 29, 2022, August 30, 2022, and September 27, 2022. This post-hearing brief follows.

13

## **LEGAL ARGUMENT**

### **POINT I**
### **THE CALIFORNIA ARBITRATION HAS NO PRECLUSIVE EFFECT.**

The Third Circuit has found that federal courts sitting in diversity are to give out of state judgments the same force and effect in a subsequent action as it would have been given by the state in which the judgment was rendered. *See, Clyde v. Hodge,* 413 v. F.2d 48, 50 (3d Cir. 1969) (finding that Ohio law controlled effect to be given Ohio judgment); *Moyer v. Van-Dye-Way Corp.,* 126 F.2d 339 (3d Cir. 1942) (finding that the validity of arbitration award was to be determined by the law of the place where it was rendered); *Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*, 453 F.2d 1177 (3d Cir. 1972) (finding that New York law could be applied to determine whether a New York arbitration award had a preclusive effect in a subsequent Pennsylvania federal court litigation).

In the *In Re Grand Jury* Hearing, the Honorable John Michael Vazquez, stated; "the general rule is we use the law of preclusion from the jurisdiction in which the initial jurisdiction is entered— the initial decision is entered." *T9:6-9*. Plaintiffs' counsel, Michael Stein, agreed with Judge Vazquez; "we had flagged that it would be *California law* but appreciate the heads-up." *T9:19-20*. Therefore, in this proceeding California law applies to whether

the California Amended Final Arbitration Award precludes Pashman Stein's *In Re Grand Jury* Application. It does not.

Here, Mulcahy had the California Amended Arbitration Award reduced to a judgment in California. *See ATG Electronics, Inc. v. Mulcahy Law Firm,* 2020 WL 242210, *3 (Cal. Ct. App. 2020) (noting that the trial court granted Mulcahy's petition to confirm the arbitration award). Therefore, California law applies to determine the validity of, or the extent to which, the arbitration award has an issue preclusive effect.

It is undisputed that the Amended Final Arbitration Award was limited to the Mulcahy law firm, the services they provide, and for a certain time period. The issue before the Arbitration was limited solely to the Mulcahy Law Firm up to their withdrawal- - nothing else. Consistent with the submission, the Arbitration Award did not find that ATG must continue to pay attorney fees and costs to another lawfirm. The *In Re Grand Jury factors* were never analyzed nor were they intended to be by the California Arbitrator.

Pursuant to *Vandenberg v. The Superior Court of Sacramento County,* 21 Cal. 4th 815 (1999), the California Supreme Court found that private arbitration awards, even if judicially confirmed, **do not have nonmutual collateral estoppel effect unless the parties so agreed.**(finding that private arbitration awards (even if judicially confirmed) have no issue preclusive effect in favor of third persons unless the parties to the arbitration so agreed,

15

reasoning that the parties' reasonable expectations and the voluntary, contractual, and informal nature of private arbitration weigh against giving an arbitration award issue preclusive effect).

Here, because the Award did not consider an *In Re Grand Jury* analysis and the parties did not agree that the Amended Final Arbitration Award would have a binding effect in any subsequent proceedings, the arbitration award would not bind the parties in this subsequent litigation regarding a continuation of the payment of fees to a different attorney.

## POINT II
## PASHMAN STEIN IS BOUND BY THE RPCS

It is beyond cavil that Pashman Stein like all New Jersey attorneys are bound by the Rules of Professional Conduct.

Pursuant to RPC 1.2(a), a lawyer shall abide by a client's decisions concerning the scope and objectives of representation. Additionally, pursuant to RPC 1.5(b), "when the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated in writing before or within a reasonable time after commencing the representation."

It defies logic how Pashman Stein's actions can be in compliance with the RPC's when ATG did not retain Pashman Stein's services to represent Plaintiffs and had no knowledge of the firm's representation.  There is no retainer agreement between ATG and

Pashman Stein confirming it had been retained, informing ATG of the representation Pashman Stein would provide to Plaintiffs, informing ATG of any limits to its involvement in representation, describing the scope of the representation, or informing ATG of how much it would be charged or how it would be billed.  There was no written agreement with Pashman Stein or ATG at all.

It was Plaintiffs who signed the Retainer Letter with Pashman Stein. *Def. Ex. 1.*  The Scope of Representation was limited to "try and negotiate a settlement after which this retainer agreement will be revisted if those efforts are unsucessful." *Id.*  The retainer agreement was the "only written retainer agreement" as evidenced by Plaintiffs counsel, John Kim, Esq.'s June 5, 2018 email correspondence to ATG's counsel, Jasinski, P.C. *Def. Ex. 2.* ATG is not mentioned at all in the Retainer Letter between Pashman Stein and the Plaintiffs. *Def. Ex. 1.*  Compare *In Re Grand Jury* Retainer. *See Exhibit D to Jasinski Cert.*

Plaintiffs signed the Retainer Letter and were obligated to pay Pashman Stein an initial retainer of $10,000.00 split equally amongst the Plaintiffs. *Def. Ex. 1.*  There is no written agreement between ATG or Pashman Stein regarding the fees it would be charged for Pashman Stein's represention of Plaintiffs. In fact, Plaintiffs paid Pashman Stein a subsequent payment of approximately $3,500 each. *T352:3-7.*

Moreover, Pashman Stein never sent a retainer agreement, any correspondence notifying ATG that they were required to pay legal bills/invoices, and/or correspondence with redacted summary invoices. *T357:12-14; T359:8-10; T396:18-25; T397:1-4; T440:10-25; T441:1-24.* In fact, there is no third-party payer arrangment mentioned in the Retainer Letter or any third party payer arrangement established by any writing. *Id.*

Notwithstanding, Pashman Stein's professional judgment was severely compromised running up exorbitant legal fees in a case that was settled among MaxLite and the Plaintiffs. Interestingly enough, at no time did Pashman Stein raise any concern or more importantly a demand for payment coupled with a threat of withdrawl for refusal to pay. Pashman Stein even certified that it would not continue to represent the Plaintiffs if the Court did not grant it's summary action five years ago. *([a]bsent an order from the Court requiring ATG to pay fees and costs, the Employee Defendants [Plaintiffs], have no income and cannot afford the legal fees, and will have to proceed in the litigation without representation.] See, Def. Ex. 13 ¶83.* Instead, when the summary action was denied, Pashman Stein "doubled down" and ramped up attorney fees and costs without ATG's knowledge.

The RPC's should preclude Pashman Stein from obtaining fees from ATG.

18

**POINT III**
**PASHMAN STEIN DOES NOT SATISFY THE**
**SIX FACTORS OF *IN RE GRAND JURY***

In the case of *In Re Grand Jury*, the New Jersey Supreme Court's decision was in the context of compliance with the RPCs. The intention of the New Jersey Supreme Court in the *In Re Grand Jury* decision was to adopt an ethical framework to establish a conforming third-party arrangement. Pashman Stein wishes to circumvent that ethical framework for financial gain.

The New Jersey Supreme Court found that "[i]n sum, through the combined product of good faith of an employer, the diligence of competent counsel and the exercise of a trial court's supervisory authority[7], the **net result of the company's retention** and payment of counsel for its employees **complies with the Rules of Professional Conduct**." *In re State Grand Jury Investigation*, 983 A.2d 1097, 1107 (N.J. 2009). The employer in *In Re Grand Jury* retained individual attorneys to represent each of its employees while **committing, in writing**, to pay their legal fees associated with the investigation. *Id. at* 1101. (*the company announced to all other employees that the company had retained a lawyer—free of charge to the employees—with whom those employees could consult and who was available to represent those employees in respect of the grand jury inquiry.*) *(emphasis added).*

---

[7] The *In Re Grand Jury Court* could not have conceived that the matter would extend over six years.

To be sure, in *In Re Grand Jury,* the employer had retainer agreements with each of the four lawyers. *Id. at 1100.* The retainer agreements in *In Re Grand Jury* "shared common characteristics and were, in all substantive and material respects, indistinguishable." *Id.; See* DFJ Decl[8]., Ex D, Retainer Agreement in *In Re Grand Jury*.

Try as it might, Pashman Stein cannot escape the reality that ATG, unlike the company in the case of *In Re Grand Jury*, never retained it to represent Plaintiffs. According to the New Jersey Supreme Court in *In Re Grand Jury*, "a synthesis of RPCs 1.7(a)(2)[9], 1.8(f) and 5.4(c) yields a salutary, yet practical principle: a lawyer may represent a client but accept payment, directly or indirectly, from a third party **provided each of the six conditions is satisfied.**" Id., *accord Stein v. Nostrum Laboratories, Inc.*,

---

[8] "DFJ Decl." refers to the Declaration of David F. Jasinski, Esq. submitted herewith.

[9] First, *RPC* 1.7(a) forbids a lawyer from representing a client "if the representation involves a concurrent conflict of interest." That *RPC* recognizes "[a] concurrent conflict of interest ... if: ... there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to ... a third person or by a personal interest of the lawyer." *RPC* 1.7(a)(2). Second, *RPC* 5.4(c) provides that "[a] lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services."

A-1759-13T1, 2014 WL 5312535, at *3 (N.J. Super. App. Div. Oct. 20, 2014)(discussing the six factors of *In Re* Grand *Jury*).

> A lawyer may represent a client but accept payment, directly or indirectly, from a third party provided each of six conditions is satisfied:
>
> (1)  the informed consent of the client is secured;
>
> (2)  the third-party payer is prohibited from, in any way, directing, regulating or interfering with the lawyer's professional judgment in representing his client;
>
> (3)  there cannot be any current attorney-client relationship between the lawyer and the third-party payer;
>
> (4)  the lawyer is prohibited from communicating with the third-party payer concerning the substance of the representation of his client;
>
> (5)  the third-party payer shall process and pay all such invoices within the regular course of its business, consistent with manner, speed and frequency it pays its own counsel; and
>
> (6)  once a third-party payer commits to pay for the representation of another, the third-party payer shall not be relieved of its continuing obligations to pay without leave of court brought on prior written notice to the lawyer and the client.

*In re State Grand Jury Investigation*, 983 A.2d 1097 (N.J. 2009); *Stein v. Nostrum Laboratories, Inc.,* A-1759-13T1, 2014 WL 5312535, at *3 (N.J. Super. App. Div. Oct. 20, 2014).

Pashman Stein does not satisfy these requirements and therefore Plaintiffs cannot seek payment on Pashman Stein's behalf.

A.   **There Is No Informed Consent Of The "Client"**

In *In Re Grand Jury,* the informed consent was for the employees to agree to the attorneys **that the employer had chosen for them**. *Id. at 1101.* Here there is no informed consent, as ATG had not picked Pashman Stein to represent Plaintiffs. Pashman Stein never sent a retainer agreement to ATG. ATG certainly neither chose Pashman Stein to represent Plaintiffs nor made an unconditional written commitment to pay its fees as ATG was not even aware that the Plaintiffs hired Pashman Stein until a settlement conference in the District of New Jersey Court in January 2016. *T440:10-22*.

B.   **There Is No Third-Party Payer Arrangement or Statement Regarding Interference**

Unlike in *In Re Grand Jury*, there were no separate retention letters between Pashman Stein and ATG setting forth a third-party payer arrangement. As stated in *In Re Grand Jury*, "as clearly set forth in the separate retention letters **between the lawyers and the company**, each of the lawyers explained that 'the sole professional obligation of [the] law firm will be to [the] assigned client.'" *Id. at 1107*. This is missing from the case at bar.

To be sure, there is no language as required by the New Jersey Supreme Court that "clearly and conspicuously note that nothing in the representation shall limit the lawyer's responsibilities to the client, as provided in RPC 1.8(f)(2) and that the third-party

payer shall not, in any way, seek to direct or regulate the lawyer's professional judgment in rendering such legal services."

**C.**     **There Is No Statement In The Retainer That Pashman Stein Does Not Have A Professional Relationship With The Third-Party Payer**

In *In Re Grand Jury*, the New Jersey Supreme Court found that "the record is clear that none of the lawyers selected to represent the individual defendants had any current relationship with the company." *Id. at 1107*. As continually stated throughout this brief, ATG did not select Pashman Stein to represent Plaintiffs. Conspicuously absent was a retention letter that stated "the lawyer does not have a professional relationship with the third-party payer" as required by the New Jersey Supreme Court. *Id.*

**D.**     **There Is No Statement That A Lawyer Is Prohibited From Communicating With The Third-Party Payer.**

"The lawyer is prohibited from communicating with the third-party payer concerning the substance of the representation of his client." *RPC* 1.8(f)(3). In *In Re Grand Jury*, "**each of the retention letters** made clear that the lawyer 'is not required to disclose any legal strategy, theory, plan of action, or the like, to the company and payment of legal fees.'" *Id.* Here, there is no such language. Nor is there the language that the New Jersey Supreme Court considered a "better practice" to affirmatively state that "the lawyer will not disclose any part of the substance of the representation of the client to the third-party payer." *Id.*

23

The breadth of this prohibition includes, but is not limited to, the careful and conscientious redaction of all detail from any billings submitted to the third-party payer." *Id. at 1106.*

**E.   There Were No Invoices From Pashman Stein.**

Consistent with the knowledge the lawyer will not disclose any part of the substance of the representation of the client to the third-party payer, all billings from the lawyer to the third-party payer must have detailed information redacted. Here, Pashman Stein never sent invoices to ATG so there cannot be any expectation that the invoices would be paid within the regular course of business, consistent with the manner, speed, and frequency it pays its own counsel. *Id. at 1106.*

Pashman Stein never sent correspondence notifying ATG that they were required to pay legal bills or the invoices, and/or correspondence with summary invoices. *T440:10-25; T441;1-24; T357:12-14; T359:8-10; T396:18-25; T*397:1-4.

**F.   There Was Not A Commitment To Pay The Legal Fees and Expenses of Plaintiffs.**

In *In Re Grand Jury,* the company was considered as sufficiently setting up a proper third-party payer arrangement, where they did not dispute that they committed to pay for their employees' attorney's fees and costs. Judge Vazquez "hit the nail right on the head" over three years ago in his initial decision denying the summary action when he recognized in his opinion;

> *In re Grand Jury* **presented a factual scenario**
> **different than that of the current matter.**
> There, the **employer did not dispute that it**
> **had undertaken to pay for its employees'**
> counsel fees in a grand jury investigation.
> 200 N.J. at 485.

*See, MaxLite, Inc. v. ATG Elecs., Inc.,* CV 15-1116, 2019 WL
3283077, at *4 (D.N.J. July 22, 2019).

In the case at hand, there was no commitment. *T457:6.* Ni
testified that; "we [ATG] never committed to pay legal bill for
employees forever. There was never that understanding." *T469:12-
13.* There was no commitment for ATG to pay all the Plaintiffs'
legal fees. According to Ni, "[t]here was no commitment to
anything. They were poor [Plaintiffs], they didn't have money, so
ATG up fronted the money." *T456:17-18.* Galleher admitted that Ni
told her "[d]on't worry, I personally will pay **to help you guys**
**out**." *T114:22-23.*

At best, there was a willingness to help Plaintiffs which
cannot and does not equate to a commitment to be a third-party
payer and pay legal fees and expenses of its employees, especially
indefinitely. Kim understood this as he testified; "I don't think
he [Ni] ever specifically said, '[w]e will fund forever, but I
believe the implication was there.'" *T395:9-10.* If a court is to
require an employer to "scrupulously" honor a commitment to pay,
there must be an actual and written "commitment" and an "express
understanding" by the employer not an alleged "implication."

Further establishing there was no commitment was Galleher's insistence of getting Ni to "put into writing" something "a little more formal" regarding his purported commitment to pay the legal fees. *T145:2-20; Def. Ex. 7.* Galleher's "brain dump" addressed to Ni (albeit it may not have been sent) stated; "[a]t this point, we need to know what you are willing to put into writing. We'd for your to agree to pay Jim's legal bill through our termination, and put aside up funds upfront to support some continued legal fees." *See, Def. Ex. 7; T290:9-19.* Kim also testified that the so called "commitment was never put in writing." *T394:25; T395:1-2.*

Notwithstanding, even if this Court were to find that somehow Ni agreed to pay something in the nature of attorneys' fees, it certainly was not unconditional as needed for an *In Re Grand Jury* analysis. See *Levine, Staller, Sklar, Chan, Brown & Donnelly P.A. v. City of Atl. City*, 2014 WL 8630664 (N.J. Super. Ct. App. Div. April 21, 2015) (finding reliance on *In Re Grand Jury* to force payment by a third-party payer was inappropriate in the absence of the unconditional promise to pay that existed in *In Re Grand Jury*).

Pashman Stein cannot satisfy the six conditions of *In Re Grand Jury*. Thus, *In Re Grand Jury* case is not only factually dissimilar to the case at bar, but it is completely inapposite.

**POINT IV**

**PASHMAN STEIN CANNOT USE A JOINT DEFENSE ARRANGEMENT TO SATISFY *IN RE GRAND JURY*.**

It is anticipated that Pashman Stein will try to obtain payment from ATG and have this payment somehow comply with the New Jersey RPCs by piggy backing on the agreements Mulcahy had with ATG and Plaintiffs.

A joint defense arrangement cannot satisfy *In Re Grand Jury*. As per *In Re Grand Jury*, "[t]here cannot be any current attorney-client relationship between the lawyer and the third-party payer". *In re State Grand Jury Investigation*, 983 A.2d 1097, 1106 (N.J. 2009); *accord In re Garber,* 95 *N.J.* 597, 607, 472 *A.*2d 566 (1984) ("It is patently unethical for a lawyer in a legal proceeding to represent an individual whose interests are adverse to another party whom the lawyer represents in other matters, even if the two representations are not related.") *(citations omitted); see also RPC* 1.7 (general rule governing conflicts of interest)". Contrary to this mandate, in a joint defense arrangement, there is a relationship between the company and the attorney, as well as the employees.

It is undisputed that Mulcahy and ATG had an attorney-client relationship. *Def. Ex. 8-9.* Mulcahy testified; "we had four separate clients sign the conflict waiver and the engagement letter." *T243:3-5.* ATG, Galleher, Kim, and Steedly were all required to sign the Engagement Letter with Mulcahy individually

27

and did so. *Id.*  The Engagement letter states, in relevant part, "[y]ou have requested that we represent **each of you** and ATG Electronics in connection the filing of a lawsuit against MaxLite, Inc." *Def. Ex. 8.*  The Engagement Letter specifically addresses the situation with the Mulcahy law firm representing the individual employees **as well as ATG Electronics**. *Id.; T245:24-25; T246:1-3.*

ATG and the Plaintiffs also entered into a Representation of Conflict Waiver Agreement with the Mulcahy Law Firm. *Def. Ex. 9.* ("You will be collectively refered to herein as 'you, your, or yourselves.") The Representation of Conflict Waiver Agreement discussed; "**Other Issues Concerning Joint Representation**; Agreement to Maintain the Attorney-Client Privilege and Not to Seek Disqualification of Counsel or Experts." *Id.* Simply stated, the Representation of Conflict Waiver Agreement acted as a joint defense agreement with the Plaintiffs and ATG, which clearly establishes an attorney-client relationship with Mulcahy. T251:4-23.

In addition, a third party payer arrangement (as set forth in *In Re Grand Jury*) requires that the company not in any way direct, regulate or interfere with the lawyer's professional judgment in representing the employee.  "The third-party payer is prohibited from, in any way, directing, regulating or interfering with the lawyer's professional judgment in representing his client." *RPC* 1.8(f)(2); *RPC* 5.4(c). *See, In re Opinion 682 of the*

28

*Advisory Comm. on Prof'l Ethics,* 147 *N.J.* 360, 687 *A.*2d 1000 (1997) (holding, in part, that formation of title insurance company owned and managed by attorneys who would retain portion of premiums paid by client as part of fee calls into question lawyer's independent judgment) citing *In re State Grand Jury Investigation*, 983 A.2d 1097, 1105-06 (N.J. 2009).

Without question, Mulcahy was required to disclose legal strategies, theories, and plans of actions to ATG which under *In Re Grand Jury* would be prohibited communications. Mulcahy disclosed everything to ATG, as ATG was their client. ATG's payment of legal fees were of course conditioned upon Mulcahy's work, as ATG was his client. Mulcahy filed various motions on behalf of ATG [and the Plaintiffs], provided ATG with updates on the litigation, and discussed strategy in in-person meetings with Ni. *T187:9-16; T188:14-19; T190:1-17; T208:1-5.* Mulcahy clearly permitted ATG to direct and regulate his professional judgment by strategically litigating the case.

Indeed, if this was an *In Re Grand Jury* arrangement, "all billings from the lawyer to the third-party payer **must** have any detailed information redacted." *Id. at* 110. From Mulcahy's perspective, "the individuals had a right to see copies of the bills, as well, but they went to ATG." *T264:7-9.* Mulcahy sent detailed unredacted invoices to "ATG for the purpose of letting anybody who is working at ATG or the defendants [plaintiffs] know

what the bills amount to." *T264:1-3.* Mulcahy testified that "Galleher was handling these things for ATG as I understood it at the time, but I wanted everyone to know what the bills included." *T264:3-5.* "The breadth of the prohibition on communication between attorney and third-party payer non-client payer concerning the substance of the representation of client includes, but is not limited to, the careful and conscientious redaction of all detail from any billings submitted." *RPC 1.8(f)(3).*

ATG never committed to pay the Plaintiffs' attorney fees with Mulcahy, let alone unconditionally. ATG did not commit to pay, they helped the Plaintiffs with the legal bills under the Mulcahy law firm representation only. ATG only made payments to Mulcahy to "subsidize" the legal bills as certified to by James Mulcahy. *See, Def. Ex. 15 ¶5.* ATG made partial payments to assist, subsidize, and help the Plaintiffs with their legal fees while employed by ATG. This was mostly due to the Plaintiffs' current economic position and MaxLite's scorched earth litigation tactics. Ni was sympathetic and felt bad. *T187:9-13; T428:9-10; T432:1-4; T434:5-7; T467:20-22.*

ATG fought the Arbitration Award for the remaining fees sought by Mulcahy against ATG as further evidence that they did not "commit to pay." By virtue of the Engagement Letter, Mulcahy could have gone after the Plaintiffs for the remaining legal fees as well, but he chose not to. Section 3 of the Mulcahy Engagement

Agreement provides that all bills generated for the legal work in the case would be **due and payable by ATG and/or the Individual** Defendants upon receipt, and become past due after 30 days. *See, Def. Ex. 15 ¶17; T262:9-14.*

Since Mulcahy's representation of ATG and Plaintiffs cannot ethically create a third-party payer relationship, it cannot be used to allow Pashman Stein to receive payments from ATG under the guise of *In Re Grand Jury*.

<u>**POINT V**</u>
<u>**ATG SHOULD BE FOUND UNDER NO OBLIGATION TO PAY FOR PASHMAN STEIN'S SERVICES**</u>

If the crux of Plaintiffs' argument is that by virtue of ATG's alleged agreement with Mulcahy and partial payment of Mulcahy, an obligation to pay attorneys' fees and costs arose and this Court were to accept such an argument, the obligation to pay should be limited to the Mulcahy firm which has been satisfied.

As conceded by Plaintiffs' counsel, they are not making claims for breach of contract and it is not the relief sought. *See, Dkt. Entry 179; T22:17-21.* According to Plaintiffs' counsel, the *In Re Grand Jury* application "is a remedy that belongs to a litigant" and "who detrimentally relied on a third-party's promise of funding and it's not a cause of action." *See, Dkt. Entry 179; T22:8-11.* "It's a mechanism by which the Supreme Court sought to shift the burden **onto the third-party payer** before they could be relived of funding obligations". *See, Dkt. Entry 179; T22:11-23.*

31

As set forth above, had the Mulcahy Law Firm considered ATG a third-party payer, it was in violation of *In Re Grand Jury.* However, Mulcahy did not, nor did he need to, consider an *In Re Grand Jury* analysis, since ATG was not a third-party payer as ATG was his client. If this Court is to find an obligation, ATG should be deemed to have satisfied this obligation and be relieved of any further alleged obligation to pay by virtue of paying the Arbitration Award. Payment of the Arbitration Award fully compensated Mulcahy.

## CONCLUSION

For the aforementioned reasons, Defendant ATG respectfully requests the Court enter an order denying Pashman Stein's Application for attorney fees and costs associated with representing the Plaintiffs.

Respectfully submitted,

JASINSKI, P.C.

By: s/ David F. Jasinski
      DAVID F. JASINSKI, ESQ.

Dated: October 28, 2022

32