Michael S. Stein, Esq. (MS-3248)
J. John Kim, Esq. (JK-1979)
**PASHMAN STEIN WALDER HAYDEN, P.C.**
Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601
(201) 488-8200
*Attorneys for Defendants Sophia C.*
*Galleher and Matthew Kim*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAXLITE, INC., a New Jersey Corporation, f/k/a SK AMERICA, INC., d/b/a MAXLITE, <br><br>         Plaintiff, <br><br> v. <br><br> ATG ELECTRONICS, INC., JAMES D. STEEDLY, SOPHIA C. GALLEHER and MATTHEW KIM, <br><br>         Defendants. | Civil Action No.  2:15-CV-01116-SDW-SCM |

---

## EMPLOYEE-DEFENDANTS' REPLY FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

    LEGAL ARGUMENT........................................................................................................ 7

I.    ATG Misconstrues the Analysis Under Grand Jury and its Applicability to Pashman Stein ................................................................................................................................ 7

II.   ATG's Attorney-Client Relationship with Mulcahy Does Not Foreclose Relief Under *Grand Jury* ....................................................................................................................... 13

III.  ATG Cannot Escape the Overwhelming Record Evidence That it Undertook a Third-Party Payer Obligation on Behalf of the Employee Defendants ................................................. 17

IV.  Nothing in ATG's Post-Trial Brief Absolves or Mitigates It's Bad Faith Conduct and the Court Should Use its Inherent Authority to Sanction ATG............................................. 26

    CONCLUSION................................................................................................................... 27

i

## INTRODUCTION

ATG's Post-Hearing brief makes clear that its years' long delay and vehement opposition to an expedited proceeding under the guise of "fact questions" has been a farse. This has never been about the facts. If it were, ATG would have dedicated at least some portion of its submission to arguing facts and reconciling the factual record.

It would have attempted to put some context to the numerous damning emails from Nick Ni, such as assuring the Employee Defendants that "the lawsuit was nothing" and that ATG "will fight it" and telling them that he and James Mulcahy "will work together on the legal bills as they come" or telling Mr. Mulcahy that he would "find ways to cover the [Employee Defendants] in the coming months." ATG would have tried to explain why its payment of more than $90,000 to the Mulcahy Firm over five-plus months – for invoices addressed solely to ATG and not to the Employee Defendants – should not be construed as a third-party payer arrangement. It would have tried to explain why the testimony of every witness besides the self-serving assertions of Nick Ni – all of whom unequivocally confirmed ATG's commitment to pay the Employee Defendants' legal fees – should be disregarded. And it would have at least sought to reconcile the glaring inconsistencies in Ni's testimony and the many different positions that ATG has

1

taken throughout this litigation with respect to its promise of funding and the reason for the Employees' termination. ATG did none of those things.

To put a finer point on ATG's gamesmanship, when ATG opposed summary judgment in 2018, it argued that numerous issues of fact precluded this Court from deciding this matter by way of an expedited hearing, including "issues of fact relating to employee defendants' credibility" and "issue of intent between the parties and the considerable dispute over the specific arrangement between the parties."

It relied in full on a newly sworn declaration from Mr. Ni which, for the first time, raised these fact issues upon which this Court relied in denying Summary Judgment. As we now know, that declaration was submitted soon after an arbitrator in the Mulcahy/ ATG fee arbitration had rejected the very fact allegations contained in the declaration and more, had sanctioned Mr. Ni and his counsel for advancing those allegations notwithstanding the overwhelming evidence proving them to be false.  And so perhaps it is unsurprising that after a fulsome four-day hearing – the hearing required to enable this Court to assess the validity of the facts asserted by Mr. Ni in his declaration designed to defeat summary judgment – ATG has decided not to argue about those issues of credibility and intent that has delayed this case for years. The word "credibility" does not even appear in ATG's submission, presumably because it has no basis to

discredit the consistent testimony of Employee Defendants Sophie Galleher and Matthew Kim, as well as the attorney who represented the parties, James Mulcahy, Esq., regarding ATG's obligation to pay legal fees, which contradicts the testimony of Nick Ni, who Judge Brisco has already found to lack credibility. The only discussion of intent stems from the self-serving testimony of Mr. Ni, whose version of events Judge Brisco also rejected and whose testimony is, once again, called into doubt by all of the other witnesses.

Backed into a corner on the facts – as the overwhelming evidence establishes that ATG undertook a third-party payer obligation – ATG now switches gears and wholly focuses its opposition to arguing why it should prevail as a matter of law, an argument that could have and should have been raised and adjudicated years ago on summary judgment. Citing facts that have never been in dispute concerning Pashman Stein's retainer, scope of services, and billing practices and procedures, ATG's argument boils down to the following *legal* argument – *a legal argument that neither relies on nor required the recently completed plenary hearing*: Although ATG committed to paying the Mulcahy firm and notwithstanding that it was ATG's action in terminating the Employee Defendants that created the conflict requiring Mr. Mulcahy to withdraw as counsel, Pashman Stein's alleged technical noncompliance with the six *Grand Jury* factors deprives

the Employee Defendants of the protections afforded by the New Jersey Supreme Court to clients with third party payer arrangements.

If, according to ATG, the Employee Defendants are not entitled to relief because there was no express third-party payer arrangement between Pashman Stein and ATG, it begs the question of why we have wasted the last seven years litigating this case. That ATG never executed a retainer agreement with Pashman Stein or received monthly invoices from Pashman Stein are facts that have never been in dispute. If those facts foreclosed enforcement of ATG's payment obligation, why could that issue not have been decided on summary judgment and what was the point of this trial?

All these years spent in litigation apparently have been for naught, as ATG's case hinges upon the obvious and undisputed fact that Pashman Stein did not obtain ATG's consent to continue its payment obligation after ATG fired the employees, cut off funding, caused Mulcahy to withdraw, and retained its own attorney. The absurdity of ATG's argument is boundless. How could litigants ever enforce the protections afforded by the New Jersey Supreme Court in *Grand Jury* of ensuring that a third-party payer does not unilaterally cease funding without leave of court if, as an exception to that rule, the third-party payer is permitted to unilaterally stop funding counsel of record if it does not agree to fund successor

4

counsel? The exception would not just swallow the rule but the mere articulation of it underscores its obvious baselessness.

The evidence at trial made crystal clear that ATG's firing of the Employee Defendants had nothing to do with their productivity and everything to do with obtaining a strategic advantage in the MaxLite litigation. ATG does not even attempt to argue otherwise in its post-trial brief. Simply put, when ATG determined that its interests and those of the Employee Defendants were no longer aligned, it terminated them and left them defenseless in the middle of a federal court dispute against an adversary with the financial wherewithal to drive them into bankruptcy. They could not defend themselves. They could not afford to hire counsel to defend them. They could not afford to hire counsel to enforce ATG's commitment to pay. And they could not afford a settlement payout to MaxLite. They were trapped with no real options other than proceeding *pro se* or permitting default judgments to be entered against them. And according to ATG, Pashman Stein could only seek to enforce the Employee Defendants' rights – an engagement that, as it turned out, took 7 plus years – if it first obtained ATG's consent to fund Pashman Stein's efforts to enforce those rights. The sheer absurdity of that argument cannot be overstated, and it is as meritless as ATG's alternative argument that Mr. Mulcahy's joint representation of ATG and the Employee

Defendants cannot ethically create a third-party payer relationship, thereby relieving ATG of any further payment obligation.

Once again, ATG's argument is a legal one. Ignoring the overwhelming *factual* evidence of its commitment to pay legal fees, ATG argues that there can be no third-party payer arrangement as a matter of law because ATG was a client of the Mulcahy Firm and with whom Mr. Mulcahy shared privileged information, thereby defeating two of the *Grand Jury* conditions. In response to that same argument ATG made on summary judgment, this Court observed that "ATG and the Employee Defendants expressly agreed to joint representation and also agreed that they had a common interest" and that "joint representation, joint defense agreements, and common interest agreements are permitted so long as the representation complies with the relevant law and ethical requirements." ATG and the Employee Defendants indisputably had a common interest in Mulcahy's joint representation, waived all conflicts, and entered into a joint defense agreement as permitted by law. Nothing about the arrangement was improper and ATG's grasping at straws to defeat *Grand Jury*'s protections should be rejected.

ATG has wasted the last 7 years trying to concoct fact issues that do not actually exist. ATG strategically evaded summary judgment by submitting a certification from Mr. Ni to create disputed issues based on facts that Judge Brisco had rejected just a month earlier, and failed to inform the Court and the parties of

his findings, only to now, years later, resort to legal arguments that could have been determined at the summary judgment stage. ATG's tactics smacks of bad faith, as Judge Brisco has already found and, separate from the remedy under *Grand Jury*, ATG should be sanctioned for unnecessarily protracting this litigation for years.

## LEGAL ARGUMENT

### I.   ATG Misconstrues the Analysis Under Grand Jury and its Applicability to Pashman Stein

Evaluating the arguments in ATG's Post-Trial brief against those of the Employee Defendants' is like comparing apples and bowling balls, with the principal question in this legal debacle being – to *whom* does the *Grand Jury* analysis apply? ATG purports to conduct the analysis by applying each of the six *Grand Jury* conditions to Pashman Stein and concludes that because those formalities were not followed that ATG is not a third-party payer whose obligation can be enforced. That position is contrary to law, defies logic, and has already been, at least preliminarily, rejected by this Court.

As explained at length in the Employee Defendants' Post-Trial brief, the Court in *Grand Jury* made clear that a third-party payer arrangement does **not** depend upon the payer's choice of counsel. 200 N.J. at 495-96. It ultimately is the client's choice to select his or her attorney and a payer cannot interfere with or seek to regulate that decision. *See id.* ATG misunderstands that important concept

when it argues that "here there is no informed consent, as ATG had not picked Pashman Stein to represent Plaintiffs," unlike *Grand Jury,* where "**the employer had chosen [counsel] for them [the employees]**." (ATG Post-Trial Brief at 22) (emphasis in original).

But in *Grand Jury,* the employer's choice of counsel actually weighed against the propriety of the third-party payer arrangement. In fact, the Court criticized the arrangement in *Grand Jury* because the Employer only agreed to pay for a designated attorney and otherwise informed its employees that should they select a different attorney, it would be at their own cost. The Court held that such a "'take-it-or-leave-it' approach" is inconsistent with the requirement of informed consent and only permitted the representation to go forward because the employees signed certifications attesting to their satisfaction with the chosen counsel. *See* 200 N.J. at 497. The Court warned, however, that "in the future, **no such limitations on the choice of counsel should be communicated or imposed on the employee**/client save for reasonable limitations on fees and expenses." *Id.* (emphasis added).

Contrary to ATG's argument, that ATG did not specifically select or agree to Pashman Stein is irrelevant. Under *Grand Jury,* the funding commitment applies irrespective of a client's choice of counsel if the commitment was made in the first instance. If this Court finds that ATG agreed to pay the Employee Defendants legal

fees – be it to the Mulcahy firm or anyone else – the Employee Defendants' change of counsel does **not** extinguish ATG's obligation, particularly where it was ATG's actions that prompted Mulcahy's withdrawal. ATG can only be relieved of its obligation with leave of Court, upon showing good cause, why its funding commitment should cease. *See Grand Jury*, 200 N.J. at 496-97.

ATG's argument defies logic and renders the Supreme Court's protections a nullity. How can litigants enforce the protections afforded by the Court's *Grand Jury* decision in a situation like this, where there was reliance on a commitment by a third-party payer to pay, and then a subsequent breach, which triggered a conflict requiring counsel of record to withdraw? The answer, according to ATG, is that those protections cannot be enforced unless ATG expressly consents to fund new counsel after unilaterally and unjustifiably causing the dismissal of the prior counsel. In other words, rather than seek leave of Court, as mandated by *Grand Jury,* all a third-party payer has to do to be relieved of its payment obligation, according to ATG, is deliberately create a situation that causes the termination of the attorney that it agreed to pay. The argument is absurd on its face and wholly eviscerates the safeguards imposed by the Supreme Court.

Indeed, Judge Clark recognized the irrationality of that contention. As Judge Clark noted, ATG's actions created the situation that caused Mr. Mulcahy to withdraw from representing the Employee Defendants:

ATG hired the Employee Defendants and agreed to indemnify them when it appeared that the benefits of doing so would outweigh the possible legal exposure, and when that calculation proved to be incorrect and ATG's alignment with the Employee Defendants no longer benefitted ATG, ATG fired the Employee Defendants and discontinued payment of the legal costs for which it had assured the Employee Defendants it would accountable. In doing so, **ATG created the irreconcilable conflict between itself and the Employee Defendants envisioned by the court in *Grand Jury***, requiring the withdrawal of Mr. Mulcahy from this matter and **leaving the Employee Defendants without the protection promised by ATG**.

(R&R at 27) (emphasis added). In such a circumstance, Judge Clark explained, a litigant should not have to accept the conflicted counsel and if there is a determination that a funding commitment existed, then the payer must reimburse the client for the new non-conflicted counsel:

ATG further argues that because it retained Mr. Mulcahy and never entered into any kind of arrangement with Pashman Stein, it cannot be responsible for any fees incurred by Pashman Stein in this matter. *See* ATG Supp. Br. at p. 3-4. Although the Court makes no finding regarding ATG's liability for Pashman Stein's fees or the reasonableness of the incurred fees asserted by Pashman Stein, the Court notes that **ATG's termination of the Employee Defendants created an irreconcilable conflict barring Mr. Mulcahy's continued representation of ATG and the Employee Defendants**. *See In re Garber,* 95 N.J. 597, 607, 472 A.2d 566 (1984) ("It is patently unethical for a lawyer in a legal proceeding to represent an individual whose interests are adverse to another party whom the lawyer represents in other matters, even if the two representations are not related.") (citations omitted)). **In such a circumstance, when a third-party payer bears the responsibility for the payment of a litigant's legal costs and offers to retain counsel who may have a conflict by virtue of that counsel's relationship with the third-party payer, the litigant is not required to accept the conflicted counsel and may instead "seek their own counsel when [the third-party payer] . . . fail[s] to offer any acceptable representation, and [the third-party**

10

> **payer] is required to reimburse [the litigant] for reasonable attorneys' fees**." *Kramer*, 371 N.J. Super. at 605.

(R&R at 27-28, fn.11) (emphasis added).

This Court also previously rejected ATG's attempt to apply the *Grand Jury* conditions to Pashman Stein, as opposed to analyzing the conditions as to ATG's relationship with the Mulcahy Firm. In its opposition to the Employee Defendants' Motion for Summary Judgment, ATG argued it "never promised orally or in writing to pay for Pashman Stein's representation of Employee Defendants;" that "[w]ithout seeking ATG's consent, Employee Defendants hired Pashman Stein" and seek fees "even though ATG never agreed to fund that representation" and stated that "Pashman Stein [] failed to produce evidence establishing its clients agreed to a third-party payer relationship, and that Pashman Stein communicated adequate information and explanation about the material risks of and reasonable alternatives to the proposed course of conduct." (ATG SJ Opp., Docket # 214, Filed 07/03/18, at 10, 16)

In ruling on the Summary Judgment motion, this Court did not entertain ATG's arguments concerning the application of the *Grand Jury* conditions to Pashman Stein. Instead, the Court focused solely on the application of *Grand Jury* to a funding arrangement that ATG had with the Mulcahy Firm, and described the facts that it deemed to be in dispute regarding whether ATG made a commitment to pay legal fees, which took place months ***before*** Pashman Stein came into the

picture. (*See* SJ Opinion at p. 7-8 (discussing, among other things, ATG's payment of Mulcahy's invoices and various correspondence confirming future payments to Mulcahy as evidence that a funding commitment existed)).

In fact, this Court all but rejected the argument that ATG purports to now make – that *Grand Jury* requires ATG to have explicitly consented to Pashman Stein's retention after it caused the withdrawal of Mr. Mulcahy:

> it is not clear to the Court that *In re Grand Jury* would permit ATG to cease paying legal fees because ATG fired Employee Defendants… if ATG is correct (that it could stop payment of legal fees because it fired the Employee Defendants), it would apparently create an unworkable loophole to the basic requirement of In re Grand Jury: third-party payers cannot stop paying legal fees without leave of the court.

(SJ Opinion at 8). Significantly, the Court noted that the admission by ATG's prior counsel that "ATG's gratuitous payment [to Mulcahy] was always connected with the [Employee] Defendants' continued employment with ATG" is practically akin to an "admi[ssion] that ATG had undertaken the commitment to pay Employee Defendants' legal fees." *Id.*

ATG's attempt to apply the *Grand Jury* conditions to Pashman Stein illustrates a fundamental misunderstanding of the law. To the extent that those conditions are analyzed at all,[1] other than the Sixth condition concerning ATG's

---

[1]     As explained at length in the Employee Defendants Post-Trial brief, the other *Grand Jury* factors focus on the conduct of the attorney and the ethical propriety *for the attorney* in undertaking a third-party payer arrangement; only the

commitment to undertake funding, they should be analyzed with respect to the Mulcahy Firm. And if the Court determines that a funding commitment was created with Mulcahy – as the Employee Defendants submit it should, in light of the overwhelming record evidence (*see* ED Post-Trial Brief at 7-64) – the obligation is not extinguished by the Employee Defendants' change of counsel to Pashman Stein – a decision that single-handedly was the result of ATG's bad-faith tactics.

## II.   ATG's Attorney-Client Relationship with Mulcahy Does Not Foreclose Relief Under *Grand Jury*

ATG argues that its own attorney-client relationship with Mulcahy, and consequently, the sharing of legal strategies and information, violates two of the six *Grand Jury* conditions and, therefore, precludes a finding that ATG was a third-party payer of the Employee Defendants' legal fees. (ATG Post-Trial Brief at 27-30). ATG is wrong. As this Court has previously recognized in its Summary Judgment decision, the lack of strict adherence to *Grand Jury* conditions is not necessarily dispositive because "ATG and the Employee Defendants expressly agreed to joint representation and also agreed that they had a common interest" and noted that "joint defense agreements, and common interest agreements are

---

sixth factor expressly applies to third-party payers such as ATG. (*See* ED Post-Trial Brief at 72-76).

permitted so long as the representation complies with the relevant law and ethical requirements." (SJ Opinion at 7, fn. 5).

This point is explained at length in the Employee Defendants' Post-Trial Brief at pages 79-85. The Court's imposition of the requirement that the attorney and third-party payer not have an attorney-client relationship stems from the prohibition in the RPCs against current conflicts of interest. *See Grand Jury,* 200 N.J. at 496. ATG recognizes that rationale and, in fact, cites the same case referred to by the *Grand Jury* Court that it is "patently unethical for a lawyer in a legal proceeding to represent an individual whose interests are adverse to another party." *In re Garber,* 95 N.J. 597, 607 (1984); ATG Brief at 27 (citing *Garber, supra*). What ATG glosses over is that at the time of Mulcahy's retention, there were no conflicts between ATG and the Employee Defendants, and their interests with respect to the MaxLite litigation were 100% aligned. (*See* Mulcahy Testimony, 8/29/2022 Trial Tr. at 251:20-252:6 ("there was no conflict here because everybody's interest is aligned … none of them were going to be testifying in a way that would adversely affect the other because they all had the same unified defense")).[2] To be sure, any potential conflicts that might have arisen in the future

_____

[2]     When Mulcahy's retention hit a turning point wherein a conflict did arise – due to ATG's termination of the Employee Defendants – Mulcahy immediately advised ATG that he could no longer represent them and subsequently withdrew from the case. (Mulcahy Testimony 8/29/2022 Trial Tr. at 212:9-16).

were expressly waived by all parties at the time of Mulcahy's retention. (ED Exh. 38 (Mulcahy Firm Retainer Agreement and Conflict Waiver)). The Supreme Court's concern in imposing the condition that there be no attorney-client relationship between the attorney and payer is, therefore, not implicated.

Nor is the condition regarding the sharing of information implicated in a situation where, as here, all parties to the representation executed a joint defense agreement. As this Court noted, joint defense and common interest agreements are permissible and as explained in our Post-Trial brief, such agreements are common and acceptable and allow for the disclosure and sharing of otherwise privileged materials to further a common interest. (*See* ED Post-Trial Brief at 83-84 (citing *O'Boyle v. Borough of Longport*, 218 N.J. 168, 197, 199 (2014)).

Notably, Judge Clark rejected the contention that ATG now purports to make when he determined that, irrespective of ATG's own attorney-client relationship with the Mulcahy Firm, ATG could be held liable as a third-party payer under *Grand Jury*:

> The decision of the New Jersey Supreme Court in *Grand Jury* clearly reaches beyond an attorney's professional conduct **to govern the conduct of third-party payers** and creates a remedy to **be asserted against a third-party party, such as ATG,** for deviation from that prescribed conduct. Accordingly, the Court finds that **ATG, as a third-party payer**, is subject to the requirements of *Grand Jury*.

(R&R at 24) (emphasis added). Judge Clark's recommendations, and specifically his analysis and application of *Grand Jury* was adopted wholesale by this Court. (May

15

14, 2018 Opinion, Docket # 189, at 6) (this Court holding that it "finds no issues with Judge Clark's analysis of *Grand Jury* and its application to the facts of this case.") There are no ethical issues in the creation of a third-party payer relationship between ATG and Mulcahy here so as to foreclose the Employee Defendants from utilizing *Grand Jury*'s protections.

*     *     *

Whether ATG had to expressly consent to pay Pashman Stein or whether Mr. Mulcahy's attorney-client relationship with ATG precludes recovery under *Grand jury* are *legal* arguments premised upon *undisputed facts* that could have been resolved years ago. Those legal issues did not require a hearing. That ATG and Mulcahy had an attorney-client relationship was never contested, nor was there ever a dispute that Pashman Stein's retainer did not expressly include ATG and invoices were never sent by Pashman Stein to ATG.

The purpose of the hearing was to ascertain the *factual* question underlying the *Grand Jury* analysis – did ATG make a commitment to pay the Employee Defendants' legal fees? Indeed, that was the sole disputed issue cited by the Court in denying Summary Judgment. (*See* SJ Opinion at 8 (finding a material factual issues "as to whether ATG committed to pay the legal fees for Employee Defendants in this matter")). But despite ATG's insistence that numerous fact and credibility issues precluded summary judgment, resulting in years-long delay of

this case, ATG's Post-Trial brief fails to analyze facts and credibility, as explained more fully below.

### III. ATG Cannot Escape the Overwhelming Record Evidence That it Undertook a Third-Party Payer Obligation on Behalf of the Employee Defendants

Only two and a half pages of ATG's submission is dedicated to discussing the actual issue before the Court – whether ATG committed to paying the Employee Defendants' legal fees. (*See* ATG Post-Trial Brief at 25-26; 30). In its endeavor to show that no such commitment was made, ATG relies almost exclusively on Ni's self-serving testimony. However, there are serious issues with Nick Ni's credibility. Throughout this litigation, Ni repeatedly has changed his story or has taken contradictory/ irreconcilable positions. For example, Ni claims on one hand that ATG "never committed to pay legal bill[s] for the employees" (Ni Testimony 9/27/2022 Trial Tr. 456:17-18), yet on the other, admitted during cross-examination that ATG was going to pay the Employee Defendants' legal fees as long as they were "productive."[3] (*Id.* at 461:1-10; *Id.* at 465:22-466:2). Ni took the

---

[3]     Its Opposition to the Employee Defendants' Order to Show Cause, ATG argued that its "**payment was always connected with the [Employee] Defendants' continued employment with ATG**" and because the Employee Defendants are no longer employed by ATG, "**the condition of payment is no longer satisfied**." (ATG OTSC Opp'n Brief at 20) (emphasis added). When Judge Clark, and later Your Honor, rejected that argument, noting that conditioning payment upon employment exemplifies the very circumstance that *Grand Jury* sought to avoid (R&R at 26; SJ Decision at 8), ATG changed course and took the position that there was no commitment whatsoever.

same position during the arbitration against Mulcahy, with the arbitrator finding: "Even Mr. Ni himself testified that he was going to pay the legal fees as long as the Employees were productive. (Testimony of Mr. Ni.)" (Exh. 33 at 7 (Arb. Award); *see also* Mulcahy Testimony 8/29/2022 Trial Tr. at 180:9-23 (confirming the accuracy of Ni's testimony)).

Ni's proffered reasons for terminating the Employee Defendants are also inconsistent and illustrate an utter lack of trustworthiness. Ni submitted a certification in opposition to the Employee Defendants' Motion for Summary Judgment wherein he certified under oath that "ATG terminated the Employee Defendants, because their performance had been a disappointment. **ATG did not terminate them to gain a tactical advantage in the lawsuit**, but because ATG was unhappy with their performance." (Ni Cert., Docket # 214-2 Filed 07/03/18, at ¶ 53 (emphasis added)). Yet Ni conceded on cross-examination that the real reason he fired the Employee Defendants was to "**help settle the lawsuit**" and to "**relieve some financial pressure**." (Ni Testimony 9/27/2022 Trial Tr. at 469:25-471:10 (emphasis added)).[4] The productivity excuse was an obvious sham, as ATG failed to produce a single piece of documentary evidence to support its already

---

[4]     Notably, this Court relied upon Ni's representations in his certification about the reasons for the Employee Defendants' termination as "hotly dispute[d]" issues of fact. (SJ Opinion at 8 ("The parties hotly dispute why ATG fired the Employee Defendants. Employee Defendants argue that it was because of the costs of the current suit, while ATG claims it was for unsatisfactory performance.")).

inconceivable position that all three employees were performing so poorly that they all had to be fired (*see also* ED Post-Trial Brief at 59-60) and the termination took place just one day after Ni theorized to Mulcahy, "[w]hat if I fired the individuals? If they're no longer employed by me, then maybe I wouldn't have to pay their fees anymore and they would be on their own." (Mulcahy Testimony 8/29/2022 Trial Tr. at 211:23-212:4).

It is telling that ATG's Post-Trial Brief makes no mention of the Employee Defendants being terminated for performance reasons and instead states that "ATG terminated the Plaintiffs' employment in June 2015 based on the demands of MaxLite." (ATG Post-Trial Brief at 8). Unsurprisingly, faced with the same evidence, Judge Brisco found Ni to lack credibility and held that ATG's concocted performance excuse as the basis for termination to be a "ruse." (ED Ex. 33 at 14, 20).[5]

---

[5]     ATG's argument regarding the preclusiveness of Judge Brisco's decision stemming from the Mulcahy-ATG arbitration misses the mark. The decision in *Vanderberg v. The Superior Court of Sacramento County*, 21 Cal. 4th (815 (1999) upon which ATG relies regarding the nonmutual collateral estoppel effect of arbitration decisions does **not** apply to claims made under the doctrine of *res judicata*. The California Supreme Court in *Vanderberg* made clear that its decision was limited only to collateral estoppel claims:

> Our holding is narrowly circumscribed. **Nothing in our decision imposes or implies any limitations on the strict res judicata, or "claim preclusive," effect of a California law private arbitration award**. *See, e.g.*, *Thibodeau v. Crum* (1992) 4 Cal.App.4th 749, 756-761 (6 Cal.Rptr.2d 27) (unconfirmed award in private arbitration

The ***only*** other so-called evidence that ATG cites in support of its position that it made no commitment to be a third-party payer are two cherry-picked snippets of the Employee Defendants' testimony that do not help ATG's cause.

The first is an out of context statement from Matthew Kim that Ni never "specifically said '[w]e will fund forever,' but I believe the implication was there" (Kim Testimony 8/30/2022 Trial Tr. at 395:9-10). ATG claims that an "implication" to fund is not equivalent to a "commitment." (ATG Post-Trial Brief at 25). Kim's statement, however, was immediately preceded by him stating that Ni conveyed to him "[v]erbally and in direct statements throughout that six-month period" that ATG would pay for the Employee Defendants' legal fees by making statements such "Don't worry about it, we'll take care of it, *et cetera*." (Kim Testimony 9/27/2022 Trial Tr. at 395:3-10).

---

between homeowner and general contractor is *res judicata* barring homeowner's identical claim against subcontractor); Sartor v. Superior Court (1982) 136 Cal.App.3d 322, 327-328 (187 Cal.Rptr. 247) (confirmed private arbitration award in favor of architectural firm is *res judicata* barring homeowner's identical causes of action against firm's employees).

*Vandenberg*, 21 Cal. 4th at 825 (emphasis added). As explained at length in the Employee Defendants' Post-Trial Brief, claim preclusion (as opposed to issue preclusion) governs this dispute and Judge Brisco's factual findings should be given preclusive effect under the doctrine of *res judicata*. (ED Post-Trial Brief at 104-121). The court's decision in *Vanderberg* does nothing to undermine that conclusion.

Moreover, Mr. Kim testified that he raised concerned with Ni about the MaxLite noncompete provisions when he first interviewed (*id*. at 320:17-18; 321:25-4), and in fact sent him a copy of the MaxLite contract (*id*. at 323:1-25; ED Exh. 8), Ni told him he had attorneys review the contract and there was nothing to worry about (*id.* at 322:15-25) and promised that if MaxLite took legal action that "he would take care of it and that ATG would be paying for all of it." (*Id.* at 326:12-17). Mr. Kim testified that he would not have left his job at MaxLite without Ni's promise that ATG would protect him and pay his legal fees if MaxLite sued. (*Id.* at 328:3-9). Mr. Kim further confirmed that ATG paid all of the legal fees for months (*id*. at 338:18-25), never raised any issue about trouble making payments (*id*. at 343:6-21) and never sought reimbursement or contribution for legal fees (*id*. at 338:18-25). Far from being an "implication," Mr. Kim's testimony at trial makes clear that ATG unquestionably committed to, and did, pay the Employee Defendants' legal fees.

The second piece of evidence cited by ATG that it claims establishes there was no commitment was Sophie Galleher's unsent email to Ni after she was fired referring to "put[ting] into writing" something "a little more formal" regarding Ni's commitment to pay the legal fees. (ATG Post-Brief at 26; ED Exh. 84). The document ATG quotes, however, is a draft "brain dump" of thoughts Ms. Galleher

put together – never sent to Mr. Ni[6] –  and the comment about formalizing a writing was made because Ms. Galleher "recognize[d] that Nick [Ni] had done a 180 on many of his promises" and "while he had memorialized throughout the litigation these promises" she thought it would be better to have "something a little more formal… than these constant memorializations and promises and these verbal written promises." (Galleher Testimony 8/29/2022 Trial Tr. at 299:6-14; Exh. 84).

ATG fails to mention that Ms. Galleher's unsent draft letter specifically references Ni's commitment to fund legal fees:

> **At the same time, both you and ATG have made many promises to us, both verbal and written, many of which have not been fulfilled. . . . Regarding the lawsuit, since the beginning you repeatedly stated that this lawsuit is no[] big deal, and ATG would cover it. Although we could not have anticipated it escalating to this point, those promises were still made.**

---

[6]     Ni's testimony was that he did not recall if he ever received this correspondence from Galleher or not:

> A.     She did send me e-mails, something like this. I'm not exactly sure whether it's the same copy or not. . . .
>
> Q.     Sir, you remember receiving any e-mail from Sophie Galleher? You don't remember exactly if it was this e-mail; correct?
>
> A.     I'm not sure if this same copy. The first part of this looks similar. . . .

(Ni Testimony 9/27/2022 Trial Tr. at 487:14-487:23).

Notably, Exhibit 84 is an unsent draft WORD document produced from Ms. Galleher's computer. (Galleher Testimony 8/8/2022 Trial Tr. at 142:1-6). ATG, nor any other party, has ever produced any version of Exhibit 84 in the form of a sent email.  (Ni Testimony 9/27/2022 Trial Tr. at 488:22-491:3). Ni ultimately admitted, "I don't remember seeing this."  (*Id*. at 490:24-491:3).

(Exh. 84 (emphasis added)).

Far from establishing that there was no commitment, both this comment and the remainder of Ms. Galleher's testimony made crystal clear that Ni repeatedly assured her that ATG would take care of all legal fees from her first meeting with Ni until the moment he fired her:

- Upon receipt of the MaxLite cease and desist letters, Ni stated "ATG will take care of everything.  Just focus on work and ATG will handle the lawsuit." (Galleher Testimony 8/8/2022 Trial Tr. 55:11-14).

- Ni told Galleher "don't worry. This isn't an issue. ATG will take care of this…ATG will cover the bills, we'll cover all the legal costs." (*Id.* at 64:20-65:6).

- "I was under the impression that Nick was paying.  That's what Nick had conveyed to me." (*Id.* at 73:4-12).

- Ni assured her "ATG had a lot of funding from investors" and expressed, "yeah, it's a little bit bigger but don't worry, it's not an issue, we'll take care of it. You guys are doing an excellent job, we continue to support you." (*Id.* at 98:1-18).

- Even when Ni stated that the lawsuit was becoming "a substantial investment on ATG's part," he assured Galleher that "ATG has money, don't worry about it" (*id.* at 105:23-106:1), that he secured funding for "$20 million from investors" and that ATG was committed to "fight it, we'll move ahead with this lawsuit." (*Id.* at 106:2-7).

Indeed, Galleher stated she likely would "not have continued to stay with ATG past the cease and desist letter without [Ni's] promise.  (*Id.* at 55:15-22).

23

Among the key pieces of evidence in this trial – and one that ATG strategically avoids mentioning altogether – is the testimony of James Mulcahy, the only indisputably disinterested witness. Mr. Mulcahy has been fully paid for his legal services and stands to gain nothing from the outcome of this lawsuit. Mr. Mulcahy testified that it was always his understanding that ATG was responsible for his legal fees:

- **"[M]y understanding has always been that ATG had agreed that it 'would be subsidizing the legal fees and costs of this litigation for itself and the Individual [Employee] Defendants.'"** (Mulcahy Testimony 8/29/2022 Trial Tr. at 233:24-234:11 (emphasis added)).

- **"Mr. Ni made very clear to me that he was going to pay the legal fees for the employees…He simply said: I hired these people, I knew there was a potential for a problem, and I'm going to cover their fees."** (*Id.* at 182:4-14 (emphasis added)).

- **"[T]here were e-mails confirming the fact that Ni was going to be responsible for all of the litigation expenses, including my fees."** (*Id.* at 192:14-194:11 (emphasis added)).

- Describing Ni telling him **"I'm gonna get caught up with your bills and I will be paying all of the bills because I am the one who is responsible for the costs**." (*Id.* at 192:14-194:11 (emphasis added)).

To be sure, when Mulcahy initiated arbitration against ATG for failure to pay his legal fees, he did not seek payment from the Employee Defendants because, according to Mulcahy, "they were not obligated to pay me, in my view." (Mulcahy Testimony 8/29/2022 Trial Tr. 165:12-17).

The testimony of all of the above witnesses, in addition of the documentary evidence introduced at trial and detailed at length in the Employee Defendants' Post-Trial Brief, unequivocally establish that ATG committed to paying the Employee Defendants' legal fees.[7] As Judge Clark previously noted (and this Court adopted), "*Grand Jury* neither states that the existence of a formal written contract

---

[7]     ATG's argument that any agreement to pay Mulcahy's fees specifically has to be "unconditional" lacks merit. There is no requirement in *Grand Jury* that a third-party's funding obligation be expressed in unconditional terms in order to be enforceable.  ATG's reliance on *Levine, Staller, Sklar, Chan, Brown & Donnelly, P.A. v. City of Atl. City*, 2014 WL 8630664 (App. Div. Apr. 21, 2015) for that proposition has been tried before, and is unavailing. Unlike here, in *Levine*, the plaintiff law firm sued for breach of contract; it did not make a *Grand Jury* application, but merely attempted to use *Grand Jury* in support of its request for payment of legal fees under a contract claim. In denying relief the Court stated that "unlike the private agreements that formed the basis for the Court's decision in [*Grand Jury*]," which did not include any preconditions for the payment of attorneys' fees under those agreements, the law firm's "entitlement to payment was arguably conditioned upon compliance with multiple laws and procedures, none of which were satisfied." *Id.* at *20. The court's decision in *Levine* does not stand for the proposition that *Grand Jury* explicitly requires an unconditional promise of payment; only that in *Levine,* there were explicit conditions to the law firm's entitlement of payment that did not exist in *Grand Jury* and were not fulfilled. Judge Clark recognized the distinction in his Report and Recommendation. (R&R at 25.)

     ATG's reliance on the purported lack of an "unconditional promise" is at-odds with its own position during the pendency of this litigation that its funding commitment was tied to the Employee Defendants' productivity and continued employment with ATG. It is only after this Court rejected ATG's conditional payment obligation argument that it did a 180 and claimed that it undertook no obligation whatsoever.

is a prerequisite to obtain the relief provided for therein nor makes any mention of requirements which must be met for the formation of an enforceable agreement between a litigant and a third-party payer in this context." (R&R at 24). Instead, "the [C]ourt refers to the agreement between the litigant and the third-party payer as an 'obligation' or a 'commitment.'" (R&R at 24 (citing *Grand Jury*, 200 N.J. at 496, 498)). The overwhelming evidence makes clear that ATG undertook such an obligation or commitment and, pursuant to *Grand Jury*, could not unilaterally terminate that commitment without leave of Court. ATG's actions here are the epitome of the situation that *Grand Jury* was designed to protect against.

IV.    **Nothing in ATG's Post-Trial Brief Absolves or Mitigates It's Bad Faith Conduct and the Court Should Use its Inherent Authority to Sanction ATG**

ATG in its Post-Trial Brief does not even attempt to explain or address its failure to disclose to this Court, the parties, and presumably its own New Jersey counsel, the existence of an arbitration decision that weighed the same evidence and ruled on the same issues that are before the Court. ATG further does not explain or address the deceptive lies contained in the Ni Certification submitted in Opposition to the Employee Defendants' Summary Judgment motion (the discrepancies in which Ni could not explain at trial), which manufactured "issues of fact in dispute" concerning the reasons for terminating the Employee Defendants. Those manufactured reasons formed the basis for this Court to deny

summary judgment and hold this trial, created months of delay, wasted the Courts and parties' time, and resulted in the expenditure of significantly more attorneys' fees.

What's more, abandoning any supposed "issues of fact" at issue in the trial, the entirety of ATG's Post-Trial Brief was essentially dedicated to making legal arguments about whether or not ATG is subject to *In re Grand Jury* as a threshold matter, measured under the undisputed fact that it did not select and authorize Pashman Stein to represent the employees that it fired. Those undisputed facts about Pashman Stein were not what the trial was about – ATG has made those same arguments of law for years, and they have been repeatedly rejected. The only reason we had to have this trial was because of supposed contested issues of fact raised by ATG.

The testimony of Ni and ATG's Post-Trial Brief has revealed that those supposed contested issues of fact were a farce.  Along with ATG's attempt to hide the Mulcahy Firm – ATG Arbitration decision, ATG's conduct constitutes bad faith and, as detailed in the Employee Defendants' Post-Trial Brief at 121-126, this Court should issue sanctions accordingly.

## **CONCLUSION**

For the reasons set forth above, as well as in the Employee Defendants' Post-Trial Brief, the Employee Defendants respectfully request that this Court find

that ATG undertook an obligation to fund the MaxLite litigation on behalf of the

Employee Defendants, and as a third-party payer of legal fees was required by

Grand Jury to seek leave of Court to terminate its obligation. Because it has failed

to do so, the Employee Defendants are entitled to all reasonable legal fees incurred

in the MaxLite litigation.

                          **PASHMAN STEIN, P.C.**
                          Attorneys for Defendants,
                          **Sophia C. Galleher, and Matthew Kim**

Date: November 16, 2022        By:   /s/ Michael S. Stein
                                     MICHAEL S. STEIN

28