**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MAXLITE, INC. a New Jersey Corporation, f/k/a SK AMERICA, INC., d/b/a MAXLITE<br><br>               Plaintiff,<br><br>        -v-<br><br>ATG ELECTRONICS, INC., JAMES D. STEEDLY, SOPHIA C. GALLEHER and MATTHEW KIM,<br><br>              Defendants. | Civil Action No.:<br>15-CV-01116(JMV)(JBC) |

*DEFENDANT ATG'S POST-HEARING REPLY BRIEF FOR PLAINTIFFS' IN RE GRAND JURY APPLICATION*

JASINSKI, P.C.
2 Hance Avenue, 3rd Floor
Tinton Falls, New Jersey 07724
T: 973-824-9700
F: 732-842-1805
Attorneys for Defendant
ATG Electronics, Inc.

Of Counsel:
    David F. Jasinski, Esq.

On the brief:
    Robert P. Manetta, Esq.
    Jennifer C. Van Syckle, Esq.

### TABLE OF CONTENTS

PRELIMINARY STATEMENT............................................... 1

I.   FINDINGS OF FACT .............................................. 3

II.  CONCLUSIONS OF LAW ............................................ 3

    A. In re Grand Jury Does Not Apply To The Facts of This Case. 3

    B. Technical Compliance Is Mandated......................... 6

    C. There Was No Commitment To Pay As In re Grand Jury
       Intended............................................... 14

III. THE CALIFORNIA ARBITRATION HAS NO PRECLUSIVE EFFECT...... 16

    A. The Vanderberg Case Applies to Preclude the California
       Arbitration Decision................................... 16

    B. Plaintiffs Have It Wrong – Res Judicata Does Not Apply To
       The Case At Bar........................................ 19

IV.  THE COURT HAS NO BASIS TO SANCTION ATG AS PASHMAN STEIN WAS
    WELL AWARE OF THE ARBITRATION AND WAS IN CONSTANT CONTACT
    WITH MULCAHY FOR YEARS, THERE IS NO SHOCK AND AWE AS
    PASHMAN STEIN SUGGESTS................................... 22

CONCLUSION........................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allegheny County Gen. Hosp. v. NLRB*,
  608 F.2d 965 (3d Cir. 1979) ..................................... 4
*Alpha Mech., Heating & Air Conditioning, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
  35 Cal. Rptr. 3d 496 (Cal. App. 4th Dist. 2005) ............. 20
*Borough of Park Ridge v. Pascack Valley Post No. 153*,
  20 N.J. Misc. 97 (N.J. Bd. Tax. App. 1942) ................... 4
*Imen v. Glassford*,
  201 Cal. App. 3d 898 (1988) ................................. 18
*Kollinger Estate v. Div. of Taxation*,
  4 N.J. Tax 652 (1982) ........................................ 4
*Levine, Staller, Sklar, Chan, Brown & Donnelly, P.A. v. City of A. City*, A-0725-12T4,
  2014 WL 8630664 (N.J. Super. App. Div. Apr. 21, 2015) ....... 14
*O'Toole v. Northrop Grumman Corp.*,
  499 F.3d 1218 (10th Cir. 2007)............................... 11
*Peviani v. Hostess Brands, Inc.*,
  750 F.Sup.2d 1111 (C.D. Cal Nov. 3, 2010) ................... 11
*Ristine v. Fleming*,
  2008 WL 706690 (App. Div. Mar. 18, 2008) .................... 4
*State of N.J. v. Czachor*,
  82 N.J. 392, 408 (Apr. 2, 1980) ............................. 4
*State of N.J. v. Weir*,
  183 N.J. Super. 237 (App. Div. 1982) ........................ 4
*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
  630 F. Supp. 2d 842 (S.D. Ohio 2007) ....................... 11
*Vandenberg v. Super. Ct.*,
  982 P.2d 229 (Cal. 1999) ........................... 16, 17, 18

**PRELIMINARY STATEMENT**

Throughout these proceedings, the Employee Plaintiffs have focused exclusively on the sixth factor of the case of *In re Grand Jury,* hoping to convince this Court that it should ignore the other five determining factors and turn a blind eye to the reality that the case of *In re Grand Jury* is procedurally and factually different than the case at hand.

*In re Grand Jury* was a case that dealt with the ethical obligations of attorneys retained by a third party to represent a defendant. The New Jersey Supreme Court, in rendering a decision in *In re Grand Jury,* said that its task was to "give proper guidance on whether and under what circumstances a lawyer may represent a client when fees and costs incurred are being paid by another." That is the extent of the holding. Plaintiffs now seek to pervert the holding in an attempt to force Defendant to pay their counsel fees.

In *In re Grand Jury*, the representation was upheld because the company did not dispute that it had made a commitment to pay and the retainer agreements provided the necessary protection(s) for the attorney, the company, and the employees.  Through the retainer agreements (which satisfied the six factors) executed by the company and the individual attorneys, safeguards were in place. As established by *In re Grand Jury*, limitations must be placed in advance of the relationship between the company and the attorney

1

retained by the company to avoid violations of the Rules of Professional Conduct. If those restrictions are not imposed on the representation, the attorney's acceptance for payment from the company would violate the Rules of Professional Conduct.

In the case at hand, none of the safeguards of *In re Grand Jury* were in place. Pashman Stein undertook representation of the Plaintiffs without any of the restrictions of *In re Grand Jury* being imposed. Likewise, the California attorney, James Mulcahy, also undertook representation of the Plaintiffs without any of the restrictions of *In re Grand Jury* being imposed. Plaintiffs try to circumvent these safeguards by saying they are unnecessary and rely on an intent that was never articulated by the New Jersey Supreme Court. What's more, when it suits them, the Plaintiffs add requirements that are not in the decision and go against what is written in the case.

Pashman Stein has given the case of *In re Grand Jury* a life of its own by interpreting it beyond the limited holding that it had for the firm's own monetary benefit. Without compliance with all six factors of *In re Grand Jury*, Pashman Stein has sought to force payment from ATG in a matter which ATG never authorized Pashman Stein to provide legal services. If the Plaintiffs' contentions are to be believed, Pashman Stein commenced representation of the Plaintiffs in blatant violation of the Rules of Professional Conduct.

2

As set forth in ATG's moving brief and this brief in further support, the Plaintiffs' application must be denied.

## I.   FINDINGS OF FACT

Pashman Stein's sixty-eight (68) pages of "Findings of Fact" are nothing more than a regurgitation of selective portions of testimony resulting in an attempt to distort and distract from the record. At best, Pashman Stein presents a bastardization of the evidence, and provides nothing more than carefully censored "snippets" of testimony resulting in half truths. Therefore, ATG objects to any and all "Findings of Fact" that go beyond a selective recitation of testimony or documented evidence. As the parties already agreed at the inception of this hearing, the Court shall give proper weight to the relevant and credible evidence it deems appropriate to reach its decision.

## II.   CONCLUSIONS OF LAW

### A.   *In re Grand Jury Does Not Apply To The Facts of This Case.*

In the case at bar, the Plaintiffs acknowledge that "this proverbial square case does not fit within the round hole of the *In Re Grand Jury* analysis." For this reason alone, the Plaintiffs are not entitled to the relief they seek. Plaintiffs' application for attorney fees goes far afield of the mandate in the Pashman Stein retainer agreement (for "Settlement Purposes") and the holding of *In re Grand Jury*. As fully exposed by the facts, the

case here is clearly distinguishable from *In re Grand Jury* and as such the holding does not apply.[1] *State of N.J. v. Czachor,* 82 N.J. 392, 408 (Apr. 2, 1980) (distinguishing recent New Jersey Supreme Court case, not applying it to the case at hand, and noting that the material "difference in the respective cases suggests a different treatment of the issue of retroactivity.")

Indeed, Plaintiffs make a conscious decision to stray from the principles of *In re Grand Jury* to the realm of speculation. Throughout their submission, the Plaintiffs repeatedly introduce

---

[1] *See Allegheny County Gen. Hosp. v. NLRB*, 608 F.2d 965, 969-970 (3d Cir. 1979) (overturned on other grounds) (defining precedent as "a specific legal consequence [arising from] a detailed set of facts in an adjudged case or judicial decision, which is then considered as furnishing the rule for the determination of a subsequent case involving *identical or similar material facts* and arising in the same court or a lower court in the judicial hierarchy.") (emphasis added); *Ristine v. Fleming,* 2008 WL 706690, *1 (App. Div. Mar. 18, 2008) (affirming trial court's decision reasoning that case upon which appellant relied contained certain critical facts that were distinguishable from case at hand); *Kollinger Estate v. Div. of Taxation,* 4 N.J. Tax 652, 657 (1982) (affirming lower court's decision against defendant, reasoning in part that cases relied were "distinguishable on their facts and do not stand for the proposition defendant ascribes to them."); *State of N.J. v. Weir,* 183 N.J. Super. 237, 242 (App. Div. 1982) (reversing trial court's conviction of individual, reasoning in part that the case upon which State relied "does not provide a precedent controlling in this litigation . . ." as the matter relied upon was factually distinguishable from the case at bar and because the case relied upon dealt with civil, not quasi-criminal, matter); *Borough of Park Ridge v. Pascack Valley Post No. 153,* 20 N.J. Misc. 97, 98 (N.J. Bd. Tax. App. 1942) (reversing lower decision and finding assessment improper, reasoning in part that case relied upon by Borough was distinguishable noting that "[t]he distinction lies in the fact that in such cases there is no permanent or continuous devotion of a part of the property to the uses of persons or entities other than the owner organization.")

what they believe is the **intent** of *In re Grand Jury*, rather than address the six factors of design for compliance. Plaintiffs intend on broadening the definition and implication of *In re Grand Jury*. Nowhere in the decision does the New Jersey Supreme Court discuss its intent or its policy rationale other than to say its task was to "give proper guidance on whether and under what circumstances a lawyer may represent a client when fees and costs incurred are being paid by another." *In re State Grand Jury Investigation,* 983 A.2d 1097, 1105 (N.J. 2009).

Pashman Stein was well aware at the inception of its representation of Plaintiffs that this litigation is not in the arena of *In re Grand Jury,* especially after the denial of the summary action. Pashman Stein drafted and executed a retainer agreement which did not conform to *In re Grand Jury,* did not mention ATG or a third-party payer, and subsequently accepted two separate payments totaling $20,000 from the Plaintiffs for services under the only retainer agreement -- for settlement purposes. If Pashman Stein intended to establish a third-party payer arrangement, they would have certainly required compliance with the six factors.

The simple truth is that the retainer agreement was focused solely on services to negotiate a settlement, nothing more. Pashman Stein's time entries support that fact. This *In re Grand Jury* Application was an afterthought when Pashman Stein elected to

provide representation beyond "Settlement Negotiations." The Court cannot permit Pashman Stein to benefit from executing a specific retainer agreement and have it cover a scenario neither contemplated nor mentioned in the retainer agreement. It is simple, there is no link between ATG and the Pashman Stein retainer agreement. The retainer agrement only deals with Pashman Stein representing the Plaintiffs for "settlement purposes" and not substantive issues that they opted to represent the Plaintiffs on for three plus years and generated nearly half a million dollars in fees. Pashman Stein's decision was in opposition to their representation to the court when they candidly admitted that they would not continue to represent the Plaintiffs if the summary action was not granted in their favor. *([a]bsent an order from the Court requiring ATG to pay fees and costs, the Employee Defendants [Plaintiffs], have no income and cannot afford the legal fees, and will have to proceed in the litigation without representation.] See, Def. Ex. 13 ¶83.*

Therefore, the Plaintiffs cannot now attribute an intent to the New Jersey Supreme Court and argue that any reading of *In re Grand Jury* contrary to their own interpretation would undermine the principle of the *In re Grand Jury* decision. Such is simply not the case, Pashman Stein cannot get around this.

B.    ***Technical Compliance Is Mandated.***

Recognizing that the facts of this case do not fit within the *In re Grand Jury* framework, the Plaintiffs contend that "the Court need not engage in an analysis of all six *In Re Grand Jury* Factors." In making such an argument, the Plaintiffs state that Judge Clark noted the Court must "move beyond ATG's assertion **regarding the technical compliance**" with each of the *In re Grand Jury* factor's given the unique facts here.  According to the Plaintiffs, the Court need only engage in the inquiry surrounding the sixth factor — that is, determine whether the Plaintiffs entered a third-party payer agreement such that leave of Court is required to cease that obligation. The Plaintiffs rely on Magistrate Judge Clark R & R where he said that:

> [h]owever, because of the focus of the first four *Grand Jury* factors is on the conduct of attorneys in third-party payer situations, it appears to the Court that a strict application of the six *Grand Jury* conditions to the facts of the present dispute is unlikely to be particularly illuminating in determining whether the Employee Defendants [Plaintiffs] are entitled to the relief they seek. Thus, the Court must move beyond a literal application of the six *Grand Jury* factors to assess the merits of the Employee Defendants' [Plaintiffs] claims against ATG.

Pashman Stein takes liberty of the Court's decision. Judge Clark did not suggest that the six conditions are to be summarily discarded. Indeed, nothing in the *In re Grand Jury* decision allows for this interpretation. To the contrary, the New Jersey Supreme Court accorded no flexibility and made it exceedingly clear, **all**

**six must be satisfied.** Although Judge Clark stated, "a strict application of the six *In Re Grand Jury* conditions to the facts of the present dispute is unlikely to be particularly illuminating in determining whether the Employee Defendants [Plaintiffs] are entitled to the relief they seek," the exact opposite is true. It **IS** illuminating and the Court cannot move beyond "a literal application of the six *In Re Grand Jury* factors." "Strict application" and "a literal application" of the six *In re Grand Jury* conditions as required by the New Jersey Supreme Court can lead to only one conclusion, the Plaintiffs are not entitled to the relief they seek.  The Plaintiffs cannot pick and choose what they want. This is not a situation where a Court can let emotions dictate, infer an intent that was not articulated by the New Jersey Supreme Court, ignore factors because of a supposed set of "unique facts," or have an "ends justify the means" mentality for the New Jersey Supreme Court was clear that all six conditions must be met.

The second avenue the Plaintiffs try to circumvent the requirements of *In re Grand Jury* is to argue that the *In re Grand Jury* decision "can be viewed as a two-pronged directive." According to the Plaintiffs, conditions 1-4 regulate the attorneys' conduct with respect to the individual who is to benefit from the payment arrangement (completely ignoring the third-party payer arrangement) such that only conditions 5-6 deal with the

third-party payer itself. Such a convoluted argument ignores the fact that, when analyzing conditions 1-4, the *In re Grand Jury* court was analyzing them with respect to the third-party payer's own retainer agreement with the law firm the company chose.  Said another way, the analysis was recognizing, and not ignoring, the third-party payer's informed consent. Again, in *In re Grand Jury,* the third-party payer did not dispute that it committed to pay the fees of its employees and this arrangement was described with particularity in the retainer agreement executed by the parties. This is not the case here, where neither the Mulcahy nor the Pashman Stein law firm can hold ATG to any commitment to pay attorney fees.

While the Plaintiffs contend that *In re Grand Jury* does not require the existence of a formal written contract or agreement, the *In re Grand Jury* decision is grounded upon the existence of a retainer agreement and specifically referred to the retainer agreements with each of the four lawyers and the company shared common characteristics and were, in all substantive and material respects, indistinguishable.  As recognized by the New Jersey Supreme Court:

> A typical retainer agreement provided (1) that the company "will be ultimately responsible to [the] law firm for all reasonable and necessary legal fees and expenses incurred in this matter [;]" (2) that the "undertaking by the [c]ompany is made with the express understanding that the sole professional obligation of [the] law firm will be

to [the named employee;]" (3) that the "law firm is not required to disclose any legal strategy, theory, plan of action, or the like, to the [c]ompany;" (4) that "payment of legal fees by the [c]ompany to [the] law firm in no way depends upon any such disclosure[;]" (5) that "no professional relationship will arise between the [c]ompany and [the] law firm as a result of the rendering of legal services by [the law firm] or the payment of legal fees and expenses by the [c]ompany[;]" (6) that "the reimbursement of legal fees and expenses ... is neither conditioned upon nor dependent upon [the] law firm's cooperation with the [c]ompany or any other party[;]" (7) that while "[d]etailed invoices will be provided to [the represented employee,] to preserve the attorney/client privilege, [only] summary invoices will be submitted to the [c]ompany[;]" and (8) that the company would be responsible to pay those invoices "upon receipt."

Plaintiffs give a definition of informed consent as "the agreement by a person to a proposed course of conduct **after the lawyer has communicated adequate information and explanation** about the material risks of and reasonably available alternatives to the proposed course of conduct." (emphasis added). *In re Grand* Jury does not dispense with the need for a company to also give informed consent. Here, there was no communication with ATG and absolutely no agreement by ATG to a proposed course of conduct. Neither Pashman Stein nor Mulcahy communicated adequate information and explanation about the material risks of a third-party payer arrangement. Pashman Stein and Mulcahy did not provide adequate information **let alone any information**. As aforementioned, the *In re Grand Jury* case viewed all the conditions through the lens of

10

whether informed consent was provided by the third-party payer

through the retainer agreement it signed[2] and the fact that the

third-party payer was not contesting that it agreed to a third-

party payor arrangement. Pashman Stein continues to try and expand

---

[2] It is beyond the pale that Pashman Stein would even make the argument that a retainer agreement with the company is unnecessary when its own legal publication advocates the direct opposite and recommends that ". . [I]t would be prudent for the payer to discuss expenses with the attorney up front and obtain an estimated cost and a litigation budget prior to signing a retainer. Indeed, **it is advisable that the estimated litigation cost be included in the retainer, along with the scope and goals of the representation,** all of which may help establish good cause to terminate representation should it turn out that those goals are not being met or the budget is being exceeded. In a similar vein, perhaps including certain reservation of rights provisions into the retainer whereby the payer reserves the right to withdraw or cease paying legal fees under certain specified circumstances can help establish good cause if necessary." Pashman Stein further opined that *In re Grand Jury* "is a powerful tool and it is important that **each** of the persons involved in the relationship understand their respective rights and obligations." ***See, Exhibit A to David F. Jasinski Reply Certification, Pashman Stein Article, Third-Party Payers of Legal Fees: Proceed with Caution.*** *Federal Rule of Evidence* 201(c)(2) (a court "must take judicial notice" once it is "supplied with the necessary information . . .."; rule does not include an exception for online information); *O'Toole v. Northrop Grumman Corp.,* 499 F.3d 1218, 1225 (10th Cir. 2007) (reversing trial court's failure to take judicial notice of company's actual earnings history provided by defendant on internet, reasoning in part that defendant failed to dispute the information); *Peviani v. Hostess Brands, Inc.,* 750 F.Supp.2d 1111, 1116-17 (C.D. Cal Nov. 3, 2010) (taking judicial notice of corporate statement); *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield,* 630 F. Supp. 2d 842, 849 (S.D. Ohio 2007) (taking judicial notice, pursuant to FRE 201, of corporate relationships between insurance companies as described on defendant's website, reasoning that its "accuracy cannot reasonably be questioned.").

the reach of *In re Grand Jury* beyond what it was meant to accomplish.

Next, while glossing over multiple specific requirements of *In re Grand Jury*, the Plaintiffs where it suits them **add** requirements. In this regard, *In re Grand Jury* requires that the Third Party have no interference with the Lawyer's Professional Judgment, No Current Representation, and No Prohibited Communications but according to the Plaintiffs this only applies if there is a conflict of interest. According to the Plaintiffs' twisted logic: as long as there is not a conflict, the prohibitions in *In re Grand Jury* that "there cannot be any current attorney-client relationship between the lawyer payer" and "the lawyer is prohibited from communication with the third-party payer concerning the substance of the representation," does not apply. There is absolutely no place in *In re Grand Jury* that says the prohibition only applies in the context of a conflict of interest. Plaintiffs continue to create an *In re Grand Jury* scenario different then the one contemplated by the New Jersey Supreme Court where it suits them, since their arguments do not satisfy and/or trigger the trappings of *In re Grand Jury.*

Further, the Plaintiffs argue that *In re Grand Jury* does not require the third-party payer to select a specific attorney for a client and the funding commitment applies irrespective of a client's choice of counsel. Nowhere does *In re Grand Jury* stand

12

for this proposition and such a reading goes beyond what was considered in the case.  The *In re Grand Jury* case was dealing with whether the counsel **chosen by the company** for its employees would be disqualified under the rules of professional conduct. The New Jersey Supreme Court specifically referred to the retainer agreements **between the company and each of the four lawyers** it retained, stated "based on **the company's retention** of separate counsel," and the announcement by the company "that **the company had retained** a lawyer."  The Trial Court also noted that:

> the Court finds nothing improper about **the attorneys that have been retained by [the company.]** In fact, the Court would go ... further and say that [the company] acted responsibly, quite frankly, and with corporate policy and, quite frankly, having been advised of the reputation of these attorneys. And clearly **the understanding between the [company] and these attorneys [was] spelled out in not only the retainer agreements, but [in] previous letters before all this was signed.**

In fact, the sixth *Grand Jury* factor came from the Trial Court's restriction: "that [the company] **and the individual attorneys**, prior to ending any relationship for payment, would have to make application to the Court[,]" Such that to expand the requirement of making an application to the court to end representation for any attorney an individual retains on their own goes beyond what was even before or contemplated by the New Jersey Supreme Court in the *In re Grand Jury* case.

C.    **_There Was No Commitment To Pay As In re Grand Jury_**
      **_Intended._**

Pashman Stein's belied reliance on factor six of _In re Grand Jury_ in support of their application for attorney fees is factually and legally flawed.

For example, in the _Levine_ case, "the City never incurred the **unconditional responsibility** for the payment of the Firm's fees undertaken by the corporation in _In re State Grand Jury._ The authorization letters did no more than direct that the representation take place." _Levine, Staller, Sklar, Chan, Brown & Donnelly, P.A. v. City of A. City_, A-0725-12T4, 2014 WL 8630664, at *20 (N.J. Super. App. Div. Apr. 21, 2015)(emphasis added). "The letters also required that the acts complained of occur within the employee's scope of employment. **It was not the absolute obligation and commitment found to exist in _In re State Grand Jury._**" _Id._ (emphasis added).

Here, devoid from Pashman Stein's brief is any evidence that ATG (or Ni on behalf of ATG) committed to pay or undertook an "unconditional responsibility" to pay for the the Plaintiffs' attorney fees forever. There was no written commitment, nor was it outlined nor even mentioned in the Mulcahy's or Pashman Stein's retainer agreements. There was no commitment. _T457:6._ Ni testified that: "we [ATG] never committed to pay legal bill for employees forever. There was never that understanding." _T469:12-13._ There

14

was no commitment for ATG to pay all the Plaintiffs' legal fees. According to Ni, "[t]here was no commitment to anything. They were poor [Plaintiffs], they didn't have money, so ATG up fronted the money." *T456:17-18.* Plaintiff Matt Kim acknowledged the lack of commitment as he testified: "**I don't think he [Ni] ever specifically said, '[w]e will fund forever,** but I believe the implication was there.'" *T395:9-10. (emphasis added).* There must be an actual and written "commitment" and an "express understanding" by the employer not an alleged "implication."

Moreover, Mulcahy even acknowledged in his certification that ATG only made payments to Mulcahy to "subsidize" the legal bills. *See, Def. Ex. 15 ¶5.* ATG made partial payments to assist, subsidize, and help the Plaintiffs with their legal fees while employed by ATG. This was mostly due to the Plaintiffs' current economic position and MaxLite's scorched earth litigation tactics. Ni was sympathetic and felt bad. *T187:9-13; T428:9-10; T432:1-4; T434:5-7; T467:20-22.*

Plaintiff Sophia Galleher further understood that there was no commitment to pay with her insistence and continued requests for assurance for Ni to "put into writing" something "a little more formal" supports that ATG nor Ni ever committed to pay for their legal fees forever. *T145:2-20; Def. Ex. 7.* Galleher[3] was

---

[3] The lack of any commitment was further evidenced by Plaintiff Galleher who even limited the amount of fees to $40,000 by her own

trying to get Ni to put something in writing committing to pay because she knew it did not exist.

It is simple, neither ATG nor Ni ever committed to pay for the Plaintiffs' attorney fees indefinitely, he "just helped them." *T456:19-21.* If anything, the old adage, "no good deed goes unpunished" is appropriate as Plaintiffs have dragged this matter out for seven years seeking payment for a lawfirm that ATG never retained.

III. <u>**THE CALIFORNIA ARBITRATION HAS NO PRECLUSIVE EFFECT.**</u>

    A. <u>***The Vanderberg Case Applies to Preclude the California Arbitration Decision.***</u>

The only thing that the Plaintiffs are correct about with regards to the analysis of the issue preclusive effect of the arbitration decision is that the analysis is governed by **California law.** In this light, the seminal case on the subject is the California Supreme Court case, *Vandenberg v. Super. Ct.*, 982 P.2d 229, 238 (Cal. 1999).

*Vanderberg* finds that in "cases involving private arbitration, [t]he scope of arbitration is ... a matter of

---

admission. *See, Defendant's Ex. 7.* "After reviewing the severance agreement, it makes no reference to the promise that you made both verbally and through email to pay Jim's legal bills and to provide us with 30 to $40,000 for a settlement." *T293-12-25* "He would *still give us $40,000." T303:13-14 "In this particular conversation,* **he (Ni) refused to make an open-ended commitment.** *T303:22-23.(emphasis added). Plaintiff Galleher's action is reminiscent of someone who is trying to negotiate a deal as opposed to someone who had a firm commitment.*

agreement between the parties', and [t]he powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission." *Vandenberg v. Super. Ct.*, 982 P.2d 229, 238 (Cal. 1999). (internal citations and quotations omitted). The "arbitration award even if judicially confirmed" shall have **"no collateral estoppel effect unless the arbitral parties agreed."** Id. (emphasis added).

The Court in *Vandenburg* reasoned as follows.

> Logic equally suggests that conscious agreements to give arbitrators' decisions nonmutual collateral estoppel effect would not be routine. *The very fact* that arbitration is by nature an informal process, not strictly bound by evidence, law, or judicial oversight, suggests reasonable parties would hesitate to agree that the arbitrator's findings in their own dispute should **thereafter bind them in cases involving different adversaries and claims.** Even where, as here, the arbitral parties have imposed some formality on their proceedings, have aired their dispute thoroughly, and have received a detailed decision, **there is no reason to assume they agreed to "issue preclusive" effect in favor of nonparties.** In the usual case, tactical considerations would weigh against such an agreement. Most often, the effect would be to burden whichever party *lost* the arbitration, while affording no corresponding benefit to either arbitral party.

*Vandenberg v. Super. Ct.,* 982 P.2d 229, 239-40 (Cal. 1999) (emphasis added).

Other courts have analyzed the approach used by the *Vandenburg* court, reasoning that the approach is warranted because "a particular danger of injustice arises when collateral estoppel is

17

invoked by a nonparty to the prior litigation." Id. at 237. (internal citations and quotations omitted). "Such cases require close examination to determine whether nonmutual use of the doctrine is fair and appropriate." *Id. See also,* Parklane Hosiery, supra*,* at 330-331; *Imen v. Glassford,* 201 Cal. App. 3d 898, 906 (1988).

Here, Judge Brisco's arbitration decision was clearly limited to the issue before him - - Mulcahy's outstanding bills. Moreover, the parties there never agreed that the arbitration decision would apply beyond the bounds of the arbitration.

Further, it is undisputed that Pashman Stein/Plaintiffs are third parties to the arbitration. To the extent that Pashman Stein attempts to equate the arbitral parties' silence to imply a binding effect of the arbitration, the *Vandenberg* court is clear: "[t]here is little basis to surmise that mere silence implies the arbitral parties' acceptance of nonmutual collateral estoppel." *Vandenberg v. Super. Ct.,* 982 P.2d 229, 240 (Cal. 1999) ("A general rule that confirmed private arbitration awards may have such [preclusive] effect would thus violate the fundamental premise that private arbitration is a contractual proceeding *whose scope and effect are defined and limited by the parties' consent.*" . . .This "would chill, rather than promote, the voluntary use of the arbitral forum as an efficient and informal alternative means of resolving particular controversies.").

In sum, the arbitration award has no issue preclusive effect here. California law governs this issue, and it is clear. Pashman Stein cannot insert itself into an arbitration into which it was not a party in an attempt to take advantage of and benefit from Mulcahy's win in a separate and distinct cause of action involving different parties to "gain vicarious advantage from a litigation victory *won by another."* Id. at 240.

ATG never consented to a non-mutual issue preclusive effect. Even if there was privity here between Mulcahy and either Plaintiffs or Pashman Stein (which there was not) ***both*** parties to the arbitration must have agreed to the Arbitrator's ruling having preclusive effect. ATG never consented, and therefore, the arbitration decision can have no non mutual collateral estoppel effect.

B. ***Plaintiffs Have It Wrong – Res Judicata Does Not Apply To The Case At Bar.***

Plaintiffs attempt to avoid the clear outcome mandated by *Vandenburg* by trying to invoke *res judicata.* However, *res judicata* does not apply in this situation.

As an initial matter, Judge Vasquez correctly identified that non-mutual collateral estoppel applies to the case at hand. *T9:14–15.*

Second, the case upon which Pashman Stein relies in trying to assert *res judicata* (or claim preclusion) is clearly

19

distinguishable.    Importantly,  in  *Alpha  Mech.,  Heating  &  Air Conditioning,  Inc.  v.  Travelers  Cas.  &  Sur.  Co.  of  Am.,*  35  Cal. Rptr.  3d  496,  502  (Cal.  App.  4th  Dist.  2005),  the  court  there  did not  analyze  the  preclusive  effect  of  an  arbitration  decision,  but rather  an  ordinary  civil  litigation.    As  made  clear  by  *Vandenberg,* arbitrations  are  unique  creatures,  which  raise  a  distinct  set  of concerns  when  considering  them  in  the  context  of  preclusion. Because  *Alpha  Mech.*  did  not  analyze  an  arbitration  decision  –  and by  virtue  of  doing  so  take  into  account  distinct  concerns  related to  arbitration  decisions  –  it  is  distinguishable  and  inapposite here.

Third,  Pashman  Stein  has  not  asserted  the  same  cause  of action  asserted  by  Mulcahy  in  the  California  arbitration.    In  the arbitration,  Judge  Brisco  neither  considered  nor  did  Mulcahy  rely on  *an  In  re  Grand  Jury*  analysis  to  establish  a  third-party  payer arrangement.    Rather,  Judge  Brisco  only  determined  that  "ATG refused  to  pay  fees  due  and  owing  to  the  Mulcahy  Law  Firm."  *See, Plaintiff's  Brief  p.  104.*  Judge  Brisco  did  not  decide  that  ATG's payments  should  continue  indefinitely  to  Mulcahy  or  any  other  law firm  for  that  matter.

Fourth,  as  conceded  by  Pashman  Stein,  neither  they  nor  the Plaintiffs  were  involved  in  the  arbitration.  **"Mulcahy  Firm**  was entitled  to  be  paid  the  entirety  of  its  outstanding  invoices  (for work  performed  on  behalf  of  both  ATG  and  the  Employee  Defendants

[Plaintiffs]) **through the date it withdrew as counsel**—which was after ATG terminated the Plaintiffs." *See, Plaintiff's Brief p. 112 (emphasis added).*

Fifth, Pashman Stein is not in privity with Mulcahy.  They are separate law firms.  "[T]he very question of whether ATG could be required to pay for the Employees' legal fees after termination" was tied directly to Mulcahy -- no one else. *Id.* There was no discussion, agreement, or ruling by Judge Brisco that ATG would continue to pay for the Plaintiffs fees beyond Mulcahy or indefinitely. In addition, although Pashman Stein states that ATG should have brought the Plaintiffs in to the Arbitration, this is an ill-advised attempt to create "privity" when they cannot do so. ATG did not have a claim against the Plaintiffs. Mulcahy had claim against the Plaintiffs by virtue of his retainer agreement. However, he chose not to bring them into the arbitration. This is not the fault of ATG. The parties before this Court were not the same parties before Judge Brisco in the arbitration, and the mere suggestion that the parties are in some sort of "privity" is factually erroneous.

Sixth, and perhaps more telling, is that Mulcahy had a joint defense arrangement with ATG and the Plaintiffs, while Pashman Stein had only a retainer agreement with the Plaintiffs. As the court is well aware, a joint defense agreement cannot satisfy the *In re Grand Jury* requirement as "[t]here cannot be any current

attorney-client relationship between the lawyer and the third-party payer". *In re State Grand Jury Investigation*, 983 A.2d 1097, 1106 (N.J. 2009).

Seventh, neither the Mulcahy law firm nor ATG's prior counsel dealt with the factors of *In re Grand Jury* in the California Arbitration, since they did not have to meet the ethical obligations and pronouncement of the New Jersey Supreme Court. Therefore, Pashman Stein should not and cannot take advantage and benefit from Mulcahy prevailing in a separate and distinct cause of action involving different parties and "gain vicarious advantage from a litigation victory won by another," as ATG never consented to such. *Id. at 240.*

In short, Judge Brisco was and Judge Vazquez is tasked with considering a much different set of facts that involve completely different causes of action and distinct parties. Accordingly, *res judicata* does not apply to the case at bar.

## IV.   THE COURT HAS NO BASIS TO SANCTION ATG AS PASHMAN STEIN WAS WELL AWARE OF THE ARBITRATION AND WAS IN CONSTANT CONTACT WITH MULCAHY FOR YEARS, THERE IS NO SHOCK AND AWE AS PASHMAN STEIN SUGGESTS.

In 2015, Mulcahy submitted certifications seeking withdrawal in the New Jersey case due to a "conflict of interest" that arose. Pashman Stein began representation of the Plaintiffs. From the start of Pashman Stein's representation, it was in regular communication with James Mulcahy, evidenced by the fact that

22

Pashman Stein's own time entries refer to this constant contact with Mulcahy. *See, Defendants Exhibit 4. (10/23/2015- call w/Mulcahy re affidavit; work on reply brief and research and opposition cases.*)[4] As late as September 5, 2017, Pashman Stein had a phone call with Mulcahy and discussed the Order to Show Cause and the outstanding legal fees. *See, Defendants Exhibit 4. 9/5/2017.*

It is disingenuous for Plaintiffs to now suggest that ATG kept the existence of the Arbitration from Pashman Stein. First, ATG had no duty to disclose the existence of an Arbitration with a different law firm that has no preclusive effect in this proceeding. Second, the cooperative relationship between Mulcahy and Pashman Stein undercuts any supposed "surprise." It simply defies reason to think that despite Mulcahy and Pashman Stein's close relationship, the arbitration was never mentioned.

Perhaps the question should be why did Mulcahy keep this from Pashman Stein? The firms clearly communicated during the course of the litigation. Furthermore, the dogged representation by Pashman Stein belies that it did not know of the Arbitration. It is more likely Pashman Stein recognized the California Arbitration had no effect or it was awaiting the outcome.

---

[4] Interestingly enough, the Arbitration award was issued by Judge Brisco in June of 2018 and Pashman Stein refused to send ATG its bills beyond April 30, 2018.

ATG did not act in bad faith or conceal the Arbitration from Pashman Stein. Given the facts and close communication between Mulcahy and Pashman Stein, ATG had no reason to believe that Pashman Stein was not aware.

## **CONCLUSION**

For the aforementioned reasons, Defendant ATG respectfully requests the Court enter an order denying Pashman Stein's Application for attorney fees and costs associated with representing the Plaintiffs.

> Respectfully submitted,
>
> JASINSKI, P.C.
>
> By: s/ *David F. Jasinski*
>      DAVID F. JASINSKI, ESQ.

Dated: November 16, 2022