<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MAXLITE, INC., a New Jersey Corporation, f/k/a SK AMERICA, INC., d/b/a MAXLITE, <br><br> Plaintiff, <br><br> v. <br><br> ATG ELECTRONICS, INC., and JAMES D. STEEDLY, SOPHIA C. GALLEHER, and MATTHEW KIM, <br><br> Defendants. | Civil Action No. 15-01116 <br><br> **OPINION** <br><br> November 13, 2024 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Plaintiff MaxLite, Inc.'s ("MaxLite" or "Plaintiff") Motion for Summary Judgment and the Cross-Motion for Summary Judgment filed by Defendant ATG Electronics, Inc. ("ATG" or "Defendant"). (ECF 546; ECF 548.) The Court reviewed all submissions made in support of and in opposition to the motions and held oral argument with the parties on November 7, 2024.[1] For the reasons stated below, Defendant's Motion is **DENIED** and Plaintiff's motion is **GRANTED in part and DENIED in part.**

**I.**     <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[2]</u>

---

[1] During oral argument, the Court requested additional briefing with respect to an issue regarding the law of the case. Plaintiff incorrectly filed this supplemental briefing as a "Supplemental Motion for Summary Judgment." (*See* ECF 584.) The Court considered the supplemental briefing from both Plaintiff and Defendant (*see* ECF 584; ECF 585; ECF 586), however, the Court does not reach the merits of Plaintiff's "Supplemental Motion."

[2] The facts and procedural history are drawn from Plaintiff's brief in support of its motion for summary judgment (ECF 547-1, "PMSJ Br."), Defendant's brief in support of its motion for summary judgment (ECF 548-2, "DMSJ Br."), both parties' respective opposition papers (ECF 557, "Def. Opp." and ECF 555, "Pl. Opp."), and the parties' submissions regarding undisputed material facts (ECF 510-1; "PSOMF"); (ECF 533-1, "DSOMF").

The facts of this matter are detailed extensively across several opinions from Judges across this District, which the Court incorporates by reference.[3]

By way of brief review, MaxLite was founded in 1993 and is currently headquartered in New Jersey. (ECF 511, PSOMF ¶¶ 1, 3.) MaxLite designs, engineers, develops, and distributes energy efficient lighting products, concentrating on LED products. (*Id*. ¶ 7.) ATG was founded and incorporated in California on March 12, 2001 and is headquartered in California. (*Id*. ¶¶ 8-9.)

Plaintiff MaxLite initiated this lawsuit on February 12, 2015, alleging, among other things, that Defendants, James Steedly ("Steedly"), Sophie Galleher ("Galleher"), and Matthew Kim ("Kim") (together "Employee Defendants") violated their non-compete agreements with Maxlite when they went to work for ATG. (ECF 1, "Compl.") MaxLite states that ATG improperly solicited the Employee Defendants with full knowledge of the terms of their respective Employee Agreements, and once they were employed, ATG used the Employee Defendants to obtain confidential knowledge of and interfere with MaxLite's business methods and relationships. (*See generally* ECF 222, Second Amended Complaint ("SAC.").) Furthermore, MaxLite alleges that ATG gained access to and utilized MaxLite's confidential, proprietary information and improperly solicited MaxLite's customers, consultants, service providers, and employees.[4] (*Id*.)

On September 16, 2015, the law firm of Pashman, Stein filed an Order to Show Cause on behalf of the Employee Defendants seeking a temporary preliminary injunction requiring ATG to indemnify the Employee Defendants for their legal fees. (ECF 109.) On March 15, 2018, Magistrate Judge Clark issued a report and recommendation denying the Employee Defendants'

---

[3] (*See* ECF 147, ECF 162, ECF 185, ECF 189, ECF 279.)
[4] Plaintiff's SAC alleges eight Counts: (I) breach of contract against Employee Defendants; (II) breach of implied covenant of good faith and fair dealing against Employee Defendants; (III) conversion and misappropriation against Employee Defendants; (IV) unfair competition/breach of duty of loyalty against Employee Defendants; (V) tortious interference with contractual relations against all Defendants; (VI) tortious interference with present and prospective business advantage against all Defendants; (VII) civil conspiracy against all Defendants; and (VIII) unjust enrichment against ATG. (ECF 222, SAC ¶¶ 91-129.)

application for injunctive relief; the report and recommendation was adopted by Judge Vazquez in its entirety by Opinion and Order dated May 4, 2019. (ECF 189.)

On May 15, 2018, the Employee Defendants filed an Amended Answer and Crossclaim for a summary action seeking indemnification ("Crossclaim"). (ECF 190.) On June 4, 2018, ATG answered the Crossclaim, denied the allegations, and demanded a trial by jury. (ECF 197.) On June 13, 2018, the Employee Defendants filed a motion for summary judgment. (ECF 202.) On July 22, 2019, the Court denied the Employee Defendants' motion for summary judgment, on the grounds that there were genuine issues of material fact preventing the entry of summary judgment for the Employee Defendants. (ECF 279, "July 2019 MSJ Opinion.") Default was entered against Mr. Steedly in July 2019, and on April 14, 2020, the Court entered a Consent Judgment and Order of Dismissal as to Ms. Galleher and Mr. Kim based on the settlement of MaxLite's claims against them.[5] After nearly a decade of litigation, on March 23, 2023, the Court granted the parties' requests for leave to file motions for summary judgment. (*See* ECF 537.)

On May 22, 2023, MaxLite and ATG filed their respective motions for summary judgment. (ECF 546; ECF 548.) On December 27, 2023, the motions were administratively terminated, and the case was referred to mediation. (ECF 573.) After unsuccessful mediation, on March 25, 2024, the parties' motions for summary judgment were administratively reinstated. (ECF 576.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the movant shows that "there is no genuine issue as to any material fact and the moving party is

---

[5] Although the claims between MaxLite and Ms. Galleher and Mr. Kim concluded, Ms. Galleher and Mr. Kim remained in the litigation asserting a claim against ATG for payment of their legal fees under *In re State Grand Jury Investigation*, 983 A.2d 1097 (N.J. 2009), which proceeded to a bench trial before Judge Vazquez over several dates in August and September 2022. Judge Vazquez, after making findings of fact relevant to the pending summary judgment motions, denied Ms. Galleher and Mr. Kim's claim in December 2022.

entitled to judgment as a matter of law." *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . there can be 'no genuine issue of material fact,' since a complete failure of

4

proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

When, as here, the parties file dueling motions for summary judgment, the governing standard "does not change." *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 401 (3d Cir. 2016) (citing *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)). The court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009); *Williams v. Phila. Housing Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994). "That one of the cross-motions is denied does not imply that the other must be granted." *Indus. Corner Corp. v. Pub. Serv. Mut. Ins. Co.*, No. 20-06677, 2023 U.S. Dist. LEXIS 22017, at *14 (D.N.J. Feb. 8, 2023). For each motion, "the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made" but does not "weigh the evidence or make credibility determinations" because "these tasks are left for the fact-finder." *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (internal quotation and citations omitted).

### III.   ANALYSIS

#### A. Motions for Summary Judgment

MaxLite seeks entry of Summary Judgment as to (1) liability on MaxLite's first cause of action for Breach of Contract; (2) liability against ATG on MaxLite's fifth cause of action for Tortious Interference of Contractual Relationships; (3) liability against ATG on MaxLite's seventh

cause of action for Civil Conspiracy as it relates to counts one and five; and (4) dismissal of all of ATG's affirmative defenses.

ATG seeks entry of Summary Judgment as to (1) MaxLite's fifth cause of action for Tortious Interference of Contractual Relationships; (2) MaxLite's sixth cause of action for Tortious Interference of Present and Prospective Business Advantage; and (3) MaxLite's seventh cause of action for Civil Conspiracy.

1. **Breach of Contract (Count I)**

While MaxLite has settled its claims against Employee Defendants Galleher and Kim and default judgment has been entered against Defendant Steedly, MaxLite argues that claims against ATG remain, including claims related to and arising out of the Employee Defendants' breaches of their contractual obligations with MaxLite. (ECF 511, PSOMF ¶ 276.) As a result, MaxLite moves for summary judgment as to liability on MaxLite's first cause of action for Breach of Contract.

In opposition, ATG contends that granting MaxLite's motion for summary judgment on the breach of contract cause of action is improper because Count I was a "breach of contract claim against the Employee Defendants, not ATG[.]" (ECF 557, Def. Opp. at 4-5.) Further, ATG states that MaxLite "glosses over" the legal significance that Count I was already resolved by way of both consent and default judgment against the Employee Defendants, and MaxLite is thus precluded from obtaining judgment against ATG for Count I. (*Id.* at 5.) Finally, ATG argues that because of the foregoing, the breach of contract cause of action is now moot, as there is no justiciable controversy as to the Employee Defendants and MaxLite. (*Id.* at 6.) The Court agrees with ATG.

To state a claim for breach of contract under New Jersey law,[6] a plaintiff must establish four elements: (1) the parties entered into a valid contract, (2) the plaintiff performed its contractual obligations, (3) the defendant did not perform its obligations, and (4) the defendant's breach causes the plaintiff to incur damages. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)); *Tracey v. Recovco Mortg. Mgmt. LLC*, 451 F. Supp. 3d 337, 342 (D.N.J. 2020) (citation omitted); *Lacroe v. M. Fortuna Roofing, Inc.*, No. 14-7329, 2017 WL 431768, at *5 (D.N.J. Jan. 31, 2017).

In support of summary judgment, Plaintiff discusses each element of breach of contract in its moving brief. First, Plaintiff argues there is no dispute of material fact as to the first two elements of breach of contract.[7] (ECF 547-1, PMSJ Br. at 6.)

Next, for nearly fifteen (15) pages, Plaintiff talks at length about the conduct of the respective Employee Defendants with respect to their breaches (*see id*. at 8-22); however, MaxLite does not and cannot attribute this conduct to ATG as there was never a contract between MaxLite and ATG. Although MaxLite contends that ATG "fundamentally misunderstands" MaxLite's request for summary judgment as to liability on this cause of action (ECF 559, Pl. Rep. Br. at 2), MaxLite, in part, fails to respond substantively to the arguments raised in ATG's opposition. First and foremost, the first element of any breach of contract claim requires that the parties entered into a valid contract. *Goldfarb,* 245 A.3d at 577. Here, it is undisputed that the contracts in question were between MaxLite and Employee Defendants Steedly, Galleher, and Kim. (ECF 511, PSOMF

---

[6] The parties appear to assume that New Jersey law applies. Seeing no clear reason to deviate from this assumption, the Court will apply New Jersey law. *See Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)).

[7] Plaintiff states it is uncontested that MaxLite entered into a contract with each of the Employee Defendants. (ECF 547-1, PMSJ Br. at 5.) Plaintiff also contends it is undisputed that MaxLite complied with the terms of the respective employment agreement contracts. (*Id*. at 6.)

¶ 16.) Second, MaxLite's motion for summary judgment as to its breach of contract claim is fundamentally flawed based upon the plain reading of the operative SAC. Therein, MaxLite alleges a breach of contract cause of action "Against the Employee Defendants." (ECF 222, SAC ¶¶ 91-93.) The allegations with respect to breach of contract are not brought against ATG. (*See id*.) This is further evidenced by MaxLite's admission stating MaxLite is "not claiming breach of contract against ATG . . . ." (ECF 559, Pl. Rep. Br. at 2.)

Although ATG has not filed a motion to dismiss for failure to state a claim, the Court will assess the sufficiency of the operative SAC to determine if Count I must be dismissed *sua sponte* pursuant to Rule 12(b)(6). A district court may on its own initiative enter an order dismissing an action provided that the complaint affords a sufficient basis for the court's action. *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980); *see also Michaels v. State of N.J.*, 955 F. Supp. 315, 331 (D.N.J. 1996) ("It is well established that, even if a party does not make a formal motion to dismiss, the court may, *sua sponte*, dismiss the complaint where the inadequacy of the complaint is clear.") Indeed, a plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015).

In Count I, MaxLite's SAC makes no affirmative allegations as to ATG. (*See generally* ECF 222, SAC.) The heading of Count I specifically states that the breach of contract claim is "Against the Employee Defendants." (*Id*. at 33.) The Court concludes as a matter of law that Defendant ATG and Plaintiff MaxLite did not enter a valid contract, and as such, do not satisfy the first element of breach of contract under New Jersey law. MaxLite's motion for summary judgment on Count I defies logic and offends basic due process principles. Count I of the SAC

8

fails to state a claim against ATG. Accordingly, MaxLite's Motion for Summary Judgment as to Count I is **DENIED**, and the Court *sua sponte* dismisses Count I of the SAC.

### 2. Tortious Interference with Contractual Relations (Count V)

Both MaxLite and ATG move for summary judgment on liability as to MaxLite's Count V claim of tortious interference with contractual relations. MaxLite contends there was an existing contract between MaxLite and the Employee Defendants, which ATG interfered with, resulting in breach and damages. (ECF 547-1, PMSJ Br. at 24.) At the core of MaxLite's summary judgment argument is that ATG "blatantly solicited and encouraged the Employee Defendants" and "[b]ut for ATG's solicitation and promises, the Employee Defendants would not have left their MaxLite employment." (*Id*. at 27.) Conversely, ATG contends they are entitled to summary judgment on MaxLite's claim because (1) the Employee Defendants were at-will employees[8]; (2) the MaxLite Agreements are unenforceable[9]; and (3) ATG did not act with malice. (ECF 557, Def. Opp. at 26; ECF 548, DMSJ. Br. at 6-16.)

To state a claim for tortious interference with contractual relations under New Jersey law, a claimant must allege: "(a) the existence of a contract, (b) intentional interference, with malice, (c) loss [or breach] of the contract, and (d) damages." *ThermoLife Int'l LLC v. Connors*, No. 13-

---

[8] ATG's argument that it could not have interfered with the MaxLite Agreements because the Employee Defendants were at-will employees is not supported by the law or facts. The uncontested material facts prove that MaxLite entered into a contract with each of the Employee Defendants, and the contracts were the respective MaxLite Agreements containing specific restrictive covenants. (*See* PSOMF ¶¶ 16, 18-19, 29-30, 44-45; DSOMF ¶¶ 24, 41, 67.) Indeed, "[t]he at-will nature of the relationship [is] irrelevant" because an employee's "right to leave does not furnish [the new employer] with a right to interfere." *Avtec Indus., Inc. v. Sony Corp. of Am.*, 500 A.2d 712, 714 (N.J. Super. Ct. App. Div. 1985). The inducement of an at-will employee "is actionable if the party offering the inducement either has an unlawful or improper purpose or uses unlawful or improper means." *Micro Image Techs., Inc. v. Olympus Corp. of the Americas*, No. 20-1878, 2022 WL 17132156, at *4 (D.N.J. Nov. 22, 2022).

[9] "That the underlying contract may be unenforceable is no defense to a claim of tortious interference." *Michael Halebian N.J., Inc. v. Roppe Rubber Corp.*, 718 F. Supp. 348, 360 (D.N.J. 1989) (emphasis added). Under New Jersey law "[u]nquestionably, one who unjustifiably interferes with the contract of another is guilty of a wrong. That the contract may be unenforceable is no defense[.]" *Mina L. Smith, Inc. v. Cyprus Indus. Mins. Co.*, 427 A.2d 1114, 1118 (N.J. Super. Ct. App. Div. 1981); *see also Louis Schlesinger Co. v. Rice*, 72 A.2d 197, 202-03 (N.J. 1950) (holding that one who maliciously or unjustifiably induces a breach is liable for damages "even though the contract be unenforceable").

4399, 2014 WL 1050789, at *3 (D.N.J. Mar. 17, 2014) (citing *Velop, Inc. v. Kaplan*, 693 A.2d 917, 926 (N.J. Super. Ct. App. Div. 1997) (citing *Printing Mart–Morristown v. Sharp Electronics*, 563 A.2d 31 (N.J. 1989))); *see also Oakwood Labs., LLC v. Thanoo*, No. 17-05090, 2018 WL 2973384, at *6 (D.N.J. June 12, 2018) (listing the same elements). "'[M]alice' does not necessarily require 'ill will,' but rather means that the harm was inflicted by the defendant without justification or excuse." *DiGiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552, 559 (D.N.J. 2002).[10]

Based upon the undisputed material facts, the first element is satisfied because it is undisputed that MaxLite entered contracts with each of the Employee Defendants ("MaxLite Agreements"). (ECF 511, PSOMF ¶¶ 16, 18-19, 29-30, 44-45; ECF 535, ATG's Responses ¶¶ 16, 18-19, 29-30, 44-45.) It is further undisputed that "[t]he Employee Defendants all had contracts with MaxLite entitled 'Proprietary Information Agreement' (the "MaxLite Agreement") containing non-compete, non-disclosure, and non-solicitation provisions." (*See* PSOMF ¶ 16; ATG's Responses ¶ 16.)

Next, MaxLite argues that there is no material fact in dispute regarding the remaining elements establishing liability for tortious interference with contract. (PMSJ Br. at 24.) The Court agrees with MaxLite. It is undisputed that ATG solicited the Employee Defendants to leave MaxLite to join ATG.[11] (ECF 511, PSOMF ¶¶ 64, 67-78, 81-91, 95-111.) Critically, ATG's solicitation and employment offers were made despite ATG's specific knowledge of the MaxLite

---

[10] "New Jersey courts have long understood the inquiry to focus on whether defendant's actions amounted to sharp dealing or overreaching or other conduct below the behavior of fair men similarly situated[.]" *DiGiorgio*, 230 F. Supp. 2d at 565 (internal quotation marks and citations omitted). "[T]he analysis hinges upon an evaluation of whether the defendant's conduct bespeaks an improper motivation or intention." *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F. Supp. 3d 407, 421 (D.N.J. 2016).

[11] Indeed, ATG admits that ATG's founder, Yaxi (Nick) Ni ("Ni"), sent emails to Steedly encouraging him to join ATG as early as May 2013 and that, in August 2014, Tapia "resumed efforts to solicit Steedly for employment with ATG." (*See* ATG's Responses ¶¶ 68, 75.) Further, ATG admits that, in 2014, Galleher learned about ATG through Arthur Tapia ("Tapia"), ATG's Vice President for North America and Latin America (*see* PSOMF ¶ 11) and met with Ni who then offered her a position. (*See id*. ¶¶ 84-85, 91.) Furthermore, ATG flew Kim to California, issuing a compensation package, offering him employment, and agreeing to a VP title. (*See id*. ¶¶ 102, 105, 109, 111.)

Agreements and the restrictive covenants since as early as 2013, prior to hiring the Employee Defendants. (*See id*. ¶¶ 70-74.) ATG admits that they even had the MaxLite Agreement analyzed by counsel in 2013. (*See id*. ¶¶ 71-74.) Despite the respective Employee Defendants raising concerns about the restrictive covenants to ATG[12] (*see id*. ¶¶ 69, 86, 103), ATG advised the Employee Defendants that ATG knew about the restrictive covenants, were not worried about them, and promised the Employee Defendants legal protection if a dispute arose.[13] (*See id*. ¶¶ 79, 87-88, 92, 104, 112.)

In support of its own motion and in response to MaxLite, ATG claims that "MaxLite still to this day 8 years later cannot identify any conduct on ATG's part which was anything more than sanctioned business competition." (ECF 548-2, DMSJ. Br. at 6.) Furthermore, ATG asserts that "a cause of action does not exist simply by accusing a company of hiring an individual." (*Id*.) ATG's unavailing arguments are belied by the undisputed material facts in the record and in contradiction to the case law in this district. Where secured by contract, another employer taking away an employee is undoubtedly actionable. *See Avtec Indus., Inc.,* 500 A.2d at 716. In *Accounteks.Net, Inc. v. CKR L., LLP*, No. 20-1067, 2023 WL 3331802, at *3 (N.J. Super. Ct. App. Div. May 9,

---

[12] Contrary to supporting facts in the record, ATG denies that Galleher or Kim expressed concerns about the restrictive covenants in their MaxLite Agreements (while admitting that Steedly expressed concerns). However, these denials put forth by ATG are contradicted by the findings made by this Court during the December 21, 2022 bench trial. (*See* PSOMF ¶ 86, Ex. 11 (transcript of Court's decision read onto the record following bench trial), Tr. 5:23-25 ("[I]n subsequent meetings Ms. Galleher informed Mr. Ni that she was concerned about the non-compete agreement in her contract with MaxLite"); *id*. ¶ 103, Ex. 11, Tr. 6:13-14 ("Mr. Kim expressed concern about his non-compete with MaxLite.").)

[13] (*See* PSOMF ¶ 79, Ex. 11, Tr. 5:17-20 ("Mr. Steedly left MaxLite for ATG. That I drew from the verified cross-claim in which Mr. Steedly indicated that he did so in reliance on Mr. Ni's promise that ATG would provide legal protection if a dispute with MaxLite arose."); *id*. ¶ 87-88, Ex. 11, Tr. 6:1-5 ("Mr. Ni informed [Galleher] that he was aware of the provision, that he had paid for an attorney to review it, that it would not be an issue, and that ATG would take care of her and defend her if there was ever a problem with MaxLite. Mr. Ni made multiple assurances of the same nature to Ms. Galleher"); ¶ 92, Ex. 11, Tr. 6-9 ("Ms. Galleher relied upon Mr. Ni's promises to defend her against MaxLite if necessary and she would not have joined ATG but for those promises or assurances."); ¶ 104, Ex. 11, Tr. 6:15-18 ("Mr. Ni responded that his attorneys have reviewed the provision in the past and that Mr. Ni was not concerned. Mr. Ni informed Mr. Kim not to worry about the provision and that if legal action arose with MaxLite ATG would pay for it."); ¶ 112, Ex. 11, Tr. 6:23-7:1 ("Like Ms. Galleher, Mr. Kim would not have left his job with MaxLite and joined ATG without Mr. Ni's promise that ATG would defend Mr. Kim and pay his legal fees. Mr. Kim similarly relied upon Mr. Ni's promises and assurances.").)

2023), the Court found liability for tortious interference with contractual relations where a new employer was aware of the existence of restrictive covenants in an employee's employment agreement and "chose to hire him anyway." Similarly, the Court in *Vibra-Tech Engineers, Inc. v. Kavalek*, 849 F. Supp. 2d 462, 493 (D.N.J. 2012) held a new employer liable for tortious interference with an employment agreement containing restrictive covenants. Although "mere inducement" may be insufficient, inducement in the face of known contractual obligations gives rise to liability for tortious interference with contract. Indeed, "[t]he at-will nature of the relationship [is] irrelevant" because an employee's "right to leave does not furnish [the new employer] with a right to interfere." *Avtec Indus., Inc.*, 500 A.2d at 714.

MaxLite has established there are no disputed material facts, and it is entitled to summary judgment as to ATG's tortious interference with the MaxLite Agreements.[14] ATG's arguments that it is not liable for tortious interference because the Employee Defendants were "at will," the MaxLite Agreements are unenforceable, and ATG did not act with malice are without merit and unsupported by precedent.

Based upon the foregoing, Plaintiff's motion for summary judgment on liability as to Count V of Plaintiff's SAC is **GRANTED**, and Defendant's motion for summary judgment as to Count V is **DENIED**.

### 3. Tortious Interference with Prospective Business Advantage (Count VI)

ATG moves for entry of summary judgment as to MaxLite's Count VI claim for tortious interference with business advantage.

Under New Jersey law, the elements of a claim for tortious interference with prospective business advantage are as follows: (1) a prospective economic relationship from which the plaintiff

---

[14] The Court notes that many of the undisputed material facts put forth by MaxLite are supported by the findings from a bench trial this Court conducted on December 21, 2022. (*See* ECF 546-3, Ex. 11.)

has a reasonable expectation of gain; (2) intentional and unjustifiable interference with that expectation; and (3) a causative relationship between the interference and the loss of the prospective gain. *Cooper Distrib. Co. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 281 (3d Cir. 1995) (citing *Printing Mart–Morristown,* 563 A.2d at 37).

ATG argues that it is entitled to summary judgment on Count VI because MaxLite cannot prove malice and cannot prove causation with respect to their tortious interference with business advantage. In opposition, MaxLite contends that the evidence shows that ATG is not entitled to summary judgment because there are genuine disputes of material facts and reasonable minds can differ about the import of relevant evidence. (ECF 555, Pl. Opp. at 24-25.) As to Count VI, the Court agrees with MaxLite.

"The second element—malicious interference—requires only the intentional doing of a wrongful act without justification or excuse." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 383 (3d Cir. 2016) (internal quotation marks and citations omitted). "It is determined on an individualized basis, and the standard is flexible, viewing the defendant's actions in the context of the facts presented." *Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1170 (N.J. 2001) "[T]he ultimate inquiry is whether the conduct was both injurious and transgressive of generally accepted standards of common morality or of law. In other words, was the interference by defendant sanctioned by the 'rules of the game.'" *Printing Mart-Morristown*, 563 A.2d at 40 (internal quotation marks and citations omitted). "A benign, or pro-competitive, motive does not absolve misconduct." *Avaya Inc., RP*, 838 F.3d at 383. "While competition may constitute justification, a defendant-competitor claiming a business-related excuse must justify not only its motive and

purpose but also the means used." *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 659 A.2d 904, 933 (N.J. Super. Ct. App. Div. 1995).

Specifically, MaxLite contends that ATG solicited, induced, facilitated breaches, and encouraged the use of MaxLite's confidential information. (ECF 555, Pl. Opp. at 27-30.) In support, MaxLite provides numerous examples of ATG's allegedly improper use of the Employee Defendants' confidential knowledge and the repeated improper solicitation of MaxLite employees, sales representatives, customers, and vendors in competing against and potentially damaging MaxLite.[15] (*Id.* at 27-29.)

Based upon the foregoing and resolving all doubts as to the existence of genuine facts against ATG, a reasonable jury could return a verdict in MaxLite's favor regarding tortious interference with prospective business. As such, ATG is not entitled to summary judgment. *See Mance v. Quest Diagnostics Inc. Voluntary Separation Agreement Plan*, 237 F. Supp. 3d 217, 221 (D.N.J. 2017); *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981). Therefore, Defendant's motion for summary judgment as to Count VI of Plaintiff's SAC is **DENIED**.

---

[15] (1) Galleher and Steedly were asked to assist in completing a bid against MaxLite, "Since you are familiar with MaxLite product [sic] can you please recommend which should be our right models to bid?" (*See* ECF 511, PSOMF ¶¶ 136-42, Ex. 59 at ATG-2614-16; *see also id*. ¶ 179, Ex. 63, ATG-0090-91 (Galleher stating: "We know our biggest competition will be MaxLite so if we can offer at least the top three products, we are in good shape.").) (2) Galleher made recommendations to ATG based upon her specific knowledge of successful MaxLite products and programs. (*See id*. ¶¶ 136- 142, Ex. 59 at ATG-1235-36; ATG-5916-18.) (3) ATG routinely requested Steedly contact MaxLite suppliers and even asked Steedly to have other ATG employees surreptitiously contact MaxLite suppliers on his behalf due to the ongoing lawsuit. (*See id*. ¶¶ 129-30, Ex. 58, ATG-0750, ATG-2279-85; ED_B_000317-21.) (4) Kim had his "key discussions" with his "top clients" at MaxLite to make the transition to ATG "seamless" (*see id*. ¶ 110) and then immediately began soliciting his MaxLite customers including, but not limited to, Atlanta Light Bulbs, who Galleher noted, at that time: "wants to establish [ATG] as their top stocking distributor for standard LED fixtures, and they plan to replace Atlas and MaxLite in their showroom with ATG." (*See id*. ¶ 151, Ex. 62, ATG-2961-62.)

### 4. Civil Conspiracy (Count VII)

MaxLite also seeks summary judgment on liability as to MaxLite's seventh count, civil conspiracy, with respect to breach of contract and tortious interference with contract.

To prove civil conspiracy, MaxLite must show: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme." *In re Johnson & Johnson Talcum Powder Prod. Mktg.*, *Sales Pracs., & Prod. Liab. Litig.*, 553 F. Supp. 3d 211, 232 (D.N.J. 2021) (internal citation omitted); *see also Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005). However, mere agreement to do a wrongful act can never alone amount to a tort, even if it may be a crime. *See Rose v. Bartle,* 871 F.2d 331, 366 n.59 (3d Cir. 1989). Some act that is itself a tort must be committed by one of the parties in pursuance of the agreement. *See James v. Evans,* 149 F. 136, 140 (3d Cir. 1906) ("The gist of the action is not the conspiracy charged, but the tort working damage to the plaintiff.").

Here, "a plaintiff need not prove that the unlawful agreement was express or that each participant in the conspiracy knew the exact limits of the illegal plan or the identity of all participants, as long as plaintiff alleges that each participant shared in the general conspiratorial objective." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998) (internal quotation marks and citations omitted). "The plaintiff need not provide direct evidence of the agreement between the conspirators; it is enough that it could be circumstantially inferred from the facts that the conspirators had reached an understanding." *Id*.

Defendant argues that MaxLite's claim initially fails "because it cannot prove the underlying claims" and further, "ATG's conduct does not come close to the conduct of the parties

15

in the cases MaxLite cites." (ECF 557, Def. Opp. at 33-34.) The Court finds there is a material factual dispute among the parties when considering all facts and inferences in the light most favorable to ATG. Evidence of the conspiratorial objective of the employee defendants and ATG is a disputed element of Count VII that must be resolved by a jury.

Based upon the foregoing, Plaintiff's motion for summary judgment on liability is **DENIED** as to MaxLite's Count VII cause of action for civil conspiracy.

### 5. Summary Judgment as to ATG's Affirmative Defenses

As stated on the record at oral argument on November 7, 2024, the Court declines to address Plaintiff's arguments for summary judgment as it relates to ATG's affirmative defenses at this time. In preparation for trial, the Court will entertain proper motions *in limine* with respect to all affirmative defenses. As a result, Plaintiff's partial motion for summary judgment is **DENIED** as to MaxLite's requests to strike ATG's affirmative defenses.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (ECF 546) is **GRANTED in part and DENIED in part** and Defendant's Motion for Summary Judgment (ECF 548) is **DENIED**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc:    James B. Clark, U.S.M.J.
       Parties